IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| HARRIS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant. | Case No. 6:07-cv-1819-Orl-28 KRS |
| FEDERAL EXPRESS CORPORATION,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>HARRIS CORPORATION,<br><br>Counterclaim Defendant. | |

**FEDERAL EXPRESS CORPORATION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE
"FIVE UNASSERTED PATENTS"
AND MEMORANDUM OF LAW IN SUPPORT**

Defendant Federal Express Corporation moves this Court pursuant to Rule 56 for summary judgment of non-infringement on all claims of U.S. Patent Nos. 6,173,159, 6,154,636, 6,308,044, 6,775,545, and 6,108,523 (collectively "the Unasserted Patents"). Harris no longer asserts that Federal Express infringes these patents; however, the claims remain pending because Harris has not properly dismissed these claims. Regardless of Harris's claims, Federal Express has counterclaims directed to each of these patents. Federal Express is entitled to summary judgment of non-infringement because the

919756

undisputed evidence of record demonstrates that the accused Federal Express system does not include each and every element of any claim. Therefore, Federal Express respectfully requests this Court to enter summary judgment of non-infringement in favor of Federal Express as to the Unasserted Patents which Harris asserted in Count I of its First Amended Complaint [Docket No. 32][1] and which are part of Federal Express's Counterclaims. [Docket No. 77].

## I. INTRODUCTION

Federal Express's B-727 fleet uses the accused systems and methods. One of Federal Express's engineers developed plans for the accused system that were not fully implemented for the B-727 fleet. *See* Exhibits 14 and 22. Harris used these pre-implementation plans as the basis for its infringement contentions. Exhibit 16. The undisputed evidence of record, however, demonstrates Federal Express did not implement essential elements contained in the plans: essential elements that are necessary for a finding of infringement of the Unasserted Patents.

Harris Corporation's one-count complaint alleged infringement of eight (8) U.S. patents reciting claims to a system and method of wirelessly downloading aircraft flight performance data from an onboard unit to a computer at an airport. Dk. No. 1, *Complaint* at ¶ 3 (filed Nov. 16, 2007).[2] Harris later amended its Complaint to include two related

---

[1] Harris's Second Amended Complaint [Docket No. 75] is the subject of a Motion to Strike [Docket No. 78] which is currently pending.

[2] The Complaint alleged infringement of U.S. Patent Nos. 6,104,914; 6,108,523; 6,154,636; 6,154,637; 6,173,159; 6,308,044; 6,775,545; and 6,990,319.

patents that Federal Express included in its Counterclaim for non-infringement and invalidity.[3]

Harris received permission to add three later-issued related patents on March 26, 2009. [Order, Docket No. 72]. This addition brought the total number of patents-in-suit to 13. Harris unilaterally dropped the five Unasserted Patents in its Second Amended Complaint. According to Harris these patents are no longer in suit. Federal Express's counterclaims as to the Unasserted Patents remain, however, regardless of the propriety of Harris's attempt to dismiss five patents-in-suit without leave of Court of Federal Express's permission. See Fed. Ex. Mot. to Strike [Docket No. 75].

Harris's technical expert report included infringement opinions for only five patents in suit: three of the eight in the original Complaint, the two added in the First Amended Complaint, and the three new patents which were not yet in the suit.[4] Federal Express immediately inquired as to the status of the five Unasserted Patents. (Letter of Dec. 24, 2008; Exhibit 9). Harris confirmed that it was no longer asserting the patents, but "... reserve[d] the right [to] amend its positions on infringement and to present such evidence at trial." (E-mail of Dec. 30, 2008; Exhibit 10). Harris amended its interrogatory responses accordingly:

> Harris adopts the expert reports, opinions and testimony of Joseph C. McAlexander III, as if fully set forth herein, which set forth the claims of the Patents-in-Suit that Harris intends to assert at trial, and the underlying factual basis for Harris' claims of infringement.

---

[3] In reply to Federal Express's counterclaims, Harris added U.S. Patent Nos. 6,047,165 and 6,308,045.

[4] Of the ten patents-in-suit at the time, Harris's technical expert addressed only U.S. Patent Nos. 6,104,914; 6,154,637; and 6,990,319 6,047,165 and 6,308,045 in his report.

*See* Exhibit 6, Plaintiff's Supplemental Responses to the First Set of Interrogatories (Nos. 3, 4, 7, 8) from Defendant.

On December 30, 2008 Harris wrote Federal Express stating that it did not intend to assert the Unasserted Patents, but *reserving the right* to raise the issue of infringement of those patents at trial. *See* Exhibit 10. Federal Express did not have any indication that Harris intended to attempt to remove these patents from the case until Harris filed its Second Amended Complaint on March 27, 2009. [Docket No. 75].[5]

## II.     Statement of Undisputed Material Facts

1.     Harris did not ask its technical expert, Mr. McAlexander, to analyze the claims of any of the five Unasserted Patents. *See* Exhibit 8, Harris' Response to Federal Express' First Requests for Admission, at Request Nos. 12, 31, 49, 64, and 94. Harris did not ask McAlexander to compare any claims of the five unasserted patents to the FedEx B-727 System. *Id.* at Nos. 13, 32, 50, 65, and 95.

---

[5] Federal Express is entitled to a dismissal with prejudice of claims regarding infringement of the Unasserted Patents. Federal Express requested that Harris dismiss its claims with prejudice. Harris refused. Instead, Harris stands by its "dismissal" by amendment to its Complaint, which ignored the Federal Rules of Civil Procedure. See Dk. No. 78. Harris's litigation tactics have forced Federal Express to file the instant Motion for Summary Judgment. Harris has asserted that it will object if Federal Express decides to file another summary judgment motion for infringement. But, this case involves eight patents, in addition to the five Unasserted Patents. When dispositive motions are due under the Amended Scheduling Order, Federal Express may want to bring a Motion relating to one or more of the remaining eight patents. If Federal Express chooses to do so, it will request that Harris consent to an additional Motion, but may need to seek leave of Court. Given the number of patents, and the procedural posture that Harris has created, more than one summary judgment may be appropriate to eliminate certain issues before trial. Federal Express expressly reserves all its rights to request to file another Motion for Summary Judgment on Infringement Issues.

2. McAlexander did not develop an opinion about infringement before he was told that five of the patents would not be asserted. Exhibit 7, McAlexander Dep. Tr. 18:10-17.

3. Harris adopted McAlexander's report in its entirety, including his opinions and "the underlying factual basis for Harris' claims of infringement." *See* Exhibit 6. McAlexander's report includes no discussion or opinions about any of the five Unasserted Patents.

4. Harris used public documents in its original infringement charts regarding the Unasserted Patents. See Harris Response to Interrogatories, xxx.

5. The B-727 system as implemented, did not contain all the elements that were described in these pre-implementation documents. Exhibit 33, Swanson Aff. at ¶¶ 4-20.

6. On December 30, 2008, Harris told Federal Express, "... in the event that further discovery is relevant to any of the patents identified in the [original] complaint, Harris reserves the right [*sic*] amend its positions on infringement and to present such evidence at trial." [E-mail of Dec. 30, 2008; Exhibit 10].

7. Harris did not attempt to dismiss its claims of infringement until it filed its Second Amended Complaint on March 27, 2009 [Docket No. 75].

8. The FedEx B-727 System includes a quick-access recorder called a MiniQAR, a SecureLINK router, an antenna on each aircraft, a transceiver installed at Federal Express ramps near twenty-six U.S. airports, and a dedicated server housed at the

FedEx Air Operations Center in Memphis, Tennessee. Exhibit 11, Swanson Dep. Tr. 23:20-23; 58:5-7; 55:10-16; Exhibit 22, Swanson Aff. at ¶ 3.

9. Each claim of U.S. Patent No. 6,173,159 (the '159 patent) includes a "flight management computer" as one of the claim elements. Exhibit 1.

10. The FedEx B-727 System does not include a flight management computer. There is no airborne server onboard the 727 aircraft. Exhibit 11, Swanson Dep. Tr. 87:3-4; Exhibit 22, Swanson Aff. at ¶ 7. The FedEx B-727 System does not include a central processing unit (CPU) onboard. The MiniQAR is not a computer; "It's just a memory device." Exhibit 11, Swanson Dep. Tr. 27:5-8. The 727 aircraft "does not have a [sic] aircraft network system." Id. Swanson Dep. Tr. 11:14-17. "[O]n the aircraft, there is no hard drive for the system." Id. Swanson Dep. Tr. 86:21-22.

11. Each claim of U.S. Patent No. 6,154,636 (the '636 patent) include an OOOI element [6] Exhibit 2. Independent claim 53 of the '636 patent recites the step of "calculating the 'out' and 'off' times." Id.

12. Each of the claims of U.S. Patent No. 6,308,044 (the '044 patent) also include elements related to OOOI data. Exhibit 3.

13. The FedEx B-727 System does not have a system for "calculating the OOOI times" onboard. The FedEX B-727 system does not gather, capture, record, or transmit data related to OOOI times. Exhibit 22, Swanson Aff. at ¶ 11. The FedEx B-727 System does not include a central processing unit (CPU) onboard. Exhibit 11,

---

[6] OOOI is an acronym for specific events that occur during aircraft operations; specifically, Out from the gate, Off the ground, On the ground, and In to the gate.

Swanson Dep. Tr. 27:5-8. The 727 does not receive or store a time stamp when the aircraft lands (also called "weight on wheels") (On the ground and Off the ground). Exhibit 11, Swanson Dep. Tr. 93:19-24. The FedEx B-727 System cannot capture data or the time related to when the aircraft pushes "Out" from the gate, because the MiniQAR does not begin recording data until the airplane becomes airborne. *Id.* Swanson Dep. Tr. 28:14-16. And there is no way to capture data or the time related to when the aircraft pushes "In" to the gate, because the MiniQAR stops recording when the airplane lands. *Id.* Swanson Dep. Tr. 29:13-14.

14. Each claim of U.S. Patent No. 6,775,545 (the '545 patent) includes an "interrogation beacon" element that contains data representative of restrictions "imposed by a jurisdiction governing the location of the wireless router." Exhibit 4.

15. The FedEx B-727 System does not transmit a beacon containing information about limitations of a local jurisdiction. Exhibit 12, FedEx 30(b)(6) Dep. (Swanson) Tr. 207:6-9; Exhibit 22, , Swanson Aff. at ¶ 15. None of the components in the FedEx B-727 System 'know' the geographic location of any particular 727 aircraft. FedEx 30(b)(6) Dep. (Swanson) Tr. 206:16-19. There are no wireless access points for the B-727 System outside the United States. Exhibit 11, Swanson Dep. Tr. 58:5-7.

16. All the claims of U.S. Patent No. 6,108,523 (the '523 patent) contain an element having "a remote flight operations control center"

17. The FedEx B-727 System does not include or interact with "a remote flight operations control center." The only server used to process data from the 727 aircraft is located at the Air Operations Center in Memphis. Exhibit 11, Swanson Dep.

Tr. 55:1-6; Exhibit 13, FedEx 30(b)(6) Dep. (Wickens) Tr. 39:18-20; Exhibit 22, Swanson Aff. at ¶ 19.

Based on these undisputed facts, Federal Express is entitled to summary judgment that it does not infringe any claim of the five Unasserted Patents.

## III.  MEMORANDUM

Summary judgment is appropriate as to both Harris's claims of patent infringement of the Unasserted Patents as well Federal Express's counterclaims directed to these patents. As Federal Express demonstrated in its Motion to Strike [Docket No. 78] Harris has not complied with the Federal Rules regarding dismissal. Specifically, Harris did not obtain leave of court or Federal Express's permission to dismiss the claims. Additionally, Federal Express's counterclaims remain in this litigation.[7] A counterclaim pleaded prior to a motion to dismiss generally remains pending before the Court. *See*, Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 2365 (2008). Additionally, it is recognized that:

> [t]he patent owner may withdraw a charge of infringement or disavow any intention of suing or threatening to sue. A number of decisions hold that such action will not necessarily preclude the existence of an actual controversy, especially if the disavowal occurs after the filing of the declaratory judgment action.

8-21 Chisum on Patents § 21.02. The Federal Circuit recently held that a motion to dismiss affirmative infringement claims did not divest the court of subject matter

---

[7] Federal Express's opposition to Harris's motion to dismiss will contain a thorough analysis regarding why this Court still retains jurisdiction over Federal Express's counterclaims for non-infringement, invalidity, and unenforceability.

jurisdiction over pending declaratory judgment counterclaims. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1300 (Fed. Cir. 2009).

Moreover, this is not a case in which a Plaintiff moved to dismiss affirmative claims shortly after filing suit. Instead, the parties have extensively litigated the issue of infringement of the Unasserted Patents, engaging in both written discovery and depositions. Since discovery began, the parties have taken fourteen depositions, Federal Express has produced more than 172,500 pages of documents, and Harris has produced more than 75,500 pages.

Both Harris and Federal Express pursued extensive discovery regarding the five Unasserted Patents. Both parties served and responded to interrogatories regarding these patents. Exhibit 15. Harris produced claim charts listing its infringement contentions on produced May 9, 2008, and asserted infringement of one independent claim of each of the five Unasserted Patents. Exhibit 16. Federal Express responded with non-infringement claim charts, showing its position with regard to every asserted claim. Exhibit 17. The parties also requested documents regarding these patents. Exhibit 18. In fact, as late as October 2008, Harris served document requests regarding the five Unasserted Patents. *See* Exhibit 18, Plaintiff's Third Request for Production to Defendant, Nos. 101-125 (Oct. 9, 2008). In early January, Federal Express served Harris with 159 requests for admissions of fact – more than 100 of which directly addressed a particular fact regarding an element or aspect of the five Unasserted Patents. *See* Exhibit 19, Federal Express Corporation's First Requests for Admissions of Fact to Harris Corporation, Nos. 12-30 (regarding the '159 patent); 31-47 (re the '636 patent); 48-63 (re the '044 patent); 64-93

(re the '545 patent); and 94-114 (re the '523 patent). Harris's first requests to admit also addressed several elements of the five Unasserted Patents. *See* Exhibit 20, Plaintiff's First Request for Admissions to Defendant, Nos. 24, 25-32 (Jan. 14, 2009).

Extensive deposition testimony was also devoted to the issue of infringement of the Unasserted Patents. Harris directed 30(b)(6) topics to the issue and asked all three deposed Federal Express engineers about different elements of the five Unasserted Patents. *See* Exhibit 11, Swanson Dep. at pages 11, 27-29, 86-87, 93-98, and 104-105; Exhibit 14, Bouchard Dep. at pages 20-21, 95-97, 118-121, 180, 185; Exhibit 12, 30(b)(6) Dep. (Swanson) at pages 58, 81-82, 138, 186, 201-207 ; *and*, Exhibit 13, 30(b)(6) Dep. (Wickens) at pages 37-40, 52. Harris also asked the designated representative of Avionica, Inc., about some aspect of each patent. Exhibit 21, Segredo Dep. Tr. at 48-60. Finally, given Harris's reservation of rights regarding these patents, Federal Express was forced to use its deposition time to inquire about these patents, including the deposition of Harris's 30(b)(6) witness, Brian Holt (Jan. 22, 2009), the two inventors (Ziarno and Wright, March 4-5, 2009), and Harris's expert witnesses (Carter, Jan. 7, 2009; and McAlexander, March 10, 2009).

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Vivid Technologies v. American Science & Eng'g,* 200 F.3d 795, 806-07 (Fed. Cir. 1999).

Harris bears the burden of proving infringement of its patents. *Vivid Technologies*, 200 F.3d at 807. A patent claim is only infringed if each and every element of the claim is found in the accused device. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Generally, "dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989). Therefore, in order to show that it does not infringe the patent claims of the Unasserted Patents, FedEx only needs to show the absence of any one element contained in the patent claims. *Laitram,* 939 F.2d at 1535.

Harris has no expert opinion or facts to support an assertion that Federal Express infringes any of the five unasserted patents. Harris adopted McAlexander's report in its entirety, including his opinions and "the underlying factual basis for Harris' claims of infringement." *See* Exhibit 6. McAlexander's report includes no discussion or opinions about any of the five Unasserted Patents. Consequently, there are no genuine issues of material fact regarding the five unasserted patents.

### A.   The Accused FedEx B-727 System Does Not Infringe U.S. Patent No. 6,173,159

All the claims of the '159 patent recite a flight management computer. There is no flight management computer on the Boeing 727 aircraft in the Federal Express fleet. Statement of Material Facts at ¶¶ 9-10. Because there is no flight management computer in the FedEx B-727 System, there is no infringement. *See Laitram*, 939 F.3d at 1535 (when any single element is missing, there can be no infringement).

**B.     The Accused FedEx B-727 System Does Not Infringe U.S. Patent No. 6,154,636 or 6,308,044 ("the OOOI Patents")**

All the claims of the OOOI Patents recite an element related to OOOI times. The accused system does not calculate or acquire OOOI times. Statement of Material Facts at ¶¶ 11-13. The components of the accused FedEx B-727 System are turned off when the OOOI events take place. *Id* at 8. Because the system does not acquire or calculate OOOI times, there is no infringement.

**C.     The Accused FedEx B-727 System Does Not Infringe U.S. Patent No. 6,775,545**

All the independent claims of the '545 patent recite an interrogation beacon. There is no interrogation beacon in the accused FedEx B-727 System. Statement of Material Facts at ¶¶ 14-15. The accused System operates in only one jurisdiction – the United States – where all the communications limitations are the same. In operation, therefore, there is never a need to adjust the system according to the limits imposed by another jurisdiction. Because the system does not transmit an "interrogation beacon" that contains data "imposed by a jurisdiction governing the location of the wireless router", the FedEx B-727 system does not infringe any claim of the '545 patent.

**D.     The Accused FedEx B-727 System Does Not Infringe U.S. Patent No. 6,108,523**

All of the claims of the '523 patent include a limitation directed to "a remote flight operations control center." Exhibit 5. The evidence shows that the FedEx B-727 System does not have a remote flight operations control center. Statement of Material Facts at ¶¶ 16-17. Therefore, there is no infringement. *See Laitram*, 939 F.3d at 1535.

## IV. CONCLUSION

For each claim discussed above, at least one element is entirely missing from the accused FedEx System. Thus, the Court should grant FedEx's Motion for Summary Judgment of Non-infringement of the five Unasserted Patents.

Respectfully submitted,

*/s/ Lawrence K. Nodine*
Lawrence K. Nodine, Trial Counsel
Georgia Bar No. 545250
NodineL@BallardSpahr.com
J. Scott Anderson
Georgia Bar No. 017266
Florida Bar No. 115053 (inactive)
AndersonJS@BallardSpahr.com
Charley F. Brown
Georgia Bar No. 086754
BrownCF@BallardSpahr.com
Robin L. Gentry
Georgia Bar No. 289889
GentryR@BallardSpahr.com
Jeffrey H. Brickman
Georgia Bar No. 080432
BrickmanJ@BallardSpahr.com
Sumner C. Rosenberg
Georgia Bar No. 614550
RosenbergS@BallardSpahr.com
**Ballard Spahr Andrews & Ingersoll, LLP**
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

Marilyn G. Moran
Florida Bar No. 0163813
mmoran@bakerlaw.com
**Baker & Hostetler, LLP**
P.O. Box 112
Orlando, Florida 32802-0112
Telephone 407-649-4000
Fax 407-841-0168

ATTORNEYS FOR
FEDERAL EXPRESS CORPORATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 27, 2009, I electronically filed the foregoing document, FEDERAL EXPRESS CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE "FIVE UNASSERTED PATENTS" AND MEMORANDUM OF LAW IN SUPPORT, using the Case Management / Electronic Case Filing system which will send a Notice of Electronic Filing to the following participants:

>Brian R. Gilchrist, Esq.
>Ryan T. Santurri, Esq.
>Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
>P.O. Box 3791
>Orlando, Florida 32802-3791
>Telephone: 407-841-2330
>Fax: 407-841-2343

J. Scott Anderson
**Ballard Spahr Andrews & Ingersoll, LLP**
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

ATTORNEYS FOR
FEDERAL EXPRESS CORPORATION