# Exhibit 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| HARRIS CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>      Defendant. | Case No. 6:07-cv-1819-Orl-28 KRS |
| FEDERAL EXPRESS CORPORATION,<br><br>      Counterclaim Plaintiff,<br><br>v.<br><br>HARRIS CORPORATION,<br><br>      Counterclaim Defendant. | |

### FEDERAL EXPRESS CORPORATION'S
### THIRD SUPPLEMENTAL RESPONSES
### TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff, Federal Express Corporation ("Federal Express"), provides the following supplemental responses to "Plaintiff's First Set of Interrogatories to Defendant," numbered 1 through 10 ("Plaintiff's Interrogatories").

## PRELIMINARY STATEMENT

Federal Express has not completed its discovery, investigation, research, and trial preparation. The following responses are based upon information and writings presently available to and located by Federal Express and its attorneys, and such responses are made based on Federal Express's reasonable interpretation of each interrogatory. The answers herein to the interrogatories are given without prejudice to Federal Express's right to produce evidence of any additional facts. Discovery in this matter is ongoing, and Federal Express reserves the right to amend, revise, correct, supplement or clarify any of the responses based on any facts or information obtained at any time subsequent to this response, or if any inadvertent errors, mistakes or omissions should be found, to amend, revise or correct such errors, mistakes or omissions.

Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are Expressly reserved and may be interposed at the time of trial.

Federal Express's responses shall not be deemed to constitute admissions that (a) any particular document or thing exists, is relevant, non-privileged, or admissible into evidence, or (b) any statement or characterization in an interrogatory is accurate or complete.

No incidental or implied admissions are intended by the responses herein.  The fact that Federal Express has answered or objected to any interrogatory should not be taken as an admission that Federal Express accepts or admits the existence of any "facts" set forth or assumed by such interrogatory.  The fact that Federal Express has answered part or all of any interrogatory is not intended to be, and shall not be construed to be, a waiver by Federal Express of any part of any objection to the interrogatory.

**GENERAL OBJECTIONS**

1.     Federal Express objects to every one of Plaintiff's Interrogatories – including but not limited to the "Definitions and Instructions" set forth in Plaintiff's Interrogatories – to the extent they purport to impose requirements that are different from, or in addition to, those imposed by the Federal Rules of Civil Procedure or other applicable rule or statute.  Federal Express further objects to Plaintiff's "Definitions and Instructions" as being overly broad, vague, and ambiguous.

2.     Federal Express objects to Plaintiff's Interrogatories to the extent that they seek or call for information protected by the attorney-client privilege and/or protected by the work-product doctrine, or that are subject to any other applicable privilege.  To the extent that Plaintiff's Interrogatories seek material reflecting attorney-client communications and/or material protected by the work-product doctrine, each such interrogatory is overbroad and seeks information that is beyond the scope of discovery permitted by the Federal Rules of Civil Procedure.  Federal Express will not divulge information that is protected from discovery by the attorney-client privilege or by the work-product doctrine.  Such responses as may hereafter occur shall not include any

3

information protected by such privileges or doctrines, and any inadvertent disclosure of the same shall neither be deemed nor constitute a waiver of such privileges.

     3.    Federal Express objects to the extent that Plaintiff's Interrogatories seek information that is confidential, sensitive, proprietary business information, and/or trade secrets which are specifically excluded from discovery under the applicable Federal Rules of Civil Procedure. Federal Express shall make responsive information currently in its possession, custody or control available only after a suitable Protective Order or Confidentiality Agreement is in place.

     4.    Federal Express objects to the extent that Plaintiff's Interrogatories seek information that is confidential, sensitive, proprietary business information, and/or trade secrets belonging to a third party. Unless ordered by the Court to do so, Federal Express will not divulge such information to the extent that it is under any obligation to maintain such third-party information in confidence and not to disclose it, unless the third party grants permission to do so.

     5.    Federal Express objects to Plaintiff's Interrogatories to the extent that they fail to specify the information they seek with reasonable particularity.

     6.    Federal Express objects to Plaintiff's Interrogatories as uncertain, overbroad, and unduly burdensome to the extent that many interrogatories fail to specify any specific time period, and accordingly, are not limited to events relevant to this lawsuit.

     7.    Federal Express objects to Plaintiff's Interrogatories to the extent they are compound and actually include multiple interrogatories.

8.    Federal Express will respond to Plaintiff's Interrogatories with information in its possession, custody or control which is reasonably responsive to each interrogatory to the extent not specifically or generally objected to; therefore, Federal Express objects to Plaintiff's Interrogatories to the extent they purport to call for information not in its actual possession, custody or control.  Federal Express objects to Plaintiff's Interrogatories to the extent they purport to require Federal Express to identify and/or otherwise provide information with respect to documents no longer in its possession, custody or control on the grounds that they seek to impose requirements and/or obligations inconsistent with and in addition to the Federal Rules of Civil Procedure which are unduly burdensome and oppressive.

9.    Federal Express objects to each interrogatory to the extent it seeks information that is publicly available and/or as easily obtained by the Federal Express as by the Federal Express, on the grounds that such interrogatories are overly broad and unduly burdensome.

10.    Federal Express objects to each interrogatory to the extent it is premature and seeks information or admissions regarding facts that Federal Express has not yet had an opportunity to investigate through discovery.

11.    Federal Express objects to the definitions of the terms "you" and "your" contained in the "Definitions and Instructions" section of Plaintiff's Interrogatories to the extent that such definitions include Federal Express's "predecessor, successor, division, subsidiary, officer, director, shareholder, employee, or principal thereof, and any attorney or other agent acting on its behalf" on the grounds that such definitions are vague and

5

ambiguous, irrelevant to the underlying litigation, contrary to the common everyday definition of such terms, call for a legal conclusion, call for defendants to make determinations without adequate foundation, and render the interrogatories overbroad, unduly burdensome and oppressive.

12.     Federal Express objects to the definition of the term "document" contained in the "Definitions and Instructions" section of Plaintiff's Interrogatories to the extent it purports to impose obligations beyond those imposed by law, and to the extent that it seeks information that is not reasonably accessible, or would pose an unreasonable and undue annoyance, burden, or expense on Federal Express.

13.     Federal Express objects to the definitions of the terms "identity" or "identify" contained in the "Definitions and Instructions" section of Plaintiff's Interrogatories on the grounds that such definitions are vague, ambiguous, contrary to the common everyday definition of such terms, and render the interrogatories overbroad, unduly burdensome and oppressive.

14.     Federal Express objects to Plaintiff's Interrogatories on the grounds that Plaintiff has not yet identified any accused device or system of Federal Express that forms the basis of Plaintiff's allegations of infringement.  Because no specific device or system has been accused, Federal Express objects to these Interrogatories on the grounds and to the extent that they seek information that is not relevant to the claims or defenses of any party, and otherwise not reasonably calculated to lead to the discovery of admissible evidence.

The foregoing General Objections are incorporated by reference into each of the following individual Responses, as though fully set forth therein, even though not specifically referred to in such Response.  Subject to and without waiving these General Objections, Federal Express sets forth its specific objections and answers to the numbered interrogatories below.

### SPECIFIC OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

INTERROGATORY NO. 6:

State the basis for your contention that you do not infringe any of the Patents-in-Suit, including claim charts demonstrating your contention and identify any documents you intend to reply on in support of your contention.

RESPONSE TO INTERROGATORY NO. 6:

Federal Express hereby incorporates by reference each and every objection and qualification stated in the General Objections as if fully set forth in this response.

Federal Express objects to this Interrogatory on the grounds that Plaintiff has not yet identified any accused device or system of Federal Express that forms the basis of Plaintiff's allegations of infringement.  Because no specific device or system has been accused, Federal Express objects to this Interrogatory on the grounds and to the extent that it seeks information that is not relevant to the claims or defenses of any party, and otherwise not reasonably calculated to lead to the discovery of admissible evidence.

Federal Express objects to this Interrogatory to the extent it seeks or otherwise calls for information protected by the attorney-client privilege, the work-product doctrine, or other applicable privilege.  Plaintiff is asserting 8 patents, including 331 claims.

Federal Express further objects to this Interrogatory on the grounds that answering it would require Federal Express to (1) speculate about which devices or systems might be accused as infringing by Plaintiff, (2) speculate about which claims might be asserted by Plaintiff against each such device or system, (3) analyze a vast number of hypothetical scenarios involving how Plaintiff might apply each asserted claim to each accused device or system, and (4) develop a non-infringement position for each such hypothetical scenario. Federal Express will not speculate about Plaintiff's contentions or analyze hypothetical scenarios. The dilemma created by the current situation was in large part the rationale for Federal Express's request that the Court establish additional patent-related disclosure deadlines. Without the identification by Plaintiff of the accused devices or systems, the claims being asserted, and how Plaintiff contends those claims might be applied to the accused devices or systems, this Interrogatory cannot be answered. Federal Express will supplement its response to this Interrogatory when Plaintiff identifies the accused devices or systems, the claims being asserted, and how Plaintiff contends those claims might be applied to the accused devices or systems.

**Supplemental Response to Interrogatory No. 6:**

**Subject to and without waiving the foregoing objections, Federal Express contends that it does not infringe any claim of the Harris patents, as more fully explained in the claim charts attached hereto as Exhibit Three. The claim charts in Exhibit Three detail the basis for Federal Express's contention that the system of Avionica components installed on select Boeing 727 aircraft (the "FedEx B-727 System") do not infringe any claim of the Harris patents.**

8

Federal Express makes no attempt to offer claim charts relating to the "FedEx Titan" systems on aircraft that employ Teledyne components because those Teledyne components are provided to Federal Express under a license from Harris. Cf. *Quanta Computer, Inc. v. LG Electronics, Inc.*, – U.S. –, No. 06-937 (June 9, 2008). Accordingly, Federal Express objects to this Interrogatory on the grounds that it seeks information about Teledyne components that is not relevant to the claims and defenses between the parties to this lawsuit, and on the grounds that providing claim charts about licensed components would be unduly burdensome and oppressive.

Dated this 14th day of July, 2008.

Respectfully submitted,

Lawrence K. Nodine, Trial Counsel
Georgia Bar No. 545250
NodineL@BallardSpahr.com
J. Scott Anderson
Georgia Bar No. 017266
Florida Bar No. 115053 (inactive)
AndersonJS@BallardSpahr.com
Robin L. Gentry
Georgia Bar No. 289889
GentryR@BallardSpahr.com
Jeffrey H. Brickman
Georgia Bar No. 080432
BrickmanJ@BallardSpahr.com
Sumner C. Rosenberg
Georgia Bar No. 614550
RosenbergS@BallardSpahr.com
Charley F. Brown
Georgia Bar No. 086754
BrownC@BallardSpahr.com
**Ballard Spahr Andrews & Ingersoll, LLP**
999 Peachtree Street, Suite 1000

Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

Marilyn G. Moran
Florida Bar No. 0163813
mmoran@bakerlaw.com
**Baker & Hostetler, LLP**
P.O. Box 112
Orlando, Florida  32802-0112
Telephone 407-649-4000
Fax 407-841-0168

ATTORNEYS FOR
FEDERAL EXPRESS CORPORATION

**EXHIBIT THREE**

**U.S. Patent 6,990,319**

The term "FedEx B-727 System" refers to the system of components installed on select Federal Express Boeing 727 aircraft, which includes an Avionica MiniQAR recorder and an Avionica SecureLink router.

| '319 CLAIM ELEMENT | '319 HARRIS CONTENTION | '319 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| 1.     A method of providing data from an aircraft comprising: | The FedEx TITAN system, using the Avionica SecureLink Router and Avionica MiniQAR (FedEx Response to Plaintiff's Interrogatory No. 4), enables FedEx to provide data from an aircraft to a ground destination.  The FedEx TITAN system was "certified [using] Avionica's SecureLink router system on its Boeing 727 and DC-10 aircraft ...." (Exhibit A: *Avionics Magazine July 1, 2005 Wireless Gatelink: Coming of Age.*) | Claim 1 of the '319 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "data from an aircraft" as recited in this claim.<br><br>To the extent Harris contends that the equipment identified in response to Plaintiff's Interrogatory No. 4 represents an acknowledgement that such equipment infringes this claim, such contention is denied.<br><br>The Harris contention that Avionica equipment was installed on DC-10 aircraft is denied. |
| continuously monitoring the flight performance of the aircraft during an entire flight of the aircraft from at least take-off to landing; | The FedEx TITAN system continuously monitors the flight performance of the aircraft during an entire flight of the aircraft from at least take-off to landing, as required by FAR 121.344. | A variety of components for monitoring flight performance may be found on aircraft within the Federal Express fleet, including the Boeing 727 aircraft that use the FedEx B-727 System.<br><br>The Harris contention that the "FedEx TITAN system" operates "as required by FAR 121.344" is denied. |
| generating aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft from at least take-off to landing; | The FedEx TITAN system generates aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft from at least take-off to landing, as required by FAR 121.344. | A variety of components for generating aircraft data may be found on aircraft within the Federal Express fleet, including the Boeing 727 aircraft that use the FedEx B-727 System.<br><br>The Harris contention that the "FedEx TITAN system" operates "as required by FAR 121.344" is denied. |

817471

| '319 CLAIM ELEMENT | '319 HARRIS CONTENTION | '319 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| accumulating and continuously storing the generated aircraft data within a ground data link unit positioned within the aircraft during the entire flight of the aircraft from at least take-off to landing to create an archival store of such aircraft data; | The FedEx TITAN system accumulates and continuously stores the generated aircraft data within a ground data link unit positioned within the aircraft during the entire flight of the aircraft from at least take-off to landing to create an archival store of such aircraft data as required by FAR 121.344.  The FedEx TITAN system "includes the (OMT) Onboard Maintenance Terminal (a server), Pilot Access Terminal (PAT), and Gatelink technology that will all be integrated to create an on-board network to collect data onboard the aircraft and route this information to/from a ground destination." (Exhibit B: *AMC Industry Session Part 1 – Portable Maintenance Aids, AMC 2001.*) | The FedEx B-727 System includes an Avionica MiniQAR recorder that, when operating, stores a copy of the data being sent to the flight data recorder. The Harris contention that the "FedEx TITAN system" operates "as required by FAR 121.344" is denied. The Harris contention that the OMT, PAT, and Gatelink technology "will all be integrated" appears to be based on a plan allegedly expressed in 2001.  Because and to the extent this contention is based on a plan and not a fact, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied. To the extent Harris contends that the OMT, PAT, and Gatelink technology are "integrated," such contention is denied.  In the FedEx B-727 System, there is no connection between the Avionica equipment and the OMT or the PAT. To the extent that Harris contents that the OMT or PAT satisfy this claim element, such contention is denied. |

(Page 2)

| '319<br>CLAIM ELEMENT | '319<br>HARRIS CONTENTION | '319<br>FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| after the aircraft completes its flight and lands at an airport, transmitting the accumulated, stored generated aircraft data from the ground data link unit over a wideband spread spectrum communications signal to a ground based spread spectrum receiver; | After the aircraft completes its flight and lands at an airport, the FedEx TITAN system transmits the accumulated, stored generated aircraft data from the ground data link units over a wideband spread spectrum communications signal to a ground based spread spectrum receiver.  The FedEx TITAN system uses "IEEE 802.11b wireless routers from Avionica Inc. [ ] to send flight operations quality assurance (FOQA) data over a secure radio link into the cargo carrier's FOQA servers [ ] automatically via Gatelink, at 11 Mbits/s, every time an aircraft approaches a wireless-enabled gate.  This provides a near-instantaneous safety snapshot of each flight. [ ] To support the FOQA application, the MiniQAR receives flight data from the digital flights data acquisition unit." (Exhibit C: *Avionics Magazine, "Wireless Router" Mar. 1, 2005*.) | The FedEx B-727 System includes an Avionica SecureLink router that is connected to the Avionica MiniQAR recorder.  The SecureLink router includes a transmitter that is capable of transmitting the data stored on the MiniQAR over a spread spectrum signal. |

| '319 CLAIM ELEMENT | '319 HARRIS CONTENTION | '319 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| and demodulating the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing. | The FedEx TITAN system demodulates the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing pursuant to the IEEE 802.11 standard. | The FedEx B-727 System does not perform the step of "demodulating the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing" as recited in this claim step. The aircraft data obtained by the FedEx B-727 System does not include "an entire flight of the aircraft from take-off to landing" as recited in this claim step.<br><br>To the extent Harris contends that the "FedEx TITAN system" performs the step of "demodulating the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing" because such a step is required or mandated by IEEE 802.11, such contention is denied. |

(Page 4)

**U.S. Patent 6,108,523**

The term "FedEx B-727 System" refers to the system of components installed on select Federal Express Boeing 727 aircraft, which includes an Avionica MiniQAR recorder and an Avionica SecureLink router.

| '523 CLAIM ELEMENT | '523 HARRIS CONTENTION | '523 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| 1.      A system for providing a retrievable record of the flight performance of an aircraft comprising: | The FedEx TITAN system, using the Avionica SecureLink Router and Avionica MiniQAR (FedEx Response to Plaintiff's Interrogatory No. 4), is a system for providing a retrievable record of the flight performance data of an aircraft. The FedEx TITAN system was "certified [using] Avionica's SecureLink router system on its Boeing 727 and DC-10 aircraft ...." (Exhibit A: *Avionics Magazine July 1, 2005 Wireless Gatelink: Coming of Age*.) | Claim 1 of the '523 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim.<br><br>To the extent Harris contends that the equipment identified in response to Plaintiff's Interrogatory No. 4 represents an acknowledgement that such equipment infringes this claim, such contention is denied.<br><br>The Harris contention that Avionica equipment was installed on DC-10 aircraft is denied. |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The FedEx TITAN system contains a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft pursuant to FAR 121.344. | The FedEx B-727 System includes an Avionica MiniQAR recorder that, when operating, obtains a copy of the data being sent to the flight data recorder.<br><br>The Harris contention that the "FedEx TITAN system" operates "pursuant to FAR 121.344" is denied. |

| '523<br>CLAIM ELEMENT | '523<br>HARRIS CONTENTION | '523<br>FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| a)        an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | The FedEx TITAN system contains an archival data store operative to accumulate and store flight performance data during flight of the aircraft pursuant to FAR 121.344.  The TITAN system "includes the (OMT) Onboard Maintenance Terminal (a server), Pilot Access Terminal (PAT), and Gatelink technology that will all be integrated to create an on-board network to collect data onboard the aircraft and route this information to/from a ground destination." (Exhibit B: *AMC Industry Session Part 1 – Portable Maintenance Aids, AMC 2001.*) | The FedEx B-727 System includes an Avionica MiniQAR recorder that, when operating, stores a copy of the data being sent to the flight data recorder.<br><br>The Harris contention that the "FedEx TITAN system" operates "pursuant to FAR 121.344" is denied.<br><br>The Harris contention that the OMT, PAT, and Gatelink technology "will all be integrated" appears to be based on a plan allegedly expressed in 2001. Because and to the extent this contention is based on a plan and not a fact, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied.<br><br>To the extent Harris contends that the OMT, PAT, and Gatelink technology are "integrated," such contention is denied.  In the FedEx B-727 System, there is no connection between the Avionica equipment and the OMT or the PAT.<br><br>To the extent that Harris contents that the OMT or PAT satisfy this claim element, such contention is denied. |

(Page 6)

| '523<br>CLAIM ELEMENT | '523<br>HARRIS CONTENTION | '523<br>FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| b)      a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal that comprises a signal in the range of about 2.4 to about 2.5 GHz; | The FedEx TITAN system contains a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal that comprises a signal in the range of about 2.4 to about 2.5 GHz.  The TITAN system uses "IEEE 802.11b wireless routers from Avionica Inc. [ ] to send flight operations quality assurance (FOQA) data over a secure radio link into the cargo carrier's FOQA servers [ ] automatically via Gatelink, at 11 Mbits/s, every time an aircraft approaches a wireless-enabled gate.  This provides a near-instantaneous safety snapshot of each flight.  [ ] To support the FOQA application, the miniQAR receives flight data from the digital flight data acquisition unit." (Exhibit C: *Avionics Magazine, "Wireless Router" Mar. 1, 2005*.) | The FedEx B-727 System includes an Avionica SecureLink router that is connected to the Avionica MiniQAR recorder.  The SecureLink router includes a transmitter that is capable of transmitting the data stored on the MiniQAR over a spread spectrum signal. |

(Page 7)

| '523<br>CLAIM ELEMENT | '523<br>HARRIS CONTENTION | '523<br>FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | The FedEx TITAN system contains an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data. The TITAN system uses "IEEE 802.11b wireless routers from Avionica Inc. [ ] to send flight operations quality assurance (FOQA) data over a secure radio link into the cargo carrier's FOQA servers [ ] automatically via Gatelink, at 11 Mbits/s, every time an aircraft approaches a wireless-enabled gate. This provides a near-instantaneous safety snapshot of each flight. [ ] To support the FOQA application, the miniQAR receives flight data from the digital flight data acquisition unit." (Exhibit C: *Avionics Magazine, "Wireless Router" Mar. 1, 2005.*) | The FedEx B-727 System does not include an "airport based wideband spread spectrum transceiver" as recited in this claim element.<br><br>The FedEx B-727 System is wholly owned, operated, and used by Federal Express and does not incorporate communications equipment that is owned, operated, or used by the airport. |
| an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores the demodulated flight performance data; | The FedEx TITAN system utilizes an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores the demodulated flight performance data. (Exhibit D: *FedEx PowerPoint Presentation: The "TITAN Project" Totally Integrated Technical Aircraft Network" Revised 05/03/2001 by Bob Bouchard.*) | To the extent this Harris contention is based on a plan allegedly expressed in 2001 and not a fact, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied.<br><br>The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim element.<br><br>The FedEx B-727 System does not include an "airport based archival data store coupled to said airport based wideband spread spectrum transceiver" as recited in this claim element because there is no "airport based wideband spread spectrum transceiver." |

| '523<br>CLAIM ELEMENT | '523<br>HARRIS CONTENTION | '523<br>FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| an airport based processor coupled to said archival data store for retrieving flight data performance from the airport based archival data store; | The FedEx TITAN system utilizes an airport based processor coupled to said archival data store for retrieving flight data performance from the airport based archival data store. (Exhibit D: *FedEx PowerPoint Presentation: The "TITAN Project" Totally Integrated Technical Aircraft Network" Revised 05/03/2001 by Bob Bouchard*.) | To the extent this Harris contention is based on a plan allegedly expressed in 2001 and not a fact, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied.<br><br>The FedEx B-727 System does not include an "airport based processor" as recited in this claim element.<br><br>The FedEx B-727 System does not include an "airport based processor coupled to said archival data store" as recited in this claim element because there is no "airport based archival data store." |
| a remote flight operations control center; and | The FedEx TITAN system utilizes a remote flight operations control center. "One of the many uses of the technology will be to send flight operations quality assurance (FOQA) data over a secure radio link into the cargo carrier's FOQA servers, which are accessible to authorized persons on the FedEx secure global network." (Exhibit C: *Avionics Magazine, 03/01/2005, "Scan"*; Exhibit D: *FedEx PowerPoint Presentation: The "TITAN Project" Totally Integrated Technical Aircraft Network" Revised 05/03/2001 by Bob Bouchard*.) | The Harris contention that one of the uses "will be to send flight operations quality assurance (FOQA) data" appears to be based on a plan and not a fact. Accordingly, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied.<br><br>The FedEx B-727 System does not include a "remote flight operations control center" as recited in this claim element. |

(Page 9)

| '523<br>CLAIM ELEMENT | '523<br>HARRIS CONTENTION | '523<br>FEDERAL EXPRESS'S NON-INFRINGEMENT<br>POSITION |
|---|---|---|
| an airport based communications network operatively connecting said remote flight operations control center and airport based processor to allow the remote flight operations control center to receive and analyze the flight performance data. | The FedEx TITAN system utilizes an airport based communications network operatively connecting said remote flight operations control center and airport based processor to allow the remote flight operations control center to receive and analyze the flight performance data. (Exhibit D: *FedEx PowerPoint Presentation: The "TITAN Project" Totally Integrated Technical Aircraft Network" Revised 05/03/2001 by Bob Bouchard.*) | To the extent this Harris contention is based on a plan allegedly expressed in 2001 and not a fact, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied.<br><br>The FedEx B-727 System does not include an "airport based communications network" as recited in this claim element. The FedEx B-727 System is wholly owned, operated, and used by Federal Express and does not incorporate communications equipment that is owned, operated, or used by the airport.<br><br>The FedEx B-727 System does not include an "airport based communications network operatively connecting said flight operations control center and airport based processor" as recited in this claim element because there is no "remote flight operations control center" and no "airport based processor."<br><br>The FedEx B-727 System does not include a "remote flight operations control center to receive and analyze the flight performance data" as recited in this claim element. |

(Page 10)

U.S. Patent 6,104,914

The term "FedEx B-727 System" refers to the system of components installed on select Federal Express Boeing 727 aircraft, which includes an Avionica MiniQAR recorder and an Avionica SecureLink router.

| '914 CLAIM ELEMENT | '914 HARRIS CONTENTION | '914 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| 1.    A system for providing a retrievable record of the flight performance of an aircraft comprising: | The FedEx TITAN system, using the Avionica SecureLink Router and Avionica MiniQAR (FedEx Response to Plaintiff's Interrogatory No. 4), enables FedEx to provide a retrievable record of the flight performance of the aircraft. The FedEx TITAN system was "certified [using] Avionica's SecureLink router system on its Boeing 727 and DC-10 aircraft ...." (Exhibit A: *Avionics Magazine July 1, 2005 Wireless Gatelink: Coming of Age.*) | Claim 1 of the '914 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim.<br><br>To the extent Harris contends that the equipment identified in response to Plaintiff's Interrogatory No. 4 represents an acknowledgement that such equipment infringes this claim, such contention is denied.<br><br>The Harris contention that Avionica equipment was installed on DC-10 aircraft is denied. |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The FedEx TITAN system contains a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft pursuant to FAR 121.344. | The FedEx B-727 System includes an Avionica MiniQAR recorder that, when operating, obtains a copy of the data being sent to the flight data recorder.<br><br>The Harris contention that the "FedEx TITAN system" operates "pursuant to FAR 121.344" is denied. |

(Page 11)

| '914 CLAIM ELEMENT | '914 HARRIS CONTENTION | '914 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| a)    an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | The FedEx TITAN system has a ground data link with an archival data store operative to accumulate and store flight performance data during flight of the aircraft.  The TITAN system "includes the (OMT) Onboard Maintenance Terminal (a server), Pilot Access Terminal (PAT), and Gatelink technology that will all be integrated to create an on-board network to collect data onboard the aircraft and route this information to/from a ground destination."  (Exhibit B: *AMC Industry Session Part 1 – Portable Maintenance Aids, AMC 2001.*) | The FedEx B-727 System includes an Avionica MiniQAR recorder that, when operating, stores a copy of the data being sent to the flight data recorder.

The Harris contention that the OMT, PAT, and Gatelink technology "will all be integrated" appears to be based on a plan allegedly expressed in 2001.  Because and to the extent this contention is based on a plan and not a fact, this contention is insufficient to permit Federal Express to meaningfully respond and, on that basis, this contention is denied.

To the extent Harris contends that the OMT, PAT, and Gatelink technology are "integrated," such contention is denied.  In the FedEx B-727 System, there is no connection between the Avionica equipment and the OMT or the PAT.

To the extent that Harris contents that the OMT or PAT satisfy this claim element, such contention is denied. |

| '914 CLAIM ELEMENT | '914 HARRIS CONTENTION | '914 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| b)    a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download said flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal; and | The FedEx TITAN system has a ground data link with a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal.  The TITAN system uses "IEEE 802.11b wireless routers from Avionica Inc. [ ] to send flight operations quality assurance (FOQA) data over a secure radio link into the cargo carrier's FOQA servers [ ] automatically via Gatelink, at 11 Mbits/s, every time an aircraft approaches a wireless-enabled gate. This provides a near-instantaneous safety snapshot of each flight. [ ] To support the FOQA application, the miniQAR receives flight data from the digital flight data acquisition unit." (Exhibit C: *Avionics Magazine, "Wireless Router" Mar. 1, 2005.*) | The FedEx B-727 System includes an Avionica SecureLink router that is connected to the Avionica MiniQAR recorder.  The SecureLink router includes a transmitter that is capable of transmitting the data stored on the MiniQAR over a spread spectrum signal. |
| an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; and | The FedEx TITAN system has an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data.  The TITAN system uses "IEEE 802.11b wireless routers from Avionica Inc. [ ] to send flight operations quality assurance (FOQA) data over a secure radio link into the cargo carrier's FOQA servers [ ] automatically via Gatelink, at 11 Mbits/s, every time an aircraft approaches a wireless-enabled gate. This provides a near-instantaneous safety snapshot of each flight. [ ] To support the FOQA application, the miniQAR receives flight data from the digital flight data acquisition unit." (Exhibit C: *Avionics Magazine, "Wireless Router" Mar. 1, 2005.*) | The FedEx B-727 System does not include an "airport based wideband spread spectrum transceiver" as recited in this claim element.  The FedEx B-727 System is wholly owned, operated, and used by Federal Express and does not incorporate communications equipment that is owned, operated, or used by the airport. |

(Page 13)

| '914 CLAIM ELEMENT | '914 HARRIS CONTENTION | '914 FEDERAL EXPRESS'S NON-INFRINGEMENT POSITION |
|---|---|---|
| an adaptive power control unit that varies an emitted power level of the wideband spread spectrum communication signal based upon the geographic location of the airport. | The FedEx TITAN system has an adaptive power control unit that varies an emitted power level of the wideband spread spectrum communication signal based upon the geographic location of the airport and in compliance with the ARINC Characteristic 763-2 and IEEE 802.11 standards.  The Avionica SecureLink Router "Expands ARINC 763 onboard server connectivity." (Exhibit E: http://www.avionica.com/products_airborne_seclink.html; Exhibit F: *IEEE Std.. 802.11d-2001 (Amendment to IEEE Std. 802.11, 1999 edition, IEEE Std. 802.11a-1999, and IEEE Std. 802.11b-1999)*). | The FedEx B-727 System does not include an "adaptive power control unit" as recited in this claim element.<br><br>The FedEx B-727 System does not include an "adaptive power control unit that varies an emitted power level of the wideband spread spectrum communication signal" as recited in this claim element.  The FedEx B-727 System, when operating, transmits at a fixed power level.<br><br>The FedEx B-727 System does not include an "adaptive power control unit that varies an emitted power level of the wideband spread spectrum communication signal based upon the geographic location of the airport" as recited in this claim element.<br><br>To the extent Harris contends that the "FedEx TITAN system" includes an "adaptive power control unit" because such a unit is required or mandated by ARINC 763 or by IEEE 802.11, such contention is denied. |

(Page 14)