# Exhibit 18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,
a Florida corporation,

        Plaintiff,

     vs.                                    CASE NO: 6:07-cv-1819-Orl-28KRS

FEDERAL EXPRESS CORPORATION,
a Delaware corporation,

        Defendant.
_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, through its undersigned counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby submits its First Request for Production of Documents to Defendant. Plaintiff requests the Defendant produce the documents designated herein which are in Defendant's possession, custody, or control at the offices of Plaintiff's counsel within the time period allowed by the Federal Rules of Civil Procedure, for the purposes of inspection and copying by counsel for Plaintiff. Alternatively, Defendant may produce documents electronically on cd-rom or dvd-rom media.

## DEFINITIONS AND INSTRUCTIONS

1.     As used in these requests, the terms "you," "your," or "Federal Express" shall mean Defendant Federal Express Corporation, as well as any predecessor, successor, division, subsidiary, officer, director, shareholder, employee, or principal thereof, and/or any attorney or other agent acting on its behalf.

1

2. As used herein, the term "Patents-in-Suit" relates to any patents stated in the Complaint, United States Patent Nos. 6,104,914; 6,108,523; 6,154,636; 6,154,637; 6,173,159 B1; 6,308,044 B1; 6,775,545 B2; and 6,990,319 B2.

3. As used herein, the word "document" shall mean, in addition to its common meaning, correspondence, memoranda (including written memoranda of telephone conversations, other oral communications, discussions, agreements, acts and activities), facsimiles, cables, telephone records, reports, tests, samples, studies, electronic documents, on-line documents, electronic mail, computer disks, hard drive documents, computer data bases, and each draft, electronic or non-identical copy of the foregoing, including those which have notations and writings that do not appear on the originals, now or formerly in the actual or constructive possession, custody or control of the Defendant or its attorneys.

> WARNING: Computer-generated or -stored documents, including computer files or data, electronic mail, and information on hard-disk, which has been erased, but is retrievable, constitute documents within the meaning of this definition. An inspection of your computer system may be necessary to assure compliance with this request.

4. The use of the singular herein shall include the plural, and vice-versa; the use of the word "any" shall include and encompass the word "all," and vice-versa; the use of the disjunctive shall include the conjunctive, and vice-versa; and, unless the context indicates otherwise, the use of any gender includes all other genders.

5. As may be used herein, the term "communications" means the act or fact of communicating, whether orally, nonverbally, telephonically, telegraphically, in writing, via email, by recording, or otherwise.

2

6. As may be used herein, the term "TITAN" refers to the Totally Integrated Technical Aircraft Network project including the Gatelink system.

7. As may be used herein, the acronym "EFB" refers to Electronic Flight Baggage system.

8. As may be used herein, the acronym "FOQA" refers to Flight Operations Quality Assurance.

9. As may be used herein, the acronym "MOQA" refers to Maintenance Operations Quality Assurance.

10. In accordance with Rule 34, Federal Rules of Civil Procedure, you shall produce the documents for inspection as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the following requests.

11. If any privilege, qualified or absolute, is claimed by you with respect to the existence or the substance of any document, or if you object to its production based upon the attorney work-product doctrine, you shall state in detail as to each such document the nature of the privilege or doctrine claimed and provide the following information, except only to the extent it may call for the precise information you object to disclosing:

    a) identify the document by setting forth its customary business description, name, date, and title, and by describing its characteristics and contents sufficiently for the court to determine the validity of your claim of privilege; and

3

b)      provide the name, current residence and business addresses, and current

business and residence telephone numbers of each person that possesses or

has custody or control over the document or any copy thereof.

## REQUESTS FOR PRODUCTION

1.      Any prior art that you contend would invalidate any of the Patents-in-Suit.

2.      Any communications between Federal Express and third-parties that refer
to any of the Patents-in-Suit.

3.      Any communications between Federal Express and third-parties that refer
to any of Harris' licensing of the Patents-in-Suit.

4.      Any communications between Federal Express and third-parties that refer
to any of Harris' licenses.

5.      Any communications between Federal Express and third-parties that refer
to Teledyne Controls, Wichita Inc.

6.      Any communications between Federal Express and third-parties that refer
to Harris Corporation.

7.      Any communications between Federal Express and Harris Corporation
that refer to any of the Patents-in-Suit.

8.      Any internal memorandum, emails, notes, minutes, or other Federal
Express documents that refer to the Patents-in-Suit.

9.      Any internal memorandum, emails, notes, minutes, or other Federal
Express documents that refer to Harris' licensing of the Patents-in-Suit.

10. Any internal memorandum, emails, notes, minutes, or other Federal Express documents that refer to any of Harris' licenses.

11. Any internal memorandum, emails, notes, minutes, or other Federal Express documents that refer to Teledyne Controls, Wichita Inc.

12. Any internal memorandum, emails, notes, minutes, or other Federal Express documents that refer to Harris Corporation.

13. Any opinions of counsel as to invalidity of the Patents-in-Suit.

14. Any opinions of counsel as to the non-infringement of the Patents-in-Suit by Federal Express.

15. Documents sufficient to identify all employees, agents, or independent contractors responsible for development of the TITAN project at Federal Express.

16. Documents evidencing any investigation into the Patents-in-Suit by Federal Express.

17. Documents sufficient to identify the name, model numbers, and technical specifications of all components of the TITAN project of Federal Express.

18. Documents sufficient to identify the name, model numbers, FCC identification numbers, and technical specifications of all components used by Federal Express for intra-aircraft wireless communication, including Cabin Wireless LAN Units (CWLUs), or for wireless communication between your aircraft and airport-based ground equipment.

19. Documents sufficient to identify the name, model numbers, and technical specifications of ground data link components used by Federal Express.

5

20.     Documents sufficient to identify the name, model numbers, and technical specifications of all components of the TITAN project that are capable of recording or facilitating the wireless transmission of Out, Off, On, and In (OOOI) aircraft information.

21.     Documents sufficient to identify the name, model numbers, and technical specifications of all components of the TITAN project that are capable of recording or facilitating the wireless transmission of any aircraft flight performance data.

22.     Documents sufficient to identify the name, model numbers, FCC identification numbers, and technical specifications of all components of the TITAN project of Federal Express that are capable of facilitating the wireless transfer of updated flight management information including: electronic manuals, databases, minimum equipment lists, Electronic Flight Bag updates, Onboard Maintenance Terminal updates, and Pilot Access Terminal updates.

23.     Documents sufficient to identify the name, model numbers, FCC identification numbers, and technical specifications of all components of the Gatelink system of Federal Express that are capable of facilitating the wireless transfer of updated flight management information including: electronic manuals, databases, minimum equipment lists, Electronic Flight Bag updates, Onboard Maintenance Terminal updates, and Pilot Access Terminal updates.

24.     Any product manual, literature, or specifications that refer to the TITAN project or its components.

25.     Any product manual, literature, or specifications that refer to the Gatelink system or its components.

26. Any product manual, literature, or specifications that refer to the Pilot Access Terminal or its components.

27. Documents evidencing the development of the Federal Express TITAN project, or components, including, but not limited to, schematics, PCB layouts, circuit diagrams, prototype testing records, troubleshooting records, technical service bulletins, verification validation records, requests for quotes to build, bill of materials, revision history, engineering change forms, incoming quality assurance records, first article samples, engineering, and research notebooks.

28. Documents evidencing the development of the Federal Express Gatelink system, or components, including, but not limited to, schematics, PCB layouts, circuit diagrams, prototype testing records, troubleshooting records, technical service bulletins, verification validation records, requests for quotes to build, bill of materials, revision history, engineering change forms, incoming quality assurance records, first article samples, engineering, and research notebooks.

29. Any advertising or marketing documents referring to the Federal Express TITAN project, or its components.

30. Documents evidencing the extent of aircraft installation of the TITAN project.

31. Documents evidencing the extent of airport installation of the Gatelink system.

32. Documents evidencing the extent of airport installation of the ground data link systems.

7

33.     Documents identifying all airports which have components from the TITAN project, Gatelink or ground data link systems installed.

34.     Documents evidencing the identity of any aircraft on which components of the TITAN project are installed.

35.     Documents evidencing the identity of any aircraft on which components of the TITAN project are installed.

36.     Documents evidencing the purchase of any Avionica SecureLink router or MiniQAR systems.

37.     Documents evidencing the purchase of any ground data link component from Avionica, Inc.

38.     Documents evidencing the purchase of any Gatelink component from Avionica, Inc.

39.     Documents evidencing the purchase of any wireless communication component from Avionica, Inc.

40.     Documents evidencing the purchase of any ground data link component from Teledyne Controls, Witchita Inc.

41.     Documents evidencing the purchase of any wireless communication component from Teledyne Controls, Witchita Inc.

42.     Any communications between Federal Express and Avionica Inc. that refer to the SecureLink router or MiniQAR products.

8

43. Any communications between Federal Express and Avionica Inc. that refer to any Harris patents or the potential for patent infringement with the use of Avionica Inc. products.

44. All documents evidencing a business relationship with Avionica Inc., including, but not limited to, all contracts, drafts of contracts, invoices, advertising, marketing materials, presentation materials, or meeting notes.

45. Documents evidencing the development or testing of the Avionica Inc. SecureLink router or MiniQAR systems, including, but not limited to, schematics, PCB layouts, circuit diagrams, prototype testing records, troubleshooting records, technical service bulletins, verification validation records, requests for quotes to build, bill of materials, revision history, engineering change forms, incoming quality assurance records, first article samples, engineering, and research notebooks.

46. All documents evidencing a business relationship with InfoTrust Group (formerly Jouve Aviation Solutions), including, but not limited to, all contracts, drafts of contracts, invoices, advertising, marketing materials, presentation materials, or meeting notes.

47. All documents evidencing a business relationship with Spirent Systems, including, but not limited to, all contracts, drafts of contracts, invoices, advertising, marketing materials, presentation materials, or meeting notes.

48. All documents evidencing your involvement in any reexamination or opposition to patents filed by Harris in the U.S. or foreign patent offices.

49.    All FOQA program I&O Plan and revision documents filed by you with the FAA.

50.    Any cost/benefit analyses conducted by you regarding the implementation of any Gatelink components.

51.    Any cost/benefit analyses conducted by you regarding the implementation of any ground data link components.

52.    Any cost/benefit analyses conducted by you regarding the implementation of the TITAN system.

53.    Any cost/benefit analyses conducted by you regarding the implementation and use of any wireless transmission of EFB, FOQA or MOQA data to or from aircraft owned by you.

54.    Any analyses conducted by you regarding the payback period for implementation of any Gatelink components.

55.    Any analyses conducted by you regarding the payback period for implementation of any ground data link components.

56.    Any analyses conducted by you regarding the payback period for implementation of the TITAN system.

57.    Any analyses conducted by you regarding the payback period for implementation and use of any wireless transmission of EFB, FOQA or MOQA data to or from aircraft owned by you.

58. Any financial analyses conducted or maintained by you reflecting the projected or actual monetary savings to FedEx through use of any wireless technology to transmit EFB, FOQA or MOQA data to or from aircraft owned by you.

Respectfully submitted February 12, 2008.

_____

Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
Allen, Dyer, Doppelt, Milbrath
  & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Post Office Box 3791
Orlando, Florida 32802-3791
Telephone:    407-841-2330
Facsimile:    407-841-2343
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2008, I served a true and correct copy of the foregoing via facsimile and U.S. Mail to:

J. Scott Anderson, Esquire
Jeffrey H. Brickman, Esquire
Charley F. Brown, Esquire
Robin L. Gentry, Esquire
Jason S. Jackson, Esquire
Lawrence K. Nodine, Esquire
Sumner C. Rosenberg, Esquire
Needle & Rosenberg, P.C.
999 Peachtree Street, Suite 1000
Atlanta, Georgia   30309

Marilyn G. Moran, Esquire
Baker & Hostetler, LLP
200 South Orange Avenue, Suite 2300
Post Office Box 112
Orlando, Florida  32802-0112

_____
Ryan T. Santurri

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,

     **Plaintiff**

**v.**                            Case No. 6:07-cv-1819-Orl-28 KRS

**FEDERAL EXPRESS CORPORATION,**

     **Defendant**

## DEFENDANT FEDERAL EXPRESS CORPORATION'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO PLAINTIFF

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the

Defendant, Federal Express Corporation, hereby requests that Plaintiff respond to these

Requests and produce all requested documents at the offices of Needle & Rosenberg,

P.C., 999 Peachtree Street, Suite 1000, Atlanta, Georgia 30309-3915, within thirty (30)

days from the date of service hereof or at such other time and place to which counsel for

the parties may agree is mutually convenient.

## DEFINITIONS

1.     The terms "Harris" or "you" or "your" or "yours" or "Plaintiff" means

the Plaintiff, Harris Corporation, and all U.S. and foreign predecessors, successors,

subsidiaries, divisions, parents, and affiliates thereof (past or present); U.S. and foreign joint

ventures and other legal entities that are wholly or partially owned or controlled by

Harris, either directly or indirectly; and all past or present directors, principals, officers,

owners, employees, agents, representatives, consultants, attorneys, and others acting for or purporting to act on behalf of these same entities. These terms include any businesses or companies which are owned in whole or in part by the same parent or owner which owns Harris (whether such parent owns Harris in whole or in part).

2.      The terms "Federal Express" or "FedEx" or "Defendant" means the Defendant, Federal Express Corporation, its subsidiaries, affiliates, past or present directors, principals, officers, owners, employees, agents, representatives, consultants, attorneys, and all others acting for or purporting to act on behalf of Federal Express, including all past or present employees or any such person or persons individually or in combination.

3.      The "Action" means *Harris Corporation v. Federal Express Corporation,* in the United States District Court for the Middle District of Texas, Orlando Division, Case No. 6:07-cv-1819-Orl-28 KRS.

4.      "Document" or "Documents" shall encompass the meaning and scope of that term as used in Federal Rule of Civil Procedure 34 and includes the terms "writings and recordings," "photographs," "originals," and "duplicate" as defined in Federal Rule of Evidence 1001 and means all types of records of information in the possession, custody, or control of Defendant, or known to Defendant, whether printed, recorded, stored, reproduced by any process, written or produced by hand, and whether or not claimed to be privileged, the subject of work product immunity, or exempt from production for any reason, and includes, in addition to the original or original copy, copies

of whatever kind which contain any alteration, marking, or omission, or which are in any

other way not identical with the original or with the original copy, more specifically

including, but not limited to, papers, notes, accounts, books, advertisements, logs,

catalogs, manuals, publications, correspondence, cablegrams, mailgrams, telegrams,

memoranda, electronic mail (e-mail), voice mail, facsimile transmissions, letters,

documents, communications, including interoffice and intraoffice communications,

reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, plans and

specifications, drawings, sketches, surveys, agreements, working papers, business

records, minutes of board of directors meetings and committee meetings, account records,

ledger records, notebooks, laboratory notes, laboratory notebooks, vouchers, bank

checks, cashiers' checks, receipt of cashiers' checks, purchase orders, invoices, bills

of lading, canceled checks, check stubs, bills, receipts, invoices, desk calendars, time

sheets, appointment books, telephone bills, diaries, diary entries and notes, minutes,

transcriptions or sound recordings of any type of personal or telephone conversations or

of negotiations, meetings or conferences or events similar to the foregoing, telecopy

transmission letters, graphical or tabular data developed during testing or analysis,

maintenance records for testing or analysis equipment, invention disclosure records,

photographs, floppy disk recorded information, volatile or nonvolatile random access or

read only memory, hard disk information, CD ROM information, office notes, pleadings,

briefs, microfiche, and all other papers, writings, recordings or physical object or things

containing information which is in your possession, custody, or control or the

possession, custody, or control of any director, officer, employee, servant, or agent of yours or your attorneys. "Document" or "Documents" shall also include the files in which said document or documents are maintained. Any comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "Document."

5.      "Person" includes both natural persons and legal entities, without limitation, including all predecessors in interest, groups, associations, partnerships, corporations, agencies, or any other legal, business or governmental entity.

6.      "All" means any and all, and "any" likewise means any and all, unless the context requires otherwise.

7.      "All documents" means every document, as defined above, that is known to and every such document that can be located or discovered by reasonably diligence efforts.

8.      "And" and "or" shall be construed both conjunctively and disjunctively and the singular shall be deemed to also refer to the plural and *vice versa*.

9.      "Communication" means and refers to any transmission of information, in any form, via any medium, including, without limitation, documents incorporating, summarizing or describing the contents of the transmission, meetings and discussions, telephone conversations, electronic communications, telegraphic communication or any document containing a recording, transcription, summary or description or identifying the time, place, subject matter, medium of transmission and/or participants in the transmission.

10.   "Patent-in-Suit" or "Patents-in-Suit" means, collectively, U.S. Patent Nos. 6,104,914 (the '914 patent), 6,108,523 (the '523 patent), 6,154,636 (the '636 patent), 6,154,637 (the '637 patent), 6,173,159 (the '159 patent), 6,308,044 (the '044 patent), 6,775,545 (the '545 patent), 6,990,319 (the '319 patent), 6,047,165 (the '165 patent), and 6,308,045 (the '045 patent), and any other patent that Federal Express hereafter asserts in this Action.

11.   "Person" means any natural person, corporation, proprietorship, partnership, joint venture, association, firm, or entity recognized in law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assigns, predecessors, and successors of such "person."

12.   "Concerning," "Pertaining to," "pertain to," "about," "relating to," or "relate to" mean  concerning, constituting, consisting of, relating to, referring to, evidencing, supporting, contradicting, reflecting, or resulting from the matter specified.

13.   The term "Prior Art" is used in the same sense that it is used in 35 U.S.C. § 103, and includes any patent, printed publication, prior knowledge, prior use, prior sale or offer for sale, or other act or event defined in 35 U.S.C. § 102, taken alone or in combination.

14.   "Sale" means and refers to any mutually consented to exchange of goods, services, or other property for value, and includes any transfer to another on the basis of a consignment, bailment, lease, lend, or other arrangement, regardless of whether title has passed.

DEFENDANT FEDERAL EXPRESS CORPORATION'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO PLAINTIFF                    Page 5

15.     "Thing" has the broadest meaning allowable under Federal Rule of Civil Procedure 34 and means any tangible object other than a document including without limitation objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

16.     "Third Party" or "Third Parties" mean anyone other than the named Defendants.

17.     The phrasing of the requests shall be construed so as to make your response inclusive rather than exclusive, such that all Documents and Things are included within the scope of the request that might otherwise be construed to be outside the scope of the request.  Thus, the word "including" is intended to be comprehensive and means "including but not limited to."  Similarly, the singular form of all words includes the plural form and the plural form of all words includes the singular form; the words "and" and "or" shall be interpreted as both conjunctive and disjunctive; the word "any" shall mean "any and all"; and the word "each" shall mean "each and every."

## INSTRUCTIONS

The following instructions are applicable to each specific discovery request unless otherwise explicitly stated.

A.     Any document with marks such as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is to be produced as a separate document.

B.     Responsive documents that are under Your control must be produced even if they are in the possession of an employee or agent of Yours, such as an accountant, attorney, or other person from whom You have a right to retrieve the documents.

C.     If any responsive document no longer exists or is not in Your possession or control, identify the document and state the nature of the disposition of the document (whether lost, destroyed, etc.) and/or its present location.

D.     If any information called for is withheld on the basis of a claim of privilege or attorney work-product, the claimed basis for withholding the information and the nature of the information withheld shall be set forth in a privilege log satisfying the requirements of Fed. R. Civ. P. 26(c) that includes a statement of all the circumstances which will be relied upon to support such claim.

E.     These requests shall be deemed continuing in nature so as to require supplementary answers between the time answers are served and the time of trial, in accordance with Fed. R. Civ. P. 26(e).

F.     If You find the meaning of any term in these requests to be unclear, You should assume a reasonable meaning, state the assumed meaning, and respond to the request on the basis of that assumed meaning.

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS

**REQUEST NO. 1:**

All Documents and Things (for example; advertisements, marketing materials, flyers, brochures, offer letters, contracts, purchase orders, invoices, joint development agreements, or research agreements) sufficient to evidence each and every discussion with, disclosure to, or other providing of information to a third party regarding the claimed invention, or sufficient to evidence each and every sale or offer to sell the claimed invention, prior to the date of application for each Patent-In-Suit.

**REQUEST NO. 2:**

All Documents and Things concerning the conception of the subject matter of the claimed invention, for each claim of each Patent-In-Suit, including any Documents and Things concerning the date that You contend each invention was conceived, any Documents and Things that You contend corroborate said date, any Documents and Things concerning the location at which such conception occurred, any Documents and Things concerning the identity of each and every person who has any knowledge or information about such conception, and any Documents and Things concerning each such person's role or contribution, if any, in the alleged conception.

**REQUEST NO. 3:**

All Documents and Things concerning the reduction to practice of the subject matter of the claimed invention, for each claim of each Patent-In-Suit, including any

Documents and Things concerning the date that You contend each invention was reduced to practice, any Documents and Things that You contend corroborate said date, any Documents and Things concerning the location at which such reduction to practice occurred, any Documents and Things concerning the identity of each and every person who has any knowledge or information about such reduction to practice, and any Documents and Things concerning each such person's role or contribution, if any, in the alleged reduction to practice.

**REQUEST NO. 4:**

All Documents and Things that support Your contention that the subject matter of each claim of each Patent-In-Suit was non-obvious under 35 U.S.C. § 103.

**REQUEST NO. 5:**

Any and all Documents and Things that constitute Prior Art, or have been asserted at any time to constitute Prior Art, to any claim of any of the Patents-In-Suit or to any subject matter disclosed in any of the patents and applications related to the Patents-In-Suit, including any and all documents concerning the date that Harris Corporation or any inventor of the Patents-In-Suit became aware of each such Document or Thing.

**REQUEST NO. 6:**

All Documents and Things concerning Federal Express, including but not limited to any and all Communications between You and Federal Express, and any and all Communications between You and a third party that refers or relates to Federal Express.

**REQUEST NO. 7:**

All Documents and Things concerning the Patents-In-Suit, including but not

limited to any and all Communications that refer or relate to any of the Patents-In-Suit.

**REQUEST NO. 8:**

All Documents and Things concerning the licensing of the Patents-In-Suit or the

intellectual property associated therewith, including but not limited to any and all

Communications between You and any other party, any and all draft agreements, final

agreements, amendments or modifications thereto, the royalty rate, royalty base, and

including Documents and Things concerning any royalties, charges, or other fees received

by You.

**REQUEST NO. 9:**

All Documents and Things pertaining to any search, research, investigation, or

analysis conducted by Harris Corporation or on its behalf, prior to filing this Action, to

determine whether a factual basis existed to support each and every allegation of patent

infringement in Your complaint against Federal Express.

**REQUEST NO. 10:**

All Documents and Things that support Your contention that Federal Express

infringes any claim of the Patents-In-Suit, including but not limited to Documents and

Things concerning the identity of each accused apparatus, method, composition, or other

instrumentality ("Accused Instrumentality") used by Federal Express, and any and all

Documents and Things identifying specifically where each element of each claim is found within each Accused Instrumentality.

**REQUEST NO. 11:**

All Documents and Things that support Your contention that Federal Express is using or has used equipment having an adaptive power control unit that varies an emitted power level of the wideband spread spectrum communication signal based upon the geographic location of the airport.

**REQUEST NO. 12:**

All Documents and Things that support Your contention that Federal Express is using or has used equipment that transmits a probe beacon to the transceiver of a ground data link unit.

**REQUEST NO. 13:**

All Documents and Things concerning notice to the public of the issuance or existence of the Patents-In-Suit provided by You or on Your behalf, including Documents and Things concerning the date of such notice for each Patent-In-Suit.

**REQUEST NO. 14:**

All Documents and Things concerning any and all internal Communications within Your organization about Federal Express, the Patents-In-Suit, this Action, or the accused apparatus, method, composition, or other instrumentality used by Federal Express.

**REQUEST NO. 15:**

All Documents and Things concerning the design, manufacture, assembly, distribution, or sale by You of any product or other instrumentality that is covered by any claim of any Patent-In-Suit.

**REQUEST NO. 16:**

All Documents and Things relevant to the determination of a reasonable royalty under a *Georgia-Pacific* analysis for the intellectual property related to the Patents-In-Suit.

**REQUEST NO. 17:**

All Documents and Things pertaining to any opinions of counsel regarding the alleged validity, enforceability, and/or infringement of any claim of the Patents-In-Suit.

**REQUEST NO. 18:**

All Documents and Things pertaining to any search, investigation, or analysis of the Prior Art or potential Prior Art to the Patents-In-Suit.

**REQUEST NO. 19:**

All Documents and Things concerning any investigation, study, testing, comparison, or analysis of the Patents-in-Suit.

**REQUEST NO. 20:**

All Documents and Things concerning the activity of wirelessly updating or uploading flight navigation database files to an onboard flight management computer, including any and all Documents or Things showing or suggesting that any person,

company, or entity is lawfully or otherwise conducting such activity, identifying the

equipment used to conduct such activity, and including any and all FAA rules and

regulations that regulate or relate to such activity.

**REQUEST NO. 21:**

All Documents and Things concerning Your involvement or participation to any

extent in the discussions, meetings, development, drafting, or other activity related to the

ARINC standards or other ARINC publications, at any time, including but not limited to

ARINC Specification 632, ARINC Characteristic 751, ARINC AEEC Letter 91-079,

ARINC AEEC Future Concepts for Maintenance Report FMC-69, or ARINC

Specification 591.

**REQUEST NO. 22:**

All Documents and Things, including any extrinsic evidence, upon which You

rely to interpret any claim of the Patents-In-Suit.

**REQUEST NO. 23:**

All Documents and Things pertaining to Your document retention and/or

destruction policy, including but not limited to suspensions or resumptions of those

policies due to actual or prospective litigation.

**REQUEST NO. 24:**

All Documents and Things You intend to rely on or introduce at trial.

**REQUEST NO. 25:**

All Documents and Things pertaining to the structure and composition of Your organization, such as organizational charts, from 1994 to the present, showing the corporate structure of Harris Corporation, including any parent company, subsidiaries, affiliates, divisions, groups, sectors, or other components, and including the identity of directors, officers, employees, distributors, agents, and consultants in or related to each such component having any involvement whatsoever with the Patents-In-Suit or the licensing of the Patents-In-Suit or the intellectual property associated therewith.

Respectfully submitted this _26th_ day of February , 2008.

Respectfully submitted,

Lawrence K. Nodine, Trial Counsel
Georgia Bar No. 545250
lnodine@needlerosenberg.com
J. Scott Anderson
Georgia Bar No. 017266
Florida Bar No. 115053 (inactive)
sanderson@needlerosenberg.com
Robin L. Gentry
Georgia Bar No. 289889
rgentry@needlerosenberg.com
Jeffrey H. Brickman
Georgia Bar No. 080432
jbrickman@needlerosenberg.com
Jason S. Jackson
Georgia Bar No. 141234
jjackson@needlerosenberg.com
Sumner C. Rosenberg
Georgia Bar No. 614550
srosenberg@needlerosenberg.com

Charley F. Brown
Georgia Bar No. 086754
cbrown@needlerosenberg.com
NEEDLE & ROSENBERG, P.C.
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

Marilyn G. Moran
Florida Bar No. 0163813
mmoran@bakerlaw.com
BAKER & HOSTETLER, LLP
P.O. Box 112
Orlando, Florida  32802-0112
Telephone 407-649-4000
Fax 407-841-0168

ATTORNEYS FOR DEFENDANT,
FEDERAL EXPRESS CORPORATION

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16th, 2008, I served a true and correct

copy of the foregoing via facsimile and U.S. Mail to:

    Brian R. Gilchrist, Esq.
    Ryan T. Santurri, Esq.
    Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
    P.O. Box 3791
    Orlando, Florida  32802-3791
    Fax:  407-841-2343

    J. Scott Anderson
    NEEDLE & ROSENBERG, P.C.
    999 Peachtree Street, Suite 1000
    Atlanta, Georgia 30309
    Telephone 678-420-9300
    Fax 678-420-9301

    ATTORNEYS FOR DEFENDANT,
    FEDERAL EXPRESS CORPORATION

# Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

—— INTELLECTUAL PROPERTY ATTORNEYS ——

255 South Orange Avenue • Suite 1401 • Orlando, FL 32801
Mail to: P.O. Box 3791 • Orlando, FL 32802-3791
tel: 407-841-2330 • fax: 407-841-2343
www.patentamerica.com
email: userid@addmg.com

## FACSIMILE COVER SHEET

**To:** J. Scott Anderson, Esq.
Ballard Spahr Andrews & Ingersoll, LLP

**Fax:** 678-420-9301  **Tel:** 678-420-9300

**To:** Marilyn G. Moran, Esq.
Baker & Hostetler, LLP

**Fax:** 407-841-0168  **Tel:** 407-649-4000

**From:** Ryan Santurri, Esq.  **Date:** October 9, 2008

**NUMBER OF PAGES (INCLUDING COVER SHEET)**   11

**COMMENTS/INSTRUCTIONS:**


Please see attached - Plaintiff's Third Request for Production. If you have any questions, or problems receiving this facsimile, please do not hesitate to contact this office.

Thank you.

NOTE: The information in this facsimile transmission is intended only for the personal and confidential use of the designated recipient(s) named above. This message may be an attorney-client communication and as such is privileged.

If the reader of this message is not the intended recipient named above, you are notified that you have received this document in error, and any review, dissemination, distribution or copying of this message is strictly prohibited.

If you have received this document in error, please notify this office immediately via telephone, and return the original message to the above address by mail. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES OR ENCOUNTER DIFFICULTIES IN TRANSMISSION, PLEASE CONTACT THE RECEPTIONIST IMMEDIATELY AT (407) 841-2330

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,
a Florida corporation,

     Plaintiff,

                           CASE NO: 6:07-cv-1819-Orl-28KRS

v.

FEDERAL EXPRESS CORPORATION,
a Delaware corporation,

     Defendant.

_____/

## PLAINTIFF'S THIRD REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, through its undersigned counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby submits its Third Request for Production of Documents to Defendant. Plaintiff requests the Defendant produce the documents designated herein which are in Defendant's possession, custody, or control at the offices of Plaintiff's counsel within the time period allowed by the Federal Rules of Civil Procedure, for the purposes of inspection and copying by counsel for Plaintiff. Alternatively, Defendant may produce documents electronically on cd-rom or dvd-rom media.

### DEFINITIONS AND INSTRUCTIONS

1.     As used in these requests, the terms "you," "your," or "Federal Express" shall mean Defendant Federal Express Corporation, as well as any predecessor, successor, division, subsidiary, officer, director, shareholder, employee, or principal thereof, and/or any attorney or other agent acting on its behalf.

1

2.     As used in these requests, the term "TITAN" shall refer to both the Totally Integrated Technical Aircraft Network and the system referred to as the Federal Express B-727 System in Federal Express' responses to interrogatories in this litigation.

3.     As used in these requests, the term "FOQA lab" shall refer to any facility or center used by Federal Express for its Flight Operations Quality Assurance program, including but not limited to the FOQA lab identified on FX0014638.

4.     As used herein, the word "document" shall mean, in addition to its common meaning, correspondence, memoranda (including written memoranda of telephone conversations, other oral communications, discussions, agreements, acts and activities), facsimiles, cables, telephone records, reports, tests, samples, studies, electronic documents, on-line documents, electronic mail, computer disks, hard drive documents, computer data bases, and each draft, electronic or non-identical copy of the foregoing, including those which have notations and writings that do not appear on the originals, now or formerly in the actual or constructive possession, custody or control of the Defendant or its attorneys.

> WARNING:   Computer-generated or -stored documents, including computer files or data, electronic mail, and information on hard-disk, which has been erased, but is retrievable, constitute documents within the meaning of this definition. An inspection of your computer system may be necessary to assure compliance with this request.

5.     The use of the singular herein shall include the plural, and vice-versa; the use of the word "any" shall include and encompass the word "all," and vice-versa; the use of the disjunctive shall include the conjunctive, and vice-versa; and, unless the context indicates otherwise, the use of any gender includes all other genders.

2

6.     As may be used herein, the term "communications" means the act or fact of communicating, whether orally, nonverbally, telephonically, telegraphically, in writing, via email, by recording, or otherwise.

7.     In accordance with Rule 34, Federal Rules of Civil Procedure, you shall produce the documents for inspection as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the following requests.

8.     If any privilege, qualified or absolute, is claimed by you with respect to the existence or the substance of any document, or if you object to its production based upon the attorney work-product doctrine, you shall state in detail as to each such document the nature of the privilege or doctrine claimed and provide the following information, except only to the extent it may call for the precise information you object to disclosing:

a)     identify the document by setting forth its customary business description, name, date, and title, and by describing its characteristics and contents sufficiently for the court to determine the validity of your claim of privilege; and

b)     provide the name, current residence and business addresses, and current business and residence telephone numbers of each person that possesses or has custody or control over the document or any copy thereof.

## REQUESTS FOR PRODUCTION

65.     All documents describing or diagramming the network architecture for the TITAN system.

3

66.    All documents that identify the ground-based network components of the TITAN system.

67.    Any documents that identify the aircraft-based network components of the TITAN system.

68.    Any documents that evidence the specific equipment used in the TITAN system and installed at the airports identified in Federal Express' Supplemental Response to Interrogatory No. 3.

69.    Any documents that evidence the specific equipment that operates as TITAN system ground stations that are installed at the airports identified in Federal Express' Supplemental Response to Interrogatory No. 3.

70.    Any documents that evidence the specific equipment that operates as TITAN system servers that are installed at the airports identified in Federal Express' Supplemental Response to Interrogatory No. 3.

71.    Any documents that evidence the specific ground-based equipment used in the TITAN system.

72.    Any documents that evidence the specific ground-based equipment that operates as TITAN system ground stations.

73.    Any documents that evidence the specific ground-based equipment that operates as TITAN system servers.

74.    Any engineering orders that refer or relate to TITAN.

75.    Any maintenance records for the TITAN components on Federal Express' fleet of B-727s.

4

76.     Any installation confirmation records for the TITAN components on Federal Express' fleet of B-727s.

77.     Any presentations, including powerpoint presentations, which refer or relate to TITAN.

78.     Any documents that refer or relate to the 2005 Avionica Strategy Summit.

79.     Any documents that refer or relate to any Avionica Strategy Summit.

80.     Any procurement requests that refer to Gatelink.

81.     Any procurement requests that refer to terminal wireless LAN units.

82.     Any requests for quotations or requests for proposals that refer or relate to Gatelink.

83.     Any requests for quotations or requests for proposals that refer or relate to the TITAN system.

84.     Any requests for quotations or requests for proposals that refer or relate to terminal wireless LAN units.

85.     Any documents that evidence the installation of terminal wireless LAN units in any aircraft owned by Federal Express.

86.     Documents identifying members of the Federal Express RF Network Engineering Group.

87.     Any presentations that refer or relate to the TITAN system given to or by the Federal Express RF Network Engineering Group.

88.     Any memos or meeting notes of the Federal Express RF Network Engineering Group that refer or relate to the TITAN system.

89. Any documents that identify the communication protocol(s) used by the TITAN system.

90. Source code evidencing any attempt to restrict the transmission power used in the SecureLink router.

91. Source code evidencing the implementation of a restriction on the transmission power used in the SecureLink router.

92. Any design documentation, flow diagrams, Software Design Documents, and user manuals, that relate to the operation or use of the computer code in the TITAN system.

93. Any design documentation, flow diagrams, Software Design Documents, and user manuals, that relate to the operation or use of the AvSync computer code.

94. Any drawing trees for software and software revisions for the SecureLink router used in the TITAN system.

95. Any documents which refer or relate to AvSync software.

96. Source code for the Version 08254.1 of AvSync software.

97. Source code for any previous versions of AvSync software used in the TITAN system, as well as a revision history for all versions of AvSync software through Version 08254.1.

98. Any documents that refer or relate to the "modifications" made to the TITAN system on or about September 26, 2008.

99. Any documents that evidence the specific "modifications" made to the TITAN system on or about September 26, 2008.

100.    Any documents that refer or relate to the storage or use of data transmitted from Federal Express B727s to Federal Express' facility in Memphis, as described in Federal Express' supplemental response to Harris' Interrogatory Number 1.

101.    Any documents that refer or relate to use of flight control center(s) by Federal Express.

102.    Any documents that relate or refer to the collection and transmission of Out, Off, On and In ("OOOI") data, collectively or individually, by B727 planes in Federal Express' fleet.

103.    Any documents that evidence transmission of data to B727 planes in Federal Express' fleet via 802.11-based devices.

104.    Any documents that evidence transmission of data from B727 planes in Federal Express' fleet via 802.11-based devices.

105.    Any documents that evidence storage and/or use in the aircraft of the data transmitted to B727 planes in Federal Express' fleet via 802.11-based devices.

106.    Any documents that evidence storage and/or use on the ground of the data transmitted from B727 planes in Federal Express' fleet via 802.11-based devices.

107.    Any documents that refer or relate to the transmission of video and audio data using the TITAN system.

108.    Any documents that refer or relate to transmission of video and audio data to B727 planes in Federal Express' fleet via 802.11-based devices.

7

109.   Any documents that evidence storage and/or use in the aircraft of the video and audio data transmitted to B727 planes in Federal Express' fleet via 802.11-based devices.

110.   Any documents that refer or relate to transmission of video and audio data from B727 planes in Federal Express' fleet via 802.11-based devices.

111.   Any documents that evidence storage and/or use on the ground of the video and audio data transmitted from B727 planes in Federal Express' fleet via 802.11-based devices.

112.   Any documents that refer or relate to transmission of Electronic Flight Bag data to B727 planes in Federal Express' fleet via 802.11-based devices.

113.   Any documents that evidence storage and/or use in the aircraft of the Electronic Flight Bag data transmitted to B727 planes in Federal Express' fleet via 802.11-based devices.

114.   Any documents that refer or relate to transmission of Electronic Flight Bag data from B727 planes in Federal Express' fleet via 802.11-based devices.

115.   Any documents that refer or relate to transmission of flight navigation data, next flight information, and data associated with the flight plan of the aircraft, to B727 planes in Federal Express' fleet via 802.11-based devices.

116.   Any documents that evidence storage and/or use in the aircraft of the flight navigation data, next flight information, and data associated with the flight plan of the aircraft, transmitted to B727 planes in Federal Express' fleet via 802.11-based devices.

8

117. Any documents that refer or relate to transmission of Electronic Flight Bag data using the TITAN system.

118. Any documents that evidence or explain Federal Express' use of any data collected by the TITAN system.

119. Any documents that evidence or explain Federal Express' use of any data collected in the MiniQAR installed in B-727 planes in Federal Express' fleet.

120. Any documents that evidence or explain Federal Express' use of any data transmitted by the SecureLink routers installed in B-727 planes in Federal Express' fleet.

121. Any documents that refer or relate to FOQA analyses on data collected, stored or transmitted by the TITAN system.

122. Any documents that refer or relate to FOQA analyses on data transmitted to or from B727 planes in Federal Express' fleet via 802.11-based devices.

123. Any standard operating procedures or operations manuals that refer or relate to Federal Express' FOQA lab.

124. Any internal guidelines that refer or relate to Federal Express' FOQA lab.

125. Any manuals or guidelines that refer or relate to Federal Express' FOQA analyses.

Respectfully submitted October 9, 2008.

Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
Allen, Dyer, Doppelt, Milbrath
 & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Post Office Box 3791
Orlando, Florida 32802-3791
Telephone:    407-841-2330
Facsimile:    407-841-2343
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2008, I served a true and correct copy of the

foregoing via facsimile and U.S. Mail to:

J. Scott Anderson, Esquire              Marilyn G. Moran, Esquire
Ballard Spahr Andrews &                 Baker & Hostetler, LLP
Ingersoll, LLP                          200 South Orange Avenue, Suite 2300
999 Peachtree Street, Suite 1000        Post Office Box 112
Atlanta, Georgia  30309                 Orlando, Florida 32802-0112

Ryan T. Santurri

10