# TAB 18

*Harris Corp. v. FedEx Corp.*
USDC, Middle District of Florida
Civil Action No. 6:07-CV-1819-28KRS



# Notice of Opposition to a European Patent

To the
European Patent Office

Tabulation marks

|  |  | for EPO use only |
|---|---|---|
| **I.**   **Patent opposed** | Opp. No.   OPPO (1) | |
| Patent No. | 0 774 724 | |
| Application No. | 96 308 035.3 | |
| Date of mention of the grant in the European Patent Bulletin (Art. 97(4), 99(1) EPC) | 30 August 2000 | |

Title of the invention:

Wireless frequency-agile spread spectrum ground link-based aircraft data communication system

| **II.**   **Proprietor of the Patent** | HARRIS CORPORATION | |
|---|---|---|
| first named in the patent specification | | |

| Opponent's or representative's reference (max. 15 spaces) | SM5190 | OREF |
|---|---|---|

**III.**   **Opponent**

OPPO (2) | | | | | |

| Name | SITA |
|---|---|
| Address | 3100 Cumberland Boulevard<br>Suite 200<br>Atlanta, GA 30339<br>USA |
| State of residence or of principal place of business | USA |
| Telephone/Telex/Fax | |
| Multiple opponents | ☐  further opponents see additional sheet |

**IV.**   **Authorisation**

1. **Representative**
(Name only one representative to whom notification is to be made)

OPPO (9) | | | | | | |

Name

Olaf Ungerer
Eisenführ, Speiser & Partner
Association No. 15

Address of place of business

Arnulfstr. 25
D-80335 München

| Telephone/Telex/Fax | 089/54 90 75-0 | | 089/54 90 75-29 | |
|---|---|---|---|---|
| Additional representative(s) | ☐  (on additional sheet/see authorisation) | | OPPO (5) | |

2. **Employee(s) of the opponent** authorised for these opposition proceedings under Art. 133(3) EPC

Name(s):

Authorisation(s)    ☒  not considered necessary

To 1./2.    ☐  has/have been registered under No.

| | for EPO use only |
|---|---|

**V.    Opposition is filed against**

— the patent as a whole    ☒

— claim(s) No(s).   .

**VI.    Grounds for opposition:**

Opposition is based on the following grounds:

(a)  the subject-matter of the European patent opposed is not patentable (Art. 100(a) EPC)
     because:

— it is not new (Art. 52(1); 54 EPC)    ☒

— it does not involve an inventive step (Art. 52(1); 56 EPC)    ☒

— patentability is excluded
  on other grounds, i. e.    Art.    ☐

(b)  the patent opposed does not disclose the invention in a manner sufficiently clear and complete
     for it to be carried out by a person skilled in the art (Art. 100(b) EPC; see Art. 83 EPC).    ☐

(c)  the subject-matter of the patent opposed extends beyond the content of the application/
     of the earlier application as filed (Art. 100(c) EPC, see Art. 123(2) EPC).    ☐

**VII.    Facts and arguments**
(Rule 55(c) EPC)
presented in support of the opposition are submitted herewith on a separate sheet (annex 1)    ☒

**VIII.    Other requests:**

Oral proceedings are subsidiarily  requested, if the patent is not revoked in its entirety.

| | | for EPO use only |
|---|---|---|
| IX. **Evidence presented** | Enclosed  =  [X] | |
| | will be filed at a later date  =  [ ] | |

| A. **Publications:** | Publication date |
|---|---|
| 1 US 5,445,347 | |
| Particular relevance (page, column, line, fig.): <br> c. 2, l. 21-33; c. 3, l.25-66; c. 4, l. 4-19; c. 6, l. 17-52; c. 7, l.10-17, Fig. 3 to 5 | |
| 2 ARINC Attachments in circular letter of 5 April 1991 to all AEEC members | |
| Particular relevance (page, column, line, fig.): <br> Attachment 2, page 1, 17 | |
| 3 ARINC specification 632 published on 30 December 1994 | |
| Particular relevance (page, column, line, fig.): <br> P. 1, 5; attachments 7 to 9 | |
| 4 ARINC characteristic 751 published on 1 January 1994 | |
| Particular relevance (page, column, line, fig.): <br> Fig. 1 to 3 and corresponding text passages | |
| 5 "Safety Board Urges Mandatory Use Of FDR/CVRs in Commuter Transports", Aviation Week & Space Technology, p. 73, 31 August 1987 | |
| Particular relevance (page, column, line, fig.): <br> P. 4, 5 | |
| 6 "Conversion Approach Appears Flawed", Aviation Week & Space Technology, Vo. 139, No. 4, p. 48, 26 July 1993 | |
| Particular relevance (page, column, line, fig.): <br> P. 3 | |
| 7 "Module Is Result Of Work With Apple -- Plessey makes leap with wireless LAN", Electronic Engineering Times, p. 1, 7 November 1994 | |
| Particular relevance (page, column, line, fig.): <br> P. 1, 4th paragraph of BODY-section | |
| Continued on additional sheet [ ] | |

| B. **Other evidence** | |
|---|---|
| | |
| Continued on additional sheet [ ] | |

|  | for EPO use only |
|---|---|

**X.    Payment of the opposition fee is made**

    ☒ as indicated in the enclosed voucher for payment of fees and costs (EPO Form 1010)

    ☐

---

**XI.    List of documents**

| Enclosure No. | | No. of copies | |
|---|---|---|---|
| 0 | ☒ Form for notice of opposition | 2 | (min. 2) |
| 1 | ☒ Facts and arguments (see VII.) | 2 | (min. 2) |
| 2 |    Copies of documents presented as evidence (see IX.) | | |
| 2a | ☒ — Publications | 2 | (min. 2 of each) |
| 2b | ☐ — Other documents | | (min. 2 of each) |
| 3 | ☐ Signed authorisation(s) (see IV.) | | |
| 4 | ☒ Voucher for payment of fees and costs (see X.) | 1 | |
| 5 | ☐ Cheque | | |
| 6 | ☐ Additional sheet(s) | | (min. 2 of each) |
| 7 | ☐ Other (please specify here): | | |

---

**XII.    Signature**
      **of opponent or representative**

Place    München

Date    30 May 2001

Olaf Ungerer
European Patent Attorney
Association No. 15

# Eisenführ, Speiser & Partner

**München**
Patentanwälte
European Patent Attorneys
Dipl.-Phys. Heinz Nöth
Dipl.-Wirt.-Ing. Rainer Fritsche
Lbm.-Chem. Gabriele Leißler-Gerstl
Dipl.-Ing. Olaf Ungerer
Patentanwalt
Dipl.-Chem. Dr. Peter Schuler

Arnulfstrasse 25
D-80335 München
Tel. +49-(0)89-549 0750
Fax +49-(0)89-5502 7555 (G3)
Fax +49-(0)89-5490 7529 (G4)
mail@eisenfuhr.com
http://www.eisenfuhr.com

**Bremen**
Patentanwälte
European Patent Attorneys
Dipl.-Ing. Günther Eisenführ
Dipl.-Ing. Dieter K. Speiser
Dr.-Ing. Werner W. Rabus
Dipl.-Ing. Jürgen Brügge
Dipl.-Ing. Jürgen Klinghardt
Dipl.-Ing. Klaus G. Göken
Jochen Ehlers
Dipl.-Ing. Mark Andres
Dipl.-Chem. Dr. Uwe Stilkenböhm
Dipl.-Ing. Stephan Keck
Dipl.-Ing. Johannes M. B. Wasiljef
Patentanwalt
Dr.-Ing. Stefan Sasse

Rechtsanwälte
Ulrich H. Sander
Christian Spinlig
Dr. Matthias Jestaedt
Harald Förster
Sabine Richter

**Hamburg**
Patentanwalt
European Patent Attorney
Dipl.-Phys. Frank Meier

Rechtsanwalt
Rainer Böhm

**Berlin**
Patentanwälte
European Patent Attorneys
Dipl.-Ing. Henning Christiansen
Dipl.-Ing. Joachim von Oppen
Dipl.-Ing. Jutta Kaden
Dipl.-Ing. Mathias Karlhuber

**Alicante**
European Trademark Attorney
Dipl.-Ing. Jürgen Klinghardt

### Opposition against the European patent EP 0 774 724 B1

### Facts and Arguments

### I. Cited prior art

In the opposition statement, the following prior art documents will be referred to using the indicated abbreviations:

| | |
|---|---|
| **Document D1:** | US 5 445 347 |
| **Document D2:** | ARINC Attachments in circular letter of 5 April 1991 to all AEEC members |
| **Document D3:** | ARINC specification 632 published on 30 December 1994 |
| **Document D4:** | ARINC characteristic 751 published on 1 January 1994 |
| **Document D5:** | "Safety Board Urges Mandatory Use Of FDR/CVRs in Commuter Transports", Aviation Week & Space Technology, p. 73, 31 August 1987 |

- 2 -

Document D6:   "Conversion Approach Appears Flawed", Aviation Week & Space Tech-
              nology, Vol. 139, No. 4, p. 48, 26 July 1993

Document D7:   "Module Is Result Of Work With Apple -- Plessey makes leap with wire-
              less LAN", Electronic Engineering Times, p. 1, 7 November 1994.


## II. Claims of the opposed patent EP 0 774 724 B1

The patent in suit relates to a system for and method of providing a retrievable record of the
flight performance of an aircraft. As indicated in column 1, lines 46 to 50, corresponding sys-
tems using a direct line-of-sight infrared link or a fiber optic cable to couple an on-board air-
craft computer system with a ground-based computer system are known. According to the
patent specification, these systems lead to the drawback that the aircraft is required to be
parked at the gate so that the line-of-sight infrared transceiver or the fiber optic connection
assemblies can be properly linked. It is therefore an object of the alleged invention of the
patent in suit to periodically analyse flight performance data without having to physically ac-
cess a redundant unit on board the aircraft (cf. column 1, lines 56 to 58).

According to **claim 1**, this object is achieved by a system for providing a retrievable record of
the flight performance of an aircraft comprising:

A)   a ground data link unit that obtains flight performance data representative of aircraft
     flight performance during flight of the aircraft, said ground data link unit comprising on:

     Aa)   an archival data store operative to accumulate and store flight performance data
           during flight of the aircraft, and

     Ab)   a wideband spread spectrum transceiver coupled to said archival data store, and
           comprising a transmitter that is operative after the aircraft completes its flight and
           lands at an airport to download flight performance data that has been accumu-
           lated and stored by said archival data store during flight over a wideband spread
           spectrum communication signal;

B)   an airport based wideband spread spectrum transceiver comprising a receiver that re-
     ceives the wideband spread spectrum communication signal from the aircraft and de-
     modulates the signal to obtain the flight performance data;

- 3 -

C)   an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data; and

D)   an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for further processing.

Additionally, according to **claim 17**, the above object is achieved by a method of providing a retrievable record of the flight performance of an aircraft comprising the steps of:

A)   acquiring flight performance data of an aircraft during flight of the aircraft;

B)   accumulating and storing within an archival memory of a ground data link unit the flight performance data during flight of the aircraft;

C)   after the aircraft lands at an airport at completion of the flight, downloading the flight performance data that has been accumulated and stored within the archival data store during the flight over a wideband spread spectrum communication signal to an airport based spread spectrum receiver;

D)   demodulating the received spread spectrum signal to obtain the flight performance data;

E)   storing the demodulated flight performance data within an airport based archival data store; and

F)   retrieving the flight performance data via an airport based processor for further processing.

According to column 2, lines 22 to 27 of the patent specification, a benefit of spread spectrum modulation is its inherently low energy density wave form properties which are the basis for its acceptance for unlicensed product certification. Spread spectrum also provides the additional benefits of resistance to jamming and immunity to multipath interference.

- 4 -

According to the **dependent claims 2, 11, 18, 24 and 31**, the system and method, respectively, are specified in that the wideband spread spectrum communication signal comprises a direct sequence spread spectrum communication signal.

According to the **dependent claims 3, 12, 19, 25 and 32**, the system and method, respectively, are specified in that the wideband spread spectrum communication signal comprises a signal within the S band.

According to the **dependent claims 4, 13, 20, 26 and 33**, the system and method, respectively, are specified in that the wideband spread spectrum communication signal comprises a signal in the range of about 2.4 to about 2.5 GHz.

According to the **dependent claims 5 and 14**, the system is specified in that the airport based wideband spread spectrum transceiver further comprises a wireless router that couples the wideband spread spectrum transceiver to the airport based archival data store.

According to the **dependent claims 6, 15 and 21**, the system and method, respectively, are specified in that the archival data store of the ground data link unit further comprises means for compressing the flight performance data during the flight of the aircraft.

According to the **dependent claims 7 and 16**, the system is specified in that the transceivers comprise half-duplex transceivers.

According to the **dependent claims 8 and 23**, the system and method respectively, are specified in that the wideband spread spectrum transceiver further comprises a receiver for receiving uploaded data over a second wideband spread spectrum communication signal, wherein the airport based wideband spread spectrum transceiver further comprises a transmitter that transmits data for uploading to the aircraft over a second wideband spread spectrum communication signal, and wherein the airport based archival data store coupled to the airport based wideband spread spectrum transceiver receives and stores the flight performance data to be uploaded to the aircraft.

According to the **dependent claims 9 and 28**, the system and method, respectively, are specified in that the data to be uploaded to an aircraft further comprises video, audio and flight information that has been stored within the airport based archival data store.

- 5 -

According to the **dependent claims 10 and 29**, the system and method, respectively, are specified in that the video, audio and flight information to be uploaded to the aircraft further comprises digitised in-flight passenger service and entertainment video and audio files.

According to the **dependent claim 22**, the method is specified by further comprising the step of routing the flight performance data form an airport based processor and archival data store from a first ground based wideband spread spectrum transceiver via a first wideband spread spectrum communication signal to a second ground based wideband spread spectrum trans-ceiver functioning as a repeater to relay the flight performance data to the aircraft via a sec-ond wideband spread spectrum communication signal.

Finally, according to the **dependent claim 30**, the system is further specified in that the air-craft comprises a plurality of flight parameter transducers and flight data acquisition equip-ment distributed throughout the aircraft, and the ground data link unit is operatively coupled to the plurality of flight parameter transducers and flight data acquisition equipment for ob-taining the flight performance data representative of aircraft flight performance.


### III. Novelty

**Document D1** discloses a system for providing a retrievable record of the performance of a vehicle during its motion. Although the embodiment described in document D1 relates to a magnetic levitation train, it is expressly indicated that the system may also be implemented in airplanes (cf. column 3, lines 25 to 28).

When used in an airplane, the system monitor and diagnostic unit (SMDU, 12) provided in each car (16) of the train corresponds to a ground data link unit that obtains flight perform-ance data representative of aircraft flight performance during flight of the aircraft. As regards the obtained data, it is referred to column 6, lines 17 to 22 and 46 to 52 and to column 7, lines 10 to 17, where specific aircraft flight performance data are indicated.

Furthermore, an archival data store (36 in Fig. 3) is disclosed, which is operative to accumu-late and store the flight performance data during flight of the aircraft (cf. column 4, lines 55 to 57). Furthermore, a wideband spread spectrum transceiver is coupled to the archival data store and comprises a transmitter for downloading the flight performance data that has been accumulated and stored by the archival data store during flight over a wideband spread spectrum communication signal (cf. spread spectrum transceiver 60 in Fig. 3, and column 4,

- 6 -

lines 4 to 6). Due to the fact that the spread spectrum network (30) described in document D1 is a low-power system which can be operated without government license (cf. column 4, lines 17 to 19), it is obvious that the download of the flight performance data is performed after the aircraft completes its flight and lands at an airport. Thus, this partial feature is implicitly disclosed in document D1. The same applies to the fact that the means described in features B to D of claim 1 of the patent in suit are airport based. Again, it has to be regarded obvious that the downloading or transmission of the flight data is performed at an airport if the system described in document D1 is used in an airplane. Moreover, according to column 3, lines 29 to 34, a network status interface unit (NSIU, 22) is provided at each fixed station (24) through which the vehicle (18) passes. Thus, in case of an airplane, this fixed station clearly has to be regarded as an airport.

According to Fig. 4 and column 4, lines 9 to 11, each NSIU (22) includes a spread spectrum transceiver (64) comprising a receiver that receives the wideband spread spectrum communication signal form the aircraft and demodulates the signal to obtain the flight performance data. It is an inherent and thus implicitly disclosed feature that the spread spectrum transceiver (64 of Fig. 4) comprises a receiver which receives and demodulates the signal to obtain flight performance data supplied to the computer (66). Furthermore, document D1 discloses an archival data store (which is airport based in case the system is used for aircraft maintenance) coupled to the wideband spread spectrum transceiver that receives and stores the flight performance data (cf. column 2, lines 21 to 33). The airport based archival data store (82 in Fig. 5) is coupled to an (airport based) processor (70) for retrieving said performance data from the airport based archival data store (82) for further processing, e.g. based on an access by technicians via e.g. the manual communication unit (78).

Thus, all features A to D of claim 1 are disclosed in document D1.

Similarly, document D1 discloses a method as defined by features A to F of claim 17 of the patent in suit. The flight performance data are acquired in the SMDU (12) based on the input received from the respective sensors (cf. column 3, lines 52 to 66). The flight performance data are accumulated and stored within the memory (36) of the SMDU (12) during flight of the aircraft. At a station (i.e. airport) the flight performance data are downloaded to the NSIU (22) over a wideband spread spectrum communication signal to a spread spectrum receiver. The received spread spectrum signal is necessarily demodulated to obtain the flight performance data. The demodulated flight performance data are then stored within an archival data storage in the MCC (28) which may be located at an airport, and the flight performance data are retrieved via an (airport based) processor (70) for further processing.

- 7 -

Thus, all features A to F of claim 17 are disclosed in document D1.


**Document D2** relates to a circular letter distributed to all AEEC members. The letter was circulated to the members on April 5, 1991 without any secrecy agreement. Thus, it was possible for members of the public to gain knowledge of the subject matter and there was no bar of confidentiality restricting the use or dissemination of document D2. Hence, document D2 has to be regarded as state of the art in the sense of Art. 54 (2) EPC.

In view of the fact, that Attachment 2 of document D2 relates to the protocols for the so-called "Gatelink" (cf. page 13, first paragraph of document D2), the general specification of the Gatelink environment as defined for example in ARINC specification 632 (document D3) has to be regarded implicitly disclosed in document D2.

The Gatelink is defined as a high-speed two-way communication link between a parked aircraft and a ground-based communication system. According to **document D3**, the Gatelink comprises a fully automatic Gatelink connection achieved by using two transceivers for communicating across a free air gap. Due to the fact that flight performance data are downloaded in such a system (cf. page 1, left hand column, 4th paragraph of document D3), a ground data link unit and an archival data store operative to accumulate and store flight performance data during flight of the aircraft are implicitly disclosed in document D3. The ground transceiver unit (GTU) is mounted under the loading bridge and the aircraft transceiver unit (ATU) is mounted on the aircraft under the passenger door. The connection is established automatically when the loading bridge is mated to the parked aircraft and the aircraft and ground transceiver units come within the field of view of each other (cf. page 5, section 4.2.1 of document D3).

According to attachments 7 to 9 of document D3, a Gatelink database server is shown to be coupled to the airport based transceiver unit. Furthermore, an airline host system is shown to be coupled to the Gatelink database server. Thus, the known Gatelink architecture disclosed in document D3 and referred to in document D2 discloses all features of claims 1 and 17, except for the use of the wideband spread spectrum communication signal. In this respect, it is to be noted that, in general, a spread spectrum communication signal is a wideband signal due to the fact that the spectrum is spreaded.

- 8 -

As can be gathered from page 17 of **document D2**, a wireless connection could be provided between the jetway and the aircraft in the Gatelink system. This wireless connection may be achieved by a spread spectrum technology. Thus, document D2 discloses the above missing feature. However, in view of the fact that document D2 relates to a Gatelink architecture, it also implicitly discloses the above features of reference D3. Additionally, it has to be considered that the Attachment 2 was prepared by employees of ARINC (cf. page 1 of document D2). Thus, it is clear that this attachment directly relates to the ARINC Gatelink architecture as defined e.g. in document D3.

In summary, the subject matter defined in claims 1 and 17 of the patent in suit lacks novelty in the light of either one of documents D1 and D2.

## IV. Inventive Step

However, even if the disclosure of document D3 cannot be regarded as implicitly included in document D2, it is noted that a combination of documents D2 and D3 is obvious to the skilled person due to the fact that both documents relate to the same ARINC aircraft data recording and communication systems. In particular, document D2 describes different network architectures for the Gatelink system, including the use of spread spectrum communication. Both documents D2 and D3 are clearly pertinent to the particular problem with which the invention is involved, specifically within the Gatelink system. In particular, document D3 at least implicitly discloses features Aa, C and D of claim 1 and features A, B, D, E and F of claim 17 of the patent in suit, while the spread spectrum features Ab and B of claim 1 and C of claim 17 can be derived from a combination of documents D2 and D3.

Starting from the closest prior art of document D3, the objective problem corresponds to the initially mentioned problem as can be gathered from the introductory portion of the specification of the patent in suit, i.e. to periodically analyse flight performance data without having to physically access a redundant unit on board the aircraft. In view of this objective problem, the use of a wireless RF link directly leaps to the mind of the skilled person. Bearing in mind that Attachment 2 of document D2 relates to point-to-point architectures for Gatelink, the skilled person would be prompted by the obvious combination of documents D2 and D3 to use a spread spectrum communication link in order to solve the underlying objective problem without involving any inventive step.

- 9 -

Thus, the subject matter of claims 1 and 17 is rendered obvious by a combination of documents D2 and D3,.


## V. Dependent claims

The feature of the **dependent claims 2, 11, 18, 24 and 31** can be gathered from document D6. **Document D6** discloses on page 3, 8th paragraph that high-performance, direct-sequence, spread-spectrum receivers and tracking systems can be used for airplane communication. Thus, the use of direct sequence spread spectrum communication signals was already known in airplane communications from document D6.

Moreover, this feature relates to a mere design alternative, according to which the transmitted bits are modulated to a pseudo random sequence before modulating the RF carrier. The other alternative is to modulate the RF carrier by the pseudo random sequence. However, this leads to a more complex system. Therefore, the direct sequence spread spectrum receiver is the obvious choice for the skilled person.

Due to the fact that document D6 describes aircraft technology for recording flight data and aircraft communication, respectively, especially the use of direct-sequence spread spectrum communication for communicating between an aircraft and a satellite, this document has to be regarded pertinent to the objective problem with which the invention is involved such that combination with each of documents D1 to D3 has to be regarded obvious.

The feature of **claims 3, 12, 19, 25 and 32** can be gathered from page 1, 4th paragraph of the BODY-section of **document D7**. It is a known fact that the 2.4-GHz band is also called the S band comprising the range from about 2.4 GHz to about 2.5 GHz. Thus, also the feature of the **dependent claims 4, 13, 20, 26 and 33** is disclosed in document D7. While document D7 does not refer specifically to aircraft communications, it does pertain to the field of wireless LANs. However, developers of wireless LAN systems for aircraft communication purposes, as indicated in documents D1 to D3, would undoubtedly look to available wireless LAN technologies including the type of technology described in document D7. Thus, a clear motivation to combine document D7 with either one of document D1 to D3 is given.

As regards the features of the **dependent claims 5 and 14**, Fig. 2 of **document D1** discloses the use of a WAN (32) which may be a wireless network (cf. column 3, lines 40 and 41). Then, a wireless router necessarily has to be provided in the WAN (32).

Furthermore, **document D2** discloses on page 17, that wireless Ethernet and token-ring LAN products may be used. Thus, the router (GIU) in attachments 7 to 9 of **document D3** may as well be a wireless router.

Additionally, Fig. 1-3 of **document D4** which also relates to the Gatelink architecture depicts a router which also may be a wireless router if the teaching of document D2 is considered.

As regards the features of the **dependent claims 6, 15 and 21, document D5** discloses in the paragraph bridging pages 4 and 5 that a data compression is employed in order to retain the required recording activity. Due to the fact that document D5 relates to aircraft technology for recording flight data and aircraft communication, respectively, especially to the use of data compression in flight data recorders, a combination of document D5 with each of documents D1 to D3 has to be judged obvious.

The features of the **dependent claims 8 and 23** can be gathered from **document D3** where examples of data communication my include updates of on-board databases such as an Electronic Library System, entertainment systems and the like (cf. page 1, section 1.2 of document D3). Thus, an uploading connection using a second wideband spread spectrum communication signal is rendered obvious by a combined consideration of document D3 with either one of **documents D1 and D2**. Due to the fact that document D1 may relate to the communication between an aircraft and a ground station, a combination of documents D1 and D3 has to be regarded obvious to the skilled person.

The feature of the **dependent claims 7 and 16**, concerning the use of half-duplex transceivers, relates to a mere design alternative which can not justify an inventive step.

The features of the **dependent claims 9, 10, 28 and 29** can be gathered from page 1, section 1.2 of **document D3** where the data communication is defined as including entertainment systems which generally comprise video and audio files.

As regards the features of the **dependent claims 22 and 27**, it is referred to the attachments 7 to 9 of **document D3**, where the flight performance data is routed via a gateway device to an airline host system. In case a wireless system as suggested in **document D2** is used for this connection, a repeater necessarily has to be provided to obtain enough signal power at the receiving end. Similar considerations can be made on the basis of the wireless WAN (32) described in **document D1** as indicated in connection with claims 5 and 14.

- 11 -

Regarding the plurality of flight parameter transducers and flight data acquisition equipment defined in the **dependent claim 30**, it is referred to column 3, lines 45 to 66 in combination with columns 6 and 7 of **document D1**, where a plurality of sensors and flight data acquisition equipment is disclosed. Thus, the feature of claim can be gathered **document D1**.

In summary, the subject matter as defined by each of the dependent claims 2 to 16 and 18 to 33 is at least rendered obvious by the cited prior art.