# TAB 19

*Harris Corp. v. FedEx Corp.*
USDC, Middle District of Florida
Civil Action No. 6:07-CV-1819-28KRS



# Notice of Opposition to a European Patent

To the European Patent Office

Tabulation marks

| | | for EPO use only |
|---|---|---|
| **I. Patent opposed** | Opp. No. OPPO (1) | |
| Patent No. | 0 774 724 | |
| Application No. | 96308035.3 | |
| Date of mention of the grant in the European Patent Bulletin (Art. 97(4), 99(1) EPC) | 30 August 2000 | |
| Title of the invention: Wireless frequency-agile spread spectrum ground link-based aircraft data communication system | | |
| **II. Proprietor of the Patent** first named in the patent specification | Harris Corporation | |
| Opponent's or representative's reference (max. 15 spaces) | | OREF |
| **III. Opponent** | OPPO (2) | |
| Name | Penny & Giles Aerospace Limited | |
| Address | Spirent House, Crawley Business Quarter, Fleming Way, Crawley, West Sussex RH10 2QL, United Kingdom. | |
| State of residence or of principal place of business | United Kingdom | |
| Telephone/Telex/Fax | | |
| Multiple opponents | ☐ further opponents see additional sheet | |
| **IV. Authorisation** | | |
| 1. Representative (Name only one representative to whom notification is to be made) | OPPO (9) | |
| Name | GIBSON, Stewart Harry | |
| Address of place of business | URQUHART-DYKES & LORD, Three Trinity Court, 21-27 Newport Road, Cardiff, CF24 0AA, United Kingdom | |
| Telephone/Telex/Fax | +44 29 20487993 / / +44 29 20488016 | |
| Additional representative(s) | ☐ (on additional sheet/see authorisation) | OPPO (5) |
| 2. Employee(s) of the opponent authorised for these opposition proceedings under Art. 133(3) EPC | Name(s): | |
| Authorisation(s) | ☐ not considered necessary<br>☐ has/have been registered | |

To 1./2.

for EPO use only

## V. Opposition is filed against

— the patent as a whole [X]

— claim(s) No(s).

## VI. Grounds for opposition:

**Opposition is based on the following grounds:**

(a) the subject-matter of the European patent opposed is not patentable (Art. 100(a) EPC) because:

— it is not new (Art. 52(1); 54 EPC) [ ]

— it does not involve an inventive step (Art. 52(1); 56 EPC) [X]

— patentability is excluded on other grounds, i. e. Art. [ ]

(b) the patent opposed does not disclose the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art (Art. 100(b) EPC; see Art. 83 EPC). [ ]

(c) the subject-matter of the patent opposed extends beyond the content of the application/ of the earlier application as filed (Art. 100(c) EPC, see Art. 123(2) EPC). [ ]

## VII. Facts and arguments

(Rule 55(c) EPC)
presented in support of the opposition are submitted herewith on a separate sheet (annex 1) [X]

## VIII. Other requests:

We request Oral Proceedings in the event that a decision is made other than to revoke the patent as a whole.

| IX. Evidence presented | for EPO use only |
| --- | --- |
| Enclosed = ☐<br>will be filed at a later date = ☐ | |
| **A. Publications:** | Publication date |
| 1 US-4 729 102<br>Particular relevance (page, column, line, fig.): | 01.03.1988 |
| 2<br>Particular relevance (page, column, line, fig.): | |
| 3<br>Particular relevance (page, column, line, fig.): | |
| 4<br>Particular relevance (page, column, line, fig.): | |
| 5<br>Particular relevance (page, column, line, fig.): | |
| 6<br>Particular relevance (page, column, line, fig.): | |
| 7<br>Particular relevance (page, column, line, fig.): | |
| Continued on additional sheet ☐ | |
| **B. Other evidence** | |
| Continued on additional sheet ☐ | |

for EPO use only

## X. Payment of the opposition fee is made

[X] as indicated in the enclosed voucher for payment of fees and costs (EPO Form 1010)

[ ]

## XI. List of documents

| Enclosure No. | | | No. of copies | |
|---|---|---|---|---|
| 0 | [X] | Form for notice of opposition | 2 | (min. 2) |
| 1 | [X] | Facts and arguments (see VII.) | 2 | (min. 2) |
| 2 | | Copies of documents presented as evidence (see IX.) | | |
| 2a | [X] | — Publications | X | (min. 2 of each) |
| 2b | [ ] | — Other documents | | (min. 2 of each) |
| 3 | [ ] | Signed authorisation(s) (see IV.) | | |
| 4 | [X] | Voucher for payment of fees and costs (see X.) | X | |
| 5 | [ ] | Cheque | | |
| 6 | [ ] | Additional sheet(s) | | (min. 2 of each) |
| 7 | [ ] | Other (please specify here): | | |

## XII. Signature of opponent or representative

Place Cardiff, UK

Date 30th May 2001

Stewart H. GIBSON

M 14.07.01
1

ANNEX 1

**Facts and Arguments**

1) Claim 1 of the patent is directed to a system for providing a retrievable record of the flight performance of an aircraft, the system comprising:

(i) a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, the ground data link unit comprising:

a) an archival store operative to accumulate and store flight performance data during flight of the aircraft, and

b) a wideband spread spectrum transceiver coupled to said archival store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival store during flight over a wideband spread spectrum communication signal;

(ii) an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight data;

(iii) an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data; and

(iv) an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for further processing.

2) Claim 17 of the patent is a method claim corresponding to apparatus claims 1, and is directed to a method of providing a retrievable record of the flight performance of an aircraft, the method comprising the steps of:

(i) acquiring flight performance data of an aircraft during flight of the aircraft;

(ii) during flight of the aircraft, accumulating flight performance data and storing it within an archival memory of a ground data link unit;

(iii) after the aircraft lands at an airport at completion of a flight, downloading the flight performance data (that has been accumulated and stored within the archival data store during the





flight) over a wideband spread spectrum communication signal and to an airport based spread spectrum receiver;

(iv) demodulating the received spread spectrum signal to obtain the flight performance data;

(v) storing the demodulated flight performance data within an airport based archival data store; and

(vi) retrieving the flight performance data via an airport based processor for further processing.

3) US-4,792,102 (D1) discloses a system for providing a retrievable record of the flight performance of an aircraft (col 3, lines 58 to 64), the system comprising:

(i) an archival data store operative to accumulate and store flight performance data during flight of the aircraft (see AIDS PROGRAM MEMORY 58/NON-VOLATILE MEMORY 60 and col 13, lines 1 to 8, col 4, lines 19 to 26 and col 13, lines 26 to 31); and

(ii) a transceiver (28) comprising a transmitter that can be operated after the aircraft completes its flight and lands (re: landing information, see abstract) to download the flight performance data that has been accumulated and stored by the archival data store during flight (col 18, lines 55 & 56);

an airport (ground) based transceiver comprising a receiver that receives the signal from the aircraft and demodulates the signal to obtain flight performance data (inherent from col 18, lines 55 and 56, col 19, lines 31-33);

an airport (ground) based archival data store coupled to the transceiver that receives and stores the flight performance data (see col 13, lines 50 to 53); and

an airport (ground) based processor coupled to the archival data store for retrieving flight performance data from the airport based archival data store for further processing (CPU 66, Fig. 1 or CENT. DATA PROCESSING).

4) It will be noted, therefore, that D1 discloses a system and method having all of the features of claims 1 and 17 of the patent, except the use of wideband spread spectrum

communication for transmission of data from the aircraft to the airport-based part of the system.

5) The problem which the patent seeks to overcome is, apparently, the requirement for a licence to use radio communication at the airport site. Given that the system is concerned with the transmission of data over a short distance, the use of wideband spread spectrum communication is an obvious choice. Wideband spread spectrum communication is a well-known form of RF communication: col 2, lines 22 to 25 point to some benefits of wideband spread spectrum signals, particularly their inherently low energy-density waveform properties which avoid the need for licensing, but also their resistance to jamming and immunity to multi-path interference; however, these are all well-known characteristics of wideband spread spectrum communication, making it an obvious choice for the system disclosed in D1.

6) Claims 2 and 18 are directed to the use of a direct sequence spread spectrum communication signal.

Claims 3 and 19 are directed to the use of signals within the S-band.

Claims 4 and 20 are directed to use of signals in the range of 2.4 to 2.5 GHz/

Claims 6 and 21 are directed to the use of data compression in respect of the data to be transmitted.

Claim 7 is directed to the use of half-duplex transceivers, in the system of claim 1.

The above features are standard in the spread spectrum communication field and therefore do not add anything inventive to the respective claims 1 and 17.

7) Claims 5 and 22 are directed to the use of a wireless router to couple the airport-based transceiver to the associated archival store. It would appear obvious to use such a router in the system of claim 1 or method of claim 17.

8) Claims 8 and 23 are directed to the use of wideband spread spectrum communication to transmit or upload data from the airport-based part of the system to the aircraft. Once the system is provided for communication data from the aircraft to the airport-based part of the system, it is





an obvious extension to use the system for transmitting data in the opposite direction.

9) Claims 9, 10, 28 and 29 are directed to the transmission of video, audio and flight information (particularly in digital form) to the aircraft. These are forms of data which it would be obvious to transmit over the channel provided in accordance with claims 2 and 23, respectively.

10) Claim 30 is directed to the provision, in the aircraft, of a plurality of flight parameter transducers distributed throughout the aircraft, operatively coupled to the ground data link unit. This feature is disclosed in D1, see signal sources 16, 18,20 etc. and col 7 line 59 to col 8 line 24.

11) Claims 11, 24 and 31 are directed to the use, in the system or method of claims 8, 23 or 30, of a direct sequence spread spectrum signal for uploading data.

Claims 12, 25 and 32 are directed to the use of such signals within the S-band.

Claims 13, 26 and 33 are directed to the use of such signals in the range of 2.4 to 2.5 GHz.

Claim 15 is directed to the use of data compression on the flight performance data.

Claims 16 is directed to the use of duplex-transceivers in the system of claim 8.

The above feature are all standard features in spread spectrum communication field and do not add anything inventive to the respective claims 8, 23 or 30.

12) Claim 14 is directed to the use, in the system of claim 8, of a wireless router to couple the airport-based transceiver to the associated archival store. It would appear obvious to use such a router in the system of claim 1 (to which claim 8 is appended).

13) Claim 27 is directed to the use, in the method of claim 23, of a second ground-based wideband spread spectrum transceiver serving as a repeater. This is a non-inventive development of the system, where a large airport complex is involved.

M 13.07.01



14) We accordingly submit that every claim of the patent is invalid or lack of inventive step relative to document D1.