UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,

    Plaintiff,

-vs-                                                Case No. 6:07-cv-1819-Orl-28KRS

FEDERAL EXPRESS CORPORATION,

    Defendant.

## ORDER

This case comes before the Court on the following:

1. Motion for Partial Summary Judgment of Non-Infringement of the "Five Unasserted Patents" and Memorandum of Law in Support by Defendant Federal Express Corporation (Doc. No. 83, filed April 27, 2009);

2. Response in Opposition to Defendant's Motion for Partial Summary Judgment by Plaintiff Harris Corporation (Doc. No. 87, filed May 26, 2009); and

3. Reply in Support of Motion for Summary Judgment by Defendant Federal Express Corporation (Doc. No. 96, filed June 11, 2009).

### Background

On November 16, 2007, Plaintiff Harris Corporation ("Harris") filed the instant suit, alleging that Defendant Federal Express Corporation ("FedEx") infringed eight of its patents relating to wireless communication technologies employed on FedEx's Boeing 727 aircraft.[1] (Doc. No. 1.) On

---

[1] The patents alleged to be infringed in the original Complaint include: U.S. Patent Nos. 6,104,914 ("the '914 patent"); 6,154,636 ("the '636 patent"); 6,173,159 ("the '159 patent"); 6,308,044

February 1, 2008, FedEx filed its Answer and Counterclaims seeking a declaratory judgment that FedEx was not infringing the asserted patents and that the asserted patents were invalid. (Doc. No. 10 at 6-7.) Harris then filed an Amended Complaint asserting that FedEx infringed two additional patents.[2] (Doc. No. 32, filed April 7, 2008.) After conducting extensive discovery, Harris filed a Second Amended Complaint adding three newly-issued patents and removing five patents listed in the two prior complaints.[3] (Doc. No. 75, filed March 27, 2009.) The parties refer to these five patents as the "Unasserted Patents." (*See* Doc. Nos. 81, 84, 87.) Harris maintains that it removed the Unasserted Patents from the Second Amended Complaint to avoid jury confusion at trial and to focus on the patents "where infringement is more straightforward." (Doc. No. 81 at 3, filed April 21, 2009.) FedEx offered to permit Harris to dismiss the Unasserted Patents with prejudice or stipulate to the non-infringement of these patents, but Harris refused. (Doc. No. 84 at 90, filed May 5, 2009.)

On April 13, 2009, FedEx filed its Answer to the Second Amended Complaint including fifteen counterclaims seeking declaratory judgments of noninfringement, invalidity, and unenforceabilility due to inequitable conduct. (Doc. No. 77.) Count One seeks a declaratory judgment that FedEx did not infringe any of the thirteen patents asserted by Harris, including the eight listed in the Second Amended Complaint and the five Unasserted Patents. (*Id.* at 8.) Count Two seeks a

---

("the '044 patent"); 6,775,545 ("the '545 patent"); and 6,990,319 ("the '319 patent"). (Doc. No. 1 at 2-3.)

[2] U.S. Patent Nos. 6,047,165 ("the '165 patent") and 6,308,045 ("the '045 patent") were added in the Amended Complaint. (Doc. No. 32 at 3.)

[3] U.S. Patent Nos. 7,426,387 ("the '387 patent"); 7,428,412 ("the '412 patent"); and 7,444,146 ("the '146 patent") were added in the Second Amended Complaint. (Doc. No. 75 at 3.) The five patents no longer asserted in the Second Amended Complaint include: the '523 patent; the '545 patent; the '044 patent; the '636 patent; and the '159 patent. *Id.*

declaratory judgment that all thirteen patents are invalid. (*Id.* at 11.) Counts Eight through Twelve list the Unasserted Patents individually and request declarations from the Court stating that each of the Unasserted Patents are unenforceable due to Harris's inequitable conduct during prosecution. (*Id.* at 32-42.)

On April 21, 2009, Harris filed a Motion to Dismiss FedEx's Counterclaims 1, 2, and 8-12, alleging that this Court lacked subject matter jurisdiction over the Unasserted Patents because they were no longer in controversy.[4] (Doc. No. 81.) Harris subsequently issued a qualified Covenant Not to Sue FedEx for infringement of the Unasserted Patents signed by Brian P. Holt, Harris Corporation's Director of IP Licensing. (Doc. No. 90-A, filed June 1, 2009.) On August 26, 2009, the Court denied Harris's Motion to Dismiss, finding the Covenant insufficient to remove the controversy with respect to the Unasserted Patents and divest the Court of jurisdiction over FedEx's counterclaims. (Doc. No. 104.)

On April 27, 2009, FedEx filed the present Motion for Partial Summary Judgment of Non-Infringement of the "Five Unasserted Patents." (Doc. No. 83.) FedEx maintains that the undisputed evidence demonstrates that the accused FedEx system does not include each and every element of any claim of the Five Unasserted Patents. (*Id.* at 2.) In response, Harris argues that because the Court has not yet been asked to interpret the claim language of the Unasserted Patents, summary judgment is inappropriate. (Doc. No. 87 at 12.)

The FedEx B-727 System ("System") includes, onboard each aircraft, the existing flight recorder system, a quick-access recorder called an Avionic MiniQAR ("MiniQAR"), an Avionic

---

[4] Harris noted in its Motion that it would not oppose leave to allow FedEx to amend its answer and replead its counterclaims to include only the eight asserted patents. (Doc. No. 81 at 5.)

SecureLINK wireless router ("SecureLINK router"), and an antenna. (Doc. No. 83-11 at 23:20-23, 58:5-7, 55:1-16; Doc. No. 83-22 ¶ 3.) On the ground side, the System includes a transceiver installed at FedEx ramps near twenty-six U.S. airports, connections to the FedEx proprietary computer network, and a dedicated server housed at the FedEx Air Operations Center in Memphis, Tennessee. *Id.* The System records flight information from the time the airplane becomes airborne, to the time the airplane lands. (Doc. No. 83-11 at 28-29.) The recorded flight information is then wirelessly transferred from the aircraft to the transceiver on the ground, which transfers the information to a server at the Air Operations Center. (Doc. No. 83-11 at 55-58, 93.)

### Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

### I. Summary Judgment

Patent suits enjoy no special consideration in determining whether issues of fact preclude summary judgment.[5] *Johnston v. IVAC Corp.*, 885 F.2d 1574 (Fed. Cir. 1989). "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence fails to establish a material

---

[5] Summary judgment is appropriate in a patent infringement case when, for example, a properly interpreted claim with an uncontested description of the accused device reflects the absence of a genuine issue of material fact. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985).

issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). Once an accused infringer seeking a declaration of noninfringement sets forth material suggesting non-infringement of the patentee's claim, "the burden shifts to the patentee to provide materials that at a minimum raise actual doubt concerning potential infringement." *Ontario Die Co. of Am. v. Indep. Die Assoc., Inc.*, No. 89-CV-30035-PH, 1990 WL 300899 at *7 (E.D. Mich. Aug. 24, 1990). Thus, the "motion of an accused infringer for summary judgment on the ground of noninfringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard of infringement." *Honston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989). While a conclusory statement by an attorney that an accused device infringes a patent and an expert's unsupported conclusion on the ultimate issue of infringement are "wholly insufficient to raise an evidentiary dispute for a jury," summary judgment is inappropriate where the record contains a genuine factual dispute as to whether the allegedly infringing device includes a claim limitation. *Id.* at 1578; *Int'l Rectifier Corp. v. LXYS Corp.*, 361 F.3d 1363, 1375 (Fed. Cir. 2004).

A determination of infringement requires a two-step analysis. *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007). "First, the court determines the scope and meaning of the patent claims asserted. Second, the properly construed claims are compared to the infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). The first step, claim construction, is strictly an issue of law for the judge to decide based on the evidentiary proffers before the court, briefs on the law, and oral arguments of counsel. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc). The second step, comparison of the claim to the accused device, requires a determination that every claim limitation or its equivalent be found in the

accused device. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009). However, "[a]n accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998) (en banc). An element in an accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Amgen*, 580 F.3d at 1381 (citing *Warner-Jenkinson*, 520 U.S. at 40). Those determinations are questions of fact. *Bail v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

It is a "bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention.")). In order to define this right to exclude, each claim term is generally given its ordinary and customary meaning, mainly the "meaning the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The purpose of a claim-construction analysis is therefore to determine the meaning that would be given to each disputed term by a person of ordinary skill in the relevant art.[6] *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1578 (Fed. Cir. 1993).

---

[6] In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be "readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

In construing the claims of a patent, the court must first consider the intrinsic evidence of record, "the most significant source of the legally operative meaning of disputed claim's language." *Vitronics Corp.*, 90 F.3d at 1582. Intrinsic evidence comprises: (1) the words of the patent; (2) the patent's specification; and (3) the patent's prosecution history, if it is in evidence. *Id.* When a patentee defines a claim term in the specification, the patentee's definition governs, even if it is contrary to the conventional meaning of the term. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 493 F.3d 1358, 1361 (Fed. Cir. 2007) ("A claim term may be defined in a particular manner for purposes of a patent even without an explicit statement of redefinition."). If the court determines after full consideration of the intrinsic evidence that the claims are ambiguous, the court may then look to extrinsic evidence, including expert testimony from those versed in the disputed technology. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1152-53 (Fed. Cir. 1997).

### a. The '159 Patent

The '159 patent recites a system and method for updating flight management files and providing a retrievable record of the flight performance of an aircraft.[7] Each independent claim of the '159 patent recites a "flight management computer." Therefore, in order to infringe the '159 patent, the System must consist of a "flight management computer" or its equivalent. FedEx maintains that

---

[7] Claim 1 of the '159 patent recites:
  1. A system for updating flight management files and providing a retrievable record of the flight performance of an aircraft comprising:
    a flight management computer positioned on board the aircraft that interfaces and provides flight critical data received from flight navigation database files to a plurality of aircraft navigation and operational components located throughout the aircraft, wherein the aircraft has a unique tail number identifier;
    a ground data link unit that obtains flight performance data representative of aircraft flight performance data during flight of the aircraft and updates flight navigation database files to the flight management computer . . . .

the System does not include a flight management computer. In response, Harris argues that summary judgment as to noninfringement is inappropriate because there are disputed issues of material fact regarding whether or not the System meets the "flight management computer" limitation under the doctrine of equivalents.[8]

When a court engages in claim construction, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314 (citing *Vitronics*, 90 F.3d at 1582); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("The context of the surrounding words of the claim must be considered in determining the ordinary and customary meaning of those terms."). Independent claims 1 and 12 recite a "flight management computer positioned onboard the aircraft that interfaces and provides flight critical data received from flight navigation database files to a plurality of aircraft navigation and operational components located throughout the aircraft . . . ." U.S. Patent No. 6,173,159 B1 col.32 l.57-61; col.34 l.4-7 (filed Jun. 25, 1999). Independent claim 24 recites "a method for updating flight management files and providing a retrievable record of flight performance of an aircraft . . . comprising . . . updating a flight management computer located on board the aircraft by transferring files from ground data link unit to the flight management computer." *Id.* col.35-36 l.16-6.

---

[8] Harris also argues that summary judgment is inappropriate because "there is a significant difference between counsel's strategic decision that certain claims are not worth pursuing and the absence of disputed facts." (Doc. No. 87 at 15.) While the Court notes this distinction, the Court also notes that where counsel's strategic decision not to pursue claims results in an absence of disputed facts, summary judgment is appropriate. The mere possibility that such facts could have been discovered had counsel chosen to pursue the claims is insufficient to establish a genuine factual dispute.

In addition to the insight provided by the claim language, "'it is fundamental that the claims are to be construed in light of the specification.'" *Phillips*, 415 F.3d at 1316 (quoting *United States v. Adams*, 383 U.S. 39, 49 (1966)). Here, the specification states that "[a] flight management computer is positioned onboard the aircraft and interfaces and provides flight critical data received from flight navigation database files to a plurality of aircraft navigation and operational components located throughout the aircraft." *Id.* col.2 l.36-40. The specification further recites an "aircraft data communications system that downloads flight performance data and uploads flight critical data of flight navigation database files to a flight management computer." *Id.* col.1 l.10-14. In light of this intrinsic evidence, the term "flight management computer" refers to a computer capable of receiving flight critical data from navigation databases files.

Here, the record reflects that the FedEx B-727 System does not include a computer, computer server, or central processing unit onboard the aircraft. (Doc. No. 83 ¶10.) Accordingly, the System does not literally infringe the '159 patent. Nevertheless, Harris argues that the FedEx B-727 System is comprised of two components with computer functionality, the SecureLINK router and the MiniQAR, that in combination meet the "flight management computer" limitation under the doctrine of equivalents.[9] (Doc. No. 87 at 13.) Yet, even if these components could be characterized as a computer, in order to meet the limitations of the '159 patent, the System must include a computer

---

[9] Harris provides no factual support for the contention that the SecureLINK router and the MiniQAR meet the "flight management computer" limitation under the doctrine of equivalents. Consequently, Harris fails to establish a disputed issue of material fact as to whether the "flight management computer limitation" is met by the System. *See Ontario Die Co.*, 1990 WL 300899, at *7 (once a patentee sets forth material suggesting non-infringement of a patentee's claim, the burden shifts to the patentee to provide evidence that at a minimum raises actual doubt concerning potential infringement.).

capable of receiving flight critical data from flight navigation database files. Harris does not argue, and the record does not reflect, that the FedEx B-727 System is capable of accomplishing this task or its equivalent. Instead, the record reflects that the MiniQAR stores a copy of the data that is transmitted to the flight data recorder, and this data is later transmitted to the ground via the SecureLINK router. (Doc. No. 83-11 at 26-27.) There is no evidence on the record to suggest that the System is capable of receiving flight critical data from flight navigation database files, or their equivalents. As the record is therefore devoid of evidence that would support a finding that the flight management computer limitation is met either literally or under the doctrine of equivalents, summary judgment is appropriate. Accordingly, the Court finds that the FedEx B-727 System does not infringe the '159 patent.

### b. The '636 and '044 Patents

Both the '636 and '044 patents recite a method for determining the "Out," "Off," "On," and "In," (OOOI) times for an aircraft, and each independent claim of the '636 and '044 patents recites "OOOI times" as one of the claimed elements.[10] Therefore, in order to infringe the '636 or '044 patents, the System must contain "OOOI times" or their equivalent. FedEx maintains that the System does not calculate or acquire OOOI times because the System is turned off when OOOI events occur. Harris provides no response in opposition to these allegations.

A specification may reveal a special definition given to a claim term by the patentee . . . ." *Phillips*, 415 F.3d at 1316. In such cases, the inventor's lexicography governs. *CCS Fitness, Inc. v.*

---

[10] Claim 1 of the '636 patent recites "[a] system of providing a retrievable record of the "Out," "Off," "On," and "In" (OOOI) times of an aircraft comprising . . . ." Claim 1 of the '044 patent similarly recites "[a] system of providing a retrievable record of the "Out," "Off," "On," and "In" (OOOI) times of an aircraft comprising . . . ."

*Brunshwick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Here, the specifications of both the '636 and the '044 patents provide the same definition for the term "OOOI times." The '636 patent states that the "invention relates to a system and method of providing a retrievable record of the "out," "off," "on," and "in." (OOOI) times of an aircraft . . . ." U.S. Patent No. 6,154,636 col.1 l.5-7 (filed May 14, 1999). The term "out" is defined as "the moment in time when the aircraft pushes back from the gate." *Id.* col.1 l.47-48. The term "in" is defined as the "engaging of the parking brake at the gate and the associated change in brake pressure." *Id.* at col.2 l.15-17. The term "off," also known as "weight off wheels," is defined as the "precise moment when the aircraft wheels leave the runway." *Id.* col.2 l.22-24. Finally, the term "on," also known as "weight on wheels," is defined in the '636 patent as the "time when the aircraft wheels come into contact with the runway." *Id.* col.2 l.25-26. The '044 patent uses precisely the same language as the '636 patent to define the term "OOOI times." *See* U.S. Patent No. 6,308,044 B1 col.1 l.53-54, col.2 l.21-23; col.2 l.27-20; col.2 l.30-32 (filed Nov. 14, 2000).

The record reflects that the FedEx B-727 System does not capture, receive, store or transmit OOOI times. (Doc. No. 83-22 ¶ 11.) The System does not receive or store a time stamp when the aircraft lands, the "on" time. (Doc. No. 83-11 at 93:19-24.) The System cannot capture data or the time related to when the aircraft pushes out from the gate, the "out" time, because the MiniQAR does not begin recording data until the airplane becomes airborne. *Id.* Additionally, the System is unable to capture data related to the aircraft reaching the gate, the "in" time, because the MiniQAR stops recording when the airplane lands. *Id.* at 39:13-14. Harris fails to present any conflicting evidence regarding the ability of the System to record OOOI times or their equivalent. Accordingly, the Court

finds that the FedEx B-727 System does not infringe the '636 or '044 patents, either literally or under the doctrine of equivalents.

### c. The '545 Patent

The '545 patent recites a flight information communication system with a plurality of wireless ground links that connect respective aircraft resident subsystems with airport-located ground subsystems. Each independent claim of the '545 patent recites an "interrogation beacon," and the parties dispute the meaning of this term.[11] FedEx alleges that the System only operates in the United States, where communication limitations are uniform. (Doc. No. 83 at 12.) As a result, the transmission power level need not be adjusted after installation. *Id.* In response, Harris maintains that the System meets the "interrogation beacon" limitation under the doctrine of equivalents because the System contains software permitting transmission power levels to be adjusted and has the ability to

---

[11] Claim 1 of the '545 patent recites:
A method of facilitating compliance with limitations imposed upon wireless communications by governing jurisdictions comprising:
   transmitting from a fixed wireless router an interrogation beacon on a plurality of preselected radio-frequency (RF) channels containing information representative of communication limitations imposed by a jurisdiction governing the location of the wireless router;
   receiving at a mobile RF transceiver unit, upon the mobile RF transceiver unit entering within the transmission range of the wireless router, the interrogation beacon containing the communications limitations information on at least one of said preselected RF channels;
   adjusting at the mobile RF transceiver unit transmission parameters applicable to the transmission of data from the mobile RF transceiver unit to the wireless router; and
   transmitting data from the mobile RF transceiver unit to the wireless router on a selected channel in accordance with communication limitation imposed by the jurisdiction governing the location of the wireless router.

declare its presence to nearby access points by seeking an open channel for communication. (Doc. No. 87 at 13-14.)

The claims and the specification of the '545 patent provide substantial guidance as to the meaning of the term "interrogation beacon." Each independent claim recites an interrogation beacon "containing information representative of communication limitations imposed by a jurisdiction" is "transmitted from a fixed wireless router." U.S. Patent 6,775,545 B2 col.16 l.58-62 (filed Feb. 7, 2003). The specification provides:

> a wireless router continuously broadcasts an interrogation beacon that contains information representative of the emitted power level restriction of the airport. Using an adaptive power unit within its transceiver, the GDL unit on board the aircraft responds to this beacon signal by adjusting its emitted power level to a level that will not exceed communications limitations imposed by the jurisdiction governing the airport.[12]

*Id.* col.9 l.21-28. Accordingly, in light of the claims and the specification, the term "interrogation beacon" refers to a signal, transmitted from a fixed wireless router, containing information representative of the communication limitations imposed by a jurisdiction governing the location of the wireless router.

The FedEx B-727 System initiates contact with the ground based network by sending both a signal and the channel the System is operating on to the radios on the ramp. (Doc. No. 87-B at 70.) The radios on the ramp then respond on the airplane's specific channel and the SecureLINK system picks the strongest, most reliable radio signal to initiate contact with the server. *Id.* at 70-71. The

---

[12] The term "GDL" refers to a carrier-based ground data link unit. The GDL unit communicates with the airport-resident ground subsystem via a bidirectional radio frequency communications ground link infrastructure. *See* col.2 l.30-36.

radio frequency power of the System is software controllable and may be adjusted only through the SecureLINK configuration web page. (Doc. No. 87-D at 148-49.) None of the components in the System know the geographic location of any particular 727 aircraft, and there are no wireless access points for the System outside the United States. (Doc. No. 83-11 at 58; Doc. No. 83-12 at 207.) Therefore, instead of setting communication limitations by sending a signal containing the communications limitations from the ground to the aircraft through a wireless router, the communication limitations of the System are preset at the SecureLINK configuration web page and the System transmits a signal from the aircraft to the ground at the preset power level. Accordingly, the FedEx B-727 System does not literally infringe the '545 patent.

Harris alleges that summary judgment as to the '545 patent is nonetheless inappropriate because there are disputed issues of material fact regarding whether or not the System meets the "interrogation beacon" limitation under the doctrine of equivalents. (Doc. No. 87 at.13-14.) However, Harris provides no evidence to establish that the interrogation beacon limitation of the '545 patent is met equivalently. Instead, Harris contends that further investigation may disclose that the System could be programmed for multiple jurisdictions either onboard or from a remote access point. Such an argument is insufficient as a matter of law.

The ultimate burden of proving infringement rests with the patentee such that "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp.*, 271 F.3d at 1046. If such evidence is provided by an accused infringer, the burden shifts to the patentee to

provide evidence that, at a minimum, raises actual doubt concerning potential infringement. *Ontario Die Co.*, 1990 WL 300899, at *7. Here, FedEx provides credible evidence demonstrating that Harris has not established infringement of the "interrogation beacon" limitation, thereby shifting the burden to Harris to provide evidence raising actual doubt as to potential infringement. *See, e.g., In re Gabapentin Patent Litig.*, 503 F.3d at 1260 (finding that the results from pH tests conducted by the Defendant's analytical expert were sufficient to preclude summary judgment). Harris fails to provide such evidence and instead relies on hypothetical embodiments of the System that may be discovered upon further investigation. *See Vivid*, 200 F.3d at 812 ("[T]he truth of a disputed material fact cannot be established on attorney statement alone."). Harris therefore has not met its burden of raising actual doubt as to infringement under the doctrine of equivalents. Accordingly, the Court finds that the FedEx B-727 System does not infringe the '545 patent.

### d. The '523 Patent

The '523 patent recites a system for providing a retrievable record of the flight performance data of an aircraft. Each independent claim includes a limitation directed to a "remote flight operation control center."[13] FedEx argues that the System does not include a "remote flight operations control

---

[13] Claim 1 of the '523 patents recites
1. A system for providing a retrievable record of flight performance of an aircraft comprising:
    a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising:
        a) an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and
        b) a widespread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at the airport to download the flight performance data that has been accumulated and stored by said archival data stored during flight

center" and therefore does not infringe the '523 patent. In response, Harris maintains that there are disputed issues of material fact regarding whether or not the System meets the "remote flight operation control center" limitation under the doctrine of equivalents.

The specification of the '523 patent provides substantial guidance as to the meaning of the term "remote flight operations control center." The specification states that the remote flight operations control center is a location "where flight performance data from plural aircraft parked at different airports may be analyzed and from which the uploading of in-flight data files may be directed by airline systems personnel." U.S. Patent No. 6,108,523 col.1 1.18-22 (filed Feb. 17, 1999). The specification further states that "[t]he airport base station forwards flight performance data files from various aircraft by way of a separate communications path . . . to a remote flight operations control center for analysis," and that the flight operations control center "supports a variety of airline operations including flight operations, flight safety, engineering and maintenance and passenger services, includes a system controller segment and a plurality of FOQA workstations . . . ." *Id.* col.3

---

       over a wideband spread spectrum communication signal that comprises a signal in the range of about 2.4 to about 2.5 Ghz:
  an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data;
  an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores the demodulated flight performance data;
  an airport based processor coupled to said archival data store for retrieving flight data performance for the airport based archival data store:
  a remote flight operations control center: and
  an airport based communication network operative connecting said remote flight operations control center and airport based processor to allow the remote flight operations control center to receive and analyze the flight performance data.

l.1-4, 8-12. The detailed description states that the flight operation control center "allows flight performance systems analysts at the control center to evaluate the aircraft data files conveyed to the flight operations control center from the airport base station segments . . . ." *Id.* col.7 l.54-61. The "remote flight operations control center" limitation of the '523 patent therefore refers to a location, distinct from the airport base station, supporting a variety of airline operations including flight safety, flight operations, engineering, maintenance, passenger service, a system controller segment and FOQA workstations, where analysts can evaluate aircraft data files conveyed from the airport base station.

In the present case, FedEx provides expert testimony establishing that the System does not include a remote flight operations control center. (Doc. No. 83 ¶¶ 17-18.) Furthermore, the server used to process data from the System is located at the Air Operations Center in Memphis, Tennessee. *Id.* The FOQA servers and the lab where FOQA data is analyzed are not similarly located at the Air Operations Center.[14] (Doc. No. 83-22 ¶ 19.) Such evidence potentially precludes a finding of infringement, carrying FedEx's initial burden of proof. *See Ontario Die Co.*, 1990 WL 300899, at *7. The burden therefore shifts to Harris to provide evidence that raises actual doubt as to potential infringement. *See Novartis Corp.*, 271 F.3d at 1046. In an effort to meet this burden, Harris points to expert testimony provided by FedEx which states that the System server at the Air Operation Center may be remotely accessed. (Doc. No. 87-B at 125-26.) Harris suggests that the availability of remote access meets the "remote flight operation control center" limitation under the doctrine of

---

[14] The record does not reflect that the data generated by the System is analyzed at the Air Operations Center or that the Air Operations Center supports other airline operations. (Doc. No. 83-11.)

equivalents.[15] However, once again, Harris fails to provide evidence supporting its characterization of remote access and similarly fails to provide evidence contradicting FedEx's description of the System. Instead, Harris attempts to support its characterization of the remote access as an equivalent of a "remote flight operations control center" on the basis of unsworn statements of an attorney and unsupported conjecture. *See Intellectual Science and Technology, Inc. v. Sony Electronics,* Inc., N. 2009-1142, 2009 WL 4798120 (Fed. Cir. Dec. 15, 2009) (finding that an expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine issue of material fact); *Vivid,* 200 F.3d at 812 (unsworn statements set forth in a brief or memorandum of law submitted by a party generally are not proper summary judgment evidence). Harris therefore has not met its burden of raising actual doubt as to infringement under the doctrine of equivalents. Accordingly, the Court finds that the FedEx B-727 System does not infringe the '523 patent.

---

[15] Harris also maintains that the testimony of FedEx's expert, Robert P. Swanson, establishes that there is a separate "lab" to analyze flight data from the System server. Harris argues that this "lab" could potentially meet the remote flight operation control center limitation under the doctrine of equivalents. (Doc. No. 87 at 14.) However, Harris mischaracterizes Swanson's testimony. Swanson testified that the server that downloads from fleets *other* than the 727 fleet does so via the Teledyne system. (Doc. No. 87-B at 125.) The individuals who analyze the Teledyne system data do so from their office, which is referred to as the "lab." *Id.* Swanson's testimony does not suggest that the System data is similarly evaluated in this or any other "lab."

## Conclusion

Based on the foregoing, the Motion for Partial Summary Judgment of Non-Infringement of the "Five Unasserted Patents" by Defendant Federal Express Corporation (Doc. No. 83, filed April 27, 2009) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 12th day of January, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties