IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,
a Delaware corporation,

     Plaintiff,

vs.                                                    Case No. 6:07-CV-1819-ORL-28 KRS

FEDERAL EXPRESS
CORPORATION, a Delaware
corporation,

     Defendant.

_____/

FEDERAL EXPRESS
CORPORATION,

     Counter-Plaintiff,

vs.

HARRIS CORPORATION,

     Counter-Defendant.

_____/

### PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S TECHNICAL EXPERT FRANK KOPERDA AND TO EXCLUDE CUMULATIVE EXPERT TESTIMONY

     Plaintiff/Counter-Defendant, Harris Corporation ("Harris") through its undersigned counsel, hereby moves this Court to exclude the proposed expert testimony of one of Defendant's identified technical experts, Mr. Frank Koperda, as well as to exclude any cumulative expert testimony of expert witnesses offered by Defendant Federal Express Corporation ("FedEx"), and in support thereof states as follows:

1

BACKGROUND

This is an action for patent infringement of patents ("the patents-in-suit")[1] which claim systems and methods for wirelessly transmitting data between an aircraft and ground based equipment after the aircraft has landed.  The vast majority of the patents currently in suit are part of a family of patents relating back to U.S. Patent 6,047,165 ("the '165 patent").

Defendant Federal Express Corporation ("FedEx") has submitted the reports of two technical experts, Dr. Albert Helfrick and Mr. Frank Koperda.  Both experts offer opinions on patent invalidity for all thirteen patents-in-suit.  Both experts also offer non-infringement opinions; Dr. Helfrick addresses all thirteen patents, while Mr. Koperda only addresses infringement of three of the thirteen patents.  Disturbingly, Mr. Koperda testified that the written reports he has submitted are not necessarily consistent with his true opinions as to invalidity and infringement.  Indeed, Mr. Koperda testified that the only way to truly discern his opinions is to inquire into every opinion in the 800+ pages of reports, rather than relying on the invalidity and infringement reports themselves.  Mr. Koperda further fails to disclose important inferences and assumptions made for the purposes of his opinions.  In both reports and testimony, Mr. Koperda offers mere conclusory statements with respect to hundreds of claims, without the benefit of any analysis.  Finally, Mr. Koperda's opinions, to the extent they can be determined, are cumulative of those offered by Dr. Helfrick.  Accordingly, Harris seeks the Court to exercise its gate keeping power to exclude the opinion testimony of Mr. Koperda.  In the alternative, Harris seeks the exclusion of conclusory statements disguised as "opinions,"

---

[1] Harris contends that only eight patents are properly before the Court, as the Court has found the five unasserted patents not infringement by FedEx.

2

and the exclusion of opinions that are cumulative of FedEx's other expert witness, Dr.

Helfrick.

LEGAL STANDARD

Rule 26 governs the mechanical aspects of expert witness disclosure, i.e. the

timing and contents of expert reports.  More specifically, Rule 26(a)(2)(B) states:

> (B) Written Report. Unless otherwise stipulated or ordered by the court,
> this disclosure must be accompanied by a written report — prepared and
> signed by the witness — if the witness is one retained or specially
> employed to provide expert testimony in the case or one whose duties as
> the party's employee regularly involve giving expert testimony. The report
> must contain:
>
> (i) a complete statement of all opinions the witness will express and the
> basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming
> them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> …

A failure to comply with the requirements of Rule 26(a) is addressed by Rule 37.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or

26(e), the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is

harmless…."  Fed.R.Civ.P. 37(c)(1); *see also Reese v. Herbert*, 527 F.3d 1253, 1265

(11th Cir. 2008).  "The non-disclosing party bears the burden of establishing that the

failure to disclose was substantially justified or harmless." *Poole v. Gee*, 2008 U.S. Dist.

LEXIS 48356, *9 (M.D. Fla. June 10, 2008), citing *Prieto v. Malgor*, 361 F.3d 1313,

1318 (11th Cir. 2004).

Assuming the requirements of Rule 26 for disclosure of expert reports are met, the

3

Court looks to Rule 702, F.R.E., to address the admissibility of expert testimony.  In *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), the Supreme Court rejected the previous rule of law requiring "general acceptance" of a  theory to be admissible.  The *Daubert* Court held that the court is to act as a "gatekeeper" and determine whether expert testimony should be presented, consistent with Rule 702.  As part of its gate-keeping role under Rule 702, a court is tasked with reviewing the proffered expert opinion testimony prior to submitting it to the trier of fact.  This function "inherently requires the trial court to conduct an exacting analysis" of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc), *citing McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

<u>MR. KOPERDA'S OPINIONS SHOULD BE EXCLUDED</u>

On September 25, 2009, FedEx disclosed the expert report of Mr. Koperda on validity of the thirteen patents to which FedEx's declaratory judgment are directed (referred to herein as the "Koperda Invalidity Report").[2]  The Koperda Invalidity Report is 801 pages in length, including a textual description of Mr. Koperda's opinions (Pages 1-209), as well as fifteen appendices that include claim charts for the thirteen patents as compared to particular references which Mr. Koperda considered prior art (Pages 224-801).  Mr. Koperda subsequently disclosed an expert report addressing infringement of three of the patents-in-suit on October 20, 2009.

a.  <u>Mr. Koperda Sets Up An Opinion "Shell Game"</u>

The general format of Mr. Koperda's Invalidity Report is the same for each of the thirteen patents he addresses.  Mr. Koperda begins with text discussing one independent

_____

[2] Attached hereto as Exhibit A are cited excerpts of Mr. Koperda's September 25, 2009 Expert Report.

4

claim, as well as a particular reference or combination of references that Mr. Koperda contends leads to a conclusion of invalidity (whether under §102 or §103).  Mr. Koperda then directs the reader to an appendix "for greater detail in the chart for each independent claim."  (*See*, for example, Koperda Invalidity Report, Ex. A, p. 38.)  Mr. Koperda treats the text and charts in the same manner for all thirteen patents--he refers the reader to the respective appendix for more "detail."  (See, for example, Ex. A, pp. 38-42.)

The customary use of claim charts addressing validity or infringement is to include the claim language in the text in the left column of the chart, while the text on the right side of the column reflects where in a reference (or accused product) a particular claim element is found.  In explaining the format of the claim charts, Mr. Koperda initially testified that he used this standard format, i.e. he compared each element of a claim to a particular reference, and indicated which element(s) he believes is disclosed in each reference using the appendices to his report:

> Q. … Well, explain to me what the charts in your appendices are intended to explain to a reader.
>
> A. To show how elements of the claim were met by the specified prior art.
>
> (Koperda Deposition, Ex. B, p. 104, lns. 21-25.)

The corollary to this premise also typically applies--when an element of a claim is not found in a reference, the right column remains blank.  However, when asked to confirm that the charts in his reports followed this standard format, Mr. Koperda's explanation changed drastically.  Charts that seemingly represent Mr. Koperda's expert opinions on whether a reference discloses (or fails to disclose) a particular element instead <u>do not in fact</u> represent Mr. Koperda's full opinion:

> Q. So on the left-hand column, we have elements of the claim; correct?

5

A. Yes.

Q. And on the right-hand column, is that intended to demonstrate that a particular reference disclosed the element on the left?

A. At times.

Q. Okay. What other uses was the right-hand column for?

A. Well, for example, I believe that there were times that a reference included it, but I didn't put it in there. If I wanted to use it, I put it in there. If I didn't want to use it, I didn't put it in there.

(Ex. B, p. 105, lns. 1-14.)

Thus, the claim charts do not accurately represent his opinion--only if he "wanted" his claim charts to be complete, if he did not want the charts to be complete, he left them blank--leaving Harris and the Court to guess at his analysis.  In other words, the charts may or may not reflect Mr. Koperda's "expert opinions," depending on whether he "wanted" to provide his opinion in the chart.  By not disclosing his complete opinion, Mr. Koperda is the <u>only person</u> that can understand what his charts represent (and therefore the opinions that may be contained in the charts):

Q. The blank box indicates that you didn't wish to provide information on that reference; is that right?

A. That's correct.

Q. But it doesn't necessarily mean that that reference doesn't disclose the element that is next to it?

A. That's correct.

Q. Okay.

A. If I wanted to use it, I used it. And at times, I didn't. For example, when we have combinations, both references may have provided that but I only mention one.

6

Q. <u>So how can someone reading your report determine whether a box is blank because the reference doesn't contain an element or because you just didn't want to fill in that box?</u>

A. <u>I don't believe you can</u>.

(Ex. B, p. 106, lns. 4-21, emphasis added.)

The Koperda Invalidity Report is not a complete statement of his expert opinions, as required under Rule 26, and therefore should be stricken.  *See Reese v. Herbert*, 527 F.3d at 1265.  The charts, relied on in the Report for more "detail," do not provide any assistance in understanding the complete breadth of Mr. Koperda's expert opinions.  To the contrary, the charts create more confusion about the nature and content of Mr. Koperda's "opinions."  Rule 26 requires a <u>complete</u> disclosure of opinions and the basis for such opinions, and cannot be satisfied with obscure statements of what Mr. Koperda chooses to say about a particular reference.  Mr. Koperda has never disclosed the basis for his subjective decisions to include (or exclude) information and opinions in his charts. Without a <u>complete</u> opinion, Harris, the Court and the Jury are left to guess whether the charts reflect Mr. Koperda's opinion.  Only Mr. Koperda knows his complete opinion and he will disclose it when and if he chooses--the consummate shell game.

     b.  <u>Mr. Koperda's Conflicting Opinions Further Obscure His Expert Opinions.</u>

Not only is it impossible to understand whether Mr. Koperda's claim charts actually reflect his expert opinions, equally important are that statements in the text of his report conflict with those in the charts.  Ironically, the text of the Koperda Invalidity Report steers the reader to the charts for "greater detail."  But rather than providing greater detail, the charts create "greater" confusion and uncertainty as to Mr. Koperda's opinion.  For example, the text of the Koperda Invalidity Report states that "[t]he L-1011

7

does not disclose the second, third, or last element of claim 1 [of the '165 Patent]."  (Ex. A, p. 41.)  This is a (seemingly) definitive statement by Mr. Koperda that a particular reference does not disclose certain elements of a claim.  Yet the corresponding charts in Appendix C indicate that both the third and last element of claim 1 are, in Mr. Koperda's opinion, disclosed by the L-1011 paper.  (Ex. A, C-33 to C-34.)  In this particular instance, Mr. Koperda confirmed that the chart, not the text, reflects his expert opinion:

> Q. Well, to the extent that we have inconsistencies between the text of your report and the charts, is there one to which we should defer?
>
> A. Yes.  Defer in this case to the chart for those elements where I filled that in.
>
> (Ex. B, p. 146, ln. 25-p. 147, ln. 5.)

Without inquiring into this inconsistency, it was impossible to determine whether Mr. Koperda's opinion was actually reflected by the chart or the text.  These types of contradictions are critical in the context of Mr. Koperda's "expert" opinions.  The fundamental premise of Mr. Koperda's invalidity opinion is that every element of every claim of the patents-in-suit is disclosed by prior art, and therefore the prior art renders the claims obvious and/or anticipated.  If references do not disclose all elements of the claim, the invalidity theory necessarily fails.  *See, e.g., Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1334 (Fed. Cir. 2008).  Ultimately, the elements of a claim are either disclosed by a reference or they are not disclosed--it cannot be both.  Accordingly, the only way to understand Mr. Koperda's invalidity opinions is to understand whether a particular reference, in his opinion, discloses a particular element or whether it does not.  When faced with one such contradiction in his opinions regarding the L-1011 paper, Mr. Koperda admitted that it is impossible for anyone, other than Mr. Koperda himself, to

8

resolve contradictory opinions found in the text and appendices.  (Ex. B, p. 146, ln. 25–p. 148, ln. 7.)

> Q. <u>Is there a way that anyone, other than you, would be able to take a look at this chart and determine whether we favor the text or the chart when there are discrepancies between the two?</u>
>
> A. <u>I don't believe in all cases.</u> I believe that if I wrote that in the chart then the element was found. I do know that there are several places where I have left something blank that I filled it in on one of the other pages in references so it doesn't alter the opinion; but in this particular case, the opinion stands as it is in there.

(Ex. B, p. 147, ln. 17–p. 148, ln. 2, emphasis added.)

Only Mr. Koperda knows whether the charts or the text are an accurate representation of his opinion.  How can Harris, the Court, or the Jury resolve other contradictions between the text and charts, or between the charts themselves?  Simple-- they cannot resolve discrepancies based on the report, as Mr. Koperda readily admits:

> Q. You say in this case.  Is that going to be the case all the time that we should always defer to the charts rather than the text?
>
> A. Yeah.  You would have to ask me for any specific problems on conflicts.
>
> Q. <u>So you don't have any way of telling me one way or the other whether or how I should treat discrepancies between the text and the chart, other than that we would have to go through each instance?</u>
>
> A. <u>Yes.</u>

(Ex. B, p. 147, lns. 6-16, emphasis added.)

Mr. Koperda's text and the charts are contradictory.  Yet there is no standard interpretation for the charts or for the report itself.  Instead, Mr. Koperda hides the ball, as he is the only one who can determine, on a case-by-case basis, which of his contradictory statements reflects his "expert opinion."  It is impossible for Harris to identify all such

contradictions, because Mr. Koperda has selectively included his opinions in the charts when he "wanted" to do so, or sometimes in the text, and when contradictions exist, only Mr. Koperda would be able to tell.  This contradiction is not an isolated incident in a lengthy and complicated report, it is but one of a pattern of intentional inconsistencies. Ultimately, even if Harris were able to identify all of the contradictory opinions offered by Mr. Koperda, the only way to resolve the internally inconsistent statements in Mr. Koperda's report is to walk through over 800 pages of text and charts during deposition, an impossible task in light of the time constraints of the Federal Rules and entirely inconsistent with the disclosure requests at Rule 26.  A litigant would have to spend days just securing what his opinions are, and only after this lengthy exercise may one have a chance to understand the opinions so as to test his opinions.  Apparently this is what Mr. Koperda "wants"--a litigant unable to discern his opinions so they cannot be tested or cross-examined, and they may be changed if necessary.  Mr. Koperda's solution to this insurmountable problem--simply ignore portions of his report:

Q. So can we just ignore the text and go with your charts?

A. Not at all times, no.

Q. Just sometimes?

A. That's correct.

(Ex. B, p. 148, lns. 3-7.)

This approach assists no one reading the report, as only Mr. Koperda knows which statements reflect his opinions, when blanks are not blanks, when inconsistencies can be resolved, and when portions of his report should be ignored.  Mr. Koperda offers opinions on both sides of an issue, then believes it is appropriate, at his discretion, to

10

ignore the portions of the report that are questionable.  Will Mr. Koperda's testimony at trial be consistent with the text or the charts contained in his reports?  By his own admission, no one but Mr. Koperda can answer that question.  Mr. Koperda can simply ignore the text of his reports in favor of the charts, perhaps depending on which opinion suits his (and FedEx's) objective.  Harris is left to speculate because the report leaves it up to confusion and chance, in direct violation of Rule 26.

This is not a complete disclosure of an expert's opinions--it is gamesmanship.  By Mr. Koperda's own admission, there is no way to know whether the charts accurately reflect Mr. Koperda's opinions or not.   Where Mr. Koperda rendered diametrically opposed opinions, he may present whichever opinion he (or his client) prefers to provide at trial.  There is no way to know whether Mr. Koperda will choose to "ignore" portions of his report at trial that conflict with one another.  When Mr. Koperda failed to identify all elements of a claim in a combination of references in the charts, he can simply rely on contradictory explanations of the charts and "implicit" opinions to Harris' detriment.  This gamesmanship cannot satisfy the requirement for "a complete statement of all opinions the witness will express."  Fed.R.Civ.P. 26.

The Federal Rules and the case law hold that the failure to disclose an expert's opinions will bar a party from offering them at trial.  *See* Fed.R.Civ.P. 37(c)(1); *see also Reese v. Herbert*, 527 F.3d at 1265.  In this case, contradictory expert opinions provide Harris with no insight into the opinions to be expressed at trial.  The Court should strike Mr. Koperda's opinions and bar him from testifying.

11

    c.  <u>Mr. Koperda Relies Upon a Claim Term But Refuses to Disclose How He Interpreted the Term--A Term Critical to Opinions On Validity and Infringement</u>

While Courts do not require a technical expert be a lawyer or an expert on the law, in order to offer an opinion that has any level of reliability, a technical expert must understand and apply the appropriate standards consistently when forming and conveying their opinions. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). ("any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible.") There are two steps one must take to analyze either patent infringement or validity: the first step is proper claim construction; the second step is to compare the properly construed patent claims to the allegedly infringing device or the prior art. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (describing the test for analyzing infringement); *Akamai Techs. v. Cable & Wireless Internet Servs.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) (reciting the steps for analyzing invalidity). Accordingly, Mr. Koperda must have construed the claims for purposes of determining invalidity and non-infringement. However, during deposition Mr. Koperda explained that he failed to properly perform the first step--to construe the term "data"--a term that must necessarily be understood because it relates to <u>every claim</u> asserted by Harris:

> Q. And is that all the flight data that is available in an analog form on the plane, or is that all the flight data that is sampled and stored digitally?
>
> A. I don't believe I have rendered a definition on that. I defined what I defined and I have written that down.
>
> Q. How would one skilled in the art construe the term data at the time of the invention?

A. I don't know that there could be a single definition of data because it is used in so many different ways across so many different disciplines.

Q. Well, what is the definition of data that you used to render your opinions?

A. I did not independently define data.

(Ex. B, p. 65, lns. 3-17.)

The fundamental technology in this litigation involves systems for storing flight performance <u>data</u> and transferring flight performance <u>data</u> between systems on an aircraft and on the ground.  (See, for example, '165 Patent, Col. 2, lns. 9-21.)  <u>Every</u> independent claim asserted by Harris in this case (and therefore any dependent claims related thereto) includes the term data in one form or another.[3]  What definition did <u>Mr. Koperda</u> apply for the term "data"?  Does Mr. Koperda even know what the term means?  Such an explanation is absent from Mr. Koperda's report.  When explored during deposition, Mr. Koperda was unable to describe how he interpreted the claim term for purposes of his opinions, nor could he explain how one of skill in the art would understand the term "data."  (Ex. B, p. 65, lns. 3-17.)  Without defining the term "data," how was Mr. Koperda able to determine if any reference disclosed accumulating and storing data, as is required by many of the claims?  If Mr. Koperda does not know the definition of the term "data," how was he able to analyze whether the accused system stores or downloads data, as is required by many of the claims?  It is impossible for Mr. Koperda to undergo such analyses, unless he knew what the term "data" meant as it is used in the claims.

To be clear, Harris does not believe any "special" interpretation is necessary for

---

[3] Mr. Koperda states in his report that "[c]ounsel has instructed me to construe [the term "transmitting flight data"] as meaning that all of the data that was stored on the aircraft is transmitted from the aircraft to the ground."  (Ex. A, p. 20.)  However, the term "data" is used separate and apart from the phrase "transmitting flight data" in many claims.  (*See*, for example, each claim of the '165 Patent.)

the term "data," and Harris did not include the term in its Motion for Claim Construction (Dkt. No. 115).  Harris understands the term "data" as used in the claims of the patents-in-suit to have its plain and ordinary meaning, and has used this meaning throughout the litigation.  "Data" is in every claim of the asserted patents.  Mr. Koperda wants to avoid this issue by feigning lack of knowledge of the term.  In doing so, he has rendered his opinions meaningless.  In order for Mr. Koperda to properly analyze the claims for purposes of both his infringement and validity opinions, he must understand and construe the term "data," whether by plain and ordinary meaning or by some other definition.  *See Akamai Techs. v. Cable & Wireless Internet Servs.*, 344 F.3d at 1192.  At this point, it is impossible to understand Mr. Koperda's analysis, because he failed to explain his understanding of the claims.

If Mr. Koperda ascribed or inferred meaning to the term "data," he was obligated to disclose it or his report must be excluded.  *See Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion.")  Alternatively, if Mr. Koperda ignored the term, he failed to give any meaning to the term whatsoever.  The failure to construe (and/or disclose the construction of) such a critical claim term prior to his infringement and invalidity analysis renders both opinions completely unreliable and inconsistent with the law, therefore vitiating any value it might otherwise provide to the Jury.  *See McClain v. Metabolife*, 401 F.3d at 1245 ("any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible") (internal quotes omitted).  Mr. Koperda's opinions on infringement and invalidity should be excluded in their entirety.  *See id.*; *see also Hudgens v. Bell Helicopters/Textron*, 328

14

F.3d at 1344.

       d.   Mr. Koperda's Invalidity Opinions on Claims Not Analyzed in His
            Report Are Conclusory and Should be Excluded

Mr. Koperda offers opinions that each of the thirteen patents is invalid, one patent under a theory of anticipation (the '545 Patent) and the other twelve under theories of obviousness. To anticipate a patent claim, "a single prior art reference must expressly or inherently disclose each claim limitation." *Finisar*, 523 F.3d at 1334. "Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *See id.*, quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) (internal citations omitted). While anticipation requires that all elements and limitations of the claim be contained within a single reference, multiple prior art references can be combined to prove an invention was obvious to one of skill in the art at the time of the invention pursuant to 35 U.S.C. §103. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-407 (2007).

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained...." *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). A common thread running through the invalidity analysis under anticipation and obviousness is that <u>each</u> claim is analyzed and compared to the prior art on an element-by-element basis. *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference."). Accordingly, opinions of an expert witness can only assist the jury's understanding of the evidence and determination of the issues of validity if the expert has analyzed <u>each claim</u> on an

element-by-element basis in light of the alleged prior art reference(s).  *See id.*; *see also*

*City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 562 (11th Cir. 1998).

The text of the Koperda Invalidity Report only addresses <u>one</u> independent claim

of each of the patents-in-suit.  Based on his discussion of this single independent claim,

Mr. Koperda opines that "one of ordinary skill in the art would find each and every

element of the <u>other</u> independent claims" by combining the references cited.  (See, for

example, Ex. A, p. 42, emphasis added.)  Mr. Koperda then points to hundreds of charts

as the "explanation" of his opinions of invalidity for the remaining independent claims.

Unfortunately, as described previously, these are the same claim charts that do not

necessarily reflect Mr. Koperda's opinions.  (Ex. B, p. 106, lns. 4-21.)  These are the

same claim charts that contain contradictions only Mr. Koperda can resolve, whether

internal contradictions between charts, or contradictions with the text of the report.  (Ex.

B, p. 148, lns. 3-7.)   Invalidity is based on a claim-by-claim, element-by-element

analysis, not a mish-mash of unrelated claim charts.[4]  *See Cohesive Techs., Inc. v. Waters*

*Corp.*, 543 F.3d at 1364.  There is absolutely no analysis of the other independent claims,

beyond pointing to charts that are vague, confusing and contradictory at best.  Assuming

*arguendo*, Mr. Koperda provided an element-by-element analysis of <u>one</u> independent

claim of each patent addressed in the text of his report, Mr. Koperda's charts are

meaningless for providing a detailed analysis of the other claims of the patents-in-suit.

Mr. Koperda's comments on what he "wanted" to "use"[5] from a reference does not

---

[4] Mr. Koperda fails to offer a single claim chart showing how he contends the references fit together to form a basis for invalidity. Instead, Mr. Koperda provides hundreds of charts directed to claims and single references, forcing the reader to attempt to fit components of different charts together to uncover Mr. Koperda's opinions on a particular claim.

[5] (Ex. B, p. 106, lns. 4-21.)

16

satisfy the legal requirements of identifying each element in a single reference or combination of references.  *See id.*

In the recent KSR decision, the Court rejected implementation of a rigid approach to the teaching, suggestion or motivation test to be applied when combining references under §103, but the Court confirmed that there should be an "explicit" analysis as to what would have led one of skill in the art to combine the references.  *See KSR*, 550 U.S. at 418.  The Court cited with approval the decision of *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006), quoting the Federal Circuit's holding that "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."  *See KSR*, 550 U.S. at 418.  While Mr. Koperda purports to offer reasons to combine certain references with respect to one independent claim of each patent, Mr. Koperda fails to provide an <u>explicit</u> basis to combine references with respect to the other independent claims not discussed in the text of the report.  As such, if any of Mr. Koperda's opinions are admissible, he should be restricted to discussing the one independent claim of each patent-in-suit that he discussed in the text of his report.

While the analysis of most independent claims is severely deficient, any analysis of dependent claims is entirely absent.  At the end of the text for each patent-in-suit, Mr. Koperda vaguely states "[t]he dependent claims of the [ ] patent in my opinion are all obvious variations of the independent claims, whose elements are either found in the cited prior art or are within the knowledge of one of ordinary skill in the art."  (See, for example, Ex. A, p. 54.)  Mr. Koperda relies on this single sentence to opine on the validity of <u>378</u> claims.  This "opinion" of Mr. Koperda is nothing more than an

17

unsupported conclusion, but Rule 702 requires more than just "taking the expert's word

for it."  *United States v. Frazier*, 387 F.3d at 1261.  There is absolutely no analysis of the

dependent claims.  What is or is not found in the prior art?  Where is any element of each

dependent claim found in the references identified?   What is the <u>explicit</u> basis for

combining these references and/or the intrinsic knowledge of one of skill in the art?

A witness who is unable to offer a basis for conclusions does not assist the trier of

fact and should be excluded.  *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir.

2002).  Mr. Koperda fails to provide even a cursory analysis of the dependent claims.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

admit opinion evidence which is connected to existing data only by the *ipse dixit* of the

expert."  *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1111 (11th Cir. 2005)

(internal quotes omitted).  Mr. Koperda's "opinions" of invalidity for the dependent

claims should be excluded and Mr. Koperda should be barred from testifying as to his

invalidity opinions for these patents.  *See id*.

e.  <u>FedEx Should Be Barred From Presenting Cumulative Evidence</u>
    <u>From its Two Technical Experts</u>[6]

Dr. Helfrick, the expert witness who initially disclosed his expert opinions in

January 2009, has opined that all thirteen patents-in-suit are invalid (all but the '545

Patent under §103) and not infringed by FedEx.  In his report, Dr. Helfrick relies on nine

(9) different references combined in a variety of ways for his opinions of obviousness of

---

[6] The combination of Dr. Helfrick and Mr. Koperda's expert reports are in excess of 1500 pages.  Harris does not want to burden the Court with filing such voluminous documents, but stands ready to file these documents at the Court's request.  Instead, attached at Exhibit C is a chart showing the primary invalidity contentions of each expert with respect to Claim 1 of each of the asserted patents.  For purposes of preparing the chart, Harris has ignored the charts in Mr. Koperda's report and has relied solely on the text.

18

the asserted patents.[7]  FedEx subsequently disclosed the expert reports of Mr. Koperda, who, like Dr. Helfrick, offered opinions that twelve of the patents-in-suit are obvious and that one (the '545 Patent) is anticipated.[8]  Mr. Koperda combines nine (9) references to reach his conclusions, eight of which are common to those used by Dr. Helfrick for his invalidity opinions.  At least five specific combinations of references are shared by both Dr. Helfrick and Mr. Koperda, and these common theories are applied by Mr. Koperda to seven of the eight asserted patents.  Mr. Koperda's near complete overlap in references and theories is not surprising, as Mr. Koperda admitted that counsel for FedEx determined which references he was to use for the invalidity contentions in his report, and the manner in which he was to combine the references.  (Ex. B, p. 133, lns. 10-21.)[9]

"The district court has broad discretion to determine the admissibility of evidence, and we will not disturb the court's judgment absent a clear abuse of discretion."  *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998).  Federal Rule of Evidence 403 permits relevant evidence to be excluded where its probative value is substantially outweighed by, among other things, the danger of prejudice and the needless presentation of cumulative evidence.  As the District Court for the Northern District of Illinois noted:

> Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by "counting heads" rather than evaluating the quality and credibility of the testimony.

---

[7] Dr. Helfrick also identifies eleven additional references that he claims could form a theory of invalidity for various independent and/or dependent claims.  However, Dr. Helfrick fails to offer a detailed analysis of these references beyond conclusory statements.

[8] For reasons known only to counsel for FedEx, Mr. Koperda was only requested to provide noninfringement opinions on three of the thirteen patents-in-suit.

[9] In an transparent attempt to create the illusion of independent judgment, Mr. Koperda testified on cross examination by FedEx's counsel that he did not accept all invalidity contentions provided by FedEx's counsel (Ex. B, p. 223, lns. 12-15).  However, Mr. Koperda was unable to provide a single example of a contention from counsel he rejected or any prior art reference he used that was not provided by counsel. (Id., p. 224, ln. 5-p. 225, ln. 12).

*Sunstar, Inc. v. Alberto-Culver Co.*, 2004 U.S. Dist. LEXIS 16855, *75 (N.D. Ill. Aug. 20, 2004).   Similarly, the Eleventh Circuit held that Judge Presnell did not abuse his discretion by excluding a second expert who was expected to testify on the same subject matter.   *See Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005).   In the *Tran* decision, the Eleventh Circuit noted that the experts in question had similar qualifications and relied on the same evidence to reach their conclusions.   *See id.*

Likewise, in this case FedEx has offered the opinions of both Dr. Helfrick and Mr. Koperda on all thirteen patents-in-suit, and presumably believes both individuals are qualified to offer expert opinions.[10]   Both experts were provided the same evidence in the context of testimony and prior art references, and both reached conclusions on invalidity and non-infringement.   To allow both experts to testify on these matters would be unnecessarily cumulative.   Whether these experts cover the same or different patents, from the Jury's perspective there are two "experts" who agree with FedEx, while Harris has only offered one expert in support of its case.   Such a scenario can only lead to a prejudicial result, as the Jury may view FedEx as the winner in a battle of the number of testifying experts.   Rule 403 bars such cumulative and prejudicial evidence.   Therefore, FedEx should be limited to presenting one technical expert.   *See Tran v Toyota Motor Corp.*, 420 F.3d at 1315.

---

[10] Importantly, although FedEx has disclosed both Dr. Helfrick and Mr. Koperda as technical experts, FedEx formally adopted only those opinions of Dr. Helfrick as FedEx's positions on validity and infringement.   See Ex. C, FedEx's Supplemental Responses to Interrogatories 6, 7, 8, served February 13, 2009.

<u>CONCLUSION</u>

Rule 26 requires an expert to disclose a written report including a complete statement of all opinions to be presented at trial and the basis for such opinions.  Yet Mr. Koperda's claim charts cannot be interpreted by reading his reports.  The charts and text of Mr. Koperda's expert opinions conflict with one another, creating two opposite opinions that offer no more insight than the complete failure to disclose an opinion.  Mr. Koperda admits he is the <u>only person</u> who can interpret his claim charts or resolve the contradictory opinions in his reports.  Mr. Koperda's whimsical opinions are a moving target, designed to fit the needs of FedEx's case.  Harris is unable to fully comprehend Mr. Koperda's opinions based on these reports.  FedEx has not provided a <u>complete</u> disclosure of Mr. Koperda's opinions, and therefore Rule 37 prevents FedEx from offering Mr. Koperda as an expert witness at trial.

Mr. Koperda also failed to properly construe a critical claim term.  If Mr. Koperda did in fact construe the claim term "data" which is found in every asserted independent claim, then Mr. Koperda simply refused to disclose his construction of the term.  In either circumstance, these failings mandate the exclusion of his opinions at trial under Rule 702.

Even if Mr. Koperda had completely disclosed his opinions on validity and infringement, they still must be barred under Rule 403.  Mr. Koperda offers opinions of invalidity on all thirteen patents-in-suit, as has FedEx's other technical expert, Dr. Helfrick.  Mr. Koperda, like Dr. Helfrick, offers opinions of both invalidity and non-infringement.  The opinions of these two experts are necessarily cumulative, and the presentation of such cumulative evidence by these witnesses would greatly prejudice Harris.  Alternatively, because the two experts offer nearly identical opinions (and FedEx

21

has already adopted Dr. Helfrick's opinions as its own formal positions), FedEx will not be prejudiced should the Court grant this Motion and exclude Mr. Koperda.   Mr. Koperda's opinions should be excluded in their entirety under Rue 403.

Finally, should the Court permit Mr. Koperda to offer any opinions at trial, he should be limited to the single independent claim of each patent-in-suit which he presents in his report.   Beyond the single claim that he discusses, Mr. Koperda offers no analysis or explanation.   The Court and the Jury need not accept Mr. Koperda's bare assertions of invalidity, which is all that is provided beyond a single claim.   Therefore, if Mr. Koperda is permitted to offer opinions, the Court should restrict Mr. Koperda to a single claim of each patent, as was disclosed in the text of his invalidity report.

22

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Harris has conferred with counsel for Federal Express, who opposes the relief sought in this Motion.  Moreover, counsel for FedEx, while seemingly acknowledging it should be barred from presenting cumulative expert witness testimony, counsel refused to agree to any meaningful limit on its expert testimony on validity and infringement.

Respectfully submitted this February 1, 2010.

s/Ryan T. Santurri
Brian R. Gilchrist, FL Bar #774065
bgilchrist@addmg.com
Ryan T. Santurri, FL Bar #0015698
rsanturri@addmg.com
Allen, Dyer, Doppelt, Milbrath
  & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida  32802-3791
Telephone:   407/841-2330
Facsimile:    407/841-2343
Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2010, I electronically filed the foregoing using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to the following CM/ECF participants:

J. Scott Anderson, Esquire
andersonsj@ballardspahr.com
Charley F. Brown, Esquire
browncf@ballardspahr.com
Robin L. Gentry, Esquire
gentryrl@ballardspahr.com
Lawrence K. Nodine, Esquire
nodinelk@ballardspahr.com
Jeffrey H. Brickman, Esquire
brickmanj@ballardspahr.com
Sumner C. Rosenberg, Esquire
rosenbergsc@ballardspahr.com
**BALLARD, SPAHR, LLP**
999 Peachtree Street, Suite 1000
Atlanta, GA  30309

Marilyn G. Moran, Esquire
mmoran@bakerlaw.com
**BAKER & HOSTETLER, LLP**
200 South Orange Avenue, #2300
Post Office Box 112
Orlando, FL  32802-0112

Local Counsel for
Federal Express Corporation

s/Ryan T. Santurri
Ryan T. Santurri, Esq.

24

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| HARRIS CORPORATION<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| | Civil File No. 6:07-CV-1819-28KRS |
| FEDERAL EXPRESS CORPORATION<br><br>    Counterclaim-Plaintiff,<br><br>v.<br><br>HARRIS CORPORATION<br><br>    Counterclaim-Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**EXPERT REPORT BY FRANK R. KOPERDA REGARDING VALIDITY**

## CONTENTS

1.       SUMMARY OF CONCLUSIONS................................................................14

2.       INSTRUCTIONS.........................................................................................14

3.       BRIEF CURRICULUM VITAE ....................................................................14

4.       PRIOR TESTIMONY..................................................................................15

5.       OPINION ...................................................................................................15

         Bases for Opinions ................................................................................16
             Legal Standards..............................................................................16
             Information Relied On.......................................................................17
             The EPO Decisions with Regard to the Harris Patents.....................17
             Methodology ...................................................................................18
             Ordinary Skill in the Art ...................................................................18
             Claim Construction ..........................................................................18
             Introduction to the Prior Art .............................................................21
             Prior Art - A systems analysis and project management plan for the Petite
             Amateur Navy Satellite (PANSAT) – Markham K. Rich, September 1994..........28
             Prior Art 4,831,539 - Apparatus and method for locating a vehicle in a working
             area and for the on-board measuring of parameters indicative of vehicle
             performance) – LeRoy Hagenbuch .................................................29
             Prior Art 4,531,527 - Ambulatory monitoring system with real time analysis and
             telephone transmission ...................................................................30
             Prior Art 5,666,648 - Polar relay system for satellite communication.................31
             Industry Overview ...........................................................................34
         Patent No. 6,047,165.............................................................................38
             Claim 1 – Obviousness ...................................................................38
         Patent No. 6,308,045.............................................................................54
             Claim 4 – Obviousness ...................................................................54
         Patent No. 6,775,545.............................................................................70
             Claim 1 - Lack of Novelty.................................................................70
         Patent No. 6,990,319.............................................................................72
             Claim 1 – Obviousness ...................................................................72
         Patent No. 6,104,914.............................................................................87
             Lack of Enablement – Adaptive Power Control .................................87
             Claim 1 – Obviousness ...................................................................89
         Patent No. 6,154,637...........................................................................105
             Claim 31 - Obviousness .................................................................105
         Patent No. 6,108,523...........................................................................114
             Claim 1 – Obviousness ...................................................................114
         Patent No. 7,428,412...........................................................................129
             Claim 1 – Obviousness ...................................................................129

Patent No. 7,426,387.................................................................................145
    Claim 1 – Obviousness................................................................145
Patent No. 7,444,146.................................................................................161
    Claim 1 – Obviousness................................................................161
Patent No. 6,154,636.................................................................................177
    Claim 1 - Obviousness................................................................177
Patent No. 6,308,044.................................................................................186
    Claim 1 – Obviousness................................................................186
Patent No. 6,173,159.................................................................................194
    Claim 23 – Obviousness..............................................................194
Secondary Considerations of Non-Obviousness Raised By Mr. McAlexander.......207

6.       EXPERT'S DECLARATION ..........................................................209

7.       STATEMENT OF TRUTH ..............................................................209

APPENDIX A.    DETAILED CURRICULUM VITAE ..................................1

APPENDIX B.    DOCUMENTS CONSIDERED .........................................1

    Pleadings ........................................................................................1
    Interrogatories .................................................................................1
    Expert Reports ................................................................................1
    Depositions.....................................................................................2
    Patents ...........................................................................................2
        Plaintiff Patents.........................................................................2
        Patent File Histories..................................................................2
        Other Patents...........................................................................3
    Other Documents ............................................................................3

APPENDIX C.    CLAIM CHARTS FOR PATENT 6,047,165 .........................1

    Patent 6,047,165 compared to the Prior Art in the Specification ................1
        Claim 1 ...................................................................................1
        Claim 8 ...................................................................................3
        Claim 17 .................................................................................5
        Claim 23 .................................................................................7
        Claim 30 .................................................................................8
    Patent 6,047,165 compared to DOUGLAS AIRCRAFT PAPER (1993)....................11
        Claim 1 .................................................................................11
        Claim 8 .................................................................................12
        Claim 17 ...............................................................................14
        Claim 23 ...............................................................................15
        Claim 30 ...............................................................................16
    Patent 6,047,165 compared to the ARINC AEEC FCM 69 Publication ...................19
        Claim 1 .................................................................................19
        Claim 8 .................................................................................21
        Claim 17 ...............................................................................22
        Claim 23 ...............................................................................24
        Claim 30 ...............................................................................25
    Patent 6,047,165 compared to Technology Development Concept Paper..............28

Expert Report of Frank R. Koperda                                     September 25, 2009

Claim 1 ...........................................................................................28
Claim 8 ...........................................................................................29
Claim 17 .........................................................................................30
Claim 23 .........................................................................................30
Claim 30 .........................................................................................31
Patent 6,047,165 compared to the L-1011 Paper (1978) ...........................33
Claim 1 ...........................................................................................33
Claim 8 ...........................................................................................34
Claim 17 .........................................................................................36
Claim 23 .........................................................................................37
Claim 30 .........................................................................................38
Patent 6,047,165 compared to Gatelink Documents (ARINC 751 and 632)............41
Claim 1 ...........................................................................................41
Claim 8 ...........................................................................................43
Claim 17 .........................................................................................44
Claim 23 .........................................................................................46
Claim 30 .........................................................................................48
Patent 6,047,165 compared to U.S. Patent 4,188,618 (Weisbart)...........................51
Claim 1 ...........................................................................................51
Claim 8 ...........................................................................................52
Claim 17 .........................................................................................53
Claim 23 .........................................................................................54
Claim 30 .........................................................................................54

APPENDIX D.    CLAIM CHARTS FOR PATENT 6,308,045 C1.....................................1

Patent 6,308,045 C1 compared to the Prior Art in the Specification.........................1
Claim 1 ...........................................................................................1
Claim 4 ...........................................................................................3
Claim 7 ...........................................................................................5
Claim 10 .........................................................................................7
Claim 13 .........................................................................................8
Claim 14 .........................................................................................10
Claim 15 .........................................................................................11
Claim 16 .........................................................................................13
Patent 6,308,045 C1 compared to Douglas Aircraft Paper (1993) ..........................15
Claim 1 ...........................................................................................15
Claim 4 ...........................................................................................16
Claim 7 ...........................................................................................18
Claim 10 .........................................................................................19
Claim 13 .........................................................................................21
Claim 14 .........................................................................................22
Claim 15 .........................................................................................24
Claim 16 .........................................................................................25
Patent 6,308,045 C1 Compared to the ARINC AEEC FCM 69 Publication (1994)...27
Claim 1 ...........................................................................................27
Claim 4 ...........................................................................................28
Claim 7 ...........................................................................................30

Claim 10 ...................................................................................................................31
Claim 13 ...................................................................................................................33
Claim 14 ...................................................................................................................34
Claim 15 ...................................................................................................................35
Claim 16 ...................................................................................................................36
Patent 6,308,045 C1 Compared to Technology Development Concept Paper.........38
Claim 1 .....................................................................................................................38
Claim 4 .....................................................................................................................39
Claim 7 .....................................................................................................................40
Claim 10 ...................................................................................................................41
Claim 13 ...................................................................................................................41
Claim 14 ...................................................................................................................42
Claim 15 ...................................................................................................................43
Claim 16 ...................................................................................................................44
Patent 6,308,045 C1 Compared to the L-1011 Paper (1978).................................45
Claim 1 .....................................................................................................................45
Claim 4 .....................................................................................................................46
Claim 7 .....................................................................................................................48
Claim 10 ...................................................................................................................50
Claim 13 ...................................................................................................................52
Claim 14 ...................................................................................................................53
Claim 15 ...................................................................................................................54
Claim 16 ...................................................................................................................55
Patent 6,308,045 C1 Compared to Gatelink Documents (ARINC 751 and 632).......57
Claim 1 .....................................................................................................................57
Claim 4 .....................................................................................................................59
Claim 7 .....................................................................................................................61
Claim 10 ...................................................................................................................62
Claim 13 ...................................................................................................................64
Claim 14 ...................................................................................................................66
Claim 15 ...................................................................................................................67
Claim 16 ...................................................................................................................69
Patent 6,308,045 C1 Compared to U.S. Patent 4,188,618 (*Weisbart*) ....................71
Claim 1 .....................................................................................................................71
Claim 4 .....................................................................................................................72
Claim 7 .....................................................................................................................73
Claim 10 ...................................................................................................................74
Claim 13 ...................................................................................................................75
Claim 14 ...................................................................................................................76
Claim 15 ...................................................................................................................77
Claim 16 ...................................................................................................................77
APPENDIX E.     CLAIM CHARTS FOR PATENT 6,104,914 ....................................................1
Patent 6,104,914 Compared to the Prior Art in the Specification ..............................1
Claim 1 .......................................................................................................................1
Claim 13 .....................................................................................................................3
Claim 29 .....................................................................................................................5

Claim 40 ................................................................................................8
Claim 52 ..............................................................................................10
Patent 6,104,914 Compared to IEEE 802.11-94/068r4 ...........................12
Claim 1 ................................................................................................12
Claim 13 ..............................................................................................13
Claim 29 ..............................................................................................14
Claim 40 ..............................................................................................15
Claim 52 ..............................................................................................16
Patent 6,104,914 Compared to Douglas Aircraft Paper (1993) ...............17
Claim 1 ................................................................................................17
Claim 13 ..............................................................................................18
Claim 29 ..............................................................................................20
Claim 40 ..............................................................................................21
Claim 52 ..............................................................................................22
Patent 6,104,914 Compared to the ARINC AEEC FCM 69 Publication (1994) ........25
Claim 1 ................................................................................................25
Claim 13 ..............................................................................................26
Claim 29 ..............................................................................................28
Claim 40 ..............................................................................................29
Claim 52 ..............................................................................................31
Patent 6,104,914 Compared to Technology Development Concept Paper ..............33
Claim 1 ................................................................................................33
Claim 13 ..............................................................................................33
Claim 29 ..............................................................................................34
Claim 40 ..............................................................................................35
Claim 52 ..............................................................................................36
Patent 6,104,914 Compared to the L-1011 Paper (1978) .........................38
Claim 1 ................................................................................................38
Claim 13 ..............................................................................................39
Claim 29 ..............................................................................................41
Claim 40 ..............................................................................................42
Claim 52 ..............................................................................................44
Patent 6,104,914 Compared to Gatelink Documents (ARINC 751 and 632) ...........47
Claim 1 ................................................................................................47
Claim 13 ..............................................................................................48
Claim 29 ..............................................................................................50
Claim 40 ..............................................................................................51
Claim 52 ..............................................................................................53
Patent 6,104,914 Compared to U.S. Patent 4,188,618 (*Weisbart*) ..........................56
Claim 1 ................................................................................................56
Claim 13 ..............................................................................................57
Claim 29 ..............................................................................................58
Claim 40 ..............................................................................................58
Claim 52 ..............................................................................................59
APPENDIX F.     CLAIM CHARTS FOR PATENT 6,154,637 ..........................................1
Patent 6,154,637 Compared to the Prior Art in the Specification ................................1

**Expert Report of Frank R. Koperda**                                    September 25, 2009

Claim 1 ..................................................................................................................1
Claim 14 ...............................................................................................................3
Claim 31 ...............................................................................................................6
Claim 43 ...............................................................................................................8
Patent 6,154,637 Compared to Douglas Aircraft Paper (1993) ..................................12
Claim 1 ................................................................................................................12
Claim 14 .............................................................................................................13
Claim 31 .............................................................................................................14
Claim 43 .............................................................................................................16
Patent 6,154,637 Compared to the ARINC AEEC FCM 69 Publication (1994) ........18
Claim 1 ................................................................................................................18
Claim 14 .............................................................................................................19
Claim 31 .............................................................................................................21
Claim 43 .............................................................................................................22
Patent 6,154,637 Compared to Technology Development Concept Paper .............24
Claim 1 ................................................................................................................24
Claim 14 .............................................................................................................24
Claim 31 .............................................................................................................25
Claim 43 .............................................................................................................26
Patent 6,154,637 Compared to the L-1011 Paper (1978) .......................................28
Claim 1 ................................................................................................................28
Claim 14 .............................................................................................................29
Claim 31 .............................................................................................................31
Claim 43 .............................................................................................................32
Patent 6,154,637 Compared to Gatelink Documents (ARINC 751 and 632) ...........35
Claim 1 ................................................................................................................35
Claim 14 .............................................................................................................36
Claim 31 .............................................................................................................38
Claim 43 .............................................................................................................40
Patent 6,154,637 Compared to U.S. Patent 4,188,618 (*Weisbart*)..........................43
Claim 1 ................................................................................................................43
Claim 14 .............................................................................................................44
Claim 31 .............................................................................................................45
Claim 43 .............................................................................................................45
Patent 6,154,637 Compared to U.S. Patent 4,487,182 (McRae).............................47
Claim 1 ................................................................................................................47
Claim 14 .............................................................................................................48
Claim 31 .............................................................................................................50
Claim 43 .............................................................................................................52
APPENDIX G.    CLAIM CHARTS FOR PATENT 6,990,319 ..........................................1
Patent 6,990,319 Compared to the Prior Art in the Specification ...............................1
Claim 1 ..................................................................................................................1
Claim 11 ...............................................................................................................3
Claim 21 ...............................................................................................................5
Patent 6,990,319 Compared to Douglas Aircraft Paper (1993) ..................................8
Claim 1 ..................................................................................................................8

Claim 11 .................................................................................................................9
Claim 21 ...............................................................................................................10
Patent 6,990,319 Compared to the ARINC AEEC FCM 69 Publication (1994) ........13
Claim 1 .................................................................................................................13
Claim 11 ...............................................................................................................14
Claim 21 ...............................................................................................................15
Patent 6,990,319 Compared to Technology Development Concept Paper .............17
Claim 1 .................................................................................................................17
Claim 11 ...............................................................................................................17
Claim 21 ...............................................................................................................18
Patent 6,990,319 Compared to the L-1011 Paper (1978) ...................................20
Claim 1 .................................................................................................................20
Claim 11 ...............................................................................................................21
Claim 21 ...............................................................................................................22
Patent 6,990,319 Compared to Gatelink Documents (ARINC 751 and 632) ...........24
Claim 1 .................................................................................................................24
Claim 11 ...............................................................................................................25
Claim 21 ...............................................................................................................26
Patent 6,990,319 Compared to U.S. Patent 4,188,618 (Weisbart)...........................30
Claim 1 .................................................................................................................30
Claim 11 ...............................................................................................................30
Claim 21 ...............................................................................................................31

APPENDIX H.     CLAIM CHARTS FOR PATENT 7,428,412 ......................................1

Patent 7,428,412 Compared to the Prior Art in the Specification ...............................1
Claim 1 ...................................................................................................................1
Claim 8 ...................................................................................................................3
Claim 12 .................................................................................................................5
Patent 7,428,412 Compared to Douglas Aircraft Paper (1993) ...............................9
Claim 1 ...................................................................................................................9
Claim 8 .................................................................................................................10
Claim 12 ...............................................................................................................12
Patent 7,428,412 Compared to the ARINC AEEC FCM 69 Publication (1994) ........13
Claim 1 .................................................................................................................13
Claim 8 .................................................................................................................14
Claim 12 ...............................................................................................................16
Patent 7,428,412 Compared to Technology Development Concept Paper .............18
Claim 1 .................................................................................................................18
Claim 8 .................................................................................................................18
Claim 12 ...............................................................................................................19
Patent 7,428,412 Compared to the L-1011 Paper (1978) ...................................21
Claim 1 .................................................................................................................21
Claim 8 .................................................................................................................22
Claim 12 ...............................................................................................................23
Patent 7,428,412 Compared to Gatelink Documents (ARINC 751 and 632) ...........25
Claim 1 .................................................................................................................25
Claim 8 .................................................................................................................26

Claim 12 ....................................................................................................28
Patent 7,428,412 Compared to U.S. Patent 4,188,618 (*Weisbart*)...........................30
    Claim 1 ....................................................................................................30
    Claim 8 ....................................................................................................31
    Claim 12 ....................................................................................................32
APPENDIX I.    CLAIM CHARTS FOR PATENT 7,426,387 ...................................................1
    Patent 7,426,387 Compared to the Prior Art in the Specification ...............................1
        Claim 1 ....................................................................................................1
        Claim 6 ....................................................................................................4
        Claim 11 ....................................................................................................7
    Patent 7,426,387 Compared to Douglas Aircraft Paper (1993) ...............................11
        Claim 1 ....................................................................................................11
        Claim 6 ....................................................................................................12
        Claim 11 ....................................................................................................14
    Patent 7,426,387 Compared to the ARINC AEEC FCM 69 Publication (1994) .......16
        Claim 1 ....................................................................................................16
        Claim 6 ....................................................................................................17
        Claim 11 ....................................................................................................18
    Patent 7,426,387 Compared to Technology Development Concept Paper .............21
        Claim 1 ....................................................................................................21
        Claim 6 ....................................................................................................22
        Claim 11 ....................................................................................................23
    Patent 7,426,387 Compared to the L-1011 Paper (1978) ...............................25
        Claim 1 ....................................................................................................25
        Claim 6 ....................................................................................................26
        Claim 11 ....................................................................................................28
    Patent 7,426,387 Compared to Gatelink Documents (ARINC 751 and 632) ...........30
        Claim 1 ....................................................................................................30
        Claim 6 ....................................................................................................32
        Claim 11 ....................................................................................................34
    Patent 7,426,387 Compared to U.S. Patent 4,188,618 (Weisbart)...........................36
        Claim 1 ....................................................................................................36
        Claim 6 ....................................................................................................37
        Claim 11 ....................................................................................................38
APPENDIX J.    CLAIM CHARTS FOR PATENT 7,444,146 ...................................................1
    Patent 7,444,146 Compared to the Prior Art in the Specification ...............................1
        Claim 1 ....................................................................................................1
        Claim 8 ....................................................................................................3
        Claim 15 ....................................................................................................5
    Patent 7,444,146 Compared to Douglas Aircraft Paper (1993) ...............................9
        Claim 1 ....................................................................................................9
        Claim 8 ....................................................................................................10
        Claim 15 ....................................................................................................12
    Patent 7,444,146 Compared to the ARINC AEEC FCM 69 Publication (1994) .......14
        Claim 1 ....................................................................................................14

Claim 8 ...................................................................................................15
Claim 15 .................................................................................................16
Patent 7,444,146 Compared to Technology Development Concept Paper .............18
Claim 1 ...................................................................................................18
Claim 8 ...................................................................................................19
Claim 15 .................................................................................................19
Patent 7,444,146 Compared to the L-1011 Paper (1978) ...............................21
Claim 1 ...................................................................................................21
Claim 8 ...................................................................................................22
Claim 15 .................................................................................................23
Patent 7,444,146 Compared to Gatelink Documents (ARINC 751 and 632) ...........25
Claim 1 ...................................................................................................25
Claim 8 ...................................................................................................26
Claim 15 .................................................................................................28
Patent 7,444,146 Compared to U.S. Patent 4,188,618 (Weisbart).........................31
Claim 1 ...................................................................................................31
Claim 8 ...................................................................................................32
Claim 15 .................................................................................................33

APPENDIX K.     CLAIM CHARTS FOR PATENT 6,108,523 ...................................................1

Patent 6,108,523 Compared to the Prior Art in the Specification ...............................1
Claim 1 .....................................................................................................1
Claim 8 .....................................................................................................4
Claim 16 ...................................................................................................7
Claim 27 .................................................................................................10
Claim 33 .................................................................................................13
Patent 6,108,523 Compared to Douglas Aircraft Paper (1993) ...............................16
Claim 1 ...................................................................................................16
Claim 8 ...................................................................................................17
Claim 16 .................................................................................................19
Claim 27 .................................................................................................21
Claim 33 .................................................................................................23
Patent 6,108,523 Compared to the ARINC AEEC FCM 69 Publication (1994) ........25
Claim 1 ...................................................................................................25
Claim 8 ...................................................................................................26
Claim 16 .................................................................................................29
Claim 27 .................................................................................................31
Claim 33 .................................................................................................32
Patent 6,108,523 Compared to Technology Development Concept Paper .............35
Claim 1 ...................................................................................................35
Claim 8 ...................................................................................................36
Claim 16 .................................................................................................37
Claim 27 .................................................................................................39
Claim 33 .................................................................................................40
Patent 6,108,523 Compared to the L-1011 Paper (1978) ...............................42
Claim 1 ...................................................................................................42
Claim 8 ...................................................................................................43

Claim 16 .................................................................................45
Claim 27 .................................................................................47
Claim 33 .................................................................................49
Patent 6,108,523 Compared to Gatelink Documents (ARINC 751 and 632) ...........51
Claim 1 ..................................................................................51
Claim 8 ..................................................................................53
Claim 16 .................................................................................55
Claim 27 .................................................................................57
Claim 33 .................................................................................59
Patent 6,108,523 Compared to U.S. Patent 4,188,618 (*Weisbart*)...........................62
Claim 1 ..................................................................................62
Claim 8 ..................................................................................63
Claim 16 .................................................................................64
Claim 27 .................................................................................66
Claim 33 .................................................................................67

APPENDIX L.     CLAIM CHARTS FOR PATENT 6,154,636 .................................1

Patent 6,154,636 Compared to the Prior Art in the Specification ................................1
Claim 1 ...................................................................................1
Claim 12 ..................................................................................2
Claim 23 ..................................................................................3
Claim 38 ..................................................................................4
Claim 53 ..................................................................................5
Patent 6,154,636 Compared to the L-1011 Paper (1978) .........................................7
Claim 1 ...................................................................................7
Claim 12 ..................................................................................8
Claim 23 .................................................................................10
Claim 38 .................................................................................11
Claim 53 .................................................................................12
Patent 6,154,636 Compared to U.S. Patent 4,188,618 (*Weisbart*)...........................14
Claim 1 ..................................................................................14
Claim 12 .................................................................................15
Claim 23 .................................................................................16
Claim 38 .................................................................................17
Claim 53 .................................................................................18
Patent 6,154,636 Compared to Douglas Aircraft Paper (1993) ................................20
Claim 1 ..................................................................................20
Claim 12 .................................................................................21
Claim 23 .................................................................................23
Claim 38 .................................................................................24
Claim 53 .................................................................................26
Patent 6,154,636 Compared to the ARINC AEEC FCM 69 Publication (1994) ........28
Claim 1 ..................................................................................28
Claim 12 .................................................................................29
Claim 23 .................................................................................32
Claim 38 .................................................................................33
Claim 53 .................................................................................34

Patent 6,154,636 Compared to Technology Development Concept Paper .............37
    Claim 1 .................................................................................................37
    Claim 12 ...............................................................................................38
    Claim 23 ...............................................................................................39
    Claim 38 ...............................................................................................40
    Claim 53 ...............................................................................................41
Patent 6,154,636 Compared to the L-1011 Paper (1978) ..........................43
    Claim 1 .................................................................................................43
    Claim 12 ...............................................................................................44
    Claim 23 ...............................................................................................46
    Claim 38 ...............................................................................................47
    Claim 53 ...............................................................................................48

APPENDIX M.    CLAIM CHARTS FOR PATENT 6,173,159 ...................................1

Patent 6,173,159 Compared to the Prior Art in the Specification ...............1
    Claim 1 .................................................................................................1
    Claim 12 ...............................................................................................2
    Claim 23 ...............................................................................................4
Patent 6,173,159 Compared to Douglas Aircraft Paper (1993) ..................6
    Claim 1 .................................................................................................6
    Claim 12 ...............................................................................................7
    Claim 23 ...............................................................................................9
Patent 6,173,159 Compared to the ARINC AEEC FCM 69 Publication (1994) ........11
    Claim 1 .................................................................................................11
    Claim 12 ...............................................................................................13
    Claim 23 ...............................................................................................16
Patent 6,173,159 Compared to Technology Development Concept Paper .............18
    Claim 1 .................................................................................................18
    Claim 12 ...............................................................................................19
    Claim 23 ...............................................................................................20
Patent 6,173,159 Compared to the L-1011 Paper (1978) ..........................23
    Claim 1 .................................................................................................23
    Claim 12 ...............................................................................................25
    Claim 23 ...............................................................................................27
Patent 6,154,636 Compared to Gatelink Documents (ARINC 751 and 632) ...........29
    Claim 1 .................................................................................................29
    Claim 12 ...............................................................................................30
    Claim 23 ...............................................................................................32
    Claim 38 ...............................................................................................34
    Claim 53 ...............................................................................................35
Patent 6,173,159 Compared to Gatelink Documents (ARINC 751 and 632) ...........38
    Claim 1 .................................................................................................38
    Claim 12 ...............................................................................................40
    Claim 23 ...............................................................................................42
Patent 6,173,159 Compared to U.S. Patent 4,188,618 (Weisbart)............................45
    Claim 1 .................................................................................................45
    Claim 12 ...............................................................................................46

Claim 23 ....................................................................................47

APPENDIX N.    CLAIM CHARTS FOR PATENT 6,308,044 ....................................................1

Patent 6,308,044 Compared to the Prior Art in the Specification ...............................1
Claim 1 ....................................................................................1
Claim 12 ..................................................................................2
Claim 24 ..................................................................................2
Patent 6,308,044 Compared to Douglas Aircraft Paper (1993) ...................................4
Claim 1 ....................................................................................4
Claim 12 ..................................................................................5
Claim 24 ..................................................................................6
Patent 6,308,044 Compared to the ARINC AEEC FCM 69 Publication (1994) .........8
Claim 1 ....................................................................................8
Claim 12 ..................................................................................9
Claim 24 ..................................................................................10
Patent 6,308,044 Compared to Technology Development Concept Paper ..............12
Claim 1 ..................................................................................12
Claim 12 ................................................................................12
Claim 24 ................................................................................13
Patent 6,308,044 Compared to the L-1011 Paper (1978) .....................................15
Claim 1 ..................................................................................15
Claim 12 ................................................................................16
Claim 24 ................................................................................17
Patent 6,308,044 Compared to Gatelink Documents (ARINC 751 and 632) ............18
Claim 1 ..................................................................................18
Claim 12 ................................................................................19
Claim 24 ................................................................................20
Patent 6,308,044 Compared to U.S. Patent 4,188,618 (*Weisbart*) ...........................22
Claim 1 ..................................................................................22
Claim 12 ................................................................................23
Claim 24 ................................................................................23

APPENDIX O.    CLAIM CHARTS FOR PATENT 6,775,545 ....................................................1

Patent 6,775,545 Compared to IEEE 802.11-94/068r4 .............................................1
Claim 1 ....................................................................................1
Claim 11 ..................................................................................2
Claim 21 ..................................................................................4
Claim 31 ..................................................................................5

PAGES INTENTIONALLY OMITTED

"snapshots" of data. In my opinion, the applicants told the Examiner that the "claimed invention" facilitates acquisition of data from the entire flight of the aircraft.

I understand that Mr. McAlexander opines that the phrase "during flight" is not limited to the entire flight of the aircraft. It is my opinion, that if a prior art reference discloses the acquisition, storage, and transmission of data during an entire flight; it necessarily discloses the acquisition, storage, and transmission of data during less than the entire flight. Therefore, the analysis below applies the definition of "during flight" as meaning during the entire flight, but if the Court adopts Mr. McAlexander's definition, my opinion regarding whether a prior art reference discloses this limitation would remain the same.

**The transmitting flight data limitation:**

Counsel has instructed me to construe this term as meaning that all of the data that was stored on the aircraft is transmitted from the aircraft to the ground.

**The "probe beacon" limitation in the claims of the '637 patent.**

Each independent claim of the '637 patent includes the claim term, "probe beacon."

The term "probe beacon" does not appear anywhere in the specification. Moreover, the term "probe beacon" is not a term that was regularly used by those of skill in the art in November 1995. Therefore, there is no "ordinary and customary meaning" to apply to this term. In my opinion, one of skill in the art would be forced to refer to the specification and/or rely on extrinsic evidence to determine the meaning of "probe beacon."

One source of extrinsic evidence is the IEEE 802.11 development. This reference refers to "beacon messages" and "probe requests/probe responses." The IEEE 802.11 references, however, do not discuss the use of sub-band channels. In fact, they teach that only one

PAGES INTENTIONALLY OMITTED

tend to see the RF dominate the LAN market and the low cost IR communications tends to be used more for remote controls such as TVs or iPods.

## PATENT NO. 6,047,165

U.S. Patent No. 6,047,165 will be referred to as the '165 patent.

### Claim 1 – Obviousness

It is my opinion that the FCM-69 Paper[55] in combination with the L-1011 Paper[56] discloses each and every claim limitation of the independent claims of the '165 patent.

Claim 1 includes four elements which are discussed individually below.

The preamble of claim 1 reads as follows:

> 1. A system for providing a retrievable record of the flight performance of an aircraft comprising:

The FCM-69 Paper describes the use of "Spread Spectrum RF" – instead of infrared Gatelink – for providing a retrievable record of the flight performance of an aircraft. See Appendix C for greater detail in the chart for each independent claim.

Turning to the first element of claim 1, this element requires:

> a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising:

---

[55] AEEC FCM-69: Future Concepts for Maintenance Subcommittee / AMC Task Group – Avionics Pub. 94-205/FCM-69: Report of the Portable Maintenance Access Terminal (PMAT) Working Group Meeting Held August 24-25, 1994 in Bloomington (dated September 1, 1994) (FX 2,374 *et seq.*).

[56] "L-1011: Flight Data Recording Systems: Background, Features, Implications and Benefits" (FX 2,325 *et seq.*)

a) an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and

b) a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal;

This first element describes the process of having flight performance data (for example, the information supplied to the flight data recorder or "black box" of an airplane). The FCM-69 Paper clearly implicates this element, as shown in the detailed claim chart in Appendix C. The FCM-69 Paper, however, does not mention the archival data store of a typical Gatelink system in complete detail. Instead, the Paper refers to the usefulness of spread spectrum for "Gatelink" without repeating details about all the components of Gatelink, such as the onboard archival data store. Also, the Paper does not specify that the specific set of data "accumulated and stored by said archival data store during flight" is to be downloaded.

Turning to the second element of claim 1, this element requires:

an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data;

The FCM-69 Paper discloses every aspect of the second element of claim 1. (Appendix C).

The third element of claim 1 requires:

an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data; and

The FCM-69 Paper discloses the use of a spread spectrum signal for transmitting flight performance data, as detailed in Appendix C. The Paper, however, does not mention an

airport-based archival data store specifically. Instead, FCM-69 teaches the use of spread spectrum with a typical Gatelink system which one of ordinary skill in the art would understand includes an archival data store at the airport.

Turning to the last element of claim 1, this element requires:

> an airport based processor coupled to said archival data store for retrieving flight
>     performance data from the airport based archival data store for further processing.

The FCM-69 Paper describes the use of spread spectrum for a Gatelink system, which includes an airport-based processor. (Appendix C). Someone of ordinary skill in the art would understand that a Gatelink system, with a data store at the airport, would include a processor for retrieving that data.

The FCM-69 Paper describes the use of Spread Spectrum – instead of infrared Gatelink – for providing a retrievable record of the flight performance data of an aircraft. The only aspects of claim 1 missing from the FCM-69 Paper are the details about a typical Gatelink system, as noted above. A person of ordinary skill in the art would understand and know the parts of a Gatelink system without seeing the details repeated in the FCM-69 Paper.

The L-1011 Paper (1978) (FX 2,325) describes a system for providing a retrievable record of the flight performance of an aircraft; specifically, the L-1011 widebody jet. The preamble of claim 1 of the '165 patent reads as follows:

> 1. A system for providing a retrievable record of the flight performance of an aircraft
>     comprising:

Turning to the first element of claim 1, this element requires:

> a ground data link unit that obtains flight performance data representative of aircraft flight
>     performance during flight of the aircraft, said ground data link unit comprising:
> a) an archival data store operative to accumulate and store flight performance data
>     during flight of the aircraft, and

> b) a wideband spread spectrum transceiver coupled to said archival data store, and
>    comprising a transmitter that is operative after the aircraft completes its flight and
>    lands at an airport to download the flight performance data that has been
>    accumulated and stored by said archival data store during flight over a wideband
>    spread spectrum communication signal;

The L-1011 Paper discloses the history of onboard equipment for recording flight data –
continuously, and for a large number of parameters – as shown in detail in the claim charts of
Appendix C. The L-1011 Paper represents one of the earliest disclosures of an archival data
store with continuous recording.

Turning to the second element of claim 1, this element requires:

> an airport based wideband spread spectrum transceiver comprising a receiver that
>    receives the wideband spread spectrum communication signal from the aircraft and
>    demodulates the signal to obtain the flight performance data;

The third element of claim 1 requires:

> an airport based archival data store coupled to said airport based wideband spread
>    spectrum transceiver that receives and stores said flight performance data; and

Turning to the last element of claim 1, this element requires:

> an airport based processor coupled to said archival data store for retrieving flight
>    performance data from the airport based archival data store for further processing.

The L-1011 does not disclose the second, third, or last element of claim 1.

**Conclusion for Claim 1 (FCM-69 Paper in combination with L-1011 Paper)**

Claim 1 of the '165 patent was carefully analyzed and compared against the FCM-69 Paper in
combination with the L-1011 Paper. As demonstrated, in my opinion, one of ordinary skill in the

Expert Report of Frank R. Koperda                                      September 25, 2009

art would understand that, for every element of claim 1, there was a corresponding element in the combination of the FCM-69 paper and the L-1011 Paper.  Specifically, the L-1011 Paper disclosed continuous recording of the flight performance data and storage in an onboard archival data store.

It is my opinion that one of ordinary skill in the art at the time of the invention would have had several reasons to combine the teachings of the FCM-69 Paper with those in the L-1011 Paper. The FCM-69 Paper disclosed in 1994 that spread spectrum is the preferred system for wireless communication of flight data from an aircraft to the ground.  One of skill in the art would have reason to combine the teachings of the FCM-69 Paper with the continuous recording and archival storage of flight data taught by L-1011 to develop a system for collecting and storing a retrievable record of flight performance data during flight, as recited in claim 1.

The attached claim charts in Appendix C show that one of ordinary skill in the art would find each and every element of the other independent claims in the combination of FCM-69 and L-1011.  The same reasons to combine the references for claim 1 apply equally to the other independent claims.

Based on the foregoing and my understanding of obviousness from Counsel, it is my opinion that the independent claims of the '165 patent are obvious in view of the combination of the FCM-69 and L-1011 Papers.  I come to this conclusion because in my opinion, the combination of FCM-69 and L-1011 contains each and every element of the claimed invention and one of skill in the art would have reason to combine the references to arrive at the claimed invention.

It is also my opinion that the Gatelink Documents (ARINC 632 and ARINC 751) in combination with the FCM-69 Paper,[57] the Douglas Aircraft Paper (AVIO 9,464-469), or the Technology

---

[57]  AEEC FCM-69:  Future Concepts for Maintenance Subcommittee / AMC Task Group – Avionics Pub. 94-205/FCM-69: Report of the Portable Maintenance Access Terminal (PMAT) Working Group Meeting Held August 24-25, 1994 in Bloomington (dated September 1, 1994) (FX 2,374 *et seq.*).

Confidential Information Pursuant to Confidentiality Agreement                    Page 42

PAGES INTENTIONALLY OMITTED

proposals – the FCM-69 Paper, the Douglas Aircraft Paper, or the Technology Development Concept Paper – discloses each and every element of the independent claims of the '165 patent.  As explained in separate claim charts in Appendix C, except for spread spectrum, every element of the independent claims of the '165 patent was disclosed by the text or cited references in the '165 specification itself.

The dependent claims of the '165 patent in my opinion are all obvious variations of the independent claims, whose elements are either found in the cited prior art or are within the knowledge of one of ordinary skill in the art.


## PATENT NO. 6,308,045
U.S. Patent No. 6,308,045 will be referred to as the '045 patent

### Claim 4 – Obviousness

This claim is a system having a retrievable record of the flight performance of a plane that is forwarded to a ground system and having that information later retrieved for further processing. Specifically, the data stored on the plane must be sent wirelessly with a wideband transceiver. The claim includes four elements which are discussed individually below.

It is my opinion that the FCM-69 Paper[59] in combination with the L-1011 Paper[60] discloses each and every claim limitation of the independent claims of the '045 patent.

The preamble of claim 4 reads as follows:

> 4. A system for providing a retrievable record of the flight performance of an aircraft comprising:

---

[59]  AEEC FCM-69:  Future Concepts for Maintenance Subcommittee / AMC Task Group – Avionics Pub. 94-205/FCM-69: Report of the Portable Maintenance Access Terminal (PMAT) Working Group Meeting Held August 24-25, 1994 in Bloomington (dated September 1, 1994) (FX 2,374 *et seq.*).

[60]  "L-1011:  Flight Data Recording Systems:  Background, Features, Implications and Benefits" (FX 2,325 *et seq.*)

PAGES INTENTIONALLY OMITTED

# PATENT 6,047,165 COMPARED TO THE L-1011 PAPER (1978)

The '165 Patent compared to the L-1011 Paper (1978)

*Claim 1*

| Element | L-1011 Paper (1978) |
|---|---|
| 1.    A system for providing a retrievable record of the flight performance of an aircraft comprising: | |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The L-1011 Paper (1978) (FX 2,325) describes the use of an onboard unit that obtains flight performance data representative of aircraft performance during flight. "Experimentation with in-flight recording at some airlines in the United States and in Europe during the early 1960's indicated that recording equipment could be obtained for … (2) continuous digital data recording of the minimum basic parameters with capabilities for continuous recording of other parameters with very little increased complexity of the recording equipment."  [L-1011 Paper at page 2]. |
| a) an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | The L-1011 Paper describes an archival data store operative to accumulate and store flight performance data during flight. As quoted above, "… recording equipment could be obtained for … (2) continuous digital data recording of the minimum basic parameters with capabilities for continuous recording of other parameters with very little increased complexity of the recording equipment." (L-1011 Paper at page 2].<br>The L-1011 Paper also describes several types of archival data stores, including at page 3 a "Continuous Loop Recorder (CLR) that records data from all monitored systems …; a long term recorder called the Incremental Recorder (IR) that permanently records data … and a Digital Flight Data Recorder (DFDR) which retains the most recent 25-hour period of operations."  The CLR "records continuously."<br>The L-1011 Paper at page 5 describes a Quick Access Recorder "that holds 50 hours of data from a FDAU." |

Expert Report of Frank Koperda
Confidential Information Pursuant to Confidentiality Agreement

| Element | L-1011 Paper (1978) |
|---|---|
| b) a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal; | |
| an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | |
| an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data; and | The L-1011 Paper describes an archival data store at page 7. "Implicit with the recording of flight data is the need to read the data and make use of it. ...All L-1011 operators have purchased playback equipment.... The playback station is typically a mini-computer, fully supported with general purpose scientific operating software .... The programs are large, the data master files are large .... Thus these stations employ bulk data storage on disc memory drives." |
| an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for further processing. | The L-1011 Paper describes a processor at page 6, specifically for "... 1) performance, 2) trend analysis, 3) diagnostic analysis." |

*Claim 8*

| Element | L-1011 Paper (1978) |
|---|---|
| 8.  A system for exchanging information to and from an aircraft comprising: | |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The L-1011 Paper (1978) (FX 2,325) describes the use of an onboard unit that obtains flight performance data representative of aircraft performance during flight. "Experimentation with in-flight recording at some airlines in the United States and in Europe during the early 1960's indicated that recording equipment could be obtained for ... (2) continuous digital data recording of the minimum basic parameters with |

Exhibit B

Harris Corporation, et al. v. Federal Express Corporation, et al.   6:07-CV-1819-28KRS
Frank Koperda          December 2, 2009

Page 1

IN THE UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION


HARRIS CORPORATION,          )
                             )
          Plaintiff,         )
                             )  CIVIL ACTION FILE
     vs.                     )
                             )  NO. 6:07-CV-1819-28KRS
FEDERAL EXPRESS              )
CORPORATION,                 )
                             )
          Defendant.         )
_ _ _ _ _ _ _ _ _ _ _ _ _ _  )


FEDERAL EXPRESS              )
CORPORATION,                 )
                             )
          Plaintiff in       )
          Counterclaim       )
                             )
     vs.                     )
                             )
HARRIS CORPORATION,          )
                             )
          Defendant in       )
          Counterclaim.      )
_ _ _ _ _ _ _ _ _ _ _ _ _ _


          Videotaped Deposition of Frank Koperda,

taken on behalf of the Plaintiff and Defendant in

Counterclaim, Harris Corporation, at 999 Peachtree

Street, Suite 1000, Atlanta, Georgia, commencing on

the 2nd day of December 2009, at 9:10 a.m. before

Angela B. Adams, Certified Court Reporter.

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022 (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.   6:07-CV-1819-28KRS
## Frank Koperda        December 2, 2009

Page 2

1                    A P P E A R A N C E S

2

3    For Harris Corporation:

4            RYAN T. SANTURRI
             CHRISTOPHER F. REGAN
5            Attorneys at Law
             Allen, Dyer, Doppelt, Milbrath
6            & Gilchrist, P.A.
             255 South Orange Avenue
7            Suite 1401
             Orlando, FL  32801
8            (407) 841-2330
             Fax: (407) 841-2343
9            rsanturri@addmg.com

10

11

12   For the Defendant:

13           LAWRENCE K. NODINE
             CHARLEY F. BROWN
14           Attorneys at Law
             Ballard Spahr, LLP
15           999 Peachtree Street
             Suite 1000
16           Atlanta, GA  30309
             (678) 420-9300
17           Fax: (678) 420-9422
             nodinel@ballardspahr.com

18

19

20

21   Also Present:

             DAMON OKORO
22           Videographer

23

24

25

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.      6:07-CV-1819-28KRS
## Frank Koperda      December 2, 2009

Page 3

```
 1                        I N D E X

 2

 3    EXAMINATION OF Frank Koperda                    PAGE

 4        By Mr. Santurri                               4
          By Mr. Nodine                               222
 5        By MR. Santurri                             224

 6

 7

 8

 9

10    PLAINTIFF'S            INITIAL
      EXHIBITS              DESCRIPTION            REFERENCE
11
      No. 80      Non-Infringement Report
12                By Frank Koperda                    17
13    No. 81      Expert Report by
14                Frank Koperda                       61
15    No. 82      US Patent Search Log               75
16    No. 83      US Patent No. 5,065,321           113
17    No. 84      US Patent No. 4,926,331           114
18    No. 85      US Patent No. 4,188,618           122
      No. 86      Email of 8/9/09
19                from David Koperda                 126
20    No. 87      Email of 10/12/09
21                from Scott Anderson                126
      No. 88      NextGen Invoice 262
22                dated 8/23/09                      130
23

24
                        *        *        *
25
```

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.    6:07-CV-1819-28KRS

Frank Koperda         December 2, 2009

Page 4

1               P R O C E E D I N G S

2

3          THE VIDEOGRAPHER:  This is the beginning of

4     Tape Number 1 in the deposition of Frank Koperda

5     in the matter of Harris Corporation versus

6     Federal Express Corporation, Case Number

7     6:07-CV-1819-ORL-28KRS.  Today's date is December

8     2nd, 2009.  The time on the monitor is 9:14 a.m.

9          My name is Damon Okoro, and I am the

10    videographer.  The court reporter is Angela

11    Adams.  We are with Huseby, Incorporated.

12         Counsel, please introduce yourselves after

13    which the court reporter will swear in the

14    witness.

15         MR. SANTURRI:  Ryan Santurri on behalf of

16    Harris Corporation.

17         MR. REGAN:  Chris Regan, Harris.

18         MR. NODINE:  Larry Nodine for FedEx.

19         MR. BROWN:  Charley Brown for Federal

20    Express.

21                   FRANK KOPERDA,

22    having been first duly sworn to state the truth, was

23    examined and testified as follows:

24                   EXAMINATION

25    BY MR. SANTURRI:

c1f092b8-4b77-4744-8456-a036023f0143

PAGES INTENTIONALLY OMITTED

Harris Corporation, et al. v. Federal Express Corporation, et al.     6:07-CV-1819-28KRS
Frank Koperda          December 2, 2009

Page 65

1          Flight data, specifically transmitting

2     flight data is what I defined.

3          Q.    And is that all the flight data that is

4     available in an analog form on the plane, or is that

5     all the flight data that is sampled and stored

6     digitally?

7          A.    I don't believe I have rendered a definition

8     on that.  I defined what I defined and I have written

9     that down.

10         Q.    How would one skilled in the art construe

11    the term data at the time of the invention?

12         A.    I don't know that there could be a single

13    definition of data because it is used in so many

14    different ways across so many different disciplines.

15         Q.    Well, what is the definition of data that

16    you used to render your opinions?

17         A.    I did not independently define data.

18         Q.    What is the process that you used to

19    interpret to render your opinion of invalidity?

20              MR. NODINE:  Objection to form.

21              THE WITNESS:  On Page 18 of my invalidity

22         report, I have a section for claim construction.

23    BY MR. SANTURRI:

24         Q.    Can you generally -- can you explain

25    generally the process that you undertook in order to

c1f092b8-4b77-4744-8456-a036023f0143

PAGES INTENTIONALLY OMITTED

Harris Corporation, et al. v. Federal Express Corporation, et al.   6:07-CV-1819-28KRS
Frank Koperda         December 2, 2009

Page 104

1    you cited disclosed airport-based transceivers?

2        A.   Yes.

3        Q.   And what did you look for in a particular

4    reference to determine whether that reference

5    disclosed an airport-based transceiver?

6        A.   If it was an airport-based transceiver.

7        Q.   Did you find any prior art references that

8    included an airport-based component?

9        A.   Yes.

10       Q.   Which references?

11       A.   I believe that I have identified a variety

12   of the prior art.  So if you want to, we can go

13   through it.  I believe that some of the other prior

14   art is described actually in the specification of the

15   914.

16       Q.   Well, let me turn you to Page E-12 of your

17   invalidity report.

18       A.   (Witness complies with request of counsel.)

19            MR. NODINE:  E-4 you said?

20   BY MR. SANTURRI:

21       Q.   E-12.

22            Well, explain to me what the charts in your

23   appendices are intended to explain to a reader.

24       A.   To show how elements of the claim were met

25   by the specified prior art.

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.      6:07-CV-1819-28KRS
Frank Koperda      December 2, 2009

Page 105

1      Q.      So on the left-hand column, we have elements

2  of the claim; correct?

3      A.      Yes.

4      Q.      And on the right-hand column, is that

5  intended to demonstrate that a particular reference

6  disclosed the element on the left?

7      A.      At times.

8      Q.      Okay.  What other uses was the right-hand

9  column for?

10      A.      Well, for example, I believe that there were

11  times that a reference included it, but I didn't put

12  it in there.  If I wanted to use it, I put it in

13  there.  If I didn't want to use it, I didn't put it in

14  there.

15      Q.      Okay.  If we take a look, for example, at

16  E-12, the first element of -- well, Element A of the

17  Claim 1.

18          Do you see where I'm at?

19      A.      Yes.

20      Q.      And I have the claim language on the left,

21  and I have a blank box on the right.

22      A.      That's correct.

23      Q.      What does the blank box -- what information

24  did you intend to convey with the blank box on this

25  right side?

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022  (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

Page 106

1    A.   For this particular entry that I did not

2  wish to mention anything about 802.11 for that

3  element.

4      Q.   The blank box indicates that you didn't wish

5  to provide information on that reference; is that

6  right?

7      A.   That's correct.

8      Q.   But it doesn't necessarily mean that that

9  reference doesn't disclose the element that is next to

10  it?

11      A.   That's correct.

12      Q.   Okay.

13      A.   If I wanted to use it, I used it.  And at

14  times, I didn't.  For example, when we have

15  combinations, both references may have provided that

16  but I only mention one.

17      Q.   So how can someone reading your report

18  determine whether a box is blank because the reference

19  doesn't contain an element or because you just didn't

20  want to fill in that box?

21      A.   I don't believe you can.

22      Q.   Is it safe to say that the boxes where you

23  have the boxes on the right-hand column that have

24  text, that it is your intention of conveying the

25  message to the reader that whatever you have written

c1f092b8-4b77-4744-8456-a036023f0143

PAGES INTENTIONALLY OMITTED

Harris Corporation, et al. v. Federal Express Corporation, et al.    6:07-CV-1819-28KRS
Frank Koperda      December 2, 2009

Page 133

1    on which ones to select.

2         Q.   So you did, if I understand you right, you

3    did a good bit of prior art searches prior to

4    assembling this report; is that right, assembling the

5    validity report?

6         A.   Yes.

7         Q.   And did you present the results of your

8    prior art searches to counsel for FedEx?

9         A.   Yes.  And you have that.

10        Q.   At that point counsel for FedEx determined

11   which of the references should be used as part of your

12   invalidity report?

13        A.   Yes.

14        Q.   If I could have you turn your attention to

15   Page 34 of your invalidity report.

16        A.   (Witness complies with request of counsel.)

17        Q.   Actually, before I get there, in addition to

18   selecting the references that were used, did counsel

19   for FedEx select the specific combinations that would

20   be used as part of your report for obviousness?

21        A.   Yes.

22        Q.   Page 34, the last full paragraph, you state

23   if trends of the industry can be inferred from the

24   attendance at these sub-group meetings.  Is there any

25   data that you relied on for these conclusions that

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022 (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

PAGES INTENTIONALLY OMITTED

Harris Corporation, et al. v. Federal Express Corporation, et al.   6:07-CV-1819-28KRS
Frank Koperda      December 2, 2009

Page 146

1    invalidity report.

2          A.   (Witness complies with request of counsel.)

3          Q.   And if I understand you right, you have

4    elements -- you have identified the second, the third,

5    and the last element of Claim 1 of the 165.

6               Do you see that?

7          A.   Yes.

8          Q.   And your conclusion underneath those boxes

9    is that the L-1011 does not disclose the second,

10   third, or last element of Claim 1?

11         A.   I see those words.

12         Q.   Can you turn to Appendix C?

13              Specifically, Page C-34.

14              I note in your chart for the L-1011 on the

15   Claim 1 of the 165 patent, the last two elements, you

16   have things filled in on the right side there?

17         A.   Yes.

18         Q.   Even though in your text you say those

19   elements aren't found in the L-1011?

20         A.   Yes.

21         Q.   Can you explain what the text on the right

22   side of the column means in this particular chart?

23         A.   I believe it is that they are found in the

24   L-1011.

25         Q.   Well, to the extent that we have

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022 (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.     6:07-CV-1819-28KRS
Frank Koperda        December 2, 2009

Page 147

1   inconsistencies between the text of your report and
2   the charts, is there one to which we should defer?
3         A.    Yes.
4              Defer in this case to the chart for those
5   elements where I filled that in.
6         Q.    You say in this case.
7              Is that going to be the case all the time
8   that we should always defer to the charts rather than
9   the text?
10        A.    Yeah.  You would have to ask me for any
11  specific problems on conflicts.
12        Q.    So you don't have any way of telling me one
13  way or the other whether or how I should treat
14  discrepancies between the text and the chart, other
15  than that we would have to go through each instance?
16        A.    Yes.
17        Q.    Is there a way that anyone, other than you,
18  would be able to take a look at this chart and
19  determine whether we favor the text or the chart when
20  there are discrepancies between the two?
21        A.    I don't believe in all cases.  I believe
22  that if I wrote that in the chart then the element was
23  found.  I do know that there are several places where
24  I have left something blank that I filled it in on one
25  of the other pages in references so it doesn't alter

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.     6:07-CV-1819-28KRS
Frank Koperda        December 2, 2009

Page 148

1    the opinion; but in this particular case, the opinion

2    stands as it is in there.

3        Q.    So can we just ignore the text and go with

4    your charts?

5        A.    Not at all times, no.

6        Q.    Just sometimes?

7        A.    That's correct.

8            MR. SANTURRI:  We will take a break.

9            MR. NODINE:  I have to make a phone call.

10   I'm going to ask Charley to step in to keep the

11   deposition going.

12           THE VIDEOGRAPHER:  This is the end of Tape

13   Number 4.  It is now 2:51 p.m., and we are now

14   off the record.

15           (Whereupon, there was a break taken in the

16   proceeding.)

17           THE VIDEOGRAPHER:  This is the beginning of

18   Tape Number 5 in the deposition of Frank Koperda.

19   The time is now 3:08 p.m.  We are now back on the

20   record.

21   BY MR. SANTURRI:

22       Q.    Mr. Koperda, can you turn to Page 52 of your

23   report?

24       A.    Which report?

25       Q.    I'm sorry.  Only one of them goes that far,

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022 (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

PAGES INTENTIONALLY OMITTED

Harris Corporation, et al. v. Federal Express Corporation, et al.      6:07-CV-1819-28KRS
Frank Koperda      December 2, 2009

Page 223

1   suggestions, if anything?

2        A.   I did the analysis and the claims, and if it

3   made sense I wrote what I read.

4        Q.   All right.  Did you -- in terms of

5   independent judgment or not, please tell me how you

6   exercised independent judgment.

7        A.   I looked at the material, read it carefully,

8   applied the instructions as required by law, and

9   looked at the claims and the prior art in terms of

10  what I knew and then I wrote the opinions based on

11  that.

12       Q.   Did you consider the input of FedEx counsel?

13       A.   Yes.

14       Q.   Did you accept all of their input?

15       A.   No.

16       Q.   Did you suggest prior art of your own?

17       A.   I did.

18       Q.   Did you suggest combinations of your own?

19       A.   Yes, I did.

20       Q.   Did you -- are any of your opinions based

21  solely on the instructions from FedEx counsel?

22       A.   All of the direction that I have to exercise

23  as having independent opinions on.  If I don't agree,

24  then I can't comply.

25            MR. NODINE:  All right.  I have no further

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022  (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.      6:07-CV-1819-28KRS
Frank Koperda      December 2, 2009

Page 224

1       questions.

2                    FURTHER EXAMINATION

3  BY MR. SANTURRI:

4       Q.   I have a couple of follow-up for you.

5            What suggestions from FedEx's counsel did

6  you reject?

7       A.   Offhand, I don't remember.  I remember that

8  we had lots of different discussions on there and they

9  would talk about, well, does this term mean this, and

10 I would say no, it means this.  I couldn't really tell

11 you which ones.

12           I mean, they brought me in because I have

13 technical skills and they needed to know about 802.11;

14 and based on what I wrote, that certainly appears to

15 be different than some of what the other experts have

16 written.  So I believe that they taught me and I

17 taught them.

18      Q.   So you know that you rejected some of

19 counsel's suggestions, but we don't know which ones?

20      A.   That's correct.

21           If the opinions were not mine, they did not

22 get into this report.

23      Q.   Were there any -- was there any prior art

24 provided by FedEx's counsel that you rejected for

25 purposes of your report?

REPORTED BY: Angela B. Adams, CCR  www.huseby.com
HUSEBY, INC. - 555 North Point Center, E., #403, Alpharetta, GA 30022  (404) 875-0400

c1f092b8-4b77-4744-8456-a036023f0143

Harris Corporation, et al. v. Federal Express Corporation, et al.      6:07-CV-1819-28KRS
Frank Koperda      December 2, 2009

Page 225

1       A.    I really don't recall on there.

2       Q.    What combinations of references did you come

3  up with on your own?

4       A.    I really couldn't tell you on there.  I

5  provided a list of some references and, obviously,

6  some of those references made it into the report and

7  some of them didn't.  They certainly provided me one

8  or some.  There were pre-existing ones when I came on

9  board, and so I looked at that to see if they were

10  reasonable and I think that you handed me one that

11  said Scott suggested this, and I think that might have

12  been one of the ones adopted.

13       Q.    Was there any claim construction suggested

14  by FedEx that you disagreed with?

15       A.    No.

16            The claims construction that ended up here

17  is my opinion.

18       Q.    Did you -- the claim instruction that you

19  offer in your report, was that -- was any of that

20  claim construction your own creation, or was all of it

21  suggested by FedEx?

22       A.    (No answer.)

23       Q.    FedEx's counsel?

24       A.    I believe on one of them, I was instructed

25  to use a particular term of which I agree with if it

c1f092b8-4b77-4744-8456-a036023f0143

Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HARRIS CORPORATION,

     Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

     Defendant.

Case No. 6:07-cv-1819-Orl-28 KRS

FEDERAL EXPRESS CORPORATION,

     Counterclaim Plaintiff,

v.

HARRIS CORPORATION,

     Counterclaim Defendant.

## FEDERAL EXPRESS CORPORATION'S SIXTH SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

     Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff, Federal Express Corporation ("Federal Express"), provides the following supplemental responses to "Plaintiff's First Set of Interrogatories to Defendant," numbered 1 through 10 ("Plaintiff's Interrogatories").

### PRELIMINARY STATEMENT

     Federal Express has not completed its discovery, investigation, research, and trial preparation. The following responses are based upon information and writings presently

897635

available to and located by Federal Express and its attorneys, and such responses are made based on Federal Express's reasonable interpretation of each interrogatory. The answers herein to the interrogatories are given without prejudice to Federal Express's right to produce evidence of any additional facts. Discovery in this matter is ongoing, and Federal Express reserves the right to amend, revise, correct, supplement or clarify any of the responses based on any facts or information obtained at any time subsequent to this response, or if any inadvertent errors, mistakes or omissions should be found, to amend, revise or correct such errors, mistakes or omissions.

Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a witness present and testifying in court, all of which objections and grounds are Expressly reserved and may be interposed at the time of trial.

Federal Express's responses shall not be deemed to constitute admissions that (a) any particular document or thing exists, is relevant, non-privileged, or admissible into evidence, or (b) any statement or characterization in an interrogatory is accurate or complete.

No incidental or implied admissions are intended by the responses herein. The fact that Federal Express has answered or objected to any interrogatory should not be taken as an admission that Federal Express accepts or admits the existence of any "facts" set forth or assumed by such interrogatory. The fact that Federal Express has answered

part or all of any interrogatory is not intended to be, and shall not be construed to be, a waiver by Federal Express of any part of any objection to the interrogatory.

## GENERAL OBJECTIONS

1.    Federal Express objects to every one of Plaintiff's Interrogatories, including but not limited to the "Definitions and Instructions" set forth in Plaintiff's Interrogatories, to the extent they purport to impose requirements that are different from, or in addition to, those imposed by the Federal Rules of Civil Procedure or other applicable rule or statute.  Federal Express further objects to Plaintiff's "Definitions and Instructions" as being overly broad, vague, and ambiguous.

2.    Federal Express objects to Plaintiff's Interrogatories to the extent that they seek or call for information protected by the attorney-client privilege and/or protected by the work-product doctrine, or that are subject to any other applicable privilege.  To the extent that Plaintiff's Interrogatories seek material reflecting attorney-client communications and/or material protected by the work-product doctrine, each such interrogatory is overbroad and seeks information that is beyond the scope of discovery permitted by the Federal Rules of Civil Procedure.  Federal Express will not divulge information that is protected from discovery by the attorney-client privilege or by the work-product doctrine.  Such responses as may hereafter occur shall not include any information protected by such privileges or doctrines, and any inadvertent disclosure of the same shall neither be deemed nor constitute a waiver of such privileges.

3.    Federal Express objects to the extent that Plaintiff's Interrogatories seek information that is confidential, sensitive, proprietary business information, and/or trade

secrets which are specifically excluded from discovery under the applicable Federal Rules of Civil Procedure.  Federal Express shall make responsive information currently in its possession, custody or control available only after a suitable Protective Order or Confidentiality Agreement is in place.

4.      Federal Express objects to the extent that Plaintiff's Interrogatories seek information that is confidential, sensitive, proprietary business information, and/or trade secrets belonging to a third party.  Unless ordered by the Court to do so, Federal Express will not divulge such information to the extent that it is under any obligation to maintain such third-party information in confidence and not to disclose it, unless the third party grants permission to do so.

5.      Federal Express objects to Plaintiff's Interrogatories to the extent that they fail to specify the information they seek with reasonable particularity.

6.      Federal Express objects to Plaintiff's Interrogatories as uncertain, overbroad, and unduly burdensome to the extent that many interrogatories fail to specify any specific time period, and accordingly, are not limited to events relevant to this lawsuit.

7.      Federal Express objects to Plaintiff's Interrogatories to the extent they are compound and actually include multiple interrogatories.

8.      Federal Express will respond to Plaintiff's Interrogatories with information in its possession, custody or control which is reasonably responsive to each interrogatory to the extent not specifically or generally objected to; therefore, Federal Express objects to Plaintiff's Interrogatories to the extent they purport to call for

information not in its actual possession, custody or control. Federal Express objects to Plaintiff's Interrogatories to the extent they purport to require Federal Express to identify and/or otherwise provide information with respect to documents no longer in its possession, custody or control on the grounds that they seek to impose requirements and/or obligations inconsistent with and in addition to the Federal Rules of Civil Procedure which are unduly burdensome and oppressive.

9.     Federal Express objects to each interrogatory to the extent it seeks information that is publicly available and/or as easily obtained by the Federal Express as by the Federal Express, on the grounds that such interrogatories are overly broad and unduly burdensome.

10.     Federal Express objects to each interrogatory to the extent it is premature and seeks information or admissions regarding facts that Federal Express has not yet had an opportunity to investigate through discovery.

11.     Federal Express objects to the definitions of the terms "you" and "your" contained in the "Definitions and Instructions" section of Plaintiff's Interrogatories to the extent that such definitions include Federal Express's "predecessor, successor, division, subsidiary, officer, director, shareholder, employee, or principal thereof, and any attorney or other agent acting on its behalf" on the grounds that such definitions are vague and ambiguous, irrelevant to the underlying litigation, contrary to the common everyday definition of such terms, call for a legal conclusion, call for defendants to make determinations without adequate foundation, and render the interrogatories overbroad, unduly burdensome and oppressive.

12.     Federal Express objects to the definition of the term "document" contained in the "Definitions and Instructions" section of Plaintiff's Interrogatories to the extent it purports to impose obligations beyond those imposed by law, and to the extent that it seeks information that is not reasonably accessible, or would pose an unreasonable and undue annoyance, burden, or expense on Federal Express.

13.     Federal Express objects to the definitions of the terms "identity" or "identify" contained in the "Definitions and Instructions" section of Plaintiff's Interrogatories on the grounds that such definitions are vague, ambiguous, contrary to the common everyday definition of such terms, and render the interrogatories overbroad, unduly burdensome and oppressive.

The foregoing General Objections are incorporated by reference into each of the following individual Responses, as though fully set forth therein, even though not specifically referred to in such Response.  Subject to and without waiving these General Objections, Federal Express sets forth its specific objections and answers to the numbered interrogatories below.

6

## SPECIFIC OBJECTIONS AND ANSWERS TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

INTERROGATORY NO. 1:

Please identify any systems, including the Totally Integrated Technical Aircraft Network (TITAN) system, that assist in establishing wireless communications between an aircraft owned or operated by you, when that aircraft is on the ground, and airport-based ground equipment, and identify, by model name and number, every product of component of each such system.

**Supplemental Response to Interrogatory No. 1:**

**Subject to and without waiving any of the general or specific objections previously stated, Federal Express identifies the Avionica system of components, including a MiniQAR and a SecureLINK router, as a system that establishes wireless communications between a Federal Express aircraft (while on the ground) and ground equipment.  The Avionica system of components includes a MiniQAR (part number 804-0105) and a SecureLINK router (part number 804-0500) installed on select Boeing 727 aircraft, a transceiver located near the ramp where Federal Express aircraft park, one or more connectors between the transceiver and a secure Federal Express network, and a ground-based dedicated server located in the Air Operations Center in Memphis, Tennessee.**

INTERROGATORY NO. 2:

Please identify all aircraft owned or operated by you that contain any component identified in response to Interrogatory No. 1.

7

**Supplemental Response to Interrogatory No. 2:**

Subject to and without waiving any of the general or specific objections previously stated, Federal Express states that the Avionica system of components, including a MiniQAR and a SecureLINK router, are installed on ninety-two (92) Boeing 727 aircraft, as listed in the document marked FX 86,940-967.

INTERROGATORY NO. 3:

Please identify any airport where you own, control or operate ground-based communications equipment used to communicate with or transfer data to or from any aircraft identified in response to Interrogatory No. 2.

**Supplemental Response to Interrogatory No. 3:**

Subject to and without waiving any of the general or specific objections previously stated, Federal Express states that it owns, controls, or operates communications equipment used to transfer data from the select Boeing 727 aircraft identified in response to Interrogatory No. 2, at or near the airports listed below. The select Boeing 727 aircraft only travel to airports in North America, and only transfer select data to ground equipment located at or near the following airports in the United States.

| N | CODE | CITY |
|---|------|------|
| 1 | MEM | Memphis |
| 2 | LAX | Los Angeles |
| 3 | IND | Indianapolis |
| 4 | AFW | Fort Worth |

| N | CODE | CITY |
|---|------|------|
| 5 | ANC | Anchorage |
| 6 | ATL | Atlanta |
| 7 | BOS | Boston |
| 8 | DFW | Dallas, Texas |
| 9 | FLL | Fort Lauderdale |
| 10 | HNL | Honolulu |
| 11 | IAH | Houston |
| 12 | JFK | New York City |
| 13 | LCK | Columbus, Ohio |
| 14 | MSP | Minneapolis |
| 15 | OAK | Oakland, California |
| 16 | ONT | Ontario, California |
| 17 | ORD | Chicago |
| 18 | PDX | Portland, Oregon |
| 19 | PHL | Philadelphia |
| 20 | PHX | Phoenix |
| 21 | SEA | Seattle |
| 22 | SFO | San Francisco |
| 23 | SHV | Shreveport |
| 24 | EWR | Newark, New Jersey |
| 25 | ORF | Norfolk, Virginia |
| 26 | BNA | Nashville, Tennessee |

INTERROGATORY NO. 6:

State the basis for your contention that you do not infringe any of the Patents-in-Suit, including claim charts demonstrating your contention and identify any documents you intend to reply on in support of your contention.

9

<u>Supplemental Response to Interrogatory No. 6</u>:

Subject to and without waiving the foregoing objections, Federal Express contends that it does not infringe any claim of the Harris patents for at least the reasons set forth in the claim charts attached hereto as Exhibit 6.  The claim charts in Exhibit 6 detail the basis for Federal Express's contention that the system of Avionica components installed on select Boeing 727 aircraft (the "FedEx B-727 System") do not infringe any claim of the Harris patents.

Federal Express adopts the Expert Report of Albert D. Helfrick, P.E., Ph.D., and states that it does not infringe any claim of the Harris patents for at least the reasons stated in Dr. Helfrick's Expert Report.

<u>INTERROGATORY NO. 7</u>:

If you contend the Patents-in-Suit are invalid under 35 U.S.C. § 102, state the basis for that contention and identify any documents you intend to reply on in support for that contention.

<u>Supplemental Response to Interrogatory No. 7</u>:

Subject to and without waiving the foregoing objections, Federal Express contends the claims of the Patents-in-Suit are invalid under Section 102 for at least the reasons stated in the Expert Report of Albert D. Helfrick, P.E., Ph.D.

INTERROGATORY NO. 8:

If you contend the Patents-in-Suit are invalid under 35 U.S.C. § 103, state the basis for that contention and identify any documents you intend to reply on in support for that contention.

**Supplemental Response to Interrogatory No. 8:**

**Subject to and without waiving the foregoing objections, Federal Express contends the claims of the Patents-in-Suit are invalid under Section 103 for at least the reasons stated in the Expert Report of Albert D. Helfrick, P.E., Ph.D.**

INTERROGATORY NO. 9:

If you contend the Patents-in-Suit are invalid under 35 U.S.C. § 112, state the basis for that contention and identify any documents you intend to reply on in support for that contention.

**Supplemental Response to Interrogatory No. 7:**

**Subject to and without waiving the foregoing objections, Federal Express contends the claims of the Patents-in-Suit are invalid under Section 112 for at least the reasons stated in the Expert Report of Albert D. Helfrick, P.E., Ph.D.**

INTERROGATORY NO. 10:

Please identify the terms of any claims in the Patents-in-Suit that you contend need court interpretation and provide your proposed interpretation for each term so identified.

**Supplemental Response to Interrogatory No. 10:**

Federal Express objects to this Interrogatory on the grounds and to the extent that Harris has not yet identified any claim terms in dispute, either in response to Federal Express Corporation's Interrogatory No. 15 or otherwise. More specifically, Federal Express objects to Harris's refusal to identify any claim terms in dispute and to its statement, "... to the extent FedEx's expert provides an unsupported and improper opinion on the plain meaning of certain terms, clarification or rejection of these claim terms may be required." (Harris's Supplemental Response to Interrogatory No. 15; served Feb. 12, 2009). Harris's stated position represents an improper attempt to exercise a right to a supplemental expert report without seeking leave of court.

Subject to and without waiving the foregoing objections, Federal Express identifies at least the following claim terms or phrases needing court interpretation, along with Federal Express's proposed interpretation:

| Claim Term or Phrase | Federal Express's Proposed Interpretation |
|---|---|
| "airport based" | A person of ordinary skill in the art would understand the phrase "airport based" to describe items or equipment based or located inside the secured boundary of an airport. |
| "transmitting the accumulated, stored generated aircraft data" | A person of ordinary skill in the art would understand the quoted phrase to describe the transmitting of all the aircraft data that has been accumulated or stored or generated. |
| "transmitting the stored generated aircraft data" | A person of ordinary skill in the art would understand the quoted phrase to describe the transmitting of all the aircraft data that has been stored or generated. |

12

| Claim Term or Phrase | Federal Express's Proposed Interpretation |
|---|---|
| "a transmitter that is operative … to download said flight performance data that has been accumulated and stored by said archival data store during flight" | A person of ordinary skill in the art would understand the quoted phrase to describe a transmitter that downloads all the flight performance data that has been accumulated or stored during the entire flight. |
| "spread spectrum receiver" | A person of ordinary skill in the art would understand the term "receiver" to describe a component having only the capacity to receive. |
| "transmitting a probe beacon to the spread spectrum transceiver of the ground data link unit and selecting a sub-band frequency channel based on receipt of the probe beacon" | Federal Express contends this claim step is indefinite. To the extent a meaning could possibly be discerned from this claim language, together with the written description in the specification, a person of ordinary skill in the art would understand the quoted phrase to describe the steps of [1] a ground-based component transmitting a probe beacon to the transceiver of a ground data link unit located onboard an aircraft, and [2] the same ground-based component selecting a sub-band frequency channel. |

Respectfully submitted this _13_ day of February, 2009.

Respectfully submitted,

_Arthur_

Lawrence K. Nodine, Trial Counsel
Georgia Bar No. 545250
NodineL@BallardSpahr.com
J. Scott Anderson
Georgia Bar No. 017266
Florida Bar No. 115053 (inactive)
AndersonJS@BallardSpahr.com
Charley F. Brown
Georgia Bar No. 086754
BrownCF@BallardSpahr.com
Robin L. Gentry
Georgia Bar No. 289889
GentryR@BallardSpahr.com
Jeffrey H. Brickman
Georgia Bar No. 080432
BrickmanJ@BallardSpahr.com

13

Sumner C. Rosenberg
Georgia Bar No. 614550
RosenbergS@BallardSpahr.com
**Ballard Spahr Andrews & Ingersoll, LLP**
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

Marilyn G. Moran
Florida Bar No. 0163813
mmoran@bakerlaw.com
**Baker & Hostetler, LLP**
P.O. Box 112
Orlando, Florida  32802-0112
Telephone 407-649-4000
Fax 407-841-0168

ATTORNEYS FOR
FEDERAL EXPRESS CORPORATION

895683

# EXHIBIT SIX
## FEDERAL EXPRESS CORPORATION'S SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

The non-infringement positions listed in the tables below are supplemental and, as such, are not intended to replace any positions asserted previously in this action.

The term "FedEx B-727 System" refers to the system of components installed on select Federal Express Boeing 727 aircraft, which includes an Avionica MiniQAR recorder and an Avionica SecureLink router.

| Page | Patents | Claims |
|------|---------|--------|
| 2 | U.S. Patent 6,173,159 | 23 |
| 4 | U.S. Patent 6,154,636 | 1 |
| 6 | U.S. Patent 6,308,044 | 1 |
| 7 | U.S. Patent 6,775,545 | 1 |
| 9 | U.S. Patent 6,108,523 | 1 |
| 11 | U.S. Patent 6,990,319 | 1, 3, 4, 6, 8, 9; 11, 13, 14, 16, 18, 19; 21, 23, 24, 26, 28, 29 |
| 22 | U.S. Patent 6,154,637 | 31, 35-40 |
| 26 | U.S. Patent 6,104,914 | 1, 5, 6, 8-11 |
| 30 | U.S. Patent 6,308,045 C1 | 4; 14; 16 |
| 33 | U.S. Patent 6,047,165 | 1-4; 17-20 |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

## U.S. PATENT 6,173,159

| '159 CLAIM ELEMENT | '159 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 23.     A method for updating flight management files and providing a retrievable record of the flight performance of an aircraft having a unique tail number identifier comprising the steps of: | Claim 23 of the '159 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not update "flight management files" and does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| collecting data within a ground data link unit on the flight performance of the aircraft during flight of the aircraft; | |
| accumulating and storing within a data store of the ground data link unit the flight performance data during flight of the aircraft; | |
| after the aircraft lands at an airport at completion of the flight, downloading the flight performance data that has been accumulated and stored during flight over a spread spectrum communication signal to an airport based spread spectrum transceiver; | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated, stored generated aircraft data from the aircraft to ground equipment. Accordingly, the FedEx B-727 System does not perform the step of "downloading the flight performance data that has been accumulated and stored during the flight … to an airport based spread spectrum transceiver" as recited in this claim step. |
| demodulating the received spread spectrum signal to obtain the flight performance data; | Because less than all the accumulated aircraft data is transmitted, since on or about September 26, 2008, the FedEx B-727 System does not perform the step of "demodulating … to obtain the flight performance data" as recited in this claim step. |
| obtaining updated flight management database files based on the identification of the aircraft by its tail number identifier; | The FedEx B-727 System does not perform the step of "obtaining updated flight management database files" as recited in this claim step because the System is not configured to retrieve or obtain "flight management database files" or any other similar files. |

(Page 2)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '159 CLAIM ELEMENT | '159 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| transmitting flight navigation database files from the airport based spread spectrum transceiver to the ground data link unit over a second spread spectrum communication signal; | The FedEx B-727 System does not perform the step of "transmitting flight navigation database files from the airport based spread spectrum transceiver to the ground data link unit over a second spread spectrum communication signal" as recited in this claim step at least because:  (1) the System does not retrieve or obtain "flight navigation database files" (or "flight management database files") or any other equivalent files; (2) there is no "second spread spectrum communication signal" for transmitting such files; and, (3) there is no "transmitting" of such files from the ground equipment to any onboard equipment. |
| updating a flight management computer located on board the aircraft by transferring the files from ground data link unit to the flight management computer. | The FedEx B-727 System does not perform the step of "updating a flight management computer located on board the aircraft" as recited in this claim step because there is no "flight management computer" onboard any of the Boeing 727 aircraft.  (Depo. of Swanson at p. 90, line 16). |
| | The FedEx B-727 System does not perform the step of "updating a flight management computer located on board the aircraft by transferring the files from ground data link unit to the flight management computer" as recited in this claim step at least because:  (1) no "files" are transmitted from the ground equipment to any onboard equipment; and, (2) there is no "transferring … to the flight management computer" because (a) there is no flight management computer or similar onboard computer, and (b) the System's onboard equipment is not connected to any other onboard computer.  (Depo. of Swanson at p. 87, lines 3–4; p. 90, line 16; p. 92, line 9). |

(Page 3)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

U.S. PATENT 6,154,636

| '636 CLAIM ELEMENT | '636 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 1.    A system of providing a retrievable record of the "Out," "Off," "On," and "In" (OOOI) times of an aircraft comprising: | Claim 1 of the '636 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the "Out," "Off," "On," and "In" (OOOI) times of an aircraft" as recited in this claim. |
| a plurality of sensors located throughout the aircraft for sensing routine aircraft conditions and generating parametric data such as received by a flight data recorder; | |
| a multiplexer connected to the plurality of sensors for receiving the parametric data from the plurality of sensors and multiplexing the parametric data; | |
| a central processing unit positioned within the aircraft and operatively connected to the multiplexer for receiving and demultiplexing a sample of the multiplexed stream of parametric data and demultiplexing the data and calculating the OOOI times of the aircraft; | The FedEx B-727 System does not include "a central processing unit ... for ... calculating the OOOI times of the aircraft" as recited in this claim element.  There is no CPU onboard for calculating OOOI times.  The FedEx B-727 System does not capture OOOI times. (Depo. of Swanson at p. 93, line 11).  The SecureLINK router of the FedEx B-727 System receives a discrete signal from the cabin door (indicating open or closed) and a discrete signal from the aircraft wheels (airborne or on the ground).  These discrete signals do not include any time stamp and are not stored.  (Depo. of Swanson at p. 93, lines 15-24). |
| a data store positioned within the aircraft and connected to the central processing unit and operative to accumulate and store the data relating to the calculated OOOI times of the aircraft; | The FedEx B-727 System does not include "a data store ... operative to accumulate and store the data relating to the calculated OOOI times of the aircraft" as recited in this claim element. The FedEx B-727 System does not accumulate or store data relating to calculated OOOI times. |
| a wideband spread spectrum transceiver coupled to the data store, and comprising a transmitter that is operative to download the data relating to the calculated OOOI times of the aircraft over a wideband spread spectrum communication signal; | The FedEx B-727 System does not include a transceiver "operative to download the data relating to the calculated OOOI times" as recited in this claim element.  The FedEx B-727 System does not accumulate or store data relating to calculated OOOI times. |

(Page 4)

EXHIBIT SIX:   SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '636 CLAIM ELEMENT | '636 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| an airport based wideband spread spectrum receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the data relating to the calculated OOOI times of the aircraft. | The FedEx B-727 System does not include a receiver that "receives ... and demodulates the signal to obtain the data relating to the calculated OOOI times of the aircraft" as recited in this claim element.  The FedEx B-727 System does not accumulate or store data relating to calculated OOOI times. |

(Page 5)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

## U.S. PATENT 6,308,044

| '044 CLAIM ELEMENT | '044 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 1.   A system of providing a retrievable record of the "Out," "Off," "On," and "In" (OOOI) times of an aircraft comprising: | Claim 1 of the '044 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the "Out," "Off," "On," and "In" (OOOI) times of an aircraft" as recited in this claim. |
| a plurality of sensors located throughout the aircraft for sensing routine aircraft conditions and generating parametric data; | |
| a central processing unit positioned within the aircraft for receiving the parametric data and calculating the OOOI times of the aircraft; | The FedEx B-727 System does not include "a central processing unit … for … calculating the OOOI times of the aircraft" as recited in this claim element.  There is no CPU onboard for calculating OOOI times.  The FedEx B-727 System does not capture OOOI times. (Depo. of Swanson at p. 93, line 11).  The SecureLINK router of the FedEx B-727 System receives a discrete signal from the cabin door (indicating open or closed) and a discrete signal from the aircraft wheels (airborne or on the ground).  These discrete signals do not include any time stamp and are not stored.  (Depo. of Swanson at p. 93, lines 15-24). |
| a data store positioned within the aircraft and connected to the central processing unit and operative to accumulate and store the data relating to the calculated OOOI times of the aircraft; and | The FedEx B-727 System does not include "a data store … operative to accumulate and store the data relating to the calculated OOOI times of the aircraft" as recited in this claim element.  The FedEx B-727 System does not accumulate or store data relating to calculated OOOI times. |
| a wideband spread spectrum transceiver coupled to the data store and operative to download the data relating to the calculated OOOI times of the aircraft over a wideband spread spectrum communication signal. | The FedEx B-727 System does not include a transceiver "operative to download the data relating to the calculated OOOI times" as recited in this claim element.  The FedEx B-727 System does not accumulate or store data relating to calculated OOOI times. |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

U.S. PATENT 6,775,545

| '545 CLAIM ELEMENT | '545 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 1.      A method of facilitating compliance with limitations imposed upon wireless communications by governing jurisdictions comprising: | Claim 1 of the '545 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not facilitate "compliance with limitations imposed upon wireless communications by governing jurisdictions" as recited in this claim. |
| transmitting from a fixed wireless router an interrogation beacon on a plurality of preselected radio-frequency (RF) channels containing information representative of communication limitations imposed by a jurisdiction governing the location of the wireless router; | The FedEx B-727 System does not perform the step of "transmitting from a fixed wireless router an interrogation beacon" as recited in this claim step at least because there is no interrogation beacon or equivalent message sent or received by the System in order to make the onboard SecureLINK router adjust or change any of its settings.  (Depo. of Federal Express Corporation (Swanson) at p. 207, lines 6-9). |
| receiving at a mobile RF transceiver unit, upon the mobile RF transceiver unit entering within the transmission range of the wireless router, the interrogation beacon containing the communications limitations information on at least one of said preselected RF channels; | Because there is no interrogation beacon or equivalent message sent, the FedEx B-727 System does not perform the step of "receiving . . . the interrogation beacon." |
| adjusting at the mobile RF transceiver unit transmission parameters applicable to the transmission of data from the mobile RF transceiver unit to the wireless router; | The FedEx B-727 System does not perform the step of "adjusting at the mobile RF transceiver unit" as recited in this claim step at least because:  (1) there is no interrogation beacon or equivalent message sent or received by the System in order to make the onboard SecureLINK router adjust or change any of its settings (depo. of Federal Express Corporation (Swanson) at p. 207, lines 6-9;) and (2) there is no "adjusting" performed because the select Boeing 727 aircraft only transmit data at select airports within the United States, where no adjustment is required.  (Depo. of Swanson at p. 97, lines 22-24). |

(Page 7)

EXHIBIT SIX: SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '545 CLAIM ELEMENT | '545 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| and transmitting data from the mobile RF transceiver unit to the wireless router on a selected channel in accordance with communication limitation [sic] imposed by the jurisdiction governing the location of the wireless router. | The FedEx B-727 System does not perform the step of "transmitting data" as recited in this claim step at least because: (1) there is no interrogation beacon or equivalent message sent by the System in order to make the onboard SecureLINK router adjust or change any of its settings (depo. of Federal Express Corporation (Swanson) at p. 207, lines 6-9,) and (2) there is no step of "transmitting … in accordance with communication limitation[s]" performed because the select Boeing 727 aircraft only transmits data at select airports within the United States, were no adjustment is required.  (Depo. of Swanson at p. 97, lines 22-24). |

(Page 8)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

**U.S. PATENT 6,108,523**

| '523 CLAIM ELEMENT | '523 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 1.     A system for providing a retrievable record of the flight performance of an aircraft comprising: | Claim 1 of the '523 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a ground data link unit as recited in this claim because it does not include a transceiver that is operative to download "the flight performance data that has been accumulated and stored by said archival data store during flight." |
| a)     an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | |
| b)     a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal that comprises a signal in the range of about 2.4 to about 2.5 GHz; | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a transceiver as recited in this claim because the System is not operative to download "the flight performance data that has been accumulated and stored by said archival data store during flight." |
| an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | The FedEx B-727 System does not include a "transceiver ... comprising a receiver that receives ... and demodulates the signal to obtain the flight performance data" as recited in this claim element because the "flight performance data" (as recited above) has not been transmitted. |
| an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores the demodulated flight performance data; | The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates. (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |

(Page 9)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '523 CLAIM ELEMENT | '523 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| an airport based processor coupled to said archival data store for retrieving flight data performance from the airport based archival data store; | The FedEx B-727 System does not include an "airport based processor" as recited in this claim element because there is no processor or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). |
| a remote flight operations control center; and | |
| an airport based communications network operatively connecting said remote flight operations control center and airport based processor to allow the remote flight operations control center to receive and analyze the flight performance data. | The FedEx B-727 System does not include an "airport based communications network" as recited in this claim element at least because: (1) there is not "airport based processor" or equivalent at the airports or ramps where the FedEx B-727 System operates, (depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19;) and (2) the System does not connect to any "airport based communications network" but instead only connects to a proprietary Federal Express network that is separate and distinct from any airport network. |

(Page 10)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

**U.S. PATENT 6,990,319**

The following claims were asserted against Federal Express in the report of Harris Corporation's technical expert (McAlexander):  1, 3, 4, 6, 8, 9; 11, 13, 14, 16, 18, 19; and 21, 23, 24, 26, 28, 29.

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| **1.     A method of providing data from an aircraft comprising:** | Claim 1 of the '319 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "data from an aircraft" as recited in this claim. |
| continuously monitoring the flight performance of the aircraft during an entire flight of the aircraft from at least take-off to landing; | |
| generating aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft; | |
| accumulating and continuously storing the generated aircraft data within a ground data link unit positioned within the aircraft during the entire flight of the aircraft from at least take-off to landing to create an archival store of such aircraft data; | |
| after the aircraft completes its flight and lands at an airport, transmitting the accumulated, stored generated aircraft data from the ground data link unit over a wideband spread spectrum communications signal to a ground based spread spectrum receiver; and | The FedEx B-727 System does not transmit to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.  A transceiver includes both a transmitter and a receiver.  A receiver alone, as recited, is not capable of both transmitting and receiving, which is required in order to establish a connection with another transceiver.  The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated, stored generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the accumulated, stored generated aircraft data from the ground data link unit … to a ground based spread spectrum receiver" as recited in this claim step. |

(Page 11)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| demodulating the received spread spectrum communications signal to obtain the accumulated aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing. | Because less than all the accumulated aircraft data is transmitted, since on or about September 26, 2008, the FedEx B-727 System does not perform the step of "demodulating . . . to obtain the accumulated aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing" as recited in this claim step. |
| 2.  A method according to claim 1, and further comprising the step of transmitting the accumulated generated aircraft data over a frequency hopping spread spectrum communications signal. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 3.  A method according to claim 1, and further comprising the step of transmitting the accumulated generated aircraft data over a direct sequence spread spectrum communications signal. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data over any type of signal to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting . . . over a direct sequence spread spectrum communications signal" as recited in this claim step. |

(Page 12)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 4.  A method according to claim 1, and further comprising the step of transmitting the generated aircraft data automatically after the aircraft has landed. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data automatically or in any way to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System does not transmit any data automatically.  The avSync software instructs the SecureLink router to download selected data stored on the MiniQAR.  (Depo. of Swanson at p. 34, lines 10-22).  Without explicit instructions from the avSync software, the SecureLink router would not transmit any data at all.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the generated aircraft data" automatically or in any way, as recited in this claim step. |
| 5.  A method according to claim 1, and further comprising the step of uploading data to the ground data link unit over a wideband spread spectrum communications signal after the aircraft has landed. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 6.  A method according to claim 1, and further comprising the step of selecting a frequency channel for transmitting the accumulated generated aircraft data from a plurality of available frequency channels. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data over a selected channel or in any way to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "selecting a frequency channel for transmitting the accumulated generated aircraft data" as recited in this claim step. |

(Page 13)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 7.  A method according to claim 6, and further comprising the step of selecting a frequency channel based on communication limitations of a governing jurisdiction in which the ground based spread spectrum receiver is located. | [Not Asserted]<br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 8.  A method according to claim 1, and further comprising the step of transmitting the accumulated generated aircraft data from the ground based spread spectrum transceiver to a flight operations center for further processing. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment. Accordingly, the FedEx B-727 System does not perform the step of "transmitting the accumulated generated aircraft data ... to a flight operations center" as recited in this claim step. |
| 9.  A method according to claim 1, and further comprising the step of storing the generated aircraft data within a memory of the ground data link unit. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 10.  A method according to claim 1, and further comprising the step of transmitting the accumulated generated aircraft data from the ground data link unit to a cellular infrastructure that includes the ground based spread spectrum receiver. | [Not Asserted]<br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| **11.   A method of providing data from an aircraft comprising:** | Claim 11 of the '319 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "data from an aircraft" as recited in this claim. |
| continuously monitoring the flight performance of the aircraft during an entire flight of the aircraft from at least take-off to landing; | |
| generating aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft from at least take-off to landing; | |

(Page 14)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| conveying the generated aircraft data to a ground data link unit positioned within the aircraft; | |
| accumulating and continuously storing the aircraft data within a data store of the ground data link during the entire flight of the aircraft from at least take-off to landing to create an archival store of such aircraft data; | |
| after the aircraft completes its flight and lands at an airport, transmitting the stored generated aircraft data from the ground data link unit over a wideband spread spectrum communications signal to a ground based spread spectrum receiver; and | The FedEx B-727 System does not transmit to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.  A transceiver includes both a transmitter and a receiver, and typically performs both transmit and receive functions in order to establish a connection before any communication can occur.  A receiver alone, as recited, is not capable of both transmitting and receiving, which is required in order to establish a connection with another transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated, stored generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the accumulated, stored generated aircraft data from the ground data link unit … to a ground based spread spectrum receiver" as recited in this claim step. |
| demodulating the received wideband spread spectrum communications signal to obtain the accumulated aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing. | Because less than all the accumulated aircraft data is transmitted, since on or about September 26, 2008, the FedEx B-727 System does not perform the step of "demodulating … to obtain the accumulated aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing" as recited in this claim step. |
| 12.  A method according to claim 11, and further comprising the step of transmitting the generated aircraft data over a frequency hopping spread spectrum communications signal. | [Not Asserted]<br>This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents. |

(Page 15)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 13.  A method according to claim 11, and further comprising the step of transmitting the generated aircraft data over a direct sequence spread spectrum communications signal. | This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data over any type of signal to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting . . . over a direct sequence spread spectrum communications signal" as recited in this claim step. |
| 14.  A method according to claim 11, and further comprising the step of transmitting the generated aircraft data automatically after the aircraft has landed. | This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data automatically or in any way to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the generated aircraft data" automatically or in any way, as recited in this claim step. |
| 15.  A method according to claim 11, and further comprising the step of uploading data to the ground data link unit over a wideband spread spectrum communications signal after the aircraft has landed. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents. |

(Page 16)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 16.  A method according to claim 11, and further comprising the step of selecting a frequency channel for transmitting the generated aircraft data from a plurality of available frequency channels. | This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data over a selected channel or in any way to a ground based spread spectrum receiver, as recited in this claim step. Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "selecting a frequency channel for transmitting the accumulated generated aircraft data" as recited in this claim step. |
| 17.  A method according to claim 16, and further comprising the step of selecting a frequency channel based on communication limitations of a governing jurisdiction in which the ground based spread spectrum receiver is located. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents. |
| 18.  A method according to claim 11, and further comprising the step of transmitting the generated aircraft data from the ground based spread spectrum transceiver to a flight operations center for further processing. | This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the accumulated generated aircraft data ... to a flight operations center" as recited in this claim step. |
| 19.  A method according to claim 11, and further comprising the step of storing the generated aircraft data within a memory of the ground data link unit. | This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents. |
| 20.  A method according to claim 11, and further comprising the step of transmitting the generated aircraft data from the ground data link unit to a cellular infrastructure that includes the ground based spread spectrum receiver. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 11 is not infringed, either literally or under the doctrine of equivalents. |

(Page 17)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| **21.   A method of providing data from an aircraft comprising:** | Claim 21 of the '319 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "data from an aircraft" as recited in this claim. |
| continuously monitoring the flight performance of the aircraft during at least two entire flights of the aircraft from at least takeoff to landing; | |
| generating aircraft data representative of the continuously monitored aircraft flight performance during the at least two entire flights of the aircraft from at least take-off to landing; | |
| accumulating and continuously storing the generated aircraft data within a ground data link unit positioned within the aircraft during the at least two entire flights of the aircraft from at least take-off to landing to create an archival store of such aircraft data; | |
| after the aircraft completes its at least two flights and lands at an airport, transmitting the accumulated, stored generated aircraft data from the ground data link unit over a wideband spread spectrum communications signal to a ground based spread spectrum receiver; and | The FedEx B-727 System does not transmit to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.  A transceiver includes both a transmitter and a receiver, and typically performs both transmit and receive functions in order to establish a connection before any communication can occur.  A receiver alone, as recited, is not capable of both transmitting and receiving, which is required in order to establish a connection with another transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated, stored generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the accumulated, stored generated aircraft data from the ground data link unit … to a ground based spread spectrum receiver" as recited in this claim step. |

(Page 18)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| demodulating the received spread spectrum communications signal to obtain the accumulated aircraft data representative of the flight performance of the aircraft during the at least two entire flights of the aircraft from take-off to landing. | Because less than all the accumulated aircraft data is transmitted, since on or about September 26, 2008, the FedEx B-727 System does not perform the step of "demodulating … to obtain the accumulated aircraft data representative of the flight performance of the aircraft during at least two entire flights of the aircraft from take-off to landing" as recited in this claim step. |
| 22.  A method according to claim 21, and further comprising the step of transmitting the accumulated generated aircraft data over a frequency hopping spread spectrum communications signal. | [Not Asserted] This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. |
| 23.  A method according to claim 21, and further comprising the step of transmitting the accumulated generated aircraft data over a direct sequence spread spectrum communications signal. | This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. The FedEx B-727 System does not transmit data over any type of signal to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver. The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting … over a direct sequence spread spectrum communications signal" as recited in this claim step. |
| 24.  A method according to claim 21, and further comprising the step of transmitting the generated aircraft data automatically after the aircraft has landed. | This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. The FedEx B-727 System does not transmit data automatically or in any way to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver. The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the generated aircraft data from the aircraft to ground equipment. Accordingly, the FedEx B-727 System does not perform the step of "transmitting the generated aircraft data" automatically or in any way, as recited in this claim step. |

(Page 19)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 25.  A method according to claim 21, and further comprising the step of uploading data to the ground data link unit over a wideband spread spectrum communications signal after the aircraft has landed. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. |
| 26.  A method according to claim 21, and further comprising the step of selecting a frequency channel for transmitting the accumulated generated aircraft data from a plurality of available frequency channels. | This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not transmit data over a selected channel or in any way to a ground based spread spectrum receiver, as recited in this claim step.  Instead, the System includes a ground-based transceiver.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "selecting a frequency channel for transmitting the accumulated generated aircraft data" as recited in this claim step. |
| 27.  A method according to claim 26, and further comprising the step of selecting a frequency channel based on communication limitations of a governing jurisdiction in which the ground based spread spectrum receiver is located. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. |
| 28.  A method according to claim 21, and further comprising the step of transmitting the accumulated generated aircraft data from the ground based spread spectrum transceiver to a flight operations center for further processing. | This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "transmitting the accumulated generated aircraft data ... to a flight operations center" as recited in this claim step. |
| 29.  A method according to claim 21, and further comprising the step of storing the generated aircraft data within a memory of the ground data link unit. | This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. |

(Page 20)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '319 CLAIMS | '319 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 30.  A method according to claim 21, and further comprising the step of transmitting the accumulated generated aircraft data from the ground data link unit to a cellular infrastructure that includes the ground based spread spectrum receiver. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 21 is not infringed, either literally or under the doctrine of equivalents. |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

U.S. PATENT 6,154,637

The following claims were asserted against Federal Express in the report of Harris Corporation's technical expert (McAlexander):  31, and 35-40.

| '637 CLAIMS | '637 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| **31.     A method of providing a retrievable record of the flight performance of an aircraft comprising the steps of:** | Claim 31 of the '637 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| collecting data within a ground data link unit on the flight performance of the aircraft during flight of the aircraft; | |
| accumulating and storing within an archival memory of the ground data link unit the flight performance data during flight of the aircraft; | |
| after the aircraft lands at an airport at completion of the flight, downloading the flight performance data that has been accumulated and stored during the flight over one of a plurality of sub-band frequency channels of a spread spectrum communication signal to an airport based spread spectrum transceiver; | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated, stored generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of "downloading the flight performance data that has been accumulated and stored during the flight … to an airport based spread spectrum transceiver" as recited in this claim step. |
| demodulating within the transceiver the received spread spectrum signal to obtain the flight performance data; | Because less than all the accumulated aircraft data is transmitted, since on or about September 26, 2008, the FedEx B-727 System does not perform the step of "demodulating … to obtain the accumulated aircraft data representative of the flight performance of the aircraft during at least two entire flights of the aircraft from take-off to landing" as recited in this claim step. |

(Page 22)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '637 CLAIMS | '637 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| and transmitting a probe beacon to the spread spectrum transceiver of the ground data link unit and selecting a sub-band frequency channel based on receipt of the probe beacon. | The FedEx B-727 System does not perform any of the steps in this claim element after the select portion of aircraft data has already been downloaded and demodulated.<br><br>The ground-based equipment in the FedEx B-727 System does not perform the step of transmitting a probe beacon to the aircraft unit, as recited in this claim step.  Also, the ground-based equipment in the FedEx B-727 System does not perform the step of selecting a channel, as recited in this claim step.  Finally, the ground-based equipment in the FedEx B-727 System does not perform the step of selecting a channel "based on receipt of the probe beacon" as recited in this claim step because there is no probe beacon or equivalent sent to the ground-based equipment. |
| 32.  A method according to claim 31, wherein the step of transmitting the probe beacon comprises the step of transmitting to the aircraft at the airfield an interrogation signal containing data that is representative of the allowable power limits of a spread spectrum communication signal that can be transmitted at the airfield. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents. |
| 33.  A method according to claim 32, and further comprising the step of increasing transmit power when the spread spectrum communication signal is impaired. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents. |
| 34.  A method according to claim 31, and further comprising the step of selecting a sub-band frequency channel based upon geographic location of the airport. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents. |
| 35.  A method according to claim 31, and further comprising the step of selecting desired sub-band frequency channels and dynamically assigning sub-band frequency channels based upon the quality of available channel links between the spread spectrum transceivers. | This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents. |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '637 CLAIMS | '637 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 36.  A method according to claim 31, and further comprising the step of storing the demodulated flight performance data within an airport based archival data store. | This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim step.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |
| 37.  A method according to claim 31, and further comprising the step of retrieving the flight performance data via an airport based server for further processing. | This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not include an "airport based server" as recited in this claim step because there is no processor or server (or equivalent) at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). |
| 38.  A method according to claim 31, wherein the spread spectrum communication signal comprises a direct sequence spread spectrum signal. | This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of downloading over a signal that comprises "a direct sequence spread spectrum signal" as recited in this claim step. |
| 39.  A method according to claim 31, wherein the spread spectrum communication signal comprises a signal within the S band. | This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of downloading over a signal that comprises "a signal within the S band" as recited in this claim step. |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '637 CLAIMS | '637 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 40.  A method according to claim 31, wherein the spread spectrum communication signal comprises a signal within the range of about 2.4 to about 2.5 Ghz. | This dependent claim is not infringed because independent claim 31 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not perform the step of downloading over a signal that comprises "a signal within the range of about 2.4 to about 2.5 Ghz" as recited in this claim step. |

(Page 25)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

**U.S. PATENT 6,104,914**

The following claims were asserted against Federal Express in the report of Harris Corporation's technical expert (McAlexander):  1, 5, 6, 8-11.

| **'914 CLAIM ELEMENT** | **'914 SUPPLEMENTAL NON-INFRINGEMENT POSITION** |
|---|---|
| 1.    A system for providing a retrievable record of the flight performance of an aircraft comprising: | Claim 1 of the '914 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a ground data link unit as recited in this claim because it does not include a transceiver that is operative to download "the flight performance data that has been accumulated and stored by said archival data store during flight." |
| a)    an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | |
| b)    a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download said flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal; and | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a transceiver as recited in this claim because the System is not operative to download "the flight performance data that has been accumulated and stored by said archival data store during flight." |
| an airport based wideband spread spectrum transceiver comprising a receiver that receives ... and demodulates the signal from the aircraft and demodulates the signal to obtain the flight performance data; and | The FedEx B-727 System does not include a "transceiver ... comprising a receiver that receives ... and demodulates the signal to obtain the flight performance data" as recited in this claim element because the "flight performance data" (as recited above) has not been transmitted. |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '914 CLAIM ELEMENT | '914 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| an adaptive power control unit that varies an emitted power level of the wideband spread spectrum communication signal based upon the geographic location of the airport. | The FedEx B-727 System does not include an "adaptive power control unit" as recited in this claim element.  The power transmission level for the System components is fixed.  "It's a factory default."  (Depo. of Federal Express Corporation (Swanson) at p. 128, lines 9-21).  "[I]n the FedEx configuration there would not be any way for it to change power."  (Depo. of Federal Express Corporation (Swanson) at p. 192, lines 12-18). |
| 2.  A system according to claim 1, wherein said airport includes a transmitter that generates an interrogation signal containing data representative of the allowable power limits of a wideband spread spectrum communication signal that can be transmitted, wherein said wideband spread spectrum transceiver of said ground data link unit is responsive to said interrogation signal. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 3.  A system according to claim 1, wherein said adaptive power control unit is operative to increase the transmit power of said wideband spread spectrum transceiver to compensate for impairment in the quality of the wideband spread spectrum communication signal that is received by said airport based spread spectrum transceiver. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 4.  A system according to claim 1, wherein said airport based spread spectrum transceiver is operative to select desired sub-band channels and dynamically assign such sub-band channels based upon the quality of available channel links between said wideband spread spectrum transceivers. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 5.  A system according to claim 1, and further comprising an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |

(Page 27)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '914 CLAIM ELEMENT | '914 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 6. A system according to claim 1, and further comprising an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for subsequent delivery and processing. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not include an "airport based processor" as recited in this claim element because there is no processor or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). |
| 7. A system according to claim 1, and further comprising a remote flight operations center operatively coupled to said airport based server for receiving and processing the retrieved flight performance data. | [Not Asserted]<br><br>This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents. |
| 8. A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a direct sequence spread spectrum signal. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a direct sequence spread spectrum signal" as recited in this claim step. |
| 9. A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal within the S band. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a signal within the S band" as recited in this claim step. |

(Page 28)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '914 CLAIM ELEMENT | '914 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 10.  A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal within the range of about 2.4 to about 2.5 Ghz. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a signal within the range of about 2.4 to about 2.5 Ghz," as recited in this claim step. |
| 11.  A system according to claim 1, wherein said airport based wideband spread spectrum transceiver further comprises a wireless router that couples said wideband spread spectrum transceiver to said airport based archival data store. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System does not include an "airport based archival data store" or a "wireless router" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |

(Page 29)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

U.S. PATENT 6,308,045 C1

| '045 C1 CLAIM ELEMENT (Terms added during reexamination are shown in bold, italics.) | '045 C1 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 4.      A system for providing a retrievable record of the flight performance of an aircraft comprising: | Claim 4 of the '045 C1 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a ground data link unit as recited in this claim because it does not include a "transmitter that is operative to download the flight performance data that has been accumulated and stored by said archival data store during the entire flight." |
| a)      an archival data store operative to accumulate and store flight performance data during *the entire* flight of the aircraft, and | |
| b)      a direct sequence spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative to download the flight performance data that has been accumulated and stored by said archival data store during *the entire* flight over a direct sequence spread spectrum communication signal; | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a "transmitter that is operative to download the flight performance data that has been accumulated and stored by said archival data store during the entire flight" as recited in this claim. |
| a ground based spread spectrum transceiver comprising a receiver that receives the direct sequence spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | The FedEx B-727 System does not include a "transceiver ... comprising a receiver that receives ... and demodulates the signal to obtain the flight performance data" as recited in this claim element because the "flight performance data" (as recited above) has not been transmitted. |
| a ground based archival data store coupled to said ground based spread spectrum transceiver that receives and stores said flight performance data; and | The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates. (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '045 C1 CLAIM ELEMENT<br>(Terms added during reexamination are shown in bold, italics.) | '045 C1 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| a ground based processor coupled to said archival data store for retrieving flight performance data from the ground based archival data store for further processing, *wherein said direct sequence spread spectrum transceiver is operative to download the flight performance data after the aircraft completes its flight and lands at an airport.* | The FedEx B-727 System does not include an "airport based processor" as recited in this claim element because there is no processor or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). <br><br> The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a "transceiver … operative to download the flight performance data" as recited in this claim. |
| 14.      A method of providing a retrievable record of the flight performance of an aircraft comprising the steps of: | Claim 14 of the '045 C1 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| acquiring flight performance data of an aircraft during *the entire* flight of the aircraft; | |
| accumulating and storing within an archival memory of a ground data link unit the flight performance data during *the entire* flight of the aircraft; | |
| downloading the flight performance data that has been accumulated and stored within the archival data store during the *entire* flight over a direct sequence spread spectrum communication signal to a ground based spread spectrum receiver *after the aircraft has completed its flight and landed at an airport;* | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not perform the step of "downloading the flight performance data that has been accumulated and stored by said archival data store during the entire flight" as recited in this claim. |
| demodulating the received spread spectrum signal to obtain the flight performance data; | The FedEx B-727 System does not perform the step of "demodulating … to obtain the flight performance data" as recited in this claim step because the "flight performance data" (as recited above) has not been transmitted. |

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '045 C1 CLAIM ELEMENT<br>(Terms added during reexamination are shown in bold, italics.) | '045 C1 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| storing the demodulated flight performance data within a ground based archival data storage; and | The FedEx B-727 System does not include an "airport based archival data storage" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates. (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |
| retrieving the flight performance data via a ground based processor for further processing. | The FedEx B-727 System does not include an "airport based processor" as recited in this claim element because there is no processor or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). |
| 16.     A method of providing a retrievable record of the flight performance of an aircraft comprising the steps of: | Claim 16 of the '045 C1 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| acquiring flight performance data of an aircraft during *the entire* flight of the aircraft; | |
| accumulating and storing within a memory of a ground data link unit the flight performance data during *the entire* flight of the aircraft; | |
| downloading the flight performance data that has been accumulated and stored within the data store during the flight over a direct sequence spread spectrum communication signal to a ground based spread spectrum receiver *after the aircraft has completed its flight and landed at an airport;* and | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not perform the step of "downloading the flight performance data that has been accumulated and stored by said archival data store during the entire flight" as recited in this claim. |
| demodulating the received spread spectrum signal to obtain the flight performance data. | The FedEx B-727 System does not perform the step of "demodulating … to obtain the flight performance data" as recited in this claim because the "flight performance data" (as recited above) has not been transmitted. |

(Page 32)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

**U.S. PATENT 6,047,165**

The following claims were asserted against Federal Express in the report of Harris Corporation's technical expert (McAlexander):  1-4, 17-20.

| '165 CLAIM ELEMENT | '165 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 1.     A system for providing a retrievable record of the flight performance of an aircraft comprising: | Claim 1 of the '165 patent is not infringed, either literally or under the doctrine of equivalents, because the FedEx B-727 System does not provide "a retrievable record of the flight performance of an aircraft" as recited in this claim. |
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a ground data link unit as recited in this claim because it does not include a "transmitter that is operative … to download the flight performance data that has been accumulated and stored by said archival data store during flight." |
| a)     an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | |
| b)     a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal; | The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not include a "transmitter that is operative … to download the flight performance data that has been accumulated and stored by said archival data store during flight" as recited in this claim. |
| an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | The FedEx B-727 System does not include a "transceiver … comprising a receiver that receives … and demodulates the signal to obtain the flight performance data" as recited in this claim element because the "flight performance data" (as recited above) has not been transmitted. |
| an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data; and | The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates. (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |

(Page 33)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '165 CLAIM ELEMENT | '165 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for further processing. | The FedEx B-727 System does not include an "airport based processor" as recited in this claim element because there is no processor or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). |
| 2.     A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a direct sequence spread spectrum communication signal. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a direct sequence spread spectrum signal" as recited in this claim step. |
| 3.     A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal within an S band. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a signal within the S band" as recited in this claim step. |
| 4.     A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal in the range of about 2.4 to about 2.5 GHz. | This dependent claim is not infringed because independent claim 1 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a signal within the range of about 2.4 to about 2.5 Ghz" as recited in this claim step. |
| 17.     A method of providing a retrievable record of the flight performance of an aircraft comprising the steps of: | |

(Page 34)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '165 CLAIM ELEMENT | '165 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| acquiring flight performance data of an aircraft during flight of the aircraft; | |
| accumulating and storing within an archival memory of a ground data link unit the flight performance data during flight of the aircraft; | |
| after the aircraft lands at an airport at completion of the flight, downloading the flight performance data that has been accumulated and stored within the archival data store during the flight over a wideband spread spectrum communication signal to an airport based spread spectrum receiver; | The FedEx B-727 System does not transmit to an "airport based spread spectrum receiver" as recited in this claim step.  Instead, the System includes a transceiver.  By definition, a transceiver includes both a transmitter and a receiver.  A receiver alone, as recited, is not capable of both transmitting and receiving, which is required in order to establish a connection with another transceiver.

The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not perform the step of "downloading the flight performance data that has been accumulated and stored within the archival data store during the flight" as recited in this claim. |
| demodulating the received spread spectrum signal to obtain the flight performance data; | The FedEx B-727 System does not perform the step of "demodulating … to obtain the flight performance data" as recited in this claim step because the "flight performance data" (as recited above) has not been transmitted. |
| storing the demodulated flight performance data within an airport based archival data storage; and | The FedEx B-727 System does not include an "airport based archival data store" as recited in this claim element.  There is no archival data store or equivalent at the airports or ramps where the FedEx B-727 System operates. (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 15-17). |
| retrieving the flight performance data via an airport based processor for further processing. | The FedEx B-727 System does not include an "airport based processor" as recited in this claim element because there is no processor or equivalent at the airports or ramps where the FedEx B-727 System operates.  (Depo. of Federal Express Corporation (Swanson) at p. 205, lines 18-19). |

(Page 35)

EXHIBIT SIX:  SUPPLEMENTAL NON-INFRINGEMENT POSITIONS

| '165 CLAIM ELEMENT | '165 SUPPLEMENTAL NON-INFRINGEMENT POSITION |
|---|---|
| 18.    A method according to claim 17, wherein the wideband spread spectrum communication signal comprises a direct sequence spread spectrum signal. | This dependent claim is not infringed because independent claim 17 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a direct sequence spread spectrum signal" as recited in this claim step. |
| 19.    A method according to claim 17, wherein the wideband spread spectrum communication signal comprises a signal within an S band. | This dependent claim is not infringed because independent claim 17 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a signal within the S band" as recited in this claim step. |
| 20.    A method according to claim 17, wherein the wideband spread spectrum communication signal comprises a signal within a range of about 2.4 to about 2.5 GHz. | This dependent claim is not infringed because independent claim 17 is not infringed, either literally or under the doctrine of equivalents.<br><br>The FedEx B-727 System (using the version of AvSync software installed on or about September 26, 2008) does not transmit all the accumulated generated aircraft data from the aircraft to ground equipment.  Accordingly, the FedEx B-727 System does not download over a signal that comprises "a signal within the range of about 2.4 to about 2.5 Ghz" as recited in this claim step. |

(Page 36)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February __/3__, 2009, I served a true and correct copy of the foregoing, FEDERAL EXPRESS CORPORATION'S SIXTH SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, by first-class U.S. Mail to:

> Ryan T. Santurri, Esq.
> Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
> P.O. Box 3791
> Orlando, Florida 32802-3791
> Telephone: 407-841-2330
> Fax: 407-841-2343

J. Scott Anderson
**Ballard Spahr Andrews & Ingersoll, LLP**
999 Peachtree Street, Suite 1000
Atlanta, Georgia 30309
Telephone 678-420-9300
Fax 678-420-9301

ATTORNEYS FOR
FEDERAL EXPRESS CORPORATION