IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,
a Delaware corporation,

      Plaintiff,

vs.                                             Case No. 6:07-CV-1819-ORL-28 KRS

FEDERAL EXPRESS
CORPORATION, a Delaware
corporation,

      Defendant.
_____/

FEDERAL EXPRESS
CORPORATION,

      Counter-Plaintiff,

vs.

HARRIS CORPORATION,

      Counter-Defendant.
_____/

PLAINTIFF'S MOTION AND MEMORANDUM FOR
SUMMARY JUDGMENT AS TO INFRINGEMENT

TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND .................................................................................................. 2

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT OF PATENT

        INFRINGEMENT ................................................................................................ 3

IV.     THE ACCUSED SYSTEM .................................................................................. 4

V.      THE PENDING CLAIM CONSTRUCTION MOTION ...................................... 7

VI.     INFRINGEMENT BY THE ACCUSED FEDEX SYSTEM ................................ 8

        A.     The FedEx B727 System Infringes Claims 1-4 of U.S. Patent No. 6,047,165

        (the "'165 Patent"). .................................................................................................. 8

        B.     The FedEx B727 System Infringes Claims 31 and Claims 38-40 of U.S.

        Patent No. 6,154,637 (the "'637 Patent"). ............................................................. 13

        C.     The FedEx B727 System Infringes Claims 1, 3-6 and 9 of U.S. Patent No.

        6,990,319 (the "'319 Patent"). ............................................................................... 16

        D.     The FedEx B727 System Infringes Claims 1, 2, 4 and 5 of U.S. Patent No.

        7,426,387 (the "'387 Patent"). ............................................................................... 22

VII.    CONCLUSION .................................................................................................. 25

TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) ............... 21

*Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) ..................... 3

*Cybor Corp. v FAS Techs, Inc.,* 138 F.3d 1448 (Fed. Cir. 1998)(en banc) ....................... 4

*D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570 (Fed. Cir. 1985) ............................................. 4

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371 (Fed. Cir. 2001). ............ 12

*Johnson Worldwide Associates, Inc. v Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) ......... 4

*Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970 (Fed. Cir. 1986) .......................................... 8

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370

(1996) .................................................................................................................................. 4

*Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281 (Fed. Cir. 2000) ............. 21

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................. 4, 21

*Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089 (Fed. Cir. 1997) ............................... 3

*Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063 (Fed. Cir. 2009) ......... 12

*Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870 (Fed. Cir. 2004) ............................ 21

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357 (Fed. Cir.

2002) ................................................................................................................................... 4

*United States Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554 (Fed. Cir. 1997) ................ 4

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996) .............................. 4

I.    INTRODUCTION

Harris Corporation ("Harris") owns U.S. Patent No. 6,047,165 and a number of continuations, which form part of Harris' Ground Data Link ("GDL") portfolio.  In this litigation, Harris asserts that FedEx infringes eight Patents-in-Suit.[1]  There is no factual dispute as to the components that were installed in FedEx's B727 fleet, or how the accused system operated.  The undisputed evidence presented herein, including testimony from FedEx's own technical experts, leads to but one conclusion: the accused FedEx system, as it was installed and operated for several years, infringes the patents-in-suit.

As the suit progressed, FedEx installed a software option in an effort to avoid further infringement.  This purported design-around, created by a third-party vendor, was only in use for a short period, and is largely moot at this point.  Just as the case began to move toward trial, FedEx removed necessary components from its B727 aircraft, permanently disabling the accused system.  As a result, there appears to be no more claim for injunctive relief and the alleged design-around has no effect on damages--FedEx infringed the patents by using the original system, and damages were not increased or decreased because of the short-lived software change.   Whether the design-around effectively avoids infringement may be an interesting intellectual exercise, and is certainly one upon which the parties do not agree, but it has no effect on the *legal issues* in this litigation.   Therefore, this Motion focuses on the issues of infringement by the

---

[1] The Patents-in-Suit are: US Patent No. 6,047,165 (the " '165 Patent"); US Patent No. 6,308,045 (the " '045 Patent"); US Patent No. 6,104,914 (the " '914 Patent"); US Patent No. 6,154,637 (the " '637 Patent"); US Patent No. 6,990,319 (the " '319 Patent"); US Patent No. 7,426,387 (the "'387 Patent"); US Patent No. 7,428,412 (the " '412 Patent"); and US Patent No. 7,444,146 (the " '146 Patent").   FedEx has pled declaratory judgment claims against these Patents-in-Suit, plus the following five additional patents: US Patent No. 6,108,523 (the " '523 Patent"); US Patent No. 6,154,636 (the " '636 Patent"); US Patent No. 6,173,159 (the " '159 Patent"); US Patent No. 6,308,044 (the " '044 Patent"); US Patent No. 6,775,545 (the " '545 Patent").

accused system owned and operated by FedEx at the time this litigation was filed.

Accordingly, Harris moves the Court to grant summary judgment on the issues of infringement of the FedEx accused system, as it existed prior to September 26, 2008, with respect to select claims of the '165, '637, '319 and '387 Patents, for the reasons set forth in more detail below.

II.    BACKGROUND

Generally, the subject matter of the Patents-in-Suit can be described as storage of flight data on the aircraft and subsequent transmission of the flight data to a ground-based receiver using radio frequency communications after the flight.   Transducers (*i.e.*, sensors) throughout the aircraft are used to monitor various aspects of the aircraft and its flight. (Ex. 1, '165 Patent, 1:21-1:28.[2])  Digital data representative of flight performance can be generated based on these transducer inputs.  ('165 Patent, 1:21-1:28.)   Many people are familiar with the term "black box," which can accumulate and store critical data for analyzing an aircraft accident.  ('165 Patent, 1:28-1:34.)  Aside from storing data for accident investigation, the Federal Aviation Association ("FAA") has suggested that flight safety could be improved if airlines implement a Flight Operational Quality Assurance ("FOQA") program, which would involve air carriers analyzing flight data on a regular basis.  ('165 Patent, 1:35-1:42.)  In order to facilitate the frequent review of flight data, the industry needed a system of transferring flight performance data from the plane to a computer system for further storage and analysis.  One such system developed for this application is now commonly referred to as GDL, and is the subject of the

---

[2] Referenced exhibits are attached to Harris' attached to the Statement of Undisputed Facts ("SOF") filed concurrently with this Motion.  The '165 Patent is attached at Exhibit 1 of the Statement of Undisputed Facts.

Patents-in-Suit.

A very high level description of GDL is a system that includes the storage of flight data in a storage device onboard the aircraft, and the subsequent transmission of the data to a ground-based receiver using radio frequency ("RF") communications after flight.  ('165 Patent, 2:9-2:18; 26-28.)  A GDL system can be coupled to an aircraft's digital flight data recording system to acquire data representative of flight performance.  ('165 Patent, 2:9-2:21.)  A GDL unit can also enable the download of flight performance data via a bi-directional RF communication link using the unlicensed 2.4-2.5 GHz S-band.  ('165 Patent, 2:26-2:34.)  Harris provided a more detailed explanation of the background of the inventions in its Motion for Claim Construction (Dkt. 115), and invites the Court's attention to said explanation for more detail.[3]

III.  **LEGAL   STANDARD   FOR   SUMMARY   JUDGMENT   OF   PATENT INFRINGEMENT**

The grant of Summary Judgment pursuant to Rule 56, Federal Rules of Civil Procedure, is "appropriate in a patent case where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."  *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990); *see also Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092-93 (Fed. Cir. 1997).  Patent infringement analysis requires two steps:  first the Court must determine the "scope and meaning of the patent claims asserted," then the Court must compare "the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device."  *Cybor*

---

[3] In its responsive brief, FedEx did not dispute Harris' explanation of the background.  *See* Dkt. 119, p. 1 of the brief.

*Corp. v FAS Techs, Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998)(en banc); *Johnson Worldwide Associates, Inc. v Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999) .

Claim construction is strictly a legal issue to be resolved by the Court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). As a general rule, words in a claim are given their ordinary and customary meaning, unless clearly defined otherwise in the specifications. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). However, a Court is not required to construe claim terms that are not reasonably disputed. *United States Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Once the asserted claims have been properly construed, the Court must determine whether each and every limitation of a claim is present, either literally or equivalently, in the accused device to find direct infringement. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002). Comparison of a properly construed claim with the uncontested description of an accused device can reflect an absence of material fact such that summary judgment is appropriate. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985). At this stage of the litigation, the parties have fully briefed claim construction issues, as addressed more fully below.

IV.   THE ACCUSED SYSTEM

The accused system, generally, was a system that acquired and stored flight performance data on FedEx's B727 aircraft,[4] then subsequently transmitted the data to a

---

[4] The accused system was only installed on the 727 fleet, a fleet that is being phased out. Other FedEx aircraft were equipped with properly licensed systems.

dedicated server at the Memphis airport.[5]  The accused system included the flight data acquisition system on FedEx B727s, namely the digital flight data recorder ("DFDR"), the digital flight data acquisition unit ("DFDAU"), and the digital flight data bus connecting the DFDR and DFDAU.  (SOF¶10.[6])  The accused system also included an Avionica mini quick access recorder ("MiniQAR") connected to the digital flight data bus and an Avionica SecureLink router, a wireless router which included an IEEE 802.11 compliant wireless transceiver.  (SOF¶12, 13, 18.)  The Avionica MiniQAR acquired flight performance data from the digital flight recorder bus, ultimately storing a mirror image of the data stored on the B727's DFDR.  (SOF¶15-16.)

FedEx installed Cisco IEEE 802.11 access points at FedEx ramps at a number of airports, including ramps at approximately 26 U.S. airports.  (SOF¶20).  These access points are linked to the FedEx network, which allowed communication between FedEx's B727 aircraft and the dedicated server at FedEx's Air Operations Center at the Memphis International Airport.  (SOF¶22-24.)  When a FedEx B727 with the accused system parked at an airport gate and opened the main cabin door, the SecureLink router powered up and attempted to establish a connection with the FedEx network via the access points installed at FedEx ramps.  (SOF¶28.)  Once the SecureLink router and the access point established a connection, the SecureLink router automatically communicated with AvSync Software, which was installed on the dedicated server.  (SOF¶32-34.)  The AvSync Software "controls the transfer" of flight performance data from the aircraft to storage on FedEx's dedicated server.  (SOF¶24.)  Assuming certain conditions were met,

---

[5] The accused system is now disabled and the Avionica SecureLink Router and MiniQAR have been removed from active FedEx B727 aircraft.  Accordingly, the system is described in the past tense.

[6] "SOF¶__" denotes the specific paragraph(s) of Harris' Statement of Undisputed Facts, filed concurrent with this motion, which sets forth the undisputed facts and related evidence relied upon by Harris.

the AvSync software coordinated the transfer of data between the MiniQAR on the aircraft and FedEx's dedicated server. (SOF¶33.) The transfer of data occurred using the SecureLink router onboard the aircraft and the Cisco access point at the airport where the particular aircraft was located. (SOF¶33.) From the initial date of operation until approximately September 26, 2008, the AvSync software on FedEx's system facilitated the download of a complete copy of the data stored on the MiniQAR (i.e. all the data) from the aircraft to FedEx's airport based server. (SOF¶42.)

On September 26, 2008, a "block-skipping option" was added to the AvSync software by third party vendor Avionica, Inc., seemingly in an attempt to design around infringement.[7] (SOF¶43, 45.) The option allowed FedEx to choose whether to switch to an alternative download function, attempting to exclude from download "unnecessary" flight data[8] from the middle of the data compiled on the aircraft. (SOF¶46, 47; *see also* Dkt. 119, p. 1.) When the "block skipping" option was enabled, the FedEx AvSync software analyzed the data and excluded less than five minutes of the "unnecessary" data from the middle of the flight from the downloaded file. (SOF¶47-48.) Although the AvSync software was modified to provide this option on September 26, 2008, the physical components for the accused system were unchanged. (SOF¶44.) There is no information available as to how often each of the selectable modes of operation were used from the date of change until the date when the systems were removed.

---

[7] Interestingly, during the initial program logon, there is a warning regarding disabling the "block skipping" option: "Please note that disabling this option may result in violation of legally held patents for transferring complete flight data from aircraft across a wireless interface. By disabling this option you indemnify Avionica, Inc., from any legal action which may result." (SOF¶ 48.)

[8] The Avionica AvSync Software "Help" file describes "Block Skipping" as "a method used in [M]iniQAR downloading to remove unnecessary flight data…[s]ince often the most interesting data surrounds the takeoff and landing points of a given flight, an algorithm is used internally to remove only data from the middle…when little activity of interest is likely to be occurring." (Ex. 16.)

Only a couple months after the AvSync "block skipping" option was added, FedEx engineer Robert Swanson submitted a proposal to remove the Avionica SecureLink and MiniQAR from its B727 fleet. (SOF¶49.)  In April 2009, FedEx issued a revised engineering order providing for the removal of the Avionica SecureLink and MiniQAR from FedEx's B727 aircraft.  (SOF¶50.)  By June 29, 2009, these Avionica components had been removed from all FedEx B727 aircraft that are still in service, rendering the accused system incomplete and inoperable.  (SOF¶51.)  The accused system is no longer used or operable and the evidence provided suggests no current infringement and no plans to engage in infringement in the future--the system was designed specifically for the B727 fleet and that fleet is being retired.  (SOF¶51-52.) Accordingly, this Motion addresses the infringement by FedEx prior to September 26, 2008, the date on which FedEx's third party vendor implemented its optional block skipping software.

## V.    THE PENDING CLAIM CONSTRUCTION MOTION

On December 7, 2008, Harris filed a Motion for Claim Construction for a number of terms for which FedEx disputed the meaning.  (Dkt. 115.)  In its response, FedEx accepted Harris' definitions for some of the terms it initially disputed.  (Dkt. 119, p. 1, n. 1.)  Moreover, the majority of FedEx's response to the Motion for Claim Construction advocated the position that all of the claims require "all the flight data that has been accumulated and stored during the entire flight be transmitted…" (Dkt. 119, p. 3.)  While Harris disagrees with this position, for the purpose of determining infringement, it is unnecessary for the Court to decide this issue.  FedEx's position seems to be focused on whether the "block skipping" option, available for only a few months, avoided

7

infringement.  This Motion is directed to infringement by the pre-September 26, 2008 version of FedEx's accused system.  It is undisputed that the accused FedEx system, as it operated exclusively prior to September 26, 2008, downloaded *all* data from the Avionica MiniQAR to FedEx's AvSync server.  (SOF¶42.)  Accordingly, the disputed claim term, whether all (or less than all) data must be transmitted or downloaded, has no bearing on issues of infringement raised in this motion.  Other than terms related to the "data" transmitted or downloaded, the only terms in dispute from the pending Motion for Claim Construction are the terms "airport based" and "ground based."  These terms will be addressed herein where relevant to the issues presented.

VI.    INFRINGEMENT BY THE ACCUSED FEDEX SYSTEM

     A.     The FedEx B727 System Infringes Claims 1-4 of U.S. Patent No. 6,047,165 (the "'165 Patent").[9]

The '165 Patent is titled "Wireless, Frequency-Agile Spread Spectrum Ground Link-Based Aircraft Data Communication System."  As the United States Patent and Trademark Office ("USPTO") records reflect, Harris is the assignee and sole owner of the '165 Patent.  (SOF¶1.)  A Request for *Ex Parte* Reexamination was filed on March 30, 2007, and the Reexamination Certificate issued on June 9, 2009.  (SOF¶1.) Based on the undisputed description of the FedEx accused system as it existed prior to September 26, 2008, FedEx infringed at least Claims 1-4 of the '165 Patent, as described in more detail below.[10]

---

[9]  In light of page limitations, Harris presents a select number of claims for the Court's consideration of infringement herein.  Harris does not intend to waive the right to present all asserted claims at trial.

[10] Although the Reexam certificate for the '165 Patent issued after September 26, 2008, the reexamination claims are unchanged from the originally issued claims.  Therefore, the claims of the '165 Patent have "continuous effect from the date of the original patent," and infringement can occur prior to the issuance of the reexamination certificate. *See Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 977 (Fed. Cir. 1986).

FedEx concedes that it installed Avionica MiniQARs and SecureLink routers on 92 of its B727 aircraft.  (SOF¶12, 13.)  The MiniQARs installed in FedEx's B727 fleet were connected to the digital flight data bus, allowing the MiniQAR to function as an archival data store, accumulating and storing the flight performance data also stored on the digital flight data recorder.  (SOF¶12, 26.)  There is no dispute that the Avionica SecureLink router is an 802.11 router with a wideband spread spectrum transceiver, and that SecureLink routers were coupled to MiniQARs onboard FedEx B727 aircraft. (SOF¶13, 18.)  FedEx admits that, in FedEx B727s equipped with the accused system, the SecureLink router was operative to download flight performance data after the completion of flight.  (SOF¶28, 33-34.)  FedEx's airport based access points, which are installed at 26 U.S. airports, include a wideband spread spectrum transceiver connected via the FedEx network to an airport based dedicated server at the Memphis International Airport.  (SOF¶20, 22-23, 35-36.)  FedEx admits that, prior to September 26, 2008, airport based spread spectrum transceivers in FedEx access points received and demodulated *all* flight performance data from MiniQARs aboard FedEx B727s. (SOF¶38, 42.)  This flight performance data was subsequently received and stored in FedEx's airport based archival data store (within the dedicated server).  (SOF¶37, 38.) FedEx's dedicated server had airport based processors coupled to the archival data store to allow for further processing.  (SOF¶39.)  When compared to the language of Claim 1, it cannot be disputed that the pre-September 26, 2008 FedEx accused system infringed Claim 1:

| 1. A system for providing a retrievable record of the flight performance of an aircraft comprising: | The FedEx B727 system, using the Avionica SecureLink Router and the Avionica MiniQAR, provides a retrievable record of the flight performance of an aircraft. |
|---|---|
| a ground data link unit that obtains flight performance data representative of aircraft flight performance during flight of the aircraft, said ground data link unit comprising: | A ground data link unit in the FedEx B727 system, comprised of the combination of the Avionica MiniQAR and Avionica SecureLink router, obtains flight performance data during flight of the FedEx B727 aircraft.  (*See* SOF¶11, 12, 13, 15, 16, 27.) |
| a) an archival data store operative to accumulate and store flight performance data during flight of the aircraft, and | The Avionica MiniQAR is an archival data store operative to accumulate and store flight performance data during flight of the aircraft.  (*See* SOF¶12, 15, 26.) |
| b) a wideband spread spectrum transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal; | The Avionica SecureLink Router is a wideband spread spectrum transceiver coupled to said archival data store (i.e. the MiniQAR), and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to download the flight performance data that has been accumulated and stored by said archival data store during flight over a wideband spread spectrum communication signal.  (*See* SOF¶13, 18, 28, 33.) |
| an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | FedEx airport based access points include an airport based wideband spread spectrum transceiver comprising a receiver that receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data.  (*See* SOF¶20, 35, 38.) |
| an airport based archival data store coupled to said airport based wideband spread spectrum transceiver that receives and stores said flight performance data; and | The FedEx dedicated server is an airport based archival data store coupled to said airport based wideband spread spectrum transceiver (via the FedEx network) that receives and stores said flight performance data.  (*See* SOF¶23, 36-38.) |
| an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for further processing. | The FedEx dedicated server includes an airport based processor coupled to said archival data store for retrieving flight performance data from the airport based archival data store for further processing. (*See* SOF¶39.) |

In addition to the accused system infringing Claim 1 of the '165 Patent, there is no material fact in dispute with respect to infringement of dependent claims 2-4 of the '165 Patent.  The Avionica SecureLink router operates using a direct sequence spread spectrum communication signal.  (SOF¶18.)  The specific frequency range used by the Avionica SecureLink router is 2.4 Ghz, which falls within the S band segment.  (*See* SOF¶19.)  Accordingly, Claims 2-4 of the '165 Patent were infringed by FedEx as follows:

| | |
|---|---|
| 2. A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a direct sequence spread spectrum communication signal. | The FedEx accused system according to claim 1, wherein the wideband spread spectrum communication signal comprises a direct sequence spread spectrum communication signal.  (*See* SOF¶18.) |
| 3. A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal within an S band. | The FedEx accused system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal within an S band.  (*See* SOF¶19.) |
| 4. A system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal in the range of about 2.4 to about 2.5 GHZ. | The FedEx accused system according to claim 1, wherein the wideband spread spectrum communication signal comprises a signal in the range of about 2.4 to about 2.5 GHZ.  (*See* SOF¶19.) |

Initially, FedEx's non-infringement contentions for the pre-September 26, 2008 system focused on whether its equipment was airport based.  (Ex. 25, FedEx Supplemental Response to Interrogatory No. 6).  Specifically, FedEx contended that its access points and server (described by FedEx as "ground-based") were owned by FedEx, therefore they were not "airport based."  (*Id*.)  FedEx's corporate representative subsequently admitted that FedEx's access points and server are on property leased from and at Memphis International Airport, and therefore airport based.  (SOF¶23.)

After this unequivocal admission, FedEx's counsel was forced to shift theories.

While FedEx seemingly understood the term airport based at the time, FedEx's counsel has since contended that it is impossible to discern the boundaries for the term "airport based," therefore it is insolubly ambiguous and indefinite.[11]  (Dkt. 119, p. 22.)  Harris' technical expert, as well as both of FedEx's technical experts, have testified that they understood the definition of airport based, albeit using different definitions.  (Ex. 24, p. 95, ln. 11-p. 96, ln. 7; Ex. 21, p. 47, ln. 20-p. 48, ln. 5.)  FedEx has spun the disagreement between experts (including between its own experts) on the definition of "airport based" into a theory that it is therefore impossible to arrive at a precise definition of airport based.  "Absolute clarity, however, is not necessary."  *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 2009 U.S. App. LEXIS 26570, *31 (Fed. Cir. 2009). "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."  *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

In this case, the task of interpreting the term "airport based" should be simple and straightforward for one of skill in the art.  Both parties know what an airport is.  FedEx admits it understands that certain facilities (such as airport terminal gates) are airport based.  (Dkt. 119, p. 20.)  The question presented is whether airport based requires a structure at an airport, or whether it also applies to structures proximate to the airport, such as facilities associated with the airport.  If mere disagreements over claim terms between two parties' retained experts necessitated a finding that a term is indefinite, no

---

[11] The first time FedEx took the position that the term "airport based" was indefinite was March 31, 2009, after its corporate representative admitted FedEx used an airport based server and access points.

claim term would ever be deemed definite during litigation.  There is no basis, much less clear and convincing evidence, to prove the term "airport based" is indefinite.  Instead, as described in more detail in Harris' Motion for Claim Construction, the term "airport based" should be construed as "located at or proximate to an airport," the plain and ordinary meaning.  With such an understanding of the term "airport based," the evidence is undisputed that FedEx's accused system meets all elements of Claims 1-4 of the '165 Patent.

      B.     <u>The FedEx B727 System Infringes Claims 31 and Claims 38-40 of U.S. Patent No. 6,154,637 (the "'637 Patent").</u>

The '637 Patent is titled "Wireless Ground Link-Based Aircraft Data Communication System with Roaming Feature."  As the USPTO records reflect, Harris is the assignee and sole owner of the '637 Patent.  (SOF¶3.)  The claim chart below identifies the structure and undisputed evidence that leads to the conclusion that FedEx's B727 system directly infringes Claim 31, 38-40 of the '637 Patent:

| | |
|---|---|
| 31. A method of providing a retrievable record of the flight performance of an aircraft comprising the steps of: | The FedEx B727 system, using the Avionica SecureLink Router and the Avionica MiniQAR, provides a retrievable record of the flight performance of an aircraft. |
| collecting data within a ground data link unit on the flight performance of the aircraft during flight of the aircraft; | The FedEx B727 system collects data on the flight performance of the aircraft within a ground data link unit comprised of the combination of the Avionica MiniQAR and Avionica SecureLink router during flight of the B727.  (*See* SOF¶11, 12, 13, 15, 16, 27.) |
| accumulating and storing within an archival memory of the ground data link unit the flight performance data during flight of the aircraft; | The FedEx B727 system accumulates and stores within an archival memory of the Avionica MiniQAR the flight performance data collected by the Avionica MiniQAR from the digital flight data recorder bus. (*See* SOF¶12, 15, 26.) |

| | |
|---|---|
| after the aircraft lands at an airport at completion of the flight, downloading the flight performance data that has been accumulated and stored during the flight over one of a plurality of sub-band frequency channels of a spread spectrum communication signal to an airport based spread spectrum transceiver; | After the FedEx B727 lands at an airport at completion of the flight, the Avionica SecureLink router downloads the flight performance data accumulated and stored in the Avionica MiniQAR using a spread spectrum communication signal from the SecureLink router over one of a plurality of sub-band frequency channels available for use with 802.11 to the airport based spread spectrum transceiver in the FedEx access points installed at FedEx's 802.11-equipped ramps.  (*See* SOF¶21, 31, 33-35.) |
| demodulating within the transceiver the received spread spectrum signal to obtain the flight performance data; | The FedEx B727 system demodulates within the access point transceiver the received spread spectrum signal to obtain the flight performance data. (SOF¶38.) |
| and transmitting a probe beacon to the spread spectrum transceiver of the ground data link unit and selecting a sub-band frequency channel based on receipt of the probe beacon. | The access point of the FedEx B727 system transmits a probe beacon identifying, among other parameters, the frequency channel on which the access point is operating, to the spread spectrum transceiver of the Avionica SecureLink, which selects a sub-band frequency channel based on receipt of the probe beacon.  (*See* SOF¶29-32.) |
| 38. A method according to claim 31, wherein the spread spectrum communication signal comprises a direct sequence spread spectrum signal. | FedEx practices the method according to claim 31, wherein the spread spectrum communication signal comprises a direct sequence spread spectrum signal. (*See* SOF¶18, 35.) |
| 39. A method according to claim 31, wherein the spread spectrum communication signal comprises a signal within the S band. | FedEx practices the method according to claim 31, wherein the spread spectrum communication signal comprises a signal within the S band. (*See* SOF¶19, 30.) |
| 40. A method according to claim 31, wherein the spread spectrum communication signal comprises a signal within the range of about 2.4 to about 2.5 Ghz. | FedEx practices the method according to claim 31, wherein the spread spectrum communication signal comprises a signal within the range of about 2.4 to about 2.5 Ghz.  (*See* SOF¶19.) |

As shown in the claim charts above, the FedEx B727 System directly infringes

Claim 31 of the '637 Patent.  While the '637 Patent includes some elements that are similar to those in the '165 Patent, the '637 Patent also further defines the process of establishing a link between the aircraft components and the components on the ground. Accordingly, many of the components implicated in the context of the '165 Patent, described in more detail previously, are also involved in FedEx's infringement of the '637 Patent.

The accused system, as it existed prior to September 26, 2008, used an Avionica MiniQAR to collect, accumulate and store flight performance data from the flight data recorder data bus.  (SOF¶12, 15, 26.)  Once a FedEx B727 completed its flight and the SecureLink router powered up, the SecureLink scanned a plurality of channels within the S-band frequency range (*i.e.*, sub-band channels).  (SOF¶28-31.)  It is undisputed that FedEx's access points transmit a probe beacon containing the service set identification (the network name) and the channel on which each particular access point is operating. (SOF¶29.)  Based on receipt of this probe beacon, the SecureLink selected one of a plurality of sub-band frequency channels with the greatest signal strength and established a connection.  (SOF¶31.)  Having completed the flight and established a connection between the SecureLink and the FedEx access point, the spread spectrum transceiver of the SecureLink downloaded the flight performance data to the spread spectrum transceiver in the access point, which demodulated the signal to obtain the flight performance data.  (SOF¶33, 38.)

The operation of the FedEx system is undisputed.  Dr. Helfrick, FedEx's own technical expert, acknowledged that the FedEx system, at least as it existed prior to September 26, 2008, infringed Claim 31 of the '637 Patent:

Q.  And again, I want to focus on the FedEx system prior to this change on September 26.  And I'm asking, in your opinion, did the FedEx system, prior to September 26, 2008, infringe Claim 31 of the 637 patent?

MR. ANDERSON:  Object to the form.

A.  I would guess that is true.

Ex. 21, p. 23, lns. 12-18.

There is no material fact in dispute with respect to FedEx's infringement prior to

September 26, 2008--an award of summary judgment is therefore appropriate.

C.    The FedEx B727 System Infringes Claims 1, 3-6 and 9 of U.S. Patent No. 6,990,319 (the "'319 Patent").

The '319 Patent is titled "Wireless, Ground Link-Based Aircraft Data

Communication Method."  As the USPTO records reflect, Harris is the assignee and sole

owner of the '319 Patent.  (SOF¶5.)  As set forth in the claim charts below, FedEx's

B727 system infringes at least Claims 1, 3-6 and 9 of the '319 Patent, as set forth in more

detail below:

| 1. A method of providing data from an aircraft comprising: | The FedEx B727 system, using the Avionica SecureLink Router and Avionica MiniQAR, enables FedEx to provide data from an aircraft. |
|---|---|
| continuously monitoring the flight performance of the aircraft during an entire flight of the aircraft from at least take-off to landing; | The flight data recorder system onboard the FedEx B727 continuously monitors the flight performance of the aircraft during an entire flight of the aircraft from at least take-off to landing. (*See* SOF¶10, 11.) |
| generating aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft from at least take-off to landing; | The flight data recorder system onboard the FedEx B727 generates aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft from at least take-off to landing. (*See* SOF¶11.) |

| | |
|---|---|
| accumulating and continuously storing the generated aircraft data within a ground data link unit positioned within the aircraft during the entire flight of the aircraft from at least take-off to landing to create an archival store of such aircraft data; | The Avionica MiniQAR accumulates and continuously stores the generated aircraft data within the ground data link unit positioned within the aircraft during the entire flight of the aircraft from at least take-off to landing to create an archival store of such aircraft data. (*See* SOF¶12, 25-26.) |
| after the aircraft completes its flight and lands at an airport, transmitting the accumulated, stored generated aircraft data from the ground data link unit over a wideband spread spectrum communications signal to a ground based spread spectrum receiver; | After the aircraft completes its flight and lands at an airport, the Avionica SecureLink router transmits the accumulated, stored generated aircraft data from the Avionica MiniQAR over a wideband spread spectrum communications signal to a FedEx access point installed at FedEx's 802.11-equipped ramps. *See* (SOF¶20, 28, 33.) |
| and demodulating the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing. | The FedEx access point demodulates the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing. (SOF¶38.) |
| 3. A method according to claim 1, and further comprising the step of transmitting the accumulated generated aircraft data over a direct sequence spread spectrum communications signal. | FedEx practices the method according to claim 1, further comprising the step of transmitting the accumulated generated aircraft data over a direct sequence spread spectrum communications signal. (*See* SOF¶18.) |
| 4. A method according to claim 1, and further comprising the step of transmitting the generated aircraft data automatically after the aircraft has landed. | A method according to claim 1, and further comprising the step of transmitting the generated aircraft data automatically after the aircraft has landed.  (*See* SOF¶28, 34.) |
| 5. A method according to claim 1, and further comprising the step of uploading data to the ground data link unit over a wideband spread spectrum communications signal after the aircraft has landed. | A method according to claim 1, and further comprising the step of uploading data to the ground data link unit over a wideband spread spectrum communications signal after the aircraft has landed.  (*See* SOF¶41.) |

| | |
|---|---|
| 6. A method according to claim 1, and further comprising the step of selecting a frequency channel for transmitting the accumulated generated aircraft data from a plurality of available frequency channels. | A method according to claim 1, and further comprising the step of selecting a frequency channel for transmitting the accumulated generated aircraft data from a plurality of available frequency channels. (*See* SOF¶21, 31.) |
| 9. A method according to claim 1, and further comprising the step of storing the generated aircraft data within a memory of the ground data link unit. | A method according to claim 1, and further comprising the step of storing the generated aircraft data within a memory of the ground data link unit. (*See* SOF¶15, 27.) |

As shown in the claim charts above, the FedEx B727 System, as it existed prior to September 26, 2008, directly infringes Claim 1 of the '319 Patent.  The FedEx B727 includes an onboard flight data recording system (the DFDR and DFDAU), which continuously monitor flight performance and generate aircraft data representative of the flight performance during the entire flight from takeoff to landing of the B727.  (*See* SOF¶10, 11.)  As described in the previous section, the Avionica MiniQAR accumulated and continuously stored data representative of flight performance received from the digital flight data bus.  (SOF¶12, 25-26.)  After the FedEx B727 completed its flight and landed at the airport, the SecureLink transmitted the accumulated, stored generated data from the MiniQAR to the FedEx access point.  (SOF¶28, 33.)  The FedEx access point demodulated the wideband spread spectrum signal from the SecureLink and received the aircraft data representative of the flight.  (SOF¶38.)

Not only does the documentary evidence and testimony of FedEx's corporate representative establish infringement, even FedEx's technical expert acknowledges that FedEx's accused system, prior to September 26, 2008, infringes the '319 Patent:

> Q.  And based on that understanding, prior to this change to the avSYNC software, the FedEx system infringed the [']319 [P]atent?

MR. ANDERSON:  Object to the form.

A.  That would appear that way to me.

Ex. 21, p. 17, lns. 21-25.

There is no material fact in dispute with respect to FedEx's infringement of Claim 1 of the '319 Patent with the accused system, as it existed prior to September 26, 2008. Moreover, Claims 3-6 and Claim 9 are each dependent on Claim 1. If the Court finds infringement of Claim 1, the undisputed evidence establishes that each of Claims 3-6 and 9, are also infringed.  For example, Claim 3 further limits the type of spread spectrum communication signal to a direct sequence spread spectrum signal, a fact not in dispute. (SOF¶18.)  Similarly, FedEx has conceded that the transmission of data from the aircraft to the ground based system occurs automatically, without any need for human intervention, therefore Claim 4 is infringed.  (SOF¶33-34.)  FedEx also admits that the accused system has been used to upload data, as required under Claim 5.  (SOF¶41.)  As discussed in previous sections, the accused system was used to transmit data over a plurality of channels, therefore establishing infringement of Claim 6.  (SOF¶21, 31.) Finally, there is no dispute that the MiniQAR stores the generated aircraft data in memory, thereby meeting the limitation of Claim 9.  (SOF¶15, 26.)

Without any meaningful basis to deny infringement prior to September 26, 2008, FedEx focuses its attention on the term "ground based," claiming the term is indefinite. (Dkt. 119, p. 24.)  Contrary to this recent position, in answers to interrogatories, FedEx described the FedEx dedicated server used for the accused system as "ground based." (SOF¶23.)  Certainly FedEx understood the term "ground based" when it used the term to describe components of the accused system.

19

Alternatively, FedEx argues that Harris defined the term "ground based" as "at or near an airport" based upon the reexamination proceeding of the '045 Patent.[12] (Dkt. 119, p. 24.)   The reliance on the reexamination proceedings is misplaced.   While Harris readily concedes that airport based components are also ground based, the reverse proposition is not necessarily true.   Ground based components *may* be airport based, but nothing in the prosecution of the '045 Patent reexamination necessitates that ground based components be *at or near an airport*.   The applicants' description of the invention in the '045 Patent corroborates Harris' position.   Applicants stated that "the desired capability for periodically accessing and analyzing flight performance data by means of a wireless ground data link through which flight performance data provided by airborne data acquisition equipment if accumulated, stored and downloaded to a ground resident subsystem, *typically located at or near an airport*."   (Ex. 23, p. 5, emphasis added.) Later, the applicants explained that the ground based archival data store is "*usually* located at or near an airport." (*Id.*, p. 6, emphasis added.)   When distinguishing the '045 Patent from U.S. Patent No. 5,455,347, the applicants stated "[n]owhere in the '347 [P]atent can be found any reference to a ground-based transceiver at one location or point, *such as at or near an airport*." (*Id.* p. 15, emphasis added.)

The prosecution history of the '045 Patent reexamination is replete with instances where applicants definitively indicate that *one embodiment* of the claimed invention *may* include ground based components at or near the airport.   However, applicants did not equate the scope of ground based and airport based components in either the specification

---

[12] Even if the Court were to adopt FedEx's suggestion that "ground based" means at or near an airport, such a definition does not avoid infringement.   As established previously, the "ground based" structures recited in the '319 Patent, i.e. the ground based access point, are in fact "at or near the airport."

or the prosecution history.

FedEx selects an *example* used by the applicants and incorrectly construes it as a limitation. In essence, FedEx contends that applicants disavowed a broad claim scope for "ground based," the claim scope supplied by the plain and ordinary meaning, for the more limited claim scope "at or near an airport." However, "…prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's <u>clear</u> disavowal of claim coverage." *Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (emphasis added) (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003)). Moreover, claim scope disclaimer "must be made with 'reasonable clarity and deliberateness.'" *Superguide*, 358 F.3d at 875 (citing *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000). There is no clear and deliberate disavowal of claim scope. To the contrary, applicants described ground based components at or near an airport in the context of a representative example, not a claim limitation. *See Phillips*, 415 F.3d at 1323 (Fed. Cir. 2005) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

If the Court adopts either Harris' or FedEx's proposed definition of the term "ground based," FedEx's indefiniteness argument must fail. The entirety of FedEx's indefiniteness argument is based on FedEx's contention that the term "ground based" means "at or near an airport," and further, that defining the term as such also makes it indefinite according to FedEx. FedEx has not offered any argument as to why the term "ground based," whether defined by Harris or FedEx, is indefinite. Moreover, even were the Court to adopt FedEx's suggestion that "ground based" is defined as "at or near an

airport," one that Harris disagrees with, this definition would not lead to the conclusion that the term is indefinite.  One of skill in the art is certainly capable of understanding the phrase "at or near an airport."  Whether the Court defines the term "ground based" as located on the ground, or even the more limited at or near an airport, the term is definite, and infringement by FedEx is undisputed.

> D.   The FedEx B727 System Infringes Claims 1, 2, 4 and 5 of U.S. Patent No. 7,426,387 (the "'387 Patent").

The '387 Patent is titled "Wireless, Ground Link-Based Aircraft Data Communication System with Roaming Feature."  As the USPTO records reflect, Harris is the assignee and sole owner of the '387 Patent.  (SOF¶6.)  Based on the undisputed description of the FedEx accused system as it existed prior to September 26, 2008, FedEx infringed at least Claims 1, 2, 4 and 5 of the '387 Patent, as described in more detail below:

| 1. A system for providing a retrievable record of the flight performance of an aircraft comprising: | The FedEx B727 system, using the Avionica SecureLink Router and Avionica MiniQAR, enables FedEx to provide a retrievable record of flight performance of an aircraft. |
|---|---|
| an airborne data acquisition unit coupled to the aircraft flight data recorder that continuously obtains flight performance data representative of aircraft flight performance during an entire flight of the aircraft from at least take-off to landing, | The FedEx B727 system includes a DFDAU coupled to the DFDR that continuously obtains flight performance data representative of aircraft flight performance during an entire flight of the aircraft from at least take-off to landing. (SOF¶10, 11.) |
| a wireless radio frequency (RF) carrier-based subsystem coupled to the airborne data acquisition unit including: | The FedEx B727 system uses an Avionica SecureLink, which includes a wireless radio frequency (RF) carrier-based subsystem coupled to the airborne data acquisition unit.  (SOF¶12-13, 18.) |

| | |
|---|---|
| a processing unit that receives and processes the flight performance data collected by the airborne data acquisition unit, | The FedEx B727 system includes a processing unit within the Avionica MiniQAR that receives and processes the flight performance data collected by the airborne data acquisition unit.  (SOF¶17, 26.) |
| an archival data store coupled to the processing unit operative to continuously accumulate and continuously store the processed flight performance data during a flight of the aircraft from at least take-off to landing, and | The FedEx B727 system includes an Avionica MiniQAR, which is an archival data store coupled to the processing unit operative to continuously accumulate and continuously store the processed flight performance data during a flight of the aircraft from at least take-off to landing.  (SOF¶12, 15, 16, 25, 26.) |
| a wireless RF transceiver coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to automatically download the flight performance data that has been accumulated and stored by said archival data store during an entire flight of the aircraft from at least take-off to landing over a wireless RF communication signal; | The FedEx B727 system includes a wireless RF transceiver within the Avionica SecureLink router, coupled to said archival data store, and comprising a transmitter that is operative after the aircraft completes its flight and lands at an airport to automatically download the flight performance data that has been accumulated and stored by said archival data store during an entire flight of the aircraft from at least take-off to landing over a wireless RF communication signal.  (SOF¶13, 18, 25, 26, 28, 33, 34.) |
| a ground based receiver that receives the wireless RF communication signal from the aircraft and demodulates the signal to obtain the flight performance data; | The FedEx B727 system includes an access point, which contains a ground based receiver that receives the wireless RF communication signal from the aircraft and demodulates the signal to obtain the flight performance data.  (SOF¶20, 28, 38.) |
| and a ground based data store coupled to said ground based receiver that receives and stores said flight performance data. | The FedEx B727 system includes a ground based data store coupled to said ground based receiver that receives and stores said flight performance data.  (SOF¶23, 36-38.) |
| 2. The system according to claim 1, wherein the wireless RF transceiver automatically downloads the flight performance data over a spread spectrum wireless RF communication signal. | The system according to claim 1, wherein the wireless RF transceiver automatically downloads the flight performance data over a spread spectrum wireless RF communication signal.  (SOF¶18, 34.) |

| | |
|---|---|
| 4. The system according to claim 1, wherein the wireless RF transceiver automatically downloads the flight performance data over a wireless RF communication signal operating in a channel of a frequency spectrum band which has been sub-divided into adjacent sub-band channels. | The system according to claim 1, wherein the wireless RF transceiver automatically downloads the flight performance data over a wireless RF communication signal operating in a channel of a frequency spectrum band which has been sub-divided into adjacent sub-band channels. (SOF¶_18, 30, 31, 34.) |
| 5. The system according to claim 1, wherein the wireless RF transceiver automatically downloads the flight performance data over a wireless RF communication signal operating in an unlicensed frequency band. | The system according to claim 1, wherein the wireless RF transceiver automatically downloads the flight performance data over a wireless RF communication signal operating in an unlicensed frequency band. (SOF¶18, 19, 34.) |

As described in previous sections, the FedEx B727 system uses a digital flight data recording system, including a DFDAU coupled to the DFDR.  (SOF¶10, 11.)  These devices are coupled to the Avionica MiniQAR (which has an internal microprocessor that processes the data for storage), and the Avionica SecureLink router.  (SOF¶12, 13, 17.) The flight performance data obtained by the flight data recording system and stored by the MiniQAR is transmitted to FedEx's server via FedEx access points.  (SOF¶26, 33.) Not only is there undisputed evidence supporting the infringement of Claim 1 of the '387 Patent, but FedEx's technical expert also admitted infringement:

> Q.  Okay.  So if we add that limitation back into my hypothetical, that the FedEx system does download all data, would you agree with me that it would infringe [Claim 1 of the '387 Patent]?
>
> MS. GENTRY:  Object to the form.
>
> A:  It would appear that way.
>
> Ex. 22, p. 344, lns. 13-18.

Claims 2, 4 and 5 of the '387 Patent, all of which are dependent on Claim 1, are also infringed.  It is undisputed that the transmission of flight performance data was

automatic once the B727 aircraft landed and parked at the gate.   (SOF¶28, 33, 34.)

Furthermore, the SecureLink and FedEx access points communicated via one of eleven

frequency channels, which are adjacent to one another and subdivisions of the S-Band

unlicensed frequency band.   (SOF¶30.)   Accordingly, the evidence is undisputed that

Claims 2, 4 and 5 of the '387 Patent are also infringed.

VII.   <u>CONCLUSION</u>

There is no dispute about the components or the operation of FedEx's system.

Prior to September 26, 2008, FedEx's accused system was used to obtain and store flight

performance data, then wirelessly transmit that flight performance data to FedEx's

dedicated archival storage.   FedEx's focus on a contrived design around is misplaced.

FedEx infringed the '165, '637, '319 and '387 Patents prior to September 26, 2008, and

FedEx cannot avoid infringement.   Since that time, the modified system was pulled from

FedEx's fleet, vitiating any relevance to the modified system.   Accordingly, Harris

respectfully requests the entry of an Order finding:

(1)   FedEx infringed Claims 1-4 of the '165 Patent;

(2)   FedEx infringed Claims 31 and 38-40 of the '637 Patent;

(3)   FedEx infringed Claims 1, 3-6 and 9 of the '319 Patent;

(4)   FedEx infringed Claims 1, 2, 4, and 5 of the '387 Patent; and

(5)   Such other and further relief as justice requires.

Respectfully submitted February 1, 2010.

s/Ryan T. Santurri
Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
Allen, Dyer, Doppelt, Milbrath
  & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida  32802-3791
Telephone:     407-841-2330
Facsimile:     407-841-2343
Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2010, I electronically filed the foregoing using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to the following CM/ECF participants:

 J. Scott Anderson, Esquire
andersonsj@ballardspahr.com
Charley F. Brown, Esquire
browncf@ballardspahr.com
Robin L. Gentry, Esquire
gentryrl@ballardspahr.com
Lawrence K. Nodine, Esquire
nodinelk@ballardspahr.com
Jeffrey H. Brickman, Esquire
brickmanj@ballardspahr.com
Sumner C. Rosenberg, Esquire
rosenbergsc@ballardspahr.com
**BALLARD, SPAHR, LLP**
999 Peachtree Street, Suite 1000
Atlanta, GA  30309

Marilyn G. Moran, Esquire
mmoran@bakerlaw.com
**BAKER & HOSTETLER, LLP**
200 South Orange Avenue, #2300
Post Office Box 112
Orlando, FL  32802-0112

Local Counsel for
Federal Express Corporation

s/Ryan T. Santurri
Ryan T. Santurri, Esquire