# Tab 23

*Harris Corporation v. Federal Express Corporation*;
U.S. District Court for the Middle District of Florida,
Orlando Division; Case No. 6:07-cv-1819-ORL-28 KRS.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,

   Plaintiff,

v.

FEDERAL EXPRESS CORPORATION,

   Defendant.

Case No. 6:07-cv-1819-Orl-28 KRS

FEDERAL EXPRESS CORPORATION,

   Counterclaim Plaintiff,

v.

HARRIS CORPORATION,

   Counterclaim Defendant.

## DECLARATION OF DANIEL A. MARTINEC

1.  My name is Daniel A. Martinec.

2.  I am presently employed by ARINC as the Director of Industry Activities. I attach my CV as Exhibit A. I have worked for ARINC for 30 years and declare the following based on my personal and professional knowledge of the ARINC organization and its processes.

3.  The following is a general discussion of the process by which ARINC prepares, adopts and publishes its standards. The Airlines Electronic

Engineering Committee (AEEC) forms a new subcommittee or working group, or instructs an existing subcommittee or working group, to perform the task of preparing a standard for equipment desired by the airlines. The subcommittee or working group (referred to as "Group") comprises a collection of persons who are particularly interested in the equipment. The Group meets as necessary to develop draft material that will form the basis for the standard. The draft proceeds through an iterative process of meetings and distribution of the drafts to the Group and to representatives of the entire "Industry." The "Industry" comprises AEEC members, approximately 70 airline engineering departments, and others interested in the equipment, including air frame and avionics manufacturers, service providers, the military, and federal regulatory agencies.

4.      Drafts of proposed standards are widely distributed to maximize input from the Industry. This consensus process eventually results in a draft that is deemed mature by the Group. Prior to its adoption, a proposed final draft is circulated to the Group for review and comment. Its availability is also announced to the Industry. Persons from the Industry, but not in the Group, can then download the draft from the ARINC website, and those persons also have the opportunity to review and comment on the draft. After at least 30 days have passed and no adverse comments are received, the final draft is submitted to the entire AEEC to be considered for adoption. If AEEC adopts the draft either at a General Session or via mail (or e-mail) ballot, a 30-day adoption letter is prepared by ARINC to notify the Industry of the adoption and pending publication. The date that AEEC adopts the draft is called the "adoption date" of a standard. Next, the draft is published in a final "Gray Cover" form by ARINC.

2

5.      Consequently, by the time an ARINC Standard has been "adopted" as recited on the face of a standard, the final draft version will previously have been distributed to the Group and others expressing interest in the final version, and adopted by vote of all AEEC members.

6.      All of the documents mentioned in this declaration were developed consistent with this process.

7.      I have reviewed the attached Exhibit B. I declare that it is a true and accurate copy of "Gate-Aircraft Terminal Environment Link (GateLink) – Aircraft Side – ARINC Characteristic 751." I further confirm that ARINC 751 was published on January 1, 1994, the date recited on the face of the document.

8.      When an ARINC document recites that it is "published," this means that it is made available to the public. Its availability is announced to the membership and the project distribution list along with a description of its subject matter. The document is also listed on the ARINC website. In addition, copies are distributed to AEEC members and corporate subscribers (sponsors) on or, at the latest, within a week of the publication date.

9.      I have reviewed the attached Exhibit C. Based on this review, I declare that it is a true and accurate copy of a draft of working papers relating to the development of ARINC 649 "Electronic Library System." These documents were distributed to the Group and made available to the Industry on or before September 10, 1993.

3

10.    I have reviewed the attached Exhibit D.  Based on this review, I declare that it is a true and accurate copy of "Design Guidance For Onboard Maintenance System - ARINC Report 624."  I further declare that it was in fact published by ARINC on August 26, 1991, the date stated in the document.

11.    I have reviewed the attached Exhibit E.  Based on this review, I declare that it is a true and accurate copy of "Design Guidance for Onboard Maintenance System - ARINC Characteristic 624-1."  I further declare that it was in fact published by ARINC on August 30, 1993, the date stated in the document.

12.    I have reviewed the attached Exhibit G.  I declare that it is a true and accurate copy of "Gate – Aircraft Terminal Environment Link (GateLink) - Ground Side – Specification 632."  I further confirm that ARINC 632 was published on December 30, 1994, the date recited on the face of the document.

13.    Regarding Exhibit G - ARINC 632, the document states on its face that it was "Adopted by the Airlines Electronic Engineering Committee: October 19, 1994."  The draft that was adopted on October 19, 1994 is the same as the version published in December, 1994.  That draft was distributed to the Group and made available to the Industry on or before October 19, 1994.

I declare under penalty of perjury that the foregoing is true and correct.

This 1st day of February, 2010.

Daniel A. Martinec

4