IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,
a Delaware corporation,

      Plaintiff,

vs.                         Case No. 6:07-CV-1819-ORL-28 KRS

FEDERAL EXPRESS
CORPORATION, a Delaware
corporation,

      Defendant.

_____/

FEDERAL EXPRESS
CORPORATION,

      Counter-Plaintiff,

vs.

HARRIS CORPORATION,

      Counter-Defendant.

_____/

**PLAINTIFF'S MOTION AND MEMORANDUM FOR
SUMMARY JUDGMENT AS TO VALIDITY AND ENFORCEABILITY**

TABLE OF CONTENTS

I.      OVERVIEW OF FEDEX'S INVALIDITY AND UNENFORCEABILITY

        POSITIONS. ................................................................................................. 1

II.     THE LAW OF VALIDITY AND FATAL FLAWS IN FEDEX'S INVALIDITY

        THEORIES. ................................................................................................. 1

III.    FEDEX'S EXPERTS RELY ON REFERENCES THAT DO NOT QUALIFY AS

        PRIOR ART AGAINST THE '165 PATENT OR RELATED PATENTS. .......... 3

IV.     PRIOR ART REFERENCES CONSIDERED BY THE PTO CANNOT

        SUPPORT A CLEAR AND CONVINCING SHOWING OF INVALIDITY OF

        THE '165 PATENT. ................................................................................. 5

A.      ARINC FCM-69 Was Considered By the Examiners, Who Properly Concluded It

        Adds Nothing To An Invalidity Challenge. ............................................... 8

B.      The L-1011 Reference Was Considered And Found Not To Establish

        Unpatentability Of Claim 1 Of The '165 Patent. ..................................... 9

C.      Gatelink Documents (ARINC 632 and 751) Were Before The Examiners Of The

        '165 Reexamination But Were Deemed Not Invalidating. .................................. 10

V.      CLAIM 1 OF THE '165 PATENT IS VALID. ................................................... 11

VI.     THE REMAINING PATENTS-IN-SUIT ARE VALID. .................................... 12

VII.    ALL DEPENDENT CLAIMS OF THE PATENTS-IN-SUIT ARE VALID. ..... 12

VIII.   FEDEX FAILS TO SET FORTH SUFFICIENT 35 U.S.C. §112 CHALLENGES.

        ................................................................................................................. 14

A.      FedEx fails to set forth an adequate indefiniteness challenge. ............................. 14

B.      FedEx fails to set forth a written description challenge. ........................................ 15

C.      FedEx fails to set forth an enablement challenge. ................................................. 16

IX.     FEDEX CANNOT SUSTAIN ITS BURDEN TO PROVE THE PATENTS-IN-

        SUIT WERE PROCURED BY FRAUD. ............................................................ 17

A.      The Infrared Gatelink Documents. ...................................................................... 18

B.      There can be no inequitable conduct when a reference is disclosed to the PTO. . 21

C.      Harris properly cited co-pending applications to the extent required by the

        USPTO and relevant case law................................................................................ 22

1.      Citation to the children applications for the '165 Reexamination. ....................... 22

2.      Citation of the application for the '523 Patent during the Prosecution of the '637,

        '045 and '319 Patents........................................................................................... 23

X.      CONCLUSION.................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341 (Fed. Cir. 2001) ................................................................................................ 12, 14, 17

*Boyett v. St. Martin's Press*, 884 F. Supp. 479 (M.D. Fla. 1995) ...................................... 6

*Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351 (Fed. Cir. 2008) ........................... 2

*Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955 (Fed. Cir. 1986) ....................................................................................................... passim

*Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003) . 17, 19, 23

*Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309 (Fed. Cir. 2006).............. 18

*E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, 1990 U.S. Dist. LEXIS 18414 (N.D. Cal. Dec. 3, 1990)................................................................................................ 6

*Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366 (Fed. Cir. 2006)................... 18

*In re Butera*, 1993 U.S. App. LEXIS 13126, (Fed. Cir. June 1, 1993) ........................... 11

*In re Cronyn*, 890 F.2d 1158 (Fed. Cir. 1989) ............................................................... 4, 5

*In re Etter*, 756 F.2d 852 (Fed. Cir. 1985) .................................................................... 5, 6

*In re Fout*, 675 F.2d 297 (C.C.P.A. 1982) ....................................................................... 3

*In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) .................................................................... 13

*In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004)......................................................... 4

*In re Wright,* 866 F.2d 422 (Fed Cir 1989)..................................................................... 15

*Interconnect Planning Corp. v. Feil*, 774 F.2d 1132 (Fed. Cir. 1985) .............................. 6

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052 (Fed Cir 2005)....................... 16

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052 (Fed. Cir. 2005)...................... 14

*Janssen Pharmaceutica N.V. v. Teva Pharms. USA, Inc. (In re '318 Patent Infringement Litig.)*, 583 F.3d 1317 (Fed. Cir. 2009)........................................................................ 14

*Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342 (Fed. Cir. 1998)........................... 16

*Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312 (Fed. Cir. 2006) ........................................ 15

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988). 18

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, (2007)...................................................... 13

*Larson Mfg. Co. of S.D. v. Aluminart Prods.*,, 559 F.3d 1317 (Fed. Cir. 2009).............. 20

*Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 221 U.S.P.Q. 1025 (Fed. Cir. 1984)  1

*Miles Lab. v. Shandon, Inc*., 997 F.2d 870 (Fed. Cir. 1993)........................................... 15

*Molins PLC v. Textron*, 48 F.3d 1172 (Fed. Cir. 1995)............................................. 21, 22

*MOSAID Techs. Inc., v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526 (D.N.J. 2005) .......... 18

*Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931 (Fed. Cir. 1990) ..................... 4

*Riverwood Int'l Corp. v. R. A. Jones & Co.*, 324 F.3d 1346 (Fed. Cir. 2003 ............ 2, 3, 4

*Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991) ........................................................................................................................ 21

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008)................ 21

*United States v. Telectronics, Inc.*, 857 F.2d 778 (Fed. Cir. 1988) ................................. 14

*Upjohn Co. v. MOVA Pharm. Corp.*, 225 F.3d 1306 (Fed. Cir. 2000)............................ 19

*Utah Med. Prods., Inc. v. Graphic Controls Corp*., 350 F.3d 1376 (Fed. Cir. 2003) ...... 14

*Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ......................................... 15

I.      OVERVIEW OF FEDEX'S INVALIDITY AND UNENFORCEABILITY
        POSITIONS.

        Harris Corporation ("Harris") owns a number of patents in its ground data link

("GDL") portfolio, many of which are asserted in this case.[1]  FedEx contends that each

claim of the Asserted Patents is invalid as obvious.  FedEx's invalidity contentions, for

the most part, assert the same combination of references, yet the references relied upon

have already been considered by the PTO or do not qualify as prior art, meaning FedEx

cannot meet its very high burden of proving invalidity by clear and convincing relying on

such evidence.  FedEx next contends that some claims of the Asserted Patents are invalid

due to technical deficiencies under 35 U.S.C. §112.   These contentions have no

evidentiary support, hinging entirely on conclusory statements of FedEx's retained

technical experts.  Finally, FedEx asserts that each of the Patents-in-Suit is unenforceable

due to inequitable conduct.  FedEx has no evidence to suggest that any action was ever

taken to mislead the PTO.  In the end, none of FedEx's "evidence" demonstrates patent

invalidity or unenforceability, much less meets the clear and convincing standard

necessary to invalidate or prove unenforceable any of the patents-in-suit.

II.     THE LAW OF VALIDITY AND FATAL FLAWS IN FEDEX'S INVALIDITY
        THEORIES.

        The Court is required to begin an invalidity analysis "by accepting the proposition

that the patent is valid and then look to the challenger for proof to the contrary."  *Lear*

*Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984).  Proof of each fact

---

[1] The Patents asserted by Harris against Federal Express Corporation ("FedEx") include U.S. Patent Nos.
6,047,165 (the "'165 Patent"); 6,104,914 (the "'914 Patent"); 6,154,637 (the "'637 Patent"); 6,308,045 (the
"'045 Patent"); 6,990,319 (the "'319 Patent"); 7,426,387 (the "'387 Patent"); 7,428,412 (the "'412
Patent"); and 7,444,146 (the "'146 Patent") (the "Asserted Patents").  FedEx currently asserts declaratory
judgment actions for invalidity and inequitable conduct against thirteen patents (Dkt. 107), including the
eight asserted patents, as well as U.S. Patent Nos. 6,108,523; 6,775,545; 6,154,636; 6,308,044 and
6,173,159 (the "Unasserted Patents").

offered to defeat the presumption of validity must always be by evidence that is <u>clear and convincing</u>. *See id.*

In presenting its invalidity positions, FedEx has relied entirely on its technical experts.[2]  The invalidity theories offered by Dr. Helfrick and Mr. Koperda, with respect to twelve of the Patents-in-Suit rely on a theory of obviousness, combining at least two references.[3]   (SOF¶1-4.)[4]   The experts' analyses, to the extent any analysis was performed, employ a fundamentally flawed process.[5]

Obviousness requires a combination of prior art references that allegedly demonstrate that the invention would be obvious to one of skill in the art at the time of the invention.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008).  FedEx's invalidity theories contain several foundational flaws.  Dr. Helfrick and Mr. Koperda[6] rely on references that are not prior art and therefore cannot form a basis for invalidity.  *Riverwood Int'l Corp. v. R. A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003).  Additionally, more than half of the invalidity theories offered by FedEx's experts rely on references previously considered by the PTO during the prosecution of one or more of the Asserted Patents.  To prove invalidity based on the same reference(s)

---

[2] FedEx adopted the expert opinions of Dr. Helfrick as its own invalidity contentions.  (Ex. 39.)  FedEx subsequently offered a second expert, Mr. Koperda, but has never adopted Mr. Koperda's opinions as those of FedEx.  Nonetheless, for the purposes of this Motion, Harris will discuss opinions of both experts, because the two experts' opinions overlap on nearly every invalidity position.

[3] Both experts contend only that claims of the '545 Patent are anticipated.

[4] Citation to "SOF¶__" in this Motion refers to Harris' Statement of Undisputed Facts in support of its Motion for Summary Judgment on Validity and Enforceability, filed concurrently herewith.  Citations herein to *numbered* exhibits are to those exhibits attached to Harris' SOF.

[5] The expert reports of Dr. Helfrick and Mr. Koperda tally over 1500 pages.  Harris has provided exemplary sections of these reports, but can provide the complete reports if the Court believes it would be helpful.

[6] As described in Harris Motion to Strike Mr. Koperda, the details of Mr. Koperda's opinions are impossible to discern, because Mr. Koperda failed to completely disclose such opinions.  For purposes of this Motion, Harris relied on Mr. Koperda's textual opinions of invalidity for Claim 1 of each Patent-in-Suit, rather than speculate on his opinions and attempt to resolve his unclear and contradictory claims charts.

already considered by the PTO, FedEx must achieve a standard above and beyond even the difficult clear and convincing standard.[7]

III.   FEDEX'S EXPERTS RELY ON REFERENCES THAT DO NOT QUALIFY AS PRIOR ART AGAINST THE '165 PATENT OR RELATED PATENTS.

The term 'prior art' as used in section 103 refers at least to the statutory material named in 35 U.S.C. §102." *Riverwood Int'l,* 324 F.3d at 1354.[8]   FedEx's technical experts offer ten different invalidity theories for Claim 1 of the '165 Patent, seven of which rely (in part or solely) on documents that do not qualify as prior art references.[9] FedEx's experts relied on two documents provided by Boeing,[10] the "Douglas Aircraft Paper" (TBC 107-112) and the "Technology Development Concept Paper" (TBC 8-13), neither of which qualifies as prior art.  (SOF¶5-13; Ex. 28, 30.)[11]   FedEx also relies on a document titled "Digital Telemetry System for Real-Time Analysis of Airbus A320 Flight Test Results" (referred to herein as the "Airbus" reference), however, there is no evidence this document qualifies as prior art.  (Ex. 31.)  If the references are not prior art, all invalidity theories relying on the reference(s) necessarily fail.

To qualify as prior art, the documents must be published prior to the invention of the '165 Patent (under §102(a)) or published more than a year before the '165 Patent was

---

[7] As discussed in further detail below, the burden of proving invalidity after reexamination is higher when the same or similar art was considered during reexamination.  *See Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.,* 807 F.2d 955, 961 (Fed. Cir. 1986).

[8] An admission of the patentee may also create prior art, but there have been no such admissions in this case.  See *In re Fout,* 675 F.2d 297, 300 (C.C.P.A. 1982).

[9] Harris has created a chart for the Court in an effort to keep track of the various permutations of FedEx's invalidity opinions, attached hereto as Exhibit A.  FedEx's ten theories of invalidity rely on seven different references (six common to both experts).  (Ex. A.)  Five of the ten combinations are common to both experts.  (Ex. A.)

[10] Boeing Corporation merged with McDonnell Douglas in 1997.  The Douglas Aircraft Paper and Technology Development Concept Paper ("TDCP") are referred to collectively as the "Boeing Documents."

[11] Boeing produced both documents under the parties' confidentiality agreement, designated at the highest level of confidentiality--attorneys' eyes only.  Boeing agreed to remove the confidentiality designations at Harris's request to permit the filing of the documents and related testimony for this Motion.

filed (under §102(b)).  35 U.S.C. §102.  "[D]issemination and public accessibility are the keys to the legal determination whether a prior art reference was published."  *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989) (internal quotes and citations omitted). FedEx must prove by clear and convincing evidence that the references were printed publications that were sufficiently disseminated and accessible to the public before the relevant date to qualify under §102.  *See Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-937 (Fed. Cir. 1990). There is no such evidence, therefore none of these documents may be considered in an obviousness challenge.  *See Riverwood Int'l*, 324 F.3d at 1357.

The Douglas Aircraft Paper is an internal Douglas memo, which was never disclosed to the public.  FedEx will likely argue that the reference became public when it was sent to the FAA.  However, the undisputed evidence is that the Douglas Aircraft Paper was confidential and not publicly accessible.  (SOF¶ 8-11.)  The Douglas Aircraft Paper was branded with a footer indicating that the memo was a McDonnell Douglas proprietary document.  (SOF¶ 6.)  The letter to the FAA requested that the FAA treat the branded pages as proprietary information and return the document to McDonnell Douglas.  (SOF¶ 7, 9, 10.)  The FAA complied with the request and even returned the document.  (SOF¶ 11.)  Where, as here, affirmative steps are taken to maintain confidentiality, and there is a reasonable expectation that the documents will be treated as confidential, the document can be deemed not publicly accessible.  *See In re Klopfenstein*, 380 F.3d 1345, 1351 (Fed. Cir. 2004).  Similarly, the TDCP document appears to be another internal Douglas document.  (Ex. 30.)  There is no evidence to establish the author or the date the document was created (SOF¶13), nor to establish it

was ever published or publicly available such that it qualifies as prior art under §102 to the '165 Patent.  *See In re Cronyn*, 890 F.2d at 1160.

Finally, the Airbus paper is a paper relating to a telemetry system for the real time communication of data from flight testing.  (SOF¶15.)  Harris does not dispute that this document has been published at some point, but there is no clear and convincing evidence to suggest that it was publicly available within the relevant time frame to qualify as prior art.[12]  *See In re Cronyn*, 890 F.2d at 1160.  Even if the Airbus reference can be proven to be prior art, it is merely cumulative of other references considered during prosecution.[13]

### IV.   PRIOR ART REFERENCES CONSIDERED BY THE PTO CANNOT SUPPORT A CLEAR AND CONVINCING SHOWING OF INVALIDITY OF THE '165 PATENT.

The Federal Circuit has noted that the "innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought 'doubtful.'"  *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985)(citing legislative history at H.R. No. 66-1307, 96th Cong., 2d Sess., at 3-4 (1980)).  Upon completion of reexamination proceedings, the PTO issues a reexamination certificate that confirms the patentability of claim(s) and/or cancels unpatentable claims.[14]  35 U.S.C. §307.  In 2005, the USPTO created the Central Reexamination Office ("CRU") "to improve the quality and timeliness of reexaminations."[15]

---

[12] The actual testing described in the paper, even if deemed "public" use, does not qualify under 35 U.S.C. §102 because such use occurred outside the United States.
[13] Other references considered the original prosecution or during reexamination of the '165 Patent include U.S. Patent Nos. 5,445,347 and 4,729,102.
[14] If any amended or new claim is deemed patentable, the reexamination certificate would also reflect those changes.
[15] http://www.uspto.gov/about/stratplan/ar/2005/040201_patentperform.jsp"

Reexamination requests are normally assigned to the CRU, which then assigns each reexamination request to a primary examiner "who is *most familiar* with the claimed subject matter of the patent."  (Ex. 43, MPEP 2236 (emphasis added).)  A panel of three members is charged with reviewing each stage of the reexamination prior to any decision to reject or allow the pending claims.  (Ex. 43, MPEP 2271.01.)  Reexamination panels may only include primary examiners or examiners knowledgeable in the technology. (Ex. 43, MPEP 2271.01.)  Any decision to reject or allow claims must be approved by a majority of this panel of seasoned and knowledgeable examiners.  (Ex. 43, MPEP 2271.01.)

While issued patents enjoy the statutory presumption of validity, this presumption does not apply during reexamination. *In re Etter*, 756 F.2d at 858.  Instead, claims under reexamination must stand without the benefit of a presumption.  *See id*.  This distinction requires that patent claims surmount a *higher* burden of scrutiny to maintain validity in reexamination than in litigation, where the patent carries the presumption of validity.  *See id*. at 858; *see also E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, 1990 U.S. Dist. LEXIS 18414, *10-11 (N.D. Cal. Dec. 3, 1990).  In light of the heightened standard applied to patent claims in reexamination, the Federal Circuit has held that the burden of proving invalidity after reexamination is higher where, as in this case, the defendants rely on "much of the same art" considered during the reexamination.  *See Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986); *see also Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985); *Boyett v. St. Martin's Press*, 884 F. Supp. 479, 482 (M.D. Fla. 1995).

The '165 Patent issued on April 4, 2000.  More than a dozen related applications

have since been allowed by the USPTO based on the inventions initially disclosed in the ‘165 Patent.[16]   Despite continued success in establishing the patentability of the ‘165 Patent and its progeny, an unnamed third party (represented by the firm that represents FedEx in this case) filed a Request for *Ex Parte* Reexamination of the ‘165 Patent on March 30, 2007, citing a number of references in an effort to invalidate the ‘165 Patent. (Ex. 42.)   A Reexamination Certificate issued on June 9, 2009 for the ‘165 Patent, without a single amendment.[17]   (Ex. 35.)   FedEx now relies on many of the same arguments and references before the PTO in the ‘165 Reexamination.

FedEx's technical experts offer ten different theories of invalidity of Claim 1 of the ‘165 Patent, six of which rely (in part or solely) on art considered by the USPTO during the ‘165 Reexamination.  (SOF¶1, 3; Ex. A.)   The three previously considered references used by FedEx for assertions of invalidity are: (a) an ARINC Future Concepts for Maintenance Subcommittee Report ("FCM-69"); (b) the L-1011 paper; and (c) the "Gatelink Documents" (ARINC 632/751).   (SOF¶1, 3; Ex. A.)   Not only have these references been considered during the ‘165 reexamination by a panel of examiners (who found the art to be lacking), the same art was also considered in a number of other related prosecutions (and by the panel of examiners who issued the ‘045 Reexamination certificate).   None of these references has ever formed the basis for a single Office Action.   Because these references were previously considered, it is appropriate to give deference to the PTO's studied analysis and hold FedEx to a heightened burden of proof,

---

[16] One such related patent is the ‘045 Patent, which also had its patentability confirmed through reexamination.

[17] To the extent FedEx argues for a lower standard to prove obviousness since the Supreme Court decisions of *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 (2007), it is noteworthy that both the ‘045 and ‘165 Reexamination certificates both issued post-*KSR*.

beyond the traditional and stringent burden of clear and convincing evidence.  *See Custom Accessories*, 807 F.2d at 961.  FedEx cannot meet this elevated standard--all of its theories of invalidity based on these references must therefore fail.

      A.      <u>ARINC FCM-69 Was Considered By the Examiners, Who Properly Concluded It Adds Nothing To An Invalidity Challenge.</u>

A presentation was allegedly given in the "Future Concepts of Maintenance" subcommittee of ARINC, discussing the "potential task" of developing an aircraft to ground communications link using a spread spectrum radio link.  (SOF¶ 18.)  The PTO considered the FCM-69 reference during the reexamination proceedings for both the '045 and '165 Patents.  (SOF¶28.)  The inventors also cited the FCM-69 during the prosecution of the '412, '387 and '146 Patents.  (SOF¶ 28.)  In every PTO proceeding the FCM-69 has been found wanting--no examiner ever issued a rejection citing the ARINC FCM-69 reference.

To the extent the FCM-69 reference discloses anything, it discloses an undeveloped wish list that might relate to a system that could potentially be developed in the future using spread spectrum.  (SOF¶ 18.)  There is no evidence to suggest there was a working or operative system related to the FCM-69 reference.  (SOF¶ 19.)  To the contrary, the evidence establishes that the reference embodied a concept only, and would not enable one to build a system.  (SOF¶ 18-19.)  Not only was the FCM-69 considered in the '165 Reexamination (and other proceedings), but it was likely considered less relevant than other art, as the actual use of spread spectrum communication was disclosed by a reference before the examiner during prosecution of the '165 Patent (U.S. Patent No. 5,463,656).  (Ex. 35, 45.)  Based on the foregoing, FedEx cannot prove by clear and

convincing evidence, much less by the heightened standard of proof, that the FCM-69 is part of any viable challenge to the validity of the '165 Patent. *See Custom Accessories*, 807 F.2d at 961.

B.      The L-1011 Reference Was Considered And Found Not To Establish
        Unpatentability Of Claim 1 Of The '165 Patent.

The L-1011 reference is a 1978 paper describing the recording of flight data and retrieving the data by manual means using removable storage media. (SOF¶ 20.) The L-1011 paper was cited by the applicants and considered by the examiner during the reexamination of the '165 Patent and during the prosecution of the '412, '387 and '146 Patents, without ever resulting in an Office Action. (SOF¶ 29.) Recording flight performance data and manually removing the data was described by the inventors in the background of the '165 Patent and in other cited patents, such as U.S. Patent No. 4,729,102, which were before the examiners of all of the Asserted Patents. (SOF¶ 21; '165 Patent, Ex. 45, 1:21-1:60.) The L-1011 reference is merely cumulative of evidence already considered by the examiners of the Patents-in-Suit and the panel of examiners during the reexamination of the '165 Patent. (SOF¶ 21.)

The only invalidity position advanced by FedEx using the L-1011 reference is a combination with the FCM-69 reference. (Ex. A.) Both of these references were before the same examiner during the prosecution of the '412, '387 and '146 Patents. (SOF¶28, 29.) Both references were also before the panel of examiners during the reexamination of the '165 Patent. (SOF¶28, 29.) Despite consideration of the combination of these references in multiple prosecutions, the USPTO never applied these references (alone or in combination) to find any claims of the Patents-in-Suit unpatentable. Given the

extensive consideration the USPTO gave the L-1011, FedEx cannot overcome the burden

of clear and convincing evidence, nor the heightened burden accompanying the PTO's

review of these references, to establish invalidity based on the L-1011.  *See Custom*

*Accessories*, 807 F.2d at 961.

> C.    Gatelink Documents (ARINC 632 and 751) Were Before The Examiners
>        Of The '165 Reexamination But Were Deemed Not Invalidating.

The "Gatelink Documents" include the ARINC 632 and 751 characteristics,

which describe a short, direct or line-of-sight connection such as an optical fiber or

infrared link when the aircraft is parked at the gate.  (SOF¶ 17.)  The same technology

was described in the background of the '165 Patent ('165 Patent, Ex. 45, 1:61-1:64), and

is also disclosed in the 5,359,446 Patent (cited in all of the Patents-in-Suit).  Accordingly,

the Gatelink Documents are merely cumulative of art considered in every prosecution of

the Patents-in-Suit.  (SOF¶ 17.)  The Gatelink Documents were also specifically

considered during the prosecution of a number of the Patents-in-Suit, including

prosecution of the '319, '545, '412, '387 and '146 Patents.  (SOF¶ 30.)  Furthermore, the

Gatelink Documents were considered during the '045 and '165 Reexaminations by panels

of examiners, but were never used in an Office Action in any of these prosecutions.

(SOF¶ 30.)

Both FedEx experts propose combining the Gatelink Documents with the FCM-

69 reference.  (Ex. A.)  The combination of the FCM-69 with the ARINC 751 or ARINC

632 was explicitly proposed to the PTO in the Request for *Ex Parte* Reexamination the

PTO.  (Ex. 42.)  The PTO considered these suggested combinations, but never issued an

Office Action based on the Gatelink Document.  In light of numerous prosecutions and

the panels of skilled PTO examiners who have considered the Gatelink Documents, FedEx must overcome the deference that must be given to the analysis and skilled consideration of the PTO. *See Custom Accessories*, 807 F.2d at 961. FedEx cannot meet this burden. The six FedEx invalidity contentions relying on the FCM-69, L-1011 and Gatelink Documents must fail.

## V.    CLAIM 1 OF THE '165 PATENT IS VALID.

The three references relied on by FedEx, the Boeing documents and the Airbus paper,[18] do not qualify as prior art and cannot be used to support a theory of invalidity. *See Riverwood Int'l*, 324 F.3d at 1357. Three additional references discussed above (FCM-69, L-1011 and Gatelink) have been considered in numerous proceedings, most importantly the Reexamination of the '165 Patent. As such, FedEx is charged with proof of invalidity over and above the already heightened standard of clear and convincing evidence standard. *See Custom Accessories*, 807 F.2d at 961. FedEx cannot meet this burden, and the invalidity theories incorporating these references must fail. These six references are necessary for every theory of invalidity offered by FedEx regarding Claim 1 of the '165 Patent.[19] (Ex. A.) Because each invalidity theory is defective, Harris is entitled to an Order finding that Claim 1 of the '165 Patent is valid.

---

[18] Even if prior art, the Airbus reference is cumulative of art considered during the '165 Reexamination.

[19] FedEx has also relied on U.S. Patent No. 4,188,618, in its obviousness theories. The '618 Patent claims a digital alternative to mechanical tachographs that used a mechanical stylus and plastic coated paper disks to record information for fleet automobiles and trucks. The PTO considered far more pertinent references than the '618. Further, there is no evidence that the '618 Patent is analogous art, therefore it is not an available reference for purposes of an obviousness challenge. *See In re Butera*, 1993 U.S. App. LEXIS 13126, *2-3 (Fed. Cir. June 1, 1993)(unpublished). Nonetheless, each of FedEx's proposed combinations with the '618 Patent include either non-prior art or art previously considered by the PTO. Accordingly, FedEx cannot prove obviousness by clear and convincing evidence relying the any of the references discussed herein when combined with the '618 (assuming there were a basis to combine such references).

VI.    THE REMAINING PATENTS-IN-SUIT ARE VALID.

In the preceding section, Harris focused on the validity of Claim 1 of the '165 Patent.  However, FedEx's expert witnesses also offer the same theories of invalidity, using the same combination of references for all independent claims of the '165 Patent, the '045 Patent, the '319 Patent, the '523 Patent,[20] the '412 Patent, the '387 Patent and the '146 Patent.  (SOF¶ 1, 3; Ex. A.)  As demonstrated above, these theories are lacking for want of anything not previously considered and lack of prior art.  FedEx cannot meet its high burden on any of these claims.  Accordingly, for the same reasons expressed above, Harris moves for an Order finding that each independent claim of the '165 '045, '319, '523, '412, '387 and '146 Patents is valid.

VII.    ALL DEPENDENT CLAIMS OF THE PATENTS-IN-SUIT ARE VALID.

There are a large number of more narrow dependent claims that are also accused of being invalid.  Because each dependent claim, by definition, has additional limitations not found in the independent claims, finding depending claims invalid is more difficult and requires that the prior also contain the additional limitations found in the dependent claims.  FedEx's expert witnesses offer only cursory "opinions" of invalidity as to each one of the 378 dependent claims of the Patents-in-Suit.  These "opinions" are nothing but conclusory statements, and do not present a legally sufficient theory of invalidity.  *See Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("…conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact.")

FedEx must stand on the conclusory statements of Mr. Koperda and Dr. Helfrick

---

[20] Dr. Helfrick offers all of the same invalidity opinions against the '523 Patent.  Mr. Koperda offers a subset of these same combinations against the '523 Patent.  Ex. A.

directed towards the alleged invalidity of the dependent claims--it has provided no alternative position.  Mr. Koperda's entire opinion of invalidity of the dependent claims, encompassing 378 distinct and more narrow claims, is expressed by a single sentence repeated thirteen times--once for each patent: "The dependent claims of the [ ] patent in my opinion are all obvious variations of the independent claims, whose elements are either found in the cited prior art or are within the knowledge of one of ordinary skill in the art."  (SOF¶ 4.)  There is no analysis beyond these bare assertions.  FedEx offers no identification of where the additional element(s) of each dependent claim can be found in prior art.  There is no articulated reason to combine whatever prior art references it may have--a requirement under current Supreme Court precedent.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)) ("there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.")

Dr. Helfrick's opinions on the dependent claims suffer from the same defect.  Dr. Helfrick offers a single claim chart for each patent to address the dependent claims. (SOF¶ 2.)  These claim charts purportedly incorporate the entirety of Dr. Helfrick's previous obviousness opinion--"Each dependent claim is obvious in light of the reference or combination set forth for the independent claim from which it depends, plus the following reference…"-- followed by a list of alleged prior art references identified in the claim charts.  (SOF¶ 2.)  Again, there must be more than conclusions to meet the basic legal threshold, there must be some rational basis.  *See KSR*, 550 U.S. at 418; *Biotec*, 249 F.3d at 1353.  Even if the asserted art was all known and qualified as prior art, the invalidity claims must fail for lack of any analysis.

Having failed to meet the requirements of proof pursuant to 35 U.S.C. §103, "[i]t is not the trial judge's burden to search through lengthy technologic documents for possible evidence.  The public interest in invalidating invalid patents does not override the well established procedure requiring the nonmovant to come forward with evidence sufficient to negate the movant's position." *Biotec*, 249 F.3d at 1353.  FedEx cannot carry its burden to prove invalidity of the dependent claims on bare conclusions and Harris is entitled to an Order finding that all of the dependent claims of the Patents-in-Suit are valid.  *See Biotec*, 249 F.3d at 1353.

VIII.   FEDEX FAILS TO SET FORTH SUFFICIENT 35 U.S.C. §112 CHALLENGES.

FedEx contends that the patents-in-suit are invalid under 35 U.S.C. §112 for "indefiniteness," "lack of enablement," and "lack of written description."   (Ex. 44, Interrogatory No. 9.)  "[I]n determining validity, a claim must be construed to uphold its validity if possible." *Lewmar Marine, Inc. v. Barient, Inc*., 827 F.2d 744, 749 (Fed. Cir. 1987).  Indefiniteness and enablement under 35 U.S.C. §112 are questions of law. *Utah Med. Prods., Inc. v. Graphic Controls Corp*., 350 F.3d 1376, 1381 (Fed. Cir. 2003); *Janssen Pharmaceutica N.V. v. Teva Pharms. USA, Inc. (In re '318 Patent Infringement Litig.),* 583 F.3d 1317, 1323 (Fed. Cir. 2009).  Compliance with written discovery is a question of fact.  *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005).  FedEx must prove each of these alleged deficiencies by clear and convincing evidence. *See United States v. Telectronics, Inc.,* 857 F.2d 778, 785 (Fed. Cir. 1988).

A.   FedEx fails to set forth an adequate indefiniteness challenge.

FedEx contends one of skill in the art is unable to understand the bounds of the patent claims in light of the term "airport based."  *See Miles Lab. v. Shandon, Inc*., 997

F.2d 870, 875 (Fed. Cir. 1993).   However, "[i]f the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, §112 demands no more."   Neither of FedEx's technical experts expressed confusion or doubt over the scope of these claims during their depositions; each understood the term "airport based."  (Ex. 40, p.96, lns. 6-7; Ex. 41, p. 47, ln. 20-48, ln. 5.)  Moreover, both of FedEx's experts must have understood the scope of the claims in rendering their opinions of invalidity.  *See Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1324 (Fed. Cir. 2006) ("The same claim construction governs for validity determinations as for infringement determinations.")  Ironically, during the first sixteen months of the litigation, even FedEx understood the definition of "airport based." [21]  Similarly, Harris' technical expert had no difficulty in understanding the claims; nor did any of the PTO examiners that have considered the claims of the patents-in-suit.   As briefed more thoroughly in Harris' Motion for Claim Construction (Dkt. 115), FedEx cannot prove by clear and convincing evidence that the term "airport based" is incapable of definition.

B.     FedEx fails to set forth a written description challenge.

The purpose of the written description requirement is to establish that the inventor was in possession of the invention at the time of filing.  *See Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-1564 (Fed. Cir. 1991).   "When the original specification accomplishes that, regardless of how it accomplishes it, the essential goal of the description requirement is realized."  *In re Wright,* 866 F.2d 422, 424 (Fed Cir 1989) (internal citation omitted).  FedEx contends that claims which include the term "ground

---

[21] On March 31, 2009, FedEx contended for the first time in the litigation that the claim term "airport based" was indefinite.  (Ex. 44.)  Only six weeks earlier, FedEx confirmed in a different interrogatory supplement that it had no problem understanding the term "airport based."  (Ex. 39.)

based" or the step of "transmitting a probe beacon…and selecting a sub-band frequency channel" lack written description. (Ex. 44.) FedEx has never offered a single piece of evidence in support of these contentions, much less clear and convincing evidence.

Contrary to FedEx's theories, the specifications of the patents are rife with descriptions of "ground based" components. Figure 1 of the '165 Patent discloses a number of ground based components--every component in the 200 and 300 elements is ground based. ('165 Patent, Ex. 45.) Additionally, possible embodiments of ground based components are found throughout the specification. ('165 Patent, Ex. 45, 7:24-8:21; 9:5-10:47.) Similarly, the specification of the Patents-in-Suit discloses the IEEE 802.11 protocol, and adequately describes a method of "transmitting a probe beacon…and selecting a sub-band frequency channel." FedEx bears a clear and convincing burden to show that one of skill in the art would not recognize that inventors did not invent the claimed subject matter. *Invitrogen,* 429 F.2d at 1072. FedEx has no evidence in support of these positions and cannot meet its burden.

C.      FedEx fails to set forth an enablement challenge.

"[T]he enablement requirement is met if the description enables any mode of making and using the invention." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1361 (Fed. Cir. 1998). FedEx contends that one of skill in the art would not be able to make and use the invention claimed in the '914 Patent by virtue of the terms "adaptive power control unit" and "varying an emitted power level." (Ex. 44.) The only evidence FedEx has offered is a conclusory opinion from its expert. (Ex. 27, p. 87-88.)

The inventors of the '914 Patent described an adaptive power control unit that "adjusted its emitted power to a level that will not exceed communications limitations

imposed by the jurisdiction governing the airport." ('165 Patent, Ex. 45, 9:21-9:23.)

Other figures and sections of the specification further enable one of skill in the art to

practice the claimed invention. ('165 Patent, Ex. 45, Figs. 6-7; 13:34-55; 15:59-16:5.)

"Enablement does not require the inventor to foresee every means of implementing an

invention." *Invitrogen*, 429 F.3d at 1071. The inventors of the '914 Patent described at

least one way of practicing the invention in the specification and FedEx cannot meet its

heavy of proving a lack of enablement. *Id.* at 1072; *Biotec,* 249 F.3d at 1353.

IX.   FEDEX CANNOT SUSTAIN ITS BURDEN TO PROVE THE PATENTS-IN-
      SUIT WERE PROCURED BY FRAUD.

FedEx alleges that the inventors acted fraudulently in obtaining all thirteen

Patents-in-Suit. (Dkt. 107, Counts 3-15.) "In order to prove inequitable conduct in the

prosecution of a patent, [the defendant] must have provided evidence of affirmative

misrepresentations of a material fact, failure to disclose material information, or

submission of false material information, coupled with an intent to deceive." *Dayco*

*Prods., Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1362 (Fed. Cir. 2003) (internal

citations omitted). "Both intent and materiality are questions of fact that must be proven

by clear and convincing evidence." *Id*. "The inequitable conduct analysis is performed in

two steps comprising first, a determination of whether the withheld reference meets a

threshold level of materiality and intent to mislead, and second, a weighing of the

materiality and intent in light of all the circumstances to determine whether the

applicant's conduct is so culpable that the patent should be held unenforceable." *Id*. at

1362-1363 (internal citations and quotations omitted). "To satisfy the intent to deceive

element of inequitable conduct, 'the involved conduct, viewed in light of all the evidence,

including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1374-75 (Fed. Cir. 2006) (quoting *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)).  "[M]ateriality for purposes of an inequitable conduct determination requires a showing that 'a reasonable examiner would have considered such prior art important in deciding whether to allow the parent [patent] application.'" *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006) (citations omitted).  FedEx's allegations of inequitable conduct can be broken down into three fact patterns: (1) the inventors failed to cite the "Gatelink Documents;" (2) the inventors failed to cite an "FAA circular;" and (3) the inventors failed to cite co-pending proceedings.[22]

A.    The Infrared Gatelink Documents.

In Counterclaims 3-6 and 8-11, FedEx alleges that inventor James Ziarno withheld the "Gatelink Documents" from the USPTO, thereby rendering these patents unenforceable.  (*See, e.g.*, Dkt. 107, ¶51.)  FedEx defines the "Gatelink Documents" as <u>both</u> the ARINC 632 and ARINC 751 specifications, two hardware specifications developed by an industry standards group, Aeronautical Radio Incorporated ("ARINC").

There is no evidence, much less clear and convincing evidence, to establish a finding of deceptive intent by Mr. Ziarno.  Mr. Ziarno does not dispute that he was aware of the ARINC 751 characteristic prior to the filing of the '165 Patent.  (SOF¶ 22.)

---

[22] FedEx also alleges that the inventors' alleged inequitable conduct in the '165 Patent or the '914 Patent infects all of the Patents-in-Suit, rendering each unenforceable.  See, e.g., Dkt. 107, ¶¶105-110.  If the Court rules the '165 and '914 Patents are enforceable, the allegations of infectious unenforceability necessarily fail.  *See, e.g. MOSAID Technologies Inc., v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 555 (D.N.J. 2005).

However, "[i]ntent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible." *See Dayco Products*, 329 F.3d at 1367; *see also Upjohn Co. v. MOVA Pharm. Corp.*, 225 F.3d 1306, 1312 (Fed. Cir. 2000). Mr. Ziarno is a Harris engineer and a lay person. (SOF¶ 23.) Mr. Ziarno was aware of the concept of using direct line-of-sight infrared ("IR") transducers or fiber optic cables to transfer data between an aircraft to the ground, and a patent describing this technology was considered during examination. (SOF¶22, 26.) The Gatelink Documents relate to IR as a means to transfer data, reflecting the industry preference and gravitation to such systems. Companies in the industry, such as Eldec Corporation, were pioneering the IR link system, and their U.S. Patent No. 5,359,446, discloses this very technology described in the Gatelink Documents. (SOF¶ 25, 26.) The '446 Patent, a more detailed description of the IR link than the Gatelink Documents, was disclosed by Mr. Ziarno in the background section of the Patents. ('165 Patent, Ex. 45, 1:60-1:63.) It was entirely reasonable for Mr. Ziarno to disclose the best description of the IR link, not every description.

The inventors of the '165 Patent recognized the drawbacks of the IR and fiber optic systems, and were pursuing different technology--the RF technology claimed in the Patents-in-Suit. ('165 Patent, Ex. 45, 1:60-2:6.) Mr. Ziarno, as a lay person, did not believe ARINC 751 was material to the inventions because the Patents-in-Suit utilize a significantly different technology than those described in the '446 Patent and the Gatelink Documents (i.e. radio frequency transceivers rather than IR transducers). (SOF¶ 23.) It is not enough for Mr. Ziarno to have known of the ARINC 751--FedEx must prove Mr. Ziarno withheld the reference with <u>deceptive intent</u>. *See Dayco Products*, 329 F.3d at

1367. FedEx cannot do so.

Moreover, the failure of Mr. Ziarno to disclose the Gatelink Documents was immaterial. "[A] withheld otherwise material reference is <u>not material</u> if it is <u>merely cumulative</u> to, or less relevant than, information already considered by the examiner." *Larson Mfg. Co. of S.D. v. Aluminart Prods.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009) (emphasis added); *see also Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006). The examiner had before him the '446 Patent, which described the use of a direct line-of-sight infrared link and a fiber optic cable to couple an on-board aircraft computer system with a ground-based computer system. (*See* '165 Patent, Ex. 45, 1:61-1:64; *see also* Ex. 34.) The "Gatelink Documents" were merely cumulative of information considered by the examiner (SOF¶ 17), and cannot form the basis for unenforceability. *See Digital Control*, 437 F.3d at 1319.

Subsequent to the '165 Patent, the Gatelink Documents were raised by those questioning Harris' GDL portfolio. In an abundance of caution, the inventors submitted the Gatelink Documents in all ongoing and future patent prosecutions related to the Patents-in-Suit.[23] Despite the submission of the Gatelink Documents in numerous proceedings, examiners involved in these prosecutions <u>never issued a single Office Action</u> rejecting claims based upon the Gatelink Documents. If, as FedEx alleges, the Gatelink Documents were material to the Patents-in-Suit, why has an examiner never rejected a claim based upon the Gatelink Documents? There is no evidence, much less evidence meeting the clear and convincing standard, that the Gatelink Documents were

---

[23] Harris submitted the Gatelink Documents (and other references) during the '045 Reexamination. (SOF¶30; Ex. 46, p. 1-2.) The Gatelink Documents were also cited during the '165 Reexamination and during the prosecution of the '319, '545, '387, '412 and '146 Patents. (SOF¶30.)

material to the Patents-in-Suit.  *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008).

Moreover, the strong evidence of good faith outweighs any evidence that could support an inference of the intent to deceive.  Once the Gatelink Documents were brought to the inventors' attention in other proceedings, they submitted them in every ongoing and subsequent related prosecution action.  There is no proof of deceptive intent or materiality, the evidence establishes the inventors' good faith and the cumulative nature of the Gatelink Documents.  There can be no finding of inequitable conduct.  *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1367 (Fed. Cir. 2008).

B.     There can be no inequitable conduct when a reference is disclosed to the PTO.

In Counterclaims 3-14, FedEx alleges that the patents are unenforceable because the inventors "intentionally [withheld] material prior art," namely, the FAA draft Advisory Circular AC-120-XX ("FAA Circular").  (*See, e.g.*, Dkt. 107, ¶53.)  FedEx's allegations are curious, as there is no dispute that this reference was identified in the prosecution of every Patent-in-Suit.[24]

"When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner."  *Molins PLC v. Textron*, 48 F.3d 1172, 1185 (Fed. Cir. 1995), citing *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991).  FedEx admits that the inventors disclosed the FAA Circular in the background of the '165 Patent (and its progeny).  (*See, e.g.*, Dkt. 107, ¶55.)  There was no requirement

---

[24] The '165 Patent and nine Patents-in-Suit related to the '165 Patent disclose the FAA Circular in the background of the invention.  The '636, '044 and '159 Patents incorporate the '165 Patent into each of their specifications by reference, thereby also disclosing the FAA Circular.

under 37 C.F.R. 1.56, nor under the Manual for Patent Examination Procedures ("MPEP"), that required the inventors to provide a physical copy of the FAA Circular. The FAA Circular was disclosed to the examiner in every Patent-in-Suit, therefore FedEx's claims of inequitable conduct must fail. *See Molins*, 48 F.3d at 1185.

Moreover, the FAA Circular does not qualify as prior art to the '165 Patent or its progeny. *See* 35 U.S.C. §102. The FAA Circular was published on September 20, 1995, less than two months prior to the filing of the '165 Patent. An applicant's duty to disclose information material to patentability only extends to information that "…establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim…." *See* 37 C.F.R. §1.56 (b)(1). A non-prior art reference cannot establish a prima facie case of unpatentability and therefore cannot be material to patentability. *See Digital Control*, 437 F.3d at 1314.

     C.    <u>Harris properly cited co-pending applications to the extent required by the USPTO and relevant case law.</u>

     1.    <u>Citation to the children applications for the '165 Reexamination.</u>

In Counterclaim 3, FedEx alleges that the inventors, with intent to deceive, failed to cite the pending applications of the '146, '412 and '387 Patents, as well as the '045 reexamination during the reexamination of the '165 Patent. (*See, e.g.*, Dkt. 107, ¶¶74-77.) Importantly, the <u>same examiner</u> assigned to the reexamination of the '165 Patent also participated in the '045 reexamination.[25] (SOF¶ 31.) Accordingly, the examiner of the '165 Reexamination was personally aware of the arguments and amendments made in the '045 Reexamination. Moreover, it is undisputed that this litigation was disclosed to

---

[25] The same examiner, Donnie Crosland, examined all thirteen Patents-in-Suit. Similarly, the same reexamination examiner, Charles Craver, was the examiner on the Reexamination of the '045 and '165 Patents.

the PTO, thereby putting the examiner on notice of these proceedings and the patents involved.  (Ex. 37.)[26]

This is similar to *Dayco Prods., Inc. v. Total Containment, Inc*., 329 F.3d at 1366, where the court held that there was no threshold showing of intent to deceive because "members of the family of applications that issued as the patents-in-suit were disclosed to the examiner assigned to the copending application."  In *Dayco*, there were two *separate* families involved with two different parent patents, being prosecuted before two *different* examiners.  *Id*. at 1361.  Even with separate patent families and different examiners, the *Dayco* Court held that citation from just *one co-pending application* to another was sufficient to dispense with inequitable conduct.  *Id*. at 1366.  Here, the '165 Patent was the original patent, and FedEx's allegations relate to disclosure of subsequent members of the <u>same patent family</u>.  Mr. Craver, the <u>same examiner</u> who examined both reexaminations, was necessarily aware of the progeny of the '165 and of all arguments made during the '045 Reexamination.  FedEx cannot meet its burden of showing a threshold showing of intent to deceive, let alone conduct so culpable that the patents should be held unenforceable.  *See id*.

        2.     <u>Citation of the application for the '523 Patent during the Prosecution of the '637, '045 and '319 Patents.</u>

In Counterclaims 5-7, FedEx alleges that the inventors failed to cite the pending application of the '523 Patent, thereby rendering the '637, '045 and '319 Patents unenforceable.  (*See* Dkt. 107, ¶¶143-159; ¶¶192-208; ¶¶234-253.)  More specifically, FedEx alleges that Applicants failed to cite in co-pending proceedings an Office Action

---

[26] At the time Applicants filed the notice of litigation with the PTO, the '146, '412 and '387 Patents were not among the Patents-in-Suit.  Nonetheless, the examiner was on notice of this ongoing litigation and the existence of many patents and patent applications related to the '165 Patent.

mailed on August 2, 1999, during the prosecution of the '523 Patent.  (*See, e.g.*, Dkt. 107, ¶¶ 146-152.)  The lynch pin of FedEx's inequitable conduct allegations is that "[i]f the co-pending application leading to the '523 patent had been in front of the Examiner examining the application leading to the '637 patent, the applicants could not have argued that the '637 patent application were patentable…"  (Dkt. 107, ¶155.)[27]

Contrary to FedEx's allegations, it is undisputed that the same examiner, Donnie Crosland, examined the all of the Patents-in-Suit, including the '523, '637, '045 and '319 Patents.  (SOF¶33.)  Mr. Crosland issued the Office Action cited by FedEx.  (SOF¶ 33.) Accordingly, Mr. Crosland was personally aware of the art, the claims at issue, the Office Actions, and the arguments made by Applicants in every related prosecution.  In light of Mr. Crosland's examination of the '523 Patent, as well as of the '637, '045 and '319 Patents, FedEx's claims of inequitable conduct must fail.  *See Dayco*, 329 F.3d at 1366.

X.   CONCLUSION

On the issue of validity, FedEx's only evidence comes through its experts.  Yet these experts rely on evidence already considered by the PTO on multiple occasions in multiple proceedings and rely on references that fail to qualify as prior art.  FedEx further relies on conclusory theories and opinions from its experts to argue the dependent claims are invalid, and to claim defects under 35 U.S.C. §112.  Accordingly, none of these theories are sufficient to prove, by a burden beyond clear and convincing evidence, that any claim of the Patents-in-Suit is invalid.  On the issue of enforceability, there is no evidence that any material prior art was withheld from the PTO, and certainly none was withheld with the intent to deceive the PTO.  FedEx cannot prove by clear and

---

[27] The same substantive allegation is made with respect to both the '045 Patent (Dkt. 107, ¶206) and the '319 Patent (Dkt. 107, ¶251).

convincing evidence that any inequitable conduct occurred during the prosecution of the Patents-in-Suit.

Wherefore, Harris seeks an Order finding for Harris on FedEx's Counterclaims 2-13 as follows:

A.      Claim 1 of the '165 Patent is Valid;

B.      All independent claims of the '165 (Claims 1, 8, 17, 23, 30), '045 (Claims 1, 4, 7, 10, 14, 15, 16), '319 (Claims 1, 11, 21), '523 (Claims 1, 8, 16, 27, 33), '412 (Claims 1, 8, 12), '387 (Claims 1, 6, 11) and '146 (Claims 1, 8, 15) Patents are Valid;

C.      The Dependent Claims of all Patents-in-Suit are Valid;

D.      The Douglas Aircraft Paper does not qualify under 35 U.S.C. §102 as prior art;

E.      The TDCP document does not qualify under 35 U.S.C. §102 as prior art;

F.      The Airbus document does not qualify under 35 U.S.C. §102 as prior art;

G.      FedEx's 35 U.S.C. §112 defenses fail;

H.      There was no inequitable conduct; and

I.      Such other and further relief as justice requires.

Respectfully submitted February 1, 2010.

s/Brian R. Gilchrist

Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
Allen, Dyer, Doppelt, Milbrath
  & Gilchrist, P.A.
255 South Orange Avenue, Suite 1401
Orlando, Florida  32802-3791
Telephone:     407-841-2330
Facsimile:     407-841-2343
Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2010, I electronically filed the foregoing using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to the following CM/ECF participants:

| | |
|---|---|
| J. Scott Anderson, Esquire<br>andersonsj@ballardspahr.com<br>Charley F. Brown, Esquire<br>browncf@ballardspahr.com<br>Robin L. Gentry, Esquire<br>gentryrl@ballardspahr.com<br>Lawrence K. Nodine, Esquire<br>nodinelk@ballardspahr.com<br>Jeffrey H. Brickman, Esquire<br>brickmanj@ballardspahr.com<br>Sumner C. Rosenberg, Esquire<br>rosenbergsc@ballardspahr.com<br>**BALLARD, SPAHR, LLP**<br>999 Peachtree Street, Suite 1000<br>Atlanta, GA  30309 | Marilyn G. Moran, Esquire<br>mmoran@bakerlaw.com<br>**BAKER & HOSTETLER, LLP**<br>200 South Orange Avenue, #2300<br>Post Office Box 112<br>Orlando, FL  32802-0112<br><br>Local Counsel for<br>Federal Express Corporation |

s/Brian R. Gilchrist
Brian R. Gilchrist, Esquire

Exhibit A

# FEDEX'S DEFICIENT VALIDITY CHALLENGES

| Combinations of Art Against Claim 1 of the '165 Patent | Helfrick[1] | Koperda[2] | Qualify as Prior Art |
|---|---|---|---|
| FCM-69 and L-1011 | Yes | Yes | |
| Gatelink Documents and FCM-69[3] | Yes | Yes | |
| Gatelink Documents and Douglas Aircraft Paper | No | Yes | |
| Gatelink Documents and Technology Development Concept Paper | No | Yes | |
| U.S. Patent No. 4,188,618 ('618 Patent) and FCM-69 | Yes | Yes | |
| '618 Patent and Douglas Aircraft Paper | Yes | Yes | |
| '618 Patent and Technology Development Concept Paper | Yes | Yes | |
| Airbus Digital Telemetry Paper and FCM-69 | Yes | No | |
| Airbus Digital Telemetry Paper and Douglas Aircraft Paper | Yes | No | |
| Airbus Digital Telemetry Paper and Technology Development Concept Paper | Yes | No | |

| References Used for Invalidity Opinions By Dr. Helfrick And Mr. Koperda | Considered by the PTO during the '165 Reexam | Considered by the PTO during the prosecution of other related Patents[4] | Qualify as Prior Art |
|---|---|---|---|
| L-1011 | Yes | Yes | |
| "Gatelink Documents" (ARINC 751/632) | Yes | Yes | |
| ARINC FCM-69 | Yes | Yes | |
| "Douglas Aircraft Paper" (TBC 107-112) | | | No |
| "Technology Development Concept Paper" (TBC 8-13) | | | No |
| Airbus Digital Telemetry Paper | | | No |

---

[1] This column indicates whether Dr. Helfrick applied a particular combination of references against Claim 1 of the '165 Patent. Dr. Helfrick also offers a conclusory statement that several other references lead him to a finding of invalidity, but offers no analysis. For the purposes of this chart, Harris has ignored these contentions as incomplete and incomprehensible.

[2] This column indicates whether Mr. Koperda applied a particular combination of references against Claim 1 of the '165 Patent.

[3] This combination of references was specifically proposed by the requestor of the Request for Reexamination of the '165 Patent.

[4] This column indicates the identified reference was considered in other related prosecutions, such as the prosecutions of the '045 Reexamination, the '319 Patent, the '146 Patent, the '387 Patent and/or the '412 Patent.

| Combinations of Art Against Asserted Patent | Helfrick[5] | Koperda[6] |
|---|---|---|
| FCM-69 and L-1011 | '165, '045, '319, '412, '387, '146; '523 | '165, '045, '319, '914, '412; '387, '146 |
| Gatelink Documents and FCM-69 | '165, '045, '319, '412, '387, '146; '523 | '165, '045, '319, '914, '412, '387, '146; '523 |
| Gatelink Documents and Douglas Aircraft Paper | -- | '165, '045, '319, '914, '412, '387, '146; '523 |
| Gatelink Documents and Technology Development Concept Paper | -- | '165, '045, '319, '914, '412, '387, '146; '523 |
| U.S. Patent No. 4,188,618 ('618 Patent) and FCM-69 | '165, '045, '319, '412, '387, '146; '523 | '165, '045, '319, '914, '412, '387, '146; '523 |
| '618 Patent and Douglas Aircraft Paper | '165, '045, '319, '412, '387, '146; '523 | '165, '045, '319, '914, '412, '387, '146; '523 |
| '618 Patent and Technology Development Concept Paper | '165, '045, '319, '412, '387, '146; '523 | '165, '045, '319, '914, '412, '387, '146; '523 |
| Airbus Digital Telemetry Paper and FCM-69 | '165, '045, '319, '412, '387, '146; '523 | -- |
| Airbus Digital Telemetry Paper and Douglas Aircraft Paper | '165, '045, '319, '412, '387, '146; '523 | -- |
| Airbus Digital Telemetry Paper and Technology Development Concept Paper | '165, '045, '319, '412, '387, '146 | -- |

[5] The combinations listed were offered by Dr. Helfrick as a basis for invalidity of the independent claims of each of the Patents listed in this Column.

[6] As discussed in Harris' Motion to exclude Mr. Koperda, his textual opinions were limited to Claim 1 of each Patent. To the extent they can be discerned, this column represents the invalidity opinions offered by Mr. Koperda for Claim 1 of each of the Patents identified in this column. Harris has ignored Mr. Koperda's claim charts and any contradictory statements in his report for purposes of determining his opinion.