**HARRIS CORPORATION,**

        **Plaintiff,**

**-vs-**                        **Case No. 6:07-cv-1819-Orl-28KRS**

**FEDERAL EXPRESS CORPORATION,**

        **Defendant.**
_____

## ORDER

The instant patent infringement controversy involves aircraft flight data communication systems. By use of such systems, performance data collected and stored during flight can be communicated from a parked aircraft to the ground. In the past, this data was communicated by physically removing the storage device from the plane, by sending the data via a direct line-of-sight infrared link, or by transferring the data through a fiber optic cable. The presently disputed patents involve the use of a spread spectrum communication signal to wirelessly transmit the data.

Plaintiff Harris Corporation ("Harris") and Defendant Federal Express Corporation ("FedEx") now dispute the validity of the asserted patents. FedEx moves for summary judgment as to invalidity on grounds of anticipation and obviousness. Harris moves for summary judgment as to validity and enforceability. After reviewing the submitted documents, the Court concludes that there are genuine issues of material fact precluding disposition on summary judgment.[1]

_____

[1] The Court considered the following documents: (1) Motion for Partial Summary

**Background**

Harris sued FedEx alleging that it infringed eight of its patents relating to the use of spread spectrum communication signals for the transmission of flight performance data.[2] (Doc. 1). Along with its Answer, FedEx filed Counterclaims seeking a declaratory judgment that FedEx was not infringing the asserted patents and that the asserted patents were invalid. (Doc. 10 at 6-7). Harris then filed an Amended Complaint asserting two additional patents.[3] (Doc. 32). After conducting extensive discovery, Harris filed a Second Amended Complaint adding three newly-issued patents and removing five patents listed in the two prior complaints.[4] (Doc. 75). The Patents currently asserted against FedEx include: the '165 patent; the '637 patent; the '914 patent; the '045 patent; the '319 patent; the '387 patent; the

---

Judgment of Invalidity of Claims 1-4 and 17-20 of U.S. Patent No. 6,047,165 and Memorandum of Law in Support and Request for Oral Argument by Federal Express Corporation (Doc. 130); (2) Opposition to Federal Express Corporation's Motion and Memorandum for Summary Judgment as to Invalidity of U.S. Patent No. 6,047,165 by Harris Corporation (Doc. 162); (3) Reply in Support of Motion for Summary Judgment of Invalidity of Claims 1-4 and 17-20 of U.S. Patent No. 6,047,165 by Federal Express Corporation. (Doc. 177); Motion for Summary Judgment as to Validity and Enforceability by Harris Corporation (Doc. 160); Memorandum in Opposition to Motion for Summary Judgment of Validity and Enforceability by Federal Express Corporation (Doc. 168); Reply to Response to Motion for Summary Judgment of Invalidity by Harris Corporation (Doc. 176).

[2] The patents alleged to be infringed in the original Complaint include: U.S. Patent Nos. 6,104,914 ("the '914 patent"); 6,154,636 ("the '637 patent"); 6,173,159 ("the '159 patent"); 6,308,044 ("the '044 patent"); 6,775,545 ("the '545 patent"); and 6,990,319 ("the '319 patent"). (Doc. 1 at 2-3).

[3] U.S. Patent No. 6,047,165 ("the '165 patent") and U.S. Patent No. 6,308,045 ("the '045 patent") were added in the Amended Complaint. (Doc. 32 at 3).

[4] U.S. Patent Nos. 7,426,387 ("the '387 patent"); 7,428,412 ("the '412 patent"); and 7,444,146 ("the '146 patent") were added in the Second Amended Complaint. (Doc. 75 at 3). The five patents no longer asserted in the Second Amended Complaint include: the '523 patent; the '545 patent; the '044 patent; the '637 patent; and the '159 patent. *Id.*

'412 patent; and the '146 patent (collectively "Patents-In-Suit").  (*Id.*).

## I. The '165 Patent

The '165 patent entitled "Wireless Frequency-Agile Spread Spectrum Ground Link-Based Aircraft Data Communication System" is the parent application for each of the Patents-In-Suit.[5]  U.S. Patent No. 6,047,165.  The '165 patent involves a system and a method for accumulating and storing flight performance data during the flight of an aircraft and wirelessly transmitting that data from the parked aircraft to the ground via a wideband spread spectrum communication signal.  *Id.* at col:16 l.65-68; col:17 l.1-8.  The United States Patent Office ("PTO") granted the '165 patent on April 4, 2000.  *Id.*  On June 9, 2009, the PTO issued an ex parte reexamination certificate for the '165 patent confirming the patentability of claims 1, 8, 17, 23, and 30.  (Doc. 162-2 at 3).

## II. Prior Art

The prior art relevant to the present motions consists mainly of U.S. Patents and

---

[5] Claim 1 of the '165 patent recites:
1. A system for providing a retrievable record of the flight performance of an aircraft comprising: . . .
  an airport based wideband spread spectrum transceiver comprising a receiver that
    receives the wideband spread spectrum communication signal from the aircraft and demodulates the signal to obtain the flight performance data;
  an airport based archival data store coupled to said airport based wideband spread
    spectrum transceiver that receives and stores said flight performance data; and
  an airport based processor coupled to said archival data store for retrieving flight
    performance data from the airport based archival data store for further processing.

documents published by Aeronautical Radio, Inc. ("ARINC").[6]  One such document entitled "Future Concepts for Maintenance" ("FCM-69") was published by ARINC in September 1994. (Doc. 132-8 at 1).  FCM-69 is central to FedEx's anticipation analysis.  Attachment 2 of FCM-69 consists of slides from a presentation given by Pete Hibson, a McDonnell Douglas scientist, to ARINC on the concept of using spread spectrum technology for various aircraft communications.  (Doc. 132-10 at 5; Doc. 132-8 at 13).  Attachment 3 of FCM-69 includes a memorandum from the Federal Aviation Administration ("FAA") responding to a request for policy pertaining to the certification of a spread spectrum ground to ground communication link.  (Doc. 132-3 at 4).

The relevant prior art also includes a number of other ARINC publications.  For example, ARINC 751 and ARINC 632 ("Gatelink Documents") are integrated documents describing the "Gatelink" communication system.  (Doc. 132-2; Doc. 132-6).  These documents define the term "Gatelink" as "an infrared communication link used between a communication system inside the airport terminal and a communication system onboard a parked aircraft." (Doc. 132-6 at 6).  ARINC 624 is another relevant publication that provides design guidance for Onboard Maintenance Systems ("OMS").  (Doc. 132-10).  Traditional OMS involve failure monitoring, fault detection, airplane condition monitoring, and onboard maintenance documentation.  (*Id.*)  Finally, a working draft of ARINC 649 entitled "Project Paper 649 Electronic Library Systems ("ELS"), describes the functional operation of data storage systems onboard an aircraft.  (Doc. 133-2).

---

[6] ARINC sponsors the Airlines Electronic Engineering Committee (AEEC), which formulates standards for electronic equipment and systems for airlines.  (Doc. No. 132-10 at 1).

## Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Id.* A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof

at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

### I. Prior Art

The parties presently dispute whether certain documents qualify as prior art for the purpose of analyzing the validity of the '165 patent. FedEx maintains that FCM-69, the Gatelink Documents (ARINC 632 and ARINC 751), ARINC 624, and ARINC 649 qualify as prior art because they were published prior to the invention of the '165 patent. Harris provides no response in opposition. Instead, Harris maintains that three other documents relied on by FedEx do not qualify as prior art. These documents include the "Douglas Aircraft Paper" (Doc. 160-28), the "Technology Development Concept Paper" (Doc. 160-30), the "Airbus Digital Telemetry Paper" (Doc. 160-31), and U.S. Patent No. 4,188,816. (Doc. 160 at 8). FedEx concedes that the "Douglas Aircraft Paper" and "Technology Development Concept Paper" are not prior art but argues that these documents are nevertheless probative evidence of the general level of skill in the art at the time of the invention. (Doc. 168 at 11). With respect to the "Airbus Digital Telemetry Paper," FedEx maintains that there is at least a question of fact as to whether the document qualifies as prior art.

In order to qualify as prior art, a reference must have been published prior to the invention of the '165 patent, 35 U.S.C. § 102(a), or more than one year before the '165 patent was filed. 35 U.S.C. § 102(b). Publication requires that "the reference [was]

sufficiently accessible to the public interested in the art." *In re Klopfenstein*, 380 F.3d 1345, 1349 (Fed. Cir. 2004) (internal citation and quotation omitted). Whether a document constitutes a printed publication under § 102 is a question of law based upon the underlying facts of each particular case. *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1332-33 (Fed. Cir. 2009).

FedEx presents uncontested evidence that FCM-69, the Gatelink Documents, (ARINC 632 and ARINC 751), ARINC 649, and ARINC 624 were sufficiently accessible to the public interested in the art before to the critical date for the '165 patent.[7] Accordingly, the Court finds that these documents qualify as prior art.

With respect to the "Douglas Aircraft Paper" and the "Technology Development Concept Paper," because FedEx concedes that these documents are not prior art, and the Court does not find any evidence to the contrary, these documents will not be considered prior art for the purposes of evaluating the validity of the '165 patent. The documents may, however, be taken into consideration to the extent they are probative on the issue of ordinary skill in the art. *See Orthopedic Equip. Co., Inc. v. United States*, 702 F.2d 1005, 1012 (Fed. Cir. 1993).

Next, Harris maintains that there is no clear and convincing evidence to suggest that the "Airbus Digital Telemetry Paper" was publically available within the relevant time frame to qualify as prior art. (Doc. 160 at 10). However, FedEx's expert, Dr. Albert D. Helfrick, Ph.D., stated that the document was presented publicly at the 18th Annual Symposium of

---

[7] The evidence provided includes testimony regarding ARINC publication practices (Doc. 132-3) and the publication dates of the relevant ARINC documents. (Doc. 132-23).

the Society of Flight Test Engineers in 1987. (Doc. 165-3 ¶¶ 11-15). Because Dr. Helfrick's testimony creates a question of material fact as to whether the document qualifies as prior art the Court declines, at this juncture, to determine that the "Airbus Digital Telemetry Paper" is not prior art.

Finally, Harris argues that because there is no evidence to support a finding that the '618 patent is analogous art, the reference is not available for purposes of an obviousness challenge. (Doc. 160 at 16 n.18). In rebuttal, FedEx relies on the affidavit of Dr. Helfrick stating that the '618 patent is analogous art because, like the Patents-In-Suit, the '618 patent describes a telemetry or data acquisition system. (Doc. 165-3 ¶¶ 16-20). Finding Dr. Helfrick's affidavit sufficient to create a genuine issue of material fact as to whether the '618 patent is analogous art, summary judgment on this issue will be denied.

## II. Anticipation

FedEx argues that FCM-69 discloses, either expressly or inherently, each and every element of claim 1 of the '165 patent such that the asserted claims of the '165 patent are invalid as anticipated under 35 U.S.C. § 102. (Doc. 130). In response, Harris contends that FCM-69 does not anticipate the asserted claims of the '165 patent because it is not enabled and because FCM-69 does not disclose an archival data store capable of accumulating and storing flight performance data. (Doc. 162).

A patent is invalid as anticipated if the invention "was described in a printed publication . . . before the invention thereof by the applicant for the patent." 35 U.S.C. § 102(a). Thus, anticipation embodies the concept of novelty—if a "device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the

claimed invention is anticipated by the prior invention." *Net Moneyin, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). In order to establish anticipation under § 102(a), a party must show "that the four corners of a single, prior art document describe every element of the claimed invention." *Xerox Corp. v. 3Com Corp.*, 458 F.3d 1310, 1322 (Fed. Cir. 2006) (internal citation and quotation omitted). Disclosure of each element independently, however, is insufficient to support a finding of anticipation. The Federal Circuit "has long held that anticipation requires the presence, in a single prior art disclosure, of all elements of a claimed invention *arranged as in the claim*." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) (emphasis in original).

Despite the requirement that each element must be described within the four corners of a document, a prior art reference that does not explicitly disclose each element of a claimed invention may still anticipate the claimed invention "if [the] missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).

> Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient. If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure would be sufficient.

*Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991) (citation omitted) (emphasis in original). When the prior art reference is silent about the asserted inherent characteristics, extrinsic evidence may be used to fill the gaps by demonstrating that the "missing descriptive element is necessarily present in the thing described in the reference . . . ." *Id.* Extrinsic evidence may, however, only serve this limited role in an

anticipation analysis.  It may not be used to expand the meaning of a reference.  *Id.*

A patent is presumed valid under 35 U.S.C. § 282, and FedEx bears the burden to prove the factual elements of invalidity by clear and convincing evidence.[8]  *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1324 (Fed. Cir. 2006).  While a court must consider an examiner's decision on an original or reissue application when determining if the party asserting invalidity has met its statutory burden,[9] a court may nonetheless find a patent anticipated based on a reference that was properly before the PTO at the time of issuance. *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986); *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1381 (Fed. Cir. 2005). What a prior art reference discloses in an anticipation analysis is a factual determination that may be decided on a motion for summary judgment only if no material facts are disputed.  *Novo Nordisk Pharm. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005).

---

[8] The "clear and convincing" standard is an intermediate standard lying somewhere between the "beyond a reasonable doubt" and the "preponderance of the evidence" standard of proof.  *Addington v. Texas*, 441 U.S. 418, 425 (1979).  Although the exact definition is elusive, "clear and convincing evidence" has been described as evidence that "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable."  *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal quotations omitted).

[9] Harris repeatedly cites *Custom Accessories Inc. v. Jeffery-Allan Indus., Inc.*, 807 F.2d 955 (Fed. Cir. 2005), for the proposition that the burden of proving invalidity is "even higher than clear and convincing evidence" following a successful reexamination. (Doc. 162 at 6).  In *Custom Accessories*, the Federal Circuit held that a court must consider an examiner's decision on an original or reissue application in order to determine whether a party asserting invalidity met its statutory burden of clear and convincing evidence. 807 F.2d at 961.  In light of this finding, the Federal Circuit noted that the burden of proving invalidity by clear and convincing evidence would be "made heavier" upon reissue.  *Id.* This statement does not, however, reflect an "increase" in the clear and convincing burden of proof upon reissue as suggested by Harris.  This statement merely indicates that it will be more difficult to meet the clear and convincing standard because the court must consider the reissue as evidence of validity.

In order to anticipate claim 1 of the '165 patent, FCM-69 must disclose "all elements of a claimed invention *arranged as in the claim*."[10] *Finisar Corp.*, 523 F.3d at 1334-35 (emphasis in original). Claim 1 recites "an archival data store operative to accumulate and store flight performance data during flight of the aircraft . . . . " Therefore, in order to establish anticipation of claim 1, FedEx must prove that FCM-69 discloses not only an archival data store, but an archival data store operative to accumulate and store flight performance data during flight of the aircraft. Notwithstanding this requirement, FedEx presents the elements of claim 1 as a catalog of separate parts, arguing that FCM-69 discloses, independently, an archival data store and the collection of flight performance data.

FedEx begins its anticipation argument by contending that the term "archival data store," as used in the '165 patent, "is just a fancy name for a computer memory" and FCM-69 expressly and inherently discloses the use of a computer. Thus, by presuming that the element archival data store is equivalent to computer memory, FedEx contends that FCM-69 anticipates the '165 patent. (Doc. 130 at 15). However, in order to anticipate claim 1 of the '165 patent, FCM-69 must disclose not only an archival data store, but an archival data store operative to accumulate and store flight performance data during the flight of the aircraft. Thus, an explicit disclosure of computer memory, in isolation, does not anticipate the archival data store element of the '165 patent. *See, e.g., Finisar Corp.*, 523 F.3d at 1334. Next, FedEx argues that FCM-69 expressly discloses the collection of flight performance data

_____

[10] The PTO considered the FCM-69 reference during the reexamination of the '165 patent. (Doc. 160-35).

through the FAA statement: "[i]n our understanding of the proposed [system], the pilot could access certain aircraft information, including possible flight performance/navigation information."[11] (Doc. 130-8 at 31). This passage does not, however, disclose the *accumulation and storage* of flight performace data. Instead, this passage merely discloses a pilot's potential *access* to flight performance information, which could conceivably be in real time with no actual accumulation or storage of data. The mere possibility that FCM-69's reference to "access" could involve the accumulation and storage of data is insufficient to support a finding of inherency because inherency "may not be established by probabilities or possibilities." *Cont'l Can Co.*, 948 F.2d at 1268. Accordingly, the FAA's statement does not disclose the flight performance data element *as arranged* in claim 1. Finally, FedEx fails to establish that FCM-69 discloses an archival data store that accumulates and stores flight performance data *during flight.* In fact, FedEx's own expert testified that FCM-69 does not explicitly teach continuous recording during flight. (Doc. 162-5 at 55). Accordingly, the Court finds that FCM-69 does not disclose each element of claim 1 of the '165 patent as arranged in the claim.

FedEx's anticipation theory also fails because it is not supported by a single prior art reference and extrinsic evidence explaining inherent features. Instead, FedEx's anticipation theory rests on an impermissible combination of such references. By way of example, FedEx maintains that FCM-69's reference to OMS inherently discloses the storage of flight performace data because ARINC 624 states that a traditional aspect of OMS is an Airplane

_____

[11] While FedEx admits that this passage refers to communications with the pilot, FedEx maintains that it nonetheless explicitly discloses that "performance" information is stored. (Doc. 130 at 18).

Condition Monitoring System ("ACMS") and the purpose of an ACMS is to record flight performance data. In an effort to connect FCM-69 to the ACMS disclosure, FedEx cites Peter Hibson's declaration, stating that "any engineer working in this field would have known that the pertinent standards [describing OMS] were ARINC 624 . . . ."[12] (Doc. 130-5 ¶ 12). Such a theory of anticipation mischaracterizes the law of inherency. While intrinsic evidence may be used to explain what is necessarily present in a prior art reference, it may not be used to expand the meaning of a reference and it must make clear that the missing descriptive element is *necessarily present* in the thing described in the reference. *Cont'l Can Co.*, 948 F.2d at 1269. Here, Hibson merely suggests that an ordinary engineer would *consult* ARINC 624, which in turn references ACMS, which in turn includes the storage of flight performance data. This sequence of references does not demonstrate that the OMS disclosure in FCM-69 necessarily includes the accumulation and storage of flight performance data during flight.[13] Instead, this sequence of references more closely represents an obviousness argument. FedEx's next argument, that FCM-69's reference to Intelligent Hub (649) in fact references a draft of ARINC 649, which in turn references ARINC

---

[12] As discussed previously, *supra* Section II, Peter Hibson, a McDonnell Douglas engineer, is the author of the presentation slides in Attachment 2 of FCM-69. Mr. Hibson is a fact witness for FedEx.

[13] The ARINC 624 document states that its purpose is "to set forth a general philosophy, basic guidance, and certain specific recommendations for the design and use of an OMS" and provides that "[t]he OMS described incorporates the traditional areas of failure monitoring and fault detection . . . and an airplane condition monitoring system (ACMS)." (Doc. 132-10 at 11). Thus, ARINC 624 provides guidance for developing a potential OMS. ARINC 624 does not support a finding, by clear and convincing evidence, that the term OMS, as used in FCM-69, necessarily includes an ACMS that accumulates and stores flight performance data during the flight of an aircraft.

624 and its disclosures of ACMS and the storage of flight performance data, fails for the same reason.[14]

While issues of anticipation are normally driven by factual disputes requiring jury resolution, in the present case, even viewing the evidence in a light most favorable to FedEx, FedEx has not met its burden of raising a genuine issue of material fact as to whether FCM-69 discloses each and every limitation of claim 1 of the '165 patent. Accordingly, Harris's Motion for Summary Judgment as to Validity will be granted to the extent Harris argues that FCM-69 does not anticipate the '165 patent.

## III. Obviousness

### A. Motion for Summary Judgment as to Obviousness by FedEx

FedEx contends that summary judgment as to the obviousness of the claims of the '165 patent is appropriate because the claimed invention is merely a predictable combination of known prior art elements. (Doc. 130). Because the FAA encouraged the airline industry to collect and analyze flight performance data, FedEx maintains that it would have been obvious to one of ordinary skill in the art to respond to the FAA's suggestion by implementing the FCM-69 system and connecting it to the aircraft's computer. (*Id.*). In response, Harris points out that FedEx uses the claims of the '165 patent as a guide to combine a maze of prior art references in an attempt to demonstrate that, in hindsight, the claims of the '165 patent are obvious. (Doc. 162).

---

[14] FedEx does not argue, and the Court does not find, that asserted ARINC documents are incorporated by reference into FCM-69. *See Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) ("To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents.").

Pursuant to 35 U.S.C. § 103, an invention cannot be patented if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art . . . ." 35 U.S.C. § 103(a).  Patents are presumed to be valid upon issuance, 35 U.S.C. § 282, and included within that presumption of validity is a presumption of non-obviousness,  *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed. Cir. 1984).  Thus, a party seeking to invalidate a patent based on obviousness bears the burden of proving "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so."  *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

The ultimate conclusion of whether a claimed invention would have been obvious is a question of law based on underlying findings of fact, and the patent challenger bears the burden of proving these factual inquiries by clear and convincing evidence.  *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986).  These underlying factual inquiries include: (1) the scope and content of the prior art; (2) differences between claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations such as commercial success and satisfaction of a long felt need.  *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  Summary judgment of obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of

these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

In the present case, many of these factual questions are in dispute. First, the parties dispute whether a skilled artisan would have been motivated to combine FCM-69 with the Gatelink Documents (ARINC 632 and ARINC 751). FedEx contends that a person of ordinary skill in the art would have been so motivated because FCM-69 explicitly references Gatelink, and a specific reference to a combination represents an express motivation to combine under existing case law. (Doc. 130 at 23-24). In addition, FedEx provides evidence that people working on aircraft systems in 1994 would have consulted ARINC standards when designing new aircraft systems.[15] (Doc. 132-5 ¶ 5). Harris provides evidence that one of skill in the art would not have been motivated to combine FCM-69 with the Gatelink Documents in the manner suggested by FedEx because the industry believed that the use of an infrared or fiber optic link was the solution and the inventors of the '165 patent approached the problem with an entirely different technology.[16] (Doc. 162-12 ¶ 3). The parties also dispute the scope of the disclosure of the Gatelink Documents. FedEx provides evidence that the documents teach an archival data store and the collection and recording

---

[15] Hibson's affidavit states that "the people working on aircraft systems in 1994 knew that ARINC published standards and would have consulted these standards when designing new aircraft systems." (Doc. 132-5 ¶ 5).

[16] James J. Ziarno, one of the named inventors of the '165 patent, stated that "[d]irect line-of-sight IR transmission is much different that the invention [of '165 patent], which uses a wireless RF spread spectrum transmission of data." (Doc. 162-12 ¶ 3). Furthermore, Joseph C. McAlexander III, an expert for Harris, opined that there was no motivation to combine the Gatelink Documents with FCM-69 because the Gatelink Documents indicated that IR was the preferable solution in most operational environments. (Doc. 152-8 ¶ 6).

of flight performance data.[17]   (Doc. 130 at 24).   Harris provides evidence that Gatelink is focused on infrared communications links and fails to disclose an archival data store that accumulates and stores data.[18]   (Doc. 162 at 20; Doc. 162-8 ¶¶ 4-5).

The parties also dispute the motivation to combine ARINC 624 with the Gatelink Documents and FCM-69 as well as the scope of the teachings of ARINC 624.  FedEx argues that a person of ordinary skill in the art would have been motivated to combine ARINC 624, the Gatelink Documents, and FCM-69 because ARINC 751 specifically references ARINC 624.[19]   (Doc. 130 at 20).   FedEx also provides evidence that ARINC 624's reference to ACMS discloses the collection of flight performance data.[20]   (*Id.*)  Harris provides evidence that ARINC 624 is merely cumulative of other references that were before the PTO and therefore adds nothing to the obviousness analysis.[21]   (Doc. 162 at 23).   Finally, Harris offers

---

[17] ARINC 632 describes examples of Gatelink data exchange to include updates of onboard databases such as ELS and engine performance data. (Doc. 132-2). Hibson stated that his presentation contained many explicit references indicating that his proposed system "would be connected to the extensive computer systems already on aircraft." (Doc. 132-5 ¶ 13.)

[18] McAlexander's affidavit states that, in his opinion, the Gatelink Documents do not disclose an archival data store that accumulates and stores data but instead disclose, at most, a direct line-of-sight infrared or fiber optic cable link between aircraft and ground based equipment.  (Doc. 162-5  ¶¶ 4-5).

[19] ARINC 751 specifically states that the Aircraft IR Transceiver Unit (ATU) of the Gatelink system "should contain BIT capability in accordance with ARINC Report 624." (Doc. 132-6).

[20] ARINC 624 provides a three page description of ACMS including a detailed description of data acquisition, processing, and recording. (Doc. 132-11).

[21]  FedEx maintains that ARINC 624 is important because it discloses the accumulation and storage of flight performance data. (Doc. 130 at 21). In response, Harris submits the prosecution history for the '165 patent wherein the prosecuting attorney cites

evidence of secondary considerations, including the fact that the inventors proceeded contrary to the accepted wisdom of infrared and fiber optic technology, which taught away from the use of spread spectrum technology.[22] (Doc. 162 at 25); *see also Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008) (finding that secondary consideration evidence is "not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness").

In light of these factual disputes and secondary considerations, FedEx fails to meet its heavy burden of proving, by clear and convincing evidence, that the claims of the '165 patent are invalid as obvious on summary judgment.[23] Thus, FedEx's Motion for Summary

---

U.S. Patent No. 4,792,102 and argues that it discloses the storage of flight performance data. (Doc. 162-13 at 12). Harris also submits ARINC 591, which was before the PTO during the prosecution of the '165 patent and similarly discloses the storage of digital flight data. (Doc.162-14).

[22] McAlexander stated that the invention of the '165 patent was contrary to accepted wisdom at the time of the invention, which focused on long range, fixed frequency transmission and Gatelink. (Doc. 162-5 ¶ 7). Ziarno similarly stated that at the time of the invention, companies in the industry were focused on the infrared link system. (Doc. 162-5 ¶ 5). In addition, Brian P. Holt, the Director of Intellectual Property Licensing for Harris stated that Harris has executed five licenses directed to the Patents-In-Suit. (Doc. 162-15 ¶¶ 2-3).

[23] To the extent the Court finds that FedEx failed to meet its burden of establishing that claim 1 of the '165 patent is obvious, the Court finds FedEx also failed to prove dependent claims 2-4 are obvious. FedEx's argument that claims 4 and 20 reciting the 2.4-2.5GHz limitation are invalid because they are obvious variants of a "signal within an S band" is also rejected as Harris presents evidence that an "S band" ranges from 2-4GHz, not 2.4-2.5GHz as suggested by FedEx. Additionally, claims 3 and 19 of the '165 patent are not prior art references for the purpose of considering the obviousness of claims 4 and 20 of the same patent, as suggested by FedEx. *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1322 (Fed. Cir. 2004). The Court also rejects FedEx's contention that dependent claims 18-20 are obvious, as FedEx has not established that independent claim 17 is obvious.

Judgment as to invalidity is denied. However, FedEx has presented sufficient evidence to create genuine issues of material fact as to the obviousness of the Patents-In-Suit requiring that Harris's Motion for Summary Judgment as to Validity also be denied to the extent Harris argues that the '165 patent is nonobvious.

### B. Motion for Summary Judgment as to Nonobviousness by Harris

In its Motion for Summary Judgment as to Validity (Doc. 160), Harris maintains that because each theory of invalidity offered by FedEx relies on either inadmissible prior art or references that were previously considered by the PTO, Harris is entitled to a finding that claim 1 of the '165 patent is valid. (*Id.* at 16). This theory of validity fails for two reasons. First, Helfrick's affidavit raises a question of material fact as to whether the "Airbus Digital Telemetry Paper" qualifies as prior art.[24] (Doc. 168-13 ¶¶ 11-14). Thus, it would be inappropriate to exclude the reference from the invalidity analysis at this juncture. Second, Harris's theory of validity relies on the proposition that a party challenging the validity of a patent is unable, as a matter of law, to meet the clear and convincing evidence standard by relying on prior art that was previously considered by the PTO. This theory is incorrect. While the burden of proving invalidity by clear and convincing evidence is "especially difficult" when the prior art was previously before the PTO, *Hewlett-Packard Co. v. Baush & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990), courts, not the PTO, are the final arbiter of patent validity, *Quad Environ. Techs. v. Union Sanitary Dist*, 946 F.2d 870, 876 (Fed. Cir. 1991); *Prima Tek II*, 412 F.3d at 1287 ("The [] prior art reference, which was before the examiner

_____

[24] Helfrick's affidavit states that the Airbus Digital Telemetry Paper was presented publicly at the 18th Annual Symposium of the Society of Flight Test Engineers in 1987. (Doc. 168-13 ¶ 11).

during prosecution [], clearly anticipates the asserted claims of the patents in suit."). Thus, an obviousness argument does not fail, as a matter of law, because a reference was previously considered by the PTO. Accordingly, Harris's Motion for Summary Judgment as to Validity will be denied.[25]

## IV. Dependent Claims

In its Motion for Summary Judgment as to Validity, Harris argues that because FedEx's expert witnesses offer conclusory opinions as to the invalidity of the 378 dependent claims of the Patents-In-Suit, Harris is entitled to a finding of validity for each of these claims. (Doc. 160 at 17). In response, FedEx maintains that the claim chart and obviousness analysis provided by Dr. Helfrick are sufficient to withstand summary judgment as to validity. (Doc. 168 at 16-17).

It is well established that conclusory statements of counsel or witnesses that a patent is invalid do not raise a genuine issue of material fact as to validity. *See, e.g.*, *Applied Companies v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998). Nor is it "the trial judge's burden to search through lengthy technological documents for possible evidence. The public interest in invalidating patents does not override the well established procedure requiring a nonmovant to come forward with evidence sufficient to negate the movant's position." *Biotech Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1352. (Fed Cir. 2001) (affidavit identifying two patents that the expert claimed to be invalidating, without analysis, failed to raise a material issue concerning patent validity).

---

[25] The Court also rejects Harris's argument that the dependent claims are necessarily valid for the same reasons.

Here, FedEx provides detailed claim charts for each of the dependent claims for each of the Patents-In-Suit. (Doc. 168-13 at 112-16, 119-31, 217-26, 234-43, 292-97, 370-75, 381-86, 444-56, 490-94, 544-45, 591-93, 639-42, 686-89). FedEx additionally provides Dr. Helfrick's analysis of the motivation to combine references to invalidate the independent claims, and the vast majority of the dependent claims are alleged to be invalid based on the same combination of prior art. (*Id.* at 63-65). While Harris correctly points out that FedEx does not explicitly explain how to combine each and every reference supporting FedEx's position that all 378 dependent claims are invalid, Harris has not provided any legal authority or persuasive reason why such an explanation is necessary to avoid summary judgment.[26] In light of the extensive evidence provided by FedEx, summary judgment as to the validity of the dependent claims will also be denied.

## V. Inequitable Conduct

Patent applicants "have a duty to prosecute patent applications [before the PTO] with candor, good faith, and honesty. A breach of this duty— including affirmative misrepresentations of material fact, failure to disclose material information, or submission of false material information—coupled with an intent to deceive, constitutes inequitable conduct." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007); *see also* 37 C.F.R. § 1.56. A party asserting inequitable conduct must prove a

---

[26] While Harris argues that *Biotech* compels a conclusion that FedEx's invalidity theories for the dependent claims fail as a matter of law, *Biotech* is easily distinguishable from the present case. In *Biotech*, the Federal Circuit found that simply mentioning a prior art reference is not enough to survive summary judgment. 249 F.3d at 1353. Here, FedEx provides detailed claim charts covering each and every dependent claim along with an explanation of the motivation to combine the majority of prior art references.

threshold level of materiality and intent by clear and convincing evidence. *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). "The Court must then determine whether the questioned conduct amounts to inequitable conduct by balancing the levels of materiality and intent, with a greater showing of one factor allowing a lesser showing of the other." *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007). Summary judgment as to inequitable conduct may be granted when, "drawing all reasonable factual inferences in favor of the nonmovant, the evidence is such that the nonmovant cannot prevail." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998); *see also Astrazeneca Pharm. LP v. Teva Pharm. USA, Inc.*, 583 F.3d 766, 777 (Fed. Cir. 2009) (affirming summary judgment of no inequitable conduct when party challenging the patent failed to provide evidence sufficient to establish  materiality and intent to deceive by clear and convincing evidence).

Information is material when a reasonable examiner would "likely consider [the information] important in deciding whether to allow an application to issue as a patent." *McKesson*, 487 F.3d at 913. "However, a withheld otherwise material piece of information is not material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner." *Digital Control Inc.*, 437 F.3d at 1313. For purposes of determining when a reference is cumulative, the "scope and content of prior art and what the prior art teaches are questions of fact." *McKesson*, 487 F.3d at 913.

Intent to deceive "need not, and can rarely, be proven by direct evidence. Rather, intent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct." *Impax Labs., Inc. v. Aventis Pharm., Inc.,* 468 F.3d 1366, 1374-

75 (Fed. Cir. 2006). In order to establish intent to deceive, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc in relevant part). Further, "the inference of deceptive intent must not only be based on sufficient evidence and be reasonable in light of the evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

### A. Gatelink Documents

In Counterclaim II, FedEx alleges that inventor James Ziarno withheld the Gatelink Documents (ARINC 632 and ARINC 751) from the PTO, rendering the Patents-In-Suit unenforceable. (Doc. 107). Harris now contends that FedEx failed to present any evidence, much less clear and convincing evidence, to support the requisite finding of deceptive intent. (Doc. 160 at 23). In response, FedEx maintains that the circumstantial evidence of intent is sufficient to create a genuine issue of material fact. (Doc. 168 at 21).

In order to determine whether Harris's failure to disclose the Gatelink Documents amounts to inequitable conduct, the Court must first analyze the materiality of the documents.[27] While FedEx contends that these documents are highly material, it provides little evidence to support this position. First, FedEx maintains that by arguing that the Gatelink Documents are cumulative, Harris implicitly admits that the documents are

---

[27] As previously discussed, *supra* Section II, the Gatelink Documents are integrated ARINC publications discussing a system of infrared communication between a parked aircraft and an airport terminal. (Doc. 132-6 at 6).

material.[28]  However, information is material to patentability only when it is "*not cumulative* to information already of record . . ." 37 C.F.R. § 1.56(b) (emphasis added).  Thus, by arguing that the Gatelink Documents are cumulative, Harris has not implicitly admitted materiality.

FedEx next argues that the Gatelink Documents are material because they reference ARINC 624, which in turn describes OMS and the collection of flight performance data.[29] In light of this reference, FedEx contends that the Gatelink Documents would have provided the examiner with a better understanding of FCM-69, which also refers to ARINC standards.  However, FCM-69, which was submitted to the PTO, is arguably more relevant than the Gatelink Documents because  FCM-69 discloses not only the use of OMS, but the use of OMS with spread spectrum technology, as opposed to the infrared technology disclosed in the Gatelink Documents.  The reference to ARINC 624 in the Gatelink Documents and ARINC 624's subsequent description of OMS is therefore arguably cumulative of the information before the PTO.  Accordingly, if the Gatelink Documents are at all material, their materiality is low.

Even if disclosure of the Gatelink Documents would have been prudent, the record is devoid of any suggestion of intent to deceive the PTO, much less the clear and convincing

---

[28]  U.S. Patent No. 5,359,446 ("the '446 patent"), which was disclosed to the PTO during the examination of the '165 patent, provides a detailed description of infrared communication links.  Harris maintains that the Gatelink Documents are cumulative of the '446 patent and that the '446 patent provided the PTO with a more thorough disclosure of the infrared technology.

[29]  The '446 patent does not specifically reference ARINC 624.  However, the '446 patent does specifically disclose an infrared system attached to the aircraft computer system and the use of aircraft computer systems in motioning and maintenance tasks.

evidence required to support a finding of inequitable conduct. FedEx argues that the Court can infer deceptive intent from Ziarno's statement that he was aware of the Gatelink Documents but did not view them as material because Ziarno's statement is not credible. However, even assuming Ziarno was aware of the materiality of the Gatelink Documents and intentionally withheld them, "inequitable conduct requires not intent to withhold, but rather intent to deceive." *Dayco*, 329 F.3d at 1367. While FedEx contends that "[t]he circumstantial evidence of intent here is overwhelming," it fails to provide a single citation to the record allegedly demonstrating this intent. (Doc. 168 at 21). Instead, FedEx refers again to the materiality of the documents. Deceptive intent cannot, however, be established by clear and convincing evidence "simply by relying on the materiality of the omission, deceptive intent must be established as a separate factual element." *Ariad Pharm., Inc. v. Eli Lilly & Co.,* 560 F.3d 1366, 1380 (Fed. Cir. 2009); *see also Halliburton Co. v. Schlumberger Tech. Corp.*, 925 F.2d 1435, 1443 (Fed. Cir. 1991) (intent to deceive cannot be based on the materiality of a reference that was not submitted, even if gross negligence was shown). FedEx's argument that the Gatelink Documents are "highly material" is therefore insufficient to support a finding of deceptive intent. Accordingly, FedEx's contention that the '165 patent is unenforceable due to Ziarno's failure to disclose the Gatelink Documents will not withstand Harris's Motion for Summary Judgment as to Validity, and FedEx will not be permitted to argue such at trial.

### B. FAA Circular

FedEx alleges that the Patents-In-Suit are unenforceable due to the inventors' failure to disclose the FAA draft Advisory Circular AC-120-XX ("FAA Circular"). (Doc. 107 ¶ 53).

Harris now moves for summary judgment arguing that the FAA Circular does not qualify as prior art because it was published less than two months prior to the filing of the '165 patent. (Doc. 160 at 26-27). Harris additionally argues that even if the FAA Circular does qualify as prior art, it was sufficiently disclosed in the background section of the '165 patent. (*Id.*). In response, FedEx maintains that Harris failed to adequately disclose the FAA Circular because it did not place a copy of the document in the file history of the '165 patent. (Doc. 168 at 26).

For purposes of defining prior art under 35 U.S.C. § 102, the date of the invention is presumed to be the filing date of the application.[30] *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986). With respect to the '165 patent, the filing date of the application was November 14, 1995. (Doc. 132-1). In order to overcome the presumption that the invention date of the '165 patent is November 14, 1995, Harris must offer evidence sufficient for a jury to find that the subject matter of the '165 patent was invented on that earlier date. *Bausch & Lomb*, 796 F.2d at 449. Harris argues that the FAA Circular does not qualify as prior art under 35 U.S.C. § 102 because it was published less than two months *before* the filing of the '165 patent, thereby suggesting that the '165 patent was actually invented prior to its filing date. However, Harris has yet to establish a date of invention prior to the date of filing. Accordingly, for the purpose of the present motion, the Court will consider the FAA Circular to be prior art.

With respect to the disclosure issue, Harris contends that the citation to the FAA

---

[30] Section 102 provides that "[a] person shall be entitled to a patent unless the invention was known or used by others . . . *before the invention thereof* by the applicant." 35 U.S.C. § 102(a) (emphasis added).

Circular in the background of the '165 patent precludes a finding of inequitable conduct.  In response, FedEx maintains that Harris's failure to provide the PTO with a copy of the FAA Circular coupled with its failure to disclose the FAA Circular's RF-Link recommendation constitutes inequitable conduct.

Because there exist genuine issues of material fact relating to whether the reference was properly before the examiner, whether the patentee had the requisite intent to deceive the PTO,[31] and whether the allegedly undisclosed information was cumulative, summary judgment is denied as to whether the '165 patent is unenforceable for failure to disclose the FAA Circular.

### C. Disclosure of Pending Applications/Reexaminations During the '165 Patent Reexamination

In its Counterclaim, FedEx alleges that during the '165 patent reexamination, the inventors failed to cite the pending '146, '412, and '387 patent applications, as well as the '045 reexamination, rendering the '165 patent unenforceable.  (Doc. 107 ¶¶ 74-77).  Harris now contends that because one of the examiners assigned to the '045 reexamination panel was also assigned to the '165 reexamination panel, Harris did not have a duty to disclose the '045 reexamination.  Harris also maintains that because the present litigation was disclosed to the PTO, the examiner was on notice of these proceedings and the patents involved.  (Doc. 160 at 27-28).  In response, FedEx argues that Harris's duty of disclosure was not relieved by the fact that one of the three examiners on the '165 reexamination panel

---

[31]  Although not raised by the parties, the Court notes that the circumstantial evidence of deceptive intent, mainly the prosecuting attorney's failure to disclose arguably the most relevant portion of the FAA Circular in the '165 patent specification, is sufficient to create a genuine issue of material as to deceptive intent.

was also on the '045 reexamination panel. (Doc. 168 at 24).

The Manual of Patent Examining Procedure ("MPEP") provides that a prosecuting attorney should not "assume that [a PTO examiner] retains details of every pending file in his mind when he is reviewing a particular application."[32] MPEP § 2001.06(b).  In light of this language, the Federal Circuit has held that a patentee is not entitled to assume that an examiner would recall a co-pending application or reexamination.  *McKesson*, 487 F.3d at 925-26.  Thus, Harris had a duty to disclose the '045 reexamination despite the fact that one of the examiners on the '165 reexamination panel was also an examiner on the '045 reexamination panel or the fact that the present litigation was generally disclosed.[33]

There are genuine issues of material fact regarding whether the '165 patent is unenforceable due to the inventors' failure to cite the pending '146, '412, and '387 patent applications, as well as the '045 reexamination.  Accordingly, summary judgment on this issue must be denied.

### D.  Disclosure of the Pending '523 Application

_____

[32]  MPEP § 2001.06 was the same in 1995 as it is today.

[33]  Harris cites *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003), for the proposition that the citation of one co-pending application in another co-pending application of the same patent family is sufficient to "dispense with inequitable conduct" for failure to disclose other patents of the same family.  (Doc. 160 at 28).  *Dayco* does not support this argument.  In *Dayco*, the district court had determined, on summary judgment, that the patents-in-suit were unenforceable.  329 F.3d at 1365.  The Federal Circuit overturned the district court's grant of summary judgment finding that failure to disclose a co-pending application where applications from the same family of patents were disclosed "points away from an intent to deceive" and therefore precluded a finding of *unenforceability* on summary judgment.  *Id.*  The Federal Circuit did not find, as Harris suggests, that where a patentee discloses a co-pending application from a family of patents a court is precluded from finding unenforceability for failure to disclose the other co-pending applications in the same family.

In Counterclaims 5-7, FedEx alleges that the inventors' failure to cite the pending application for the '523 patent renders the '637, '045, and '319 patents unenforceable. (Doc. 107 ¶¶ 143-59, 192-208, 243-53). Harris maintains that because the same examiner reviewed all of the Patents-In-Suit, FedEx's claims of inequitable conduct must fail. (Doc. 160 at 29). However, as discussed in the previous section, the Federal Circuit has held that a patentee is not entitled to assume that an examiner recalls all co-pending applications, and a patentee is not relieved of the duty to disclose co-pending applications when the applications are in front of the same examiner. *McKesson*, 487 F.3d at 925-26. Accordingly, the Court declines to grant summary judgment regarding the enforceability of the '637, '045, and '319 patents based on the inventors' failure to disclose the '523 application.

## VI. 35 U.S.C. § 112

In its Motion for Summary Judgment as to Validity, Harris argues that FedEx failed to provide any evidence to support its assertions that the Patents-In-Suit are invalid under 35 U.S.C. § 112 for indefiniteness, lack of enablement, and lack of written description. Having granted FedEx permission to file a separate, additional motion for invalidity pursuant to 35 U.S.C. § 112, the Court will reserve ruling on the § 112 issues raised in Harris's present Motion for Summary Judgment as to Validity and will instead address the § 112 issues in a separate order.

### Conclusion

Based on the foregoing, the Motion for Partial Summary Judgment of Invalidity of Claims 1-4 and 17-20 of U.S. Patent No. 6,047,165 and Memorandum of Law is Support and

Request for Oral Argument by FedEx (Doc. 130) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent FedEx argues that the FCM-69, the Gatelink Documents, ARINC 624 and ARINC 649 qualify as prior art for the purposes of analyzing the validity of the '165 patent. The Motion is **DENIED** in all other respects.

The Motion for Summary Judgment as to Validity and Enforceability by Harris (Doc. 160) is **GRANTED in part** and **DENIED in part**. The Motion is granted to the extent Harris argues that FCM-69 does not anticipate claim 1 of the 165 patent and that Ziarno did not engage in inequitable conduct by failing to disclose the Gatelink Documents to the PTO.

**DONE** and **ORDERED** in Orlando, Florida on June 29th, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to Counsel of Record