# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HARRIS CORPORATION,**

        **Plaintiff,**

-vs-                                 **Case No.  6:07-cv-1819-Orl-28KRS**

**FEDERAL EXPRESS CORPORATION,**

        **Defendant.**

---

## ORDER

The instant patent infringement controversy involves aircraft flight data communication systems. By use of such systems, performance data collected and stored during flight can be communicated from a parked aircraft to the ground. The patents at issue, owned by Plaintiff Harris Corporation ("Harris"), involve the wireless transmission of such data. A jury found the asserted claims of the patents at issue to be valid and infringed by Defendant Federal Express Corporation ("FedEx").

Following the jury's finding, an Order was entered finding Harris to be entitled to the entry of a permanent injunction and instructing Harris to submit a proposed permanent injunction. Having considered all of the papers filed by the parties and the evidence presented, the Court declines to enter a permanent injunction in the form proposed by Harris. Instead, the Court will enter a permanent injunction that is narrowly tailored to cover the specifically adjudged acts of infringement. In addition, FedEx's motion to stay the injunction pending appeal will be denied.[1]

---

[1] The motions presently before the Court include: (1) Plaintiff's Motion and Memorandum in Support of Plaintiff's Proposed Permanent Injunction (Doc. 306); (2) Federal Express Corporation's

## Background

### I. Procedural History

Harris sued FedEx, alleging that FedEx infringed eight patents relating to the use of spread spectrum communication signals for the transmission of flight performance data from a parked aircraft to the ground.[2]  (Doc. 1).  Along with its Answer, FedEx filed Counterclaims seeking a declaratory judgment that it was not infringing the asserted patents and that the asserted patents were invalid. (Doc. 10 at 6-7).  Harris then filed an Amended Complaint adding two additional patents.[3]  (Doc. 32). In response, FedEx filed Amended Counterclaims alleging that the patents at issue were unenforceable as a result of inequitable conduct in their prosecution before the United States Patent and Trademark Office ("PTO").  (Doc. 34 ¶¶ 34, 46).  After extensive discovery, Harris filed a Second Amended Complaint adding three newly-issued patents[4] and removing five patents listed in the two prior complaints.[5]  (Docs. 75, 77).

---

Memorandum in Opposition to Harris's Motion for Injunction and in Support of Alternative Proposed Permanent Injunction Order (Doc. 308); (3) Federal Express Corporation's Motion to Stay the Permanent Injunction Pending Appeal (Doc. 301); and (4) Plaintiff's Response to Federal Express Corporation's Motion to Stay the Permanent Injunction Pending Appeal.  (Doc. 315).

[2] The patents alleged to be infringed in the original Complaint include: U.S. Patent Nos. 6,104,914 ("the '914 patent"); 6,108,523 ("the '523 patent"); 6,154,636 ("the '636 patent"); 6,154,637 ("the '637 patent"); 6,173,159 ("the '159 patent"); 6,308,044 ("the '044 patent"); 6,775,545 ("the '545 patent"); and 6,990,319 ("the '319 patent").  (Doc. 1 at 2-3).

[3] U.S. Patent No. 6,047,165 ("the '165 patent") and U.S. Patent No. 6,308,045 ("the '045 patent") were added in the Amended Complaint.  (Doc. 32 at 3).

[4] U.S. Patent Nos. 7,426,387 ("the '387 patent"); 7,428,412 ("the '412 patent"); and 7,444,146 ("the '146 patent") were added in the Second Amended Complaint.  (Doc. 75 at 3).

[5] The five patents no longer asserted in the Second Amended Complaint include: the '523 patent; the '545 patent; the '044 patent; the '636 patent; and the '159 patent (the "Unasserted

On April 22, 2010, the Court issued an Order construing the disputed terms of the asserted patent claims. (Doc. 171). The term "airport based" was construed as "located at the airport." (*Id.* at 11). The "transmitting data" terms were construed to require the transmission of "sufficient data to provide a comprehensive, long-term picture of flight performance." (*Id.* at 22). The Court declined to adopt Harris's proposed construction of the term "ground based" as "located at or near the airport," instead finding the plain and ordinary meaning of the term "ground based"—located on the ground—to be the proper construction. (*Id.* at 14). The Court also declined to adopt FedEx's argument that the terms "ground based" and "airport based" were invalid as indefinite. (*Id.* at 11, 14).

Following claim construction, the parties filed cross-motions for summary judgment as to validity, infringement, and inequitable conduct. The Court granted summary judgment in favor of Harris as to FedEx's infringement of claims 3-6 and 9 of the '319 patent; claims 1-2 and 4-5 of the '387 patent, and claims 31 and 38-40 of the '637 patent prior to the installation of the design-around software and granted summary judgment in favor of FedEx as to its noninfringement of the Unasserted Patents. (Docs. 120, 218). The Court also granted summary judgment in favor of Harris as to anticipation of claim 1 of the '165 patent. (Doc. 214). Finally, the Court declined to grant summary judgment for FedEx as to invalidity on grounds of inadequate written description, lack of enablement, and indefiniteness. (Doc. 242).

The case was tried to a jury in July 2010. The patents asserted against FedEx during trial included: the '165 patent; the '637 patent; the '045 patent; the '319 patent; the '387 patent; the '412 patent; and the '146 patent (the "Patents-In-Suit"). (Docs. 217, 257). The jury returned a special

_____

Patents"). (Doc. 75).

-3-

verdict finding all of the asserted claims of the Patents-In-Suit to be valid and infringed. (Doc. 257).
The jury also found that FedEx had willfully infringed the Patents-In-Suit. (*Id.*). The jury's findings
as to the validity and infringement of the Patents-In-Suit and the willful infringement of the '165,
'637, and '045 patents were subsequently found to be supported by substantial evidence. (Doc. 298).
However, the jury's finding that FedEx willfully infringed the '319, '387, '412, and '146 patents was
found not to be supported by substantial evidence. (*Id.*). Following a separate bench trial, the Court
determined that the Patents-In-Suit were not unenforceable as a result of inequitable conduct in their
prosecution before the PTO. (Doc. 284).

Following the trials, Harris filed a Motion and Memorandum for Entry of Final Judgment,
Finding of Entitlement to Attorneys' Fees, an Award of Enhanced Damages, and Entry of Permanent
Injunction, which was granted in part and denied in part. (Docs. 266, 302). The Motion was granted
to the extent Harris sought a finding that it is entitled to the entry of a permanent injunction, and the
Court instructed Harris to submit a proposed permanent injunction. (Doc. 302). Harris timely filed
the present Motion and Memorandum in Support of Plaintiff's Proposed Permanent Injunction (Doc.
306), and FedEx responded in opposition (Doc. 308). FedEx also filed a Motion to Stay Permanent
Injunction Pending Appeal (Doc. 310), to which Harris responded in opposition. (Doc. 315).

## II. The FedEx System

The FedEx System found to infringe the Patents-In-Suit is a system that acquired and stored
flight performance data on FedEx's aircraft and wirelessly transmitted that data from a parked aircraft
to the ground via a spread spectrum signal.[6] (Doc. 274 at 64-67, 82). The flight performance data

---

[6] The description of the FedEx System in the present section is offered for contextual purposes
only. It is not intended to describe the system adjudicated to infringe the Patents-In-Suit for purposes

recorded by the FedEx System and wirelessly transmitted to the ground was ultimately transferred to a dedicated server located inside FedEx's Air Operations Center building in Memphis, Tennessee. (*Id.*).

By September of 2008, a new software option was added to the FedEx System. (Doc. 274 at 67:22-24). Prior to the installation of this new software option, the FedEx System downloaded all of the recorded flight performance data to the dedicated server in the Air Operations Center. (*Id.*). After the addition of the new software option, FedEx could select an alternative function that would exclude a five-minute segment of the recorded data from the download to the dedicated server. (*Id.* at 68:1-16).

## Analysis

### I. Scope of Permanent Injunction

Harris seeks the entry of a permanent injunction that prohibits FedEx from infringing the relevant patents by making, using, selling, or offering to sell an "aircraft communication system" comprising three separate components. (Doc. 306-1). FedEx contends that this proposed injunction fails to satisfy Federal Rule of Civil Procedure 65(b) because it goes far beyond prohibiting the use of the system found to infringe the Patents-In-Suit. FedEx's argument is well-taken.

Pursuant to 35 U.S.C. § 283, district courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Any injunction issued under § 283 must comply with Federal Rule of Civil

---

of defining the scope of the permanent injunction.

Procedure 65(d), which specifies the proper form and scope of an injunction issued by a district court as follows:

> (1) Contents. Every order granting an injunction and every restraining order must:
>> (A) state the reasons why it issued;
>> (B) state its terms specifically; and
>> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.
>
> (2) Persons Bound. The order binds only the following who receive actual notice of it by personal service or otherwise:
>> (A) the parties;
>> (B) the parties' officers, agents, servants, employees, and attorneys; and
>> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d). Accordingly, the Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute, finding such injunctions increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally adjudged unlawful. *See, e.g., NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435-36 (1941).

In the patent infringement context, the Federal Circuit has extended this principle to reject permanent injunctions that simply prohibit future infringement of a patent. *See Addictive Controls and Measurements Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 479-80 (Fed. Cir. 1993). For example, in *Addictive Controls*, the Federal Circuit vacated an injunction that "forever barred" the adjudged infringer from infringing the patent at issue because the injunction lacked a reasonably detailed description of the acts sought to be restrained and therefore violated Rule 65(b). *Id.* at 477, 480. Specifically, the *Additive Controls* court found that the injunction failed to state which acts constituted infringement and to expressly limit its prohibition to the manufacture, use, or sale of the specific device found to infringe, or devices no more than colorably different. *Id.* at 479-80. Similarly, in

-6-

*International Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312 (Fed. Cir. 2004), the Federal Circuit vacated an injunction prohibiting infringement by "any device covered by one or more of Claims 1 through 5 of" the relevant patent for failure to comply with Rule 65(d). *Id.* at 1315-18. In so vacating the injunction, the Federal Circuit held that "the only acts [an] injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices. In order to comply with Rule 65(d), the injunction should explicitly proscribe only those specific acts." *Id.* at 1316.

In the present case, Harris seeks an permanent injunction that broadly enjoins FedEx from making, using, selling, or offering for sale an "aircraft communication system" described as comprising the following three elements:

> 1. A data recorder on the aircraft;
>
> 2. A wireless communication device on the aircraft that transmits data sufficient to provide a comprehensive, long-term picture of flight performance from the data recorded on the aircraft to the ground when the aircraft is on the ground; and
>
> 3. A wireless communication device on the ground that receives the data from the aircraft.

(Doc. 306-1 at 2). While the language of the proposed injunction loosely tracks the relevant claim language and the claim construction provided by the Court, the "aircraft communication system" described in Harris's proposed injunction does not limit the prohibited acts to the devices adjudicated to infringe the Patents-In-Suit and those devices not more than colorably different as required by Rule 65(b) and binding Federal Circuit precedent. Instead, Harris's proposed injunction is akin to those injunctions vacated for simply barring future infringement of a patent without providing the requisite

-7-

description of the acts to be restrained. *See Int'l Rectifier*, 383 F.3d at 1316; *Addictive Controls*, 986 F.2d at 479.  Accordingly, the Court declines to adopt the injunction proposed by Harris.

Unlike Harris, FedEx proposes a permanent injunction that is, for the most part, narrowly tailored to the device adjudicated to infringe the relevant patents as required by Rule 65(d), sufficient to prevent the violation of any rights secured by the Patents-In-Suit, and reasonable in its terms in accordance with 35 U.S.C. § 283.  Accordingly, the Court will enter a permanent injunction similar to that proposed by FedEx.  However, the Court will alter FedEx's proposed injunction to explicitly incorporate the infringing FedEx System as it existed both before and after the addition of the software option in 2008.

## II. Stay of Injunction Pending Appeal

FedEx requests that any permanent injunction entered in the present case be stayed pending appeal in light of the complexity of the present dispute and the balance of the equities relating to Harris, FedEx, and the public.  (Doc. 310).  In response, Harris contends that a stay is not warranted in the present case because FedEx failed to meet its burden of showing a strong likelihood of success on the merits and harm to FedEx in the absence of a stay.  (Doc. 315).

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  In the present case, an appeal is not currently pending and FedEx has not offered a bond or other terms that secure Harris's rights.  Nonetheless, even if an appeal were pending and FedEx had offered an appropriate bond, a stay would not be warranted.

Similar to the standard for securing a preliminary injunction, in order to secure a stay or an injunction pending appeal, the moving party must demonstrate: (1) a strong showing that the applicant is likely to succeed on the merits; (2) that the moving party will be irreparably injured absent the relief; (3) that the issuance of the stay or injunction will not substantially injure the other parties interested in the proceeding; and (4) that the public interest will not be adversely affected by the requested relief. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (setting forth standard for stay pending appeal); *compare Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (setting forth standard for entry of preliminary injunction); *Advanced Estimating Sys., Inc. v. Riney*, 41 U.S.P.Q.2d 1638, 1640 (S.D. Fla. 1997). "[I]ndividualized judgments" of the traditional stay factors must be made in each case, and "the formula [for doing so] cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777. Accordingly, the Court will address each factor in turn.

### A. Likelihood of Success on the Merits

As to the likelihood of success on the merits, FedEx first argues at length that the injunction proposed by Harris is impermissible because it enjoins non-infringing activities. (Doc. 310 at 3). However, having declined to adopt the injunction proposed by Harris, FedEx's first argument is moot.

FedEx next contends that it is likely to succeed on the merits of an appeal because there are substantial questions regarding the Court's construction of the contest claim terms. (Doc. 310 at 4). FedEx does not, however, describe any of these "substantial questions." Rather, FedEx merely cites previously filed motions relating to claim construction. Such citation, alone, is insufficient to demonstrate likelihood of success on the merits. To find otherwise would render nearly every patent infringement action subject to a stay. *See Exonn Research & Eng'g Co v. United States*, 265 F.3d

1371, 1375 (Fed. Cir. 2001) ("We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree."). Finally, while FedEx argues that the complexity of the present dispute warrants a stay, FedEx offers no more than generalized, conclusory statements regarding the supposed "complexity" of the present case. Accordingly, FedEx has not made a strong showing of likelihood of success on the merits.

### B. Irreparable Harm

The second factor courts must consider is whether the moving party will be irreparably harmed absent the requested relief. *Hilton*, 481 U.S. at 776. In the present case, FedEx, the moving party, argues at length that Harris will not be irreparably harmed by a temporary stay. This argument misses the mark. The relevant question is whether FedEx will be irreparably harmed absent a temporary stay, and FedEx has presented no evidence relating to any harm it will allegedly suffer. In fact, FedEx fails to offer even a single example, factually supported or not, of the harm it will allegedly suffer in the absence of a stay. In light of this lack of evidence and FedEx's repeated representations to the Court that the relevant system has been removed from FedEx's aircraft, the irreparable harm factor weighs heavily against granting a stay.

### C. Balance of Equities

The third factors courts must consider in determining if a stay is appropriate is whether or not the requested stay will substantially injure the other parties interested in the proceeding. Here, FedEx asserts in a conclusory fashion that Harris will not be injured by the requested stay because FedEx removed the infringing system from its aircraft and because Harris delayed in bringing suit, did not

-10-

seek a preliminary injunction, and does not offer a commercial product embodying the relevant patents. In response, Harris argues that it will indeed suffer harm as a result of a stay, noting that in issuing the permanent injunction, the Court determined that Harris would suffer irreparable harm by virtue of FedEx's continued infringement for a variety of reasons. While neither party offers evidence or argument directly relating to how a stay, as opposed to the eventual issuance of a permanent injunction, would harm or not harm Harris, it is FedEx burden to demonstrate that this factor weighs in its favor, and FedEx has not met this burden. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

**D. Public Interest**

Finally, as to the public interest, FedEx simply asserts in a conclusory fashion that "[t]he equities affecting the parties, numerous customers of FedEx, and the public in general weigh heavily in favor of granting a stay of the injunction." (Doc. 310 at 5). FedEx presents no further argument or evidence to support its contention that the public will be harmed in the absence of a stay. Accordingly, this factor weighs against the requested stay.

Having considered all four equitable factors, the Court concludes that the balance of the equities weighs heavily against granting a stay of the present permanent injunction.

### Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.      Federal Express Corporation's Motion to Stay the Permanent Injunction Pending Appeal (Doc. 310) is **DENIED**.

2.   Plaintiff's Motion and Memorandum in Support of Plaintiff's Proposed Permanent Injunction (Doc. 306) is **GRANTED** to the extent it seeks the injunction described below and is **DENIED** in all other respects.

3.   Federal Express Corporation, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with such persons who receive actual notice of this Order by personal service or otherwise shall be permanently enjoined from infringing, either directly, 35 U.S.C. § 271(a), by inducement, 35 U.S.C. § 271(b), or by contribution, 35 U.S.C. § 271(c), the Patents-In-Suit[7] by, during the term of the Patents-In-Suit, making, using, selling, or offering to sell the products adjudged to infringe in the United States or importing into the United States the products adjudged to infringe.  The products adjudge to infringe the Patents-in-Suit include the Federal Express system comprised of the combination of: (1) an Avionica miniQAR, (2) a Securelink wireless router, and (3) a wireless ground communication system, or systems no more than colorably different therefrom.  The products adjudged to infringe the Patents-In-Suit include the above systems with or without the installation of a software option to exclude a five-minute segment of the recorded data from the data downloaded to the wireless ground communication system.

4.   To the extent either party objects to the scope of the permanent injunction described in this Order, objections must be filed within 10 (ten) days of the date of this Order.

---

[7] The Patents-in-Suit include: (1) U.S. Patent No. 6,047,165; (2) U.S. Patent No. 6,154,637; (3) U.S. Patent No. 6,308,045; (4) U.S. Patent No. 6,990,319; (5) U.S. Patent No. 7,426,387; (6) U.S. Patent No. 7,428,412; and (7) U.S. Patent No. 7,444,146.  (Doc. 257).

5.    The Clerk of Court is directed to enter Judgment in accordance with this Order in the

form attached hereto, which the Court hereby approves pursuant to Federal Rule of

Civil Procedure 58(b)(2).  Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida on August 16, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record

-13-